Civil Records

**LOUIS J. PERRET**
Clerk of Court, Lafayette Parish
P. O. BOX 2009
LAFAYETTE, LA  70502
Telephone: (337) 291-6303  Fax: (337) 291-6392

| | |
|---|---|
| **STATE OF LOUISIANA** | **OFFICE OF THE CLERK OF COURT** |
| **PARISH OF LAFAYETTE** | **15TH JUDICIAL DISTRICT COURT** |

I, Deborah Duplechin, Deputy Clerk of Court, in and for the Parish of Lafayette, State of Louisiana, do

hereby certify that the attached documents are true and correct copies from the civil suit entitled:

**J CORY CORDOVA**

**VS**                                                    **DOCKET NUMBER: C-20192019 D**

**LOUISIANA STATE UNIVERSTIY HEALTH
SCIENCE CENTER, ET AL**

Consisting of 290 pages, filings from March 29, 2019 thru August 6, 2019 the original of which documents are

on file in the Lafayette Parish Clerk of Court Office.

Lafayette, Louisiana, this AUGUST 7, 2019.

_____
Deborah Duplechin, Deputy Clerk of Court
Lafayette Parish

EP. $2,200.00
MC

CLERK OF COURT
LAFAYETTE PARISH, LA.
2019 MAR 29  PH 2: 52


54852256

New Suit
MC

15th JUDICIAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE

STATE OF LOUISIANA

DOCKET NO.                                              DIV. "D" DIVISION

20192019        J. CORY CORDOVA, M.D.                        D

VERSUS

LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER; UNIVERSITY
HOSPITAL AND CLINICS; KAREN CURRY, M.D., NICHOLAS SELLS, M.D., KRISTI
ANDERSON, CHRISTOPHER C. JOHNSTON, and THE GACHASSIN LAW FIRM

FILED:_____        DEPUTY CLERK:_____

PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel comes Petitioner, Dr. J. Cory

Cordova who respectfully avers:

INDEXED

1.

Petitioner, Dr. J. Cory Cordova, is a person of the full age of majority domiciled in

Lafayette Parish, Louisiana.

2.

Made Defendants herein are:   Louisiana State University Health Science Center

("LSUHSC"), a state agency; University Hospital and Clinics ("UHC") located in Lafayette

Parish, Louisiana; Lafayette General Hospital ("LGH") whose principal place of business is

located in Lafayette Parish, Louisiana; Dr. Karen Curry, in her individual and official capacities,

domiciled in Lafayette Parish, Louisiana; Dr. Nicolas Sells, in his individual and official

capacities, domiciled in Lafayette Parish, Louisiana; Kristi Anderson, in her individual and official

capacities; domiciled in Lafayette Parish, Louisiana; Christopher C. Johnston domiciled in West

Feliciana Parish and the Gachassin Law Firm whose principal place of business is in Lafayette

Parish.

3.

Venue is proper in this Court pursuant to Articles 42, 73 and 74 of the Louisiana Code of

Civil Procedure.

1



<u>**ACTS OF DEFENDANTS LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, UNIVERSITY HOSPITAL AND CLINICS, KAREN CURRY, M.D., NICOLAS SELLS, M.D. and KRISTI ANDERSON**</u>

4.

The Defendants, Louisiana State University Health Science Center ("LSUHSC"), University Hospital and Clinics ("UHC") Lafayette General Hospital ("LGH"), Dr. Karen Curry, Dr. Nicolas Sells, and Kristi Anderson are jointly and severally for damages resulting from various violations of LSUHSC's policies and procedures that occurred while Petitioner, Dr. Cordova, was a first-year Internal Medicine resident at University Hospital and Clinics in Lafayette, Louisiana.

5.

Dr. Cordova entered into a contract with Defendants to be a "House Officer," i.e. a resident, at UHC in the Internal Medicine Department from July 1, 2017 through June 30, 2018. This term was to be Dr. Cordova's first-year of his residency.

6.

Pursuant to LSUHSC's relationship with the Accreditation Council for Graduate Medical Education (ACGME), Dr. Cordova's contract with the Defendants includes an agreement to follow established formal grievance procedures for any "action which result[s] in dismissal or could significantly threaten a House Officer's intended development." These complaint and grievance procedures are detailed in the House Officer Manual ("HOM").

7.

At all relevant times, Defendant Dr. Karen Curry served as Dr. Cordova's Program Director at UHC Internal Medicine; Defendant Dr. Nicholas Sells as the UHC Medicine Department Head/Section Chief; and Dr. James B. Falterman as the Associate Dean for Academic Affairs.

8.

From June 2017 through the beginning of November 2017, Dr. Cordova was consistently rated "Experienced/Competent, Ready for Unsupervised Practice and Aspirational Expert."

2

9.

However, Dr. Cordova was, without *any* prior preliminary intervention pursuant the HOM, placed on a probationary period from November 10, 2017 through February 28, 2018. On February 15, 2018, Defendant Dr. Sells informed Dr. Cordova that his contract for the following year would not be renewed due to Dr. Sells' action on a Request for Adverse Action filed by Defendant Dr. Curry.

10.

The manner in which the Defendants imposed unwarranted discipline upon Dr. Cordova without guaranteed Due Process as mandated by Dr. Cordova's contract and the LSUHSC'S HOM violated both Dr. Cordova's contract and his constitutional Due Process rights.

11.

On November 10, 2017, Dr. Curry stated that the Clinical Competency Committee had reviewed his resident performance and recommended that he be placed on probation. Dr. Curry advised that if Dr. Cordova did not comply with the terms of remediation during probation, his contract was at risk for nonrenewal. The probationary period was from November 10, 2017 until February 28, 2018. Dr. Curry began implementing a remediation plan.

12.

However, the Clinical Competency Committee did not issue a recommendation until the following month or on or about December 15, 2017 when they issued a remediation plan to Dr. Cordova via email. The Clinical Competency Committee's remediation plan differed from the one imposed by Dr. Curry.

13.

Moreover, during the November 10, 2017 meeting, Dr. Cordova was told by Dr. Curry that the probation would not be a part of Dr. Cordova's academic record.

14.

On February 1, 2018, despite the fact that the probationary and remediation period had not yet expired and the fact that Dr. Cordova was told by members of the Clinical Competency Committee that he was properly remediating pursuant to the plan, Dr. Cordova was notified by Dr. Sells that Dr. Curry filed a Request for Adverse Action ("RFAA"). This action by Dr. Curry

3

initiated proceedings that could result in immediate termination or non-renewal of Dr. Cordova's contract. Dr. Cordova was at this time provided for the first time the RFAA.

15.

Upon review, it was immediately apparent that the RFAA failed to meet the promulgated due process requirements for four (4) mutually exclusive reasons.

16.

First, Dr. Sells made the decision to support the conclusion of Dr. Curry's Request for Adverse Action before any challenge or response could be made by Dr. Cordova. According to the HOM, when a RFAA is filed, the Department Head shall determine if the "charges registered against the House officer appear to be supportable on their face." LSUHSC HOM. Due Process prohibits the Department Head from reaching any conclusions without providing the Resident an opportunity to challenge the accusations in the RFAA.

17.

In the February 1, 2018 meeting with Dr. Cordova, Dr. Sells stated that he actually supported Dr. Curry's conclusions: "After hearing one side and reviewing what has been submitted, I support that letter based on what I've read, I support that request and you'll get a copy of that." Thus, Dr. Sells indicated he had already made his decision without affording Dr. Cordova any opportunity to respond as required by the HOM, his contract, and due process.

18.

Second, the RFAA was initiated by a member of the faculty (Dr. Karen Curry) that the department head (Dr. Nicholas Sells) admitted lacked objectivity. Dr. Sells admitted to Dr. Cordova after the nonrenewal decision that Dr. Curry was not objective and formed opinions about Dr. Cordova early on. This lack of objectivity observed by Dr. Sells violates ACGME requirements found in Section V(A)(2)(b)(1) and the due process requirements found in Section II (A)(4)(l) of the HOM.

19.

Despite Dr. Curry's lack of objectivity, Dr. Curry did not consult the Clinical Competency Committee regarding her recommendation that Dr. Cordova's contract to be terminated and/or nonrenewed as required by the House Officer Manual and the ACGME.

4

20.

This failure of the program director to exercise appropriate objectivity and/or to request a recommendation of the Clinical Competency Committee violated Petitioner's procedural and substantive due process rights.

21.

Third, Dr. Curry's RFAA referenced numerous attached exhibits allegedly supporting the accusations therein. However, none of these exhibits were actually attached to Dr. Curry's RFAA. Upon information and belief, Dr. Sells made his February 1, 2018 decision without reviewing any of these alleged exhibits.

22.

In fashioning his challenge to the RFAA, Dr. Cordova requested a copy of the alleged exhibits. The purpose of this request was twofold: rather than merely relying on Dr. Curry's summary of what these exhibits contained, (1) Dr. Cordova could have actual sufficient notice of the allegations against him; (2) and the ability to review and meaningfully respond to the allegations.

23.

Dr. Cordova, in his challenge to the RFAA, specifically reserved any and all Due Process rights to supplement his response once he was provided the exhibits. These exhibits were never provided to Dr. Cordova subsequent to his challenge being filed, prior to Dr. Sells' decision regarding nonrenewal of Dr. Cordova's contract, or even to this date after numerous months of subsequent requests from Dr. Cordova and his counsel.

24.

Fourth, as required by the HOM, Dr. Curry's Request for Adverse Action failed to give a "brief statement of the nature of testimony to be given by each witness."

25.

Upon Dr. Cordova's review and investigation into the allegations contained in the RFAA, he found that the allegations were either grossly exaggerated or patently false.

5

26.

On February 8, 2018, Dr. Cordova filed a challenge to the RFAA with Dr. Sells, detailing his responses as best was possible without ever seeing the actual exhibits referenced. However, he specifically noted that he was unable to address all of the allegations due to having never been provided the exhibits to the RFAA. Accordingly, Dr. Cordova requested a copy of these exhibits so he could address the actual allegations and reserved his right to supplement his challenge upon the opportunity to review them.

27.

Without ever receiving these exhibits, Dr. Cordova received correspondence from Dr. Sells on February 15, 2018 notifying him that Dr. Curry's RFAA had been accepted and Dr. Cordova's contract would not be renewed.

28.

Upon information and belief, Dr. Sells never reviewed any exhibits referenced in the RFAA prior to making a final determination regarding nonrenewal of Dr. Cordova's contract.

29.

No hearing in front of an impartial committee where witnesses were presented to testify ever occurred.

30.

While still awaiting these exhibits to decide upon a course of action, on February 19, 2018, Dr. Cordova began looking at options to pursue his education at another residency training program. Dr. Cordova communicated that any decision not to further challenge his contract nonrenewal was predicated on the understanding that his privacy regarding the RFAA would be respected. Dr. Sells agreed to notify faculty of Dr. Cordova's request for privacy. There was never an acknowledgement or consent to discipline by Dr. Cordova.

31.

Dr. Cordova interviewed at the University of Alabama at Birmingham ("UAB"), Selma Family Medicine Program. Despite assurances from Dr. Sells about privacy of the RFAA, it was sent to UAB on March 14, 2018. When Dr. Cordova inquired into his privacy rights, he was told by Director of Graduate Medical Education, Kristi Anderson, that the documents had to be

6

produced or a statement that the file was incomplete would have to be included. Accordingly, Kristi Anderson required Dr. Cordova to sign a release to that information.

32.

On April 3, 2018, the LSU Family Medicine Residency Program in Alexandria, LA, another residency training program where Dr. Cordova interviewed sent a request to program director, Dr. Karen Curry. The program requested two (2) items: 1) PGY (Post Graduated Year) -1 Curriculum list of rotations; and 2) Statement with status of resident in good standing and statement of awareness of Dr. Cordova's interest in transitioning from Internal Medicine to Family Medicine. Rather than comply with the request, Dr. Curry replied:

> ACGME requires a summative competency-based performance evaluation on transferring residents and verification of previous educational experiences. Will you need this? If so, can you please send another release for those items?

33.

Although the ACGME requires a program director to obtain a summative competency-based performance evaluation, the program director of LSU Alexandria had not yet requested this information when Dr. Curry volunteered it. Moreover, the ACGME provisions requires that the faculty discuss any evaluation with the resident and further requires that the program must provide **objective** assessments of competence. Instead of following the ACGME requirements, Dr. Curry sent a Milestone Evaluation that Dr. Cordova had never reviewed. More importantly, the Milestone Evaluation was substandard and indicated that Dr. Cordova's skills on each of the areas of core competency was "Conditional on Improvement." (Said evaluation is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "A").

34.

Moreover, the evaluation was not a summation of Dr. Cordova's evaluations as required or requested. Alarmingly, this inappropriate and substandard evaluation was not requested, not objective, and effectively sabotaged Dr. Cordova's chances of transferring to another program.

35.

The medical residency training program also breached its contract with Dr. Cordova by failing to renew his contract although all conditions were met for renewal. Although Dr. Cordova completed his intern year successfully, his contract was not renewed.

7

36.

After the UAB and Alexandria programs received the inappropriate and incomplete documentation, Dr. Cordova knew that his chances of transferring were very slim. Dr. Cordova wrote a letter to Dr. Curry and Dr. Sells requesting that he be reinstated. On June 11, 2018, Dr. Sells advised Dr. Cordova that "you're going to get an intern certificate, but your program director has said that she no longer wants you in her program for obvious reasons." Dr. Cordova met the requirements of progression and should have been allowed to renew his contract. Moreover, the reasons why the program director no longer wanted Dr. Cordova in the program are not obvious to him. It is Dr. Cordova's firm belief that the bias formed by Dr. Curry was motivated by personal reasons rather than related to his competency as a doctor.

37.

Proof of the unprofessional manner in which all of these decisions were made is contained in a May 21, 2018 recorded conversation in which Dr. Sells states to Dr. Cordova that "Life is not a dick measuring contest. It's not about celebrating your size or what you can or cannot do with it...I'm proud of what little I've got." Although Dr. Cordova nervously laughs on the tape recording, he in no way initiated or welcomed this unprofessional and inappropriate conversation. Dr. Sells then goes on to discuss sex, the use of Cialis, and a penis pump in an unprofessional and inappropriate manner. In a separate recorded conversation, Dr. Sells made inappropriate comments that Dr. Cordova may be interested in pursuing a medical career in pharmaceutical sales because it would allow him to travel and be unfaithful to his wife.

38.

The recorded comments of Dr. Sells exemplifies the unprofessional and unfair work environment that Dr. Cordova and others within the program are forced to endure. Even the Director of Graduate Medical Education, Kristi Anderson, admitted that residents are fearful of retaliation. Other witnesses will also confirm the lack of professionalism, favoritism, and disparate treatment that some residents receive.

8

## CAUSES OF ACTION AS TO DEFENDANTS LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, UNIVERSITY HOSPITAL AND CLINICS, KAREN CURRY, M.D., NICOLAS SELLS, M.D. and KRISTI ANDERSON

**Violation of Due Process**

39.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as is fully set-forth herein.

40.

The Fourteenth Amendment to the United States Constitution provides, in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." Similarly, Article I, Sec. 2 of the Louisiana Constitution provides that "No person shall be deprived of life, liberty, or property, except by due process of law." Due process necessitates a hearing where a party can fully and meaningfully contest the allegations being made against him or her that serve as a basis for deprivation of their property interests. *See Bd. Of Regents v. Roth*, 408 U.S. 564, 574-75 (1972).

41.

The Louisiana Supreme Court has concluded that residents possess a due process "property" and/or "liberty" in their positions and potential for future earnings. *See Driscoll v. Stucker*, 04-0589 (La. 01/19/05); 893 So.2d 32, 41-43. When a resident is deprived of due process in these situations, he is entitled to all loss of wages resulting from that denial. *Id.* at 52-54.

42.

The above-actions of the Defendants violated Dr. Cordova's due process rights established in the federal and state constitutions. Indeed, in an analogous case, the Louisiana Supreme Court found that LSUHSC's act of withholding documents despite continued requests, as the Defendants did here with the exhibits to the RFAA, constituted a denial of due process. *Id.* at 48.

**Breach of Contract**

43.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as if fully set-forth herein.

9

44.

"Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation." La. C.C. art. 1759. "An obligor is liable for the damages caused by his failure to perform a conventional obligation." La. C.C. art. 1994. Both pecuniary and nonpecuniary interests may be recovered.

45.

The House Officer Agreement of Appointment contract entered into by Dr. Cordova and Defendants mandated that any action by the Defendants that could "result in dismissal or could significantly threaten a House Officer's intended career development" follow the due process procedures of the HOM. The above-actions of the Defendants breached their contractual duties to Dr. Cordova.

46.

On November 6, 2018, Dr. Cordova, appealed the adverse decision of "LSU" in writing, but said defendants ignored the appeal, in further violation of his rights. (Said appeal is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "B").

## ACTS OF CHRISTOPHER C. JOHNSTON AND GACHASSIN LAW FIRM

47.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as if fully set-forth herein.

48.

On or about February 5, 2018 plaintiff, Cordova, formally retained the services of defendant, Christopher C. Johnston, a partner in the defendant, Gachassin Law Firm for advice and assistance to contest the false allegations contained in the adverse action instituted against Cordova by the aforementioned "medical" defendants, and to ensure that the adverse action did not affect Cordova's ability to complete his residency training. (Said engagement letter is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "C").

10

49.

At no time during the representation by Mr. Johnston, did Johnston reveal that Johnston and the Gachassin Law Firm also represented Lafayette General Medical Center (who is in partnership with LSU/USC), Dr. Nicholas Sells (the chief of internal medicine), and Dr. James Falterman (the academic dean).   Dr. Sells and Dr. Falterman were the top decision makers regarding the adverse action and were potential adverse witnesses against Dr. Cordova in the adverse action proceedings mentioned above.

50.

After defendant Johnston began representing Dr. Cordova in the disciplinary proceedings, Dr. Cordova noticed that Johnston was not very aggressive in his defense against the adverse action.  Also, defendant Johnston encouraged Dr. Cordova not to be aggressive in his approach and to "keep his mouth shut because it would make things worse".  In fact, Johnston's exact words were "don't complain about the food while you are in prison."

51.

When Dr. Cordova questioned Defendant, Johnston about litigating the matter, Johnston revealed for the first time that his firm represented Drs. Sells and Falterman and Lafayette General Hospital. Said conflict was not revealed to Dr. Cordova by Mr. Johnston until July 27, 2018, six months into the representation.

52.

On October 29, 2018, Plaintiff hired new counsel who advised him that his prior counsel may have had a conflict of interest. At that point, Dr. Cordova retained professor Dane Ciolino, who wrote the attached advisory opinion, concluding that defendants, Johnston and Gachassin had violated rules 1.7 and 1.10 in representing Dr. Cordova in a disciplinary matter adverse to LSU/UHC, Lafayette General and members of the UHC administration, who they also represented. (Said opinion of Professor Ciolino is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "D")

11

53.

Upon information and belief, defendants Johnston and Gachassin Law Firm knew of the conflict existing between Dr. Cordova and their other existing clients yet chose to remain silent until after Dr. Cordova had suffered great loss.

## FIRST CAUSE OF ACTION-DISGORGEMENT OF LEGAL FEES FOR CONFLICT OF INTEREST

54.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as if fully set-forth herein.

55.

Due to the ethical violations enumerated above, all legal fees paid in the underlying matter to defendants, Johnston and Gachassin, should be disgorged and defendants should be ordered to return same.  Further all legal fees incurred by Plaintiff in an attempt to mitigate his damages are recoverable herein.

## SECOND CAUSE OF ACTION-LEGAL MALPRACTICE

56.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above as if fully set-forth herein.

57.

Defendants, Johnston and Gachassin, breached duties owed to Dr. Cordova as his attorneys including, but not limited to communication, honesty and corresponding and failed to exercise the proper standard of care as outlined above in violation of the Louisiana Rules of Professional Conduct.  In fact, Louisiana Courts consider the Rules of Professional conduct to have the full force and effect of substantive law. See *Schlesinger v. Herzog*, 672 So. 2d 701, 707 (La. Ct. App. 4th Cir. 1996); *Dazet Mortgage Solution LLC v. Faia*, 116 So. 3d 711, 716 (La. App. Ct. 5th Cir. 2013).

12

58.

As a result of the breaches of Defendants, Johnston and Gachassin, Dr. Cordova has suffered damages, including but not limited to the loss of a year of residency, loss of income, loss of standing in the community, damage to reputation, all additional attorney fees, and all other equitable relief to remedy the malpractice of said defendants.

59.

Said defendants' breaches and negligence were the proximate cause of Dr. Cordova's damages.

60.

All defendants named herein are jointly and solidarily liable and upon information and belief, they worked together in violation of duties and responsibilities owed to Plaintiff herein to cause him loss.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, J. Cory Cordova, M.D., prays that:

1. Certified copies of this Petition be issued and served according to law on the Defendants, Louisiana State University Health Science Center, University Hospital and Clinics, Lafayette General Hospital, Dr. Karen Curry, Dr. Nicolas Sells, Kristi Anderson, Christopher C. Johnston and the Gachassin Law Firm;

2. After legal delays and proceedings had, there be judgment against defendants, Louisiana State University Health Science Center, University Hospital and Clinics, Lafayette General Hospital, Dr. Karen Curry, Dr. Nicolas Sells, Kristi Anderson, Christopher C. Johnston and the Gachassin Law Firm and in favor of Plaintiff, Dr. J. Cory Cordova in such amounts as are just and reasonable;

3. Removal of inappropriate information from Dr. J. Cory Cordova's academic records;

4. Legal interest from date of judicial demand on all amounts awarded, and for all costs, expenses of these proceedings, and attorney's fees be granted;

13

5.  All necessary orders and decrees as may be required or proper in the premises and for full,

    general, and equitable relief; and

6.  For trial by jury.

RESPECTFULLY SUBMITTED:

THE BEZOU LAW FIRM

JACQUES F. BEZOU, SR. (3037)
JACQUES F. BEZOU, JR. (33728)
MATTHEW L. DEVEREAUX (32125)
ERICA A. HYLA (34603)
THE BEZOU LAW FIRM
534 E. Boston Street
Covington, Louisiana 70433
Telephone:  (985) 892-2111
Facsimile:  (985) 892-1413
Jb2@bezou.com

AND

CHRISTINE M. MIRE (29352)
Attorney at Law
2480 Youngsville Hwy., Suite C
Youngsville, LA 70592
Telephone: (337) 573-7254
Facsimile: (337) 205-8699
cmmire@gmail.com
*Attorneys for J. Cory Cordova, M.D*

**PLEASE SERVE:**

Louisiana State University Health Science Center, through its registered agent:  Matthew D. Altier,
2000 Tulane Avenue, 4th Floor, New Orleans, LA 70112

University Hospital and Clinics, through its registered agent: Gordon E. Rountree, Jr., 920 West
Pinhook, Lafayette, LA 70503

Lafayette General Hospital, through its registered agent:  Gordon E. Rountree, Jr., 920 West
Pinhook, Lafayette, LA 70503

Dr. Karen Curry, to be served personally at University Hospital and Clinics 2390 West Congress
Street, Lafayette, LA 70506, Department of Internal Medicine between the hours of 7:00AM-
5:00PM

Dr. Nicolas Sells, to be served personally at University Hospital and Clinics 2390 West Congress
Street, Lafayette, LA 70506, Department of Internal Medicine between the hours of 7:00AM-
5:00PM

FILED THIS 29
DAY OF ___MAR___, 20_19_
Katty Melancon
Deputy Clerk of Court

14

Kristi Anderson, to be served personally at University Hospital and Clinics 2390 West Congress Street, Lafayette, LA 70506, Department of Graduate Medical Education between the hours of 7:00AM-5:00PM

Christopher Johnston, to be served personally at Johnston Law Firm, LLC located at 7830 Sage Hill Road, Saint Francisville, LA 70775

Gachassin Law Firm, through its registered agent: Nicholas Gachassin, III, 200 Corporate Blvd., Suite 103, Lafayette, LA 70508

15



15th JUDICIAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE

STATE OF LOUISIANA

DOCKET NO.                                                    DIVISION

   2019 2019      J. CORY CORDOVA, M.D.                          D

VERSUS

LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER; UNIVERSITY
HOSPITAL AND CLINICS; KAREN CURRY, M.D., NICHOLAS SELLS, M.D.,
CHRISTOPHER JOHNSTON, and THE GACHASSIN LAW FIRM

FILED:_____    DEPUTY CLERK:_____

### VERIFICATION

BEFORE ME, the undersigned authority personally came and appeared Plaintiff,

**J. CORY CORDOVA, M.D.**

who after being duly sworn, did depose and state that the foregoing Petition for Damages in the

above captioned matter is true and correct to the best of his knowledge and belief.

_____
J. CORY CORDOVA, M.D.

SWORN TO AND SUBSCRIBED before me this 29ᵀᴴ day of MARCH        2019.

_____
NOTARY PUBLIC

CHRISTINE M. MIRE (BAR ROLL # 29352)
MY COMMISSION EXPIRES @ DEATH

FILED THIS 29
DAY OF MAY, 2019
Katy Melancon
Deputy Clerk of Court

16

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 17



54852330

Page: 1 of 7

## Resident Milestone Evaluation: Mid-Year 2017-2018

Program:   University Hospitals and Clinics/Louisiana State University (Lafayette) Program   1402111144 - Internal medicine

Resident:   Joseph Cordova          Date Evaluation Completed:  November 30, 2017  (Mid-Year)          Resident Year in Program:  1

This form documents the most recent resident attainment of the milestones within each of the competencies as formally observed. Evaluation of the resident's developmental progression is based on numerous formative evaluations and the overall judgment of the resident's performance by the Clinical Competency Committee.

| Competency | SubCompetency |
|---|---|
| Developmental Milestone Narrative | |

**1  Patient Care** — Gathers and synthesizes essential and accurate information to define each patient's clinical problem(s) (PC1)

Dr. Cordova is not yet ready for unsupervised practice.

Inconsistently able to acquire accurate historical information in an organized fashion.

Does not perform an appropriately thorough physical exam or misses key physical exam findings.

Does not seek or is overly reliant on secondary data.

Inconsistently recognizes patients' central clinical problem or develops limited differential diagnoses.

**2  Patient Care** — Develops and achieves comprehensive management plan for each patient (PC2)

Dr. Cordova is not yet ready for unsupervised practice.

Inconsistently develops an appropriate care plan.

Inconsistently seeks additional guidance when needed.

**3  Patient Care** — Manages patients with progressive responsibility and independence (PC3)

Dr. Cordova is not yet ready for unsupervised practice.

Requires direct supervision to ensure patient safety and quality care.

Inconsistently manages simple ambulatory complaints or common chronic diseases.

Inconsistently provides preventive care in the ambulatory setting.

Inconsistently manages patients with straightforward diagnoses in the inpatient setting.

Unable to manage complex inpatients or patients requiring intensive care.

**4  Patient Care** — Skill in performing procedures (PC4)

Dr. Cordova is not yet ready for unsupervised practice.

Possesses insufficient technical skill for safe completion of common procedures.

**5  Patient Care** — Requests and provides consultative care (PC5)

Dr. Cordova is not yet ready for unsupervised practice.

Inconsistently manages patients as a consultant to other physicians/health care teams.

Inconsistently applies risk assessment principles to patients while acting as a consultant.

Inconsistently formulates a clinical question for a consultant to address.

**6  Medical Knowledge** — Clinical knowledge (MK1)

Dr. Cordova is not yet ready for unsupervised practice.

Possesses insufficient scientific, socioeconomic and behavioral knowledge required to provide care for common medical conditions and basic preventive care.

FILED THIS ___ 29

DAY OF __Nov__, 20 19

Kitty Melancon
Deputy Clerk of Court

© 2018 Accreditation Council for Graduate Medical Education (ACGME)

EXHIBIT
A

## Resident Milestone Evaluation: Mid-Year 2017-2018

Program:  University Hospitals and Clinics/Louisiana State University (Lafayette) Program  1402111144 - Internal medicine
Resident:  Joseph Cordova          Date Evaluation Completed:  November 30, 2017  (Mid-Year)     Resident Year in Program: 1

| Competency | SubCompetency |
|---|---|
| Developmental Milestone Narrative | |

**7  Medical Knowledge** — Knowledge of diagnostic testing and procedures (MK2)

Dr. Cordova is not yet ready for unsupervised practice.

Inconsistently interprets basic diagnostic tests accurately.

Does not understand the concepts of pre-test probability and test performance characteristics.

Minimally understands the rationale and risks associated with common procedures.

**8  Systems-Based Practice** — Works effectively within an interprofessional team (e.g. peers, consultants, nursing, ancillary professionals and other support personnel) (SBP1)

Dr. Cordova has critical deficiencies.

Refuses to recognize the contributions of other interprofessional team members.

Frustrates team members with inefficiency and errors.

**9  Systems-Based Practice** — Recognizes system error and advocates for system improvement (SBP2)

Dr. Cordova is not yet ready for unsupervised practice.

Ignores a risk for error within the system that may impact the care of a patient.

Ignores feedback and is unwilling to change behavior in order to reduce the risk for error.

In addition, Dr. Cordova has achieved certain, but not all, elements of the competency level listed below:

Does not recognize the potential for system error.

Makes decisions that could lead to error which are otherwise corrected by the system or supervision.

Resistant to feedback about decisions that may lead to error or otherwise cause harm.

**10  Systems-Based Practice** — Identifies forces that impact the cost of health care, and advocates for, and practices cost-effective care (SBP3)

Dr. Cordova is not yet ready for unsupervised practice.

Lacks awareness of external factors (e.g. socioeconomic, cultural, literacy, insurance status) that impact the cost of health care and the role that external stakeholders (e.g. providers, suppliers, financers, purchasers) have on the cost of care.

Does not consider limited health care resources when ordering diagnostic or therapeutic interventions.

**11  Systems-Based Practice** — Transitions patients effectively within and across health delivery systems (SBP4)

Dr. Cordova is not yet ready for unsupervised practice.

Inconsistently utilizes available resources to coordinate and ensure safe and effective patient care within and across delivery systems.

Written and verbal care plans during times of transition are incomplete or absent.

Inefficient transitions of care lead to unnecessary expense or risk to a patient (e.g. duplication of tests readmission).

In addition, Dr. Cordova has achieved certain, but not all, elements of the competency level listed below:

Recognizes the importance of communication during times of transition.

Communication with future caregivers is present but with lapses in pertinent or timely information.

© 2018 Accreditation Council for Graduate Medical Education (ACGME)

## Resident Milestone Evaluation: Mid-Year 2017-2018

Program:  University Hospitals and Clinics/Louisiana State University (Lafayette) Program  1402111144 - Internal medicine

Resident:  Joseph Cordova          Date Evaluation Completed: November 30, 2017  (Mid-Year)          Resident Year in Program: 1

| Competency | SubCompetency |
|---|---|
| Developmental Milestone Narrative | |

| | |
|---|---|
| **12  Practice-Based Learning and Improvement** | **Monitors practice with a goal for improvement (PBLI1)** |

Dr. Cordova is not yet ready for unsupervised practice.

Unwilling to self-reflect upon one's practice or performance.

Not concerned with opportunities for learning and self-improvement.

In addition, Dr. Cordova has achieved certain, but not all, elements of the competency level listed below:

Unable to self-reflect upon one's practice or performance.

Misses opportunities for learning and self-improvement.

| | |
|---|---|
| **13  Practice-Based Learning and Improvement** | **Learns and improves via performance audit (PBLI2)** |

Dr. Cordova is not yet ready for unsupervised practice.

Disregards own clinical performance data.

Demonstrates no inclination to participate in or even consider the results of quality improvement efforts.

In addition, Dr. Cordova has achieved certain, but not all, elements of the competency level listed below:

Limited awareness of or desire to analyze own clinical performance data.

Nominally participates in a quality improvement projects.

Not familiar with the principles, techniques or importance of quality improvement.

| | |
|---|---|
| **14  Practice-Based Learning and Improvement** | **Learns and improves via feedback (PBLI3)** |

Dr. Cordova is not yet ready for unsupervised practice.

Rarely seeks feedback.

Responds to unsolicited feedback in a defensive fashion.

Temporarily or superficially adjusts performance based on feedback.

| | |
|---|---|
| **15  Practice-Based Learning and Improvement** | **Learns and improves at the point of care (PBLI4)** |

Dr. Cordova is not yet ready for unsupervised practice.

Rarely "slows down" to reconsider an approach to a problem, ask for help, or seek new information.

Can translate medical information needs into well-formed clinical questions with assistance.

Unfamiliar with strengths and weaknesses of the medical literature.

Has limited awareness of or ability to use information technology.

Accepts the findings of clinical research studies without critical appraisal.

© 2018 Accreditation Council for Graduate Medical Education (ACGME)

## *Resident Milestone Evaluation: Mid-Year 2017-2018*

Program:   University Hospitals and Clinics/Louisiana State University (Lafayette) Program  1402111144 - Internal medicine

Resident:   Joseph Cordova                    Date Evaluation Completed:  November 30, 2017  (Mid-Year)        Resident Year in Program:  1

| Competency | SubCompetency |
|---|---|
| **Developmental Milestone Narrative** | |

| 16  Professionalism | Has professional and respectful interactions with patients, caregivers and members of the interprofessional team (e.g. peers, consultants, nursing, ancillary professionals and support personnel) (PROF1) |
|---|---|

**Dr. Cordova is not yet ready for unsupervised practice.**

Lacks empathy and compassion for patients and caregivers.

Disrespectful in interactions with patients, caregivers and members of the interprofessional team.

Sacrifices patient needs in favor of own self-interest.

Blatantly disregards respect for patient privacy and autonomy.

In addition, Dr. Cordova has achieved certain, but not all, elements of the competency level listed below:

Inconsistently demonstrates empathy, compassion and respect for patients and caregivers.

Inconsistently demonstrates responsiveness to patients' and caregivers' needs in an appropriate fashion.

Inconsistently considers patient privacy and autonomy.

| 17  Professionalism | Accepts responsibility and follows through on tasks (PROF2) |
|---|---|

**Dr. Cordova has critical deficiencies.**

Is consistently unreliable in completing patient care responsibilities or assigned administrative tasks.

Shuns responsibilities expected of a physician professional.

| 18  Professionalism | Responds to each patient's unique characteristics and needs (PROF3) |
|---|---|

**Dr. Cordova is not yet ready for unsupervised practice.**

Is sensitive to and has basic awareness of differences related to culture, ethnicity, gender, race, age and religion in the patient/caregiver encounter.

Requires assistance to modify care plan to account for a patient's unique characteristics and needs.

| 19  Professionalism | Exhibits integrity and ethical behavior in professional conduct (PROF4) |
|---|---|

**Dr. Cordova is not yet ready for unsupervised practice.**

Honest in clinical interactions, documentation, research, and scholarly activity.

Requires oversight for professional actions.

Has a basic understanding of ethical principles, formal policies and procedures, and does not intentionally disregard them.

| 20  Interpersonal and Communication Skills | Communicates effectively with patients and caregivers (ICS1) |
|---|---|

**Dr. Cordova is not yet ready for unsupervised practice.**

Engages patients in discussions of care plans and respects patient preferences when offered by the patient, but does not actively solicit preferences.

Attempts to develop therapeutic relationships with patients and caregivers but is often unsuccessful.

Defers difficult or ambiguous conversations to others.

© 2016 Accreditation Council for Graduate Medical Education (ACGME)

### Resident Milestone Evaluation: Mid-Year 2017-2018

Program:  University Hospitals and Clinics/Louisiana State University (Lafayette) Program   1402111144 - Internal medicine

Resident:  Joseph Cordova                    Date Evaluation Completed:  November 30, 2017  (Mid-Year)        Resident Year in Program: 1

| Competency | SubCompetency |
|---|---|
| **Developmental Milestone Narrative** | |
| 21  Interpersonal and Communication Skills | **Communicates effectively in interprofessional teams (e.g. peers, consultants, nursing, ancillary professionals and other support personnel) (ICS2)** |
| | Dr. Cordova is not yet ready for unsupervised practice. |
| | Uses unidirectional communication that fails to utilize the wisdom of the team. |
| | Resists offers of collaborative input. |
| 22  Interpersonal and Communication Skills | **Appropriate utilization and completion of health records (ICS3)** |
| | Dr. Cordova is not yet ready for unsupervised practice. |
| | Health records are disorganized and inaccurate. |
| | In addition, Dr. Cordova has achieved certain, but not all, elements of the competency level listed below: |
| | Health records are organized and accurate but are superficial and miss key data or fail to communicate clinical reasoning. |

© 2018 Accreditation Council for Graduate Medical Education (ACGME)

## _Resident Milestone Evaluation: Mid-Year 2017-2018_

Program:   University Hospitals and Clinics/Louisiana State University (Lafayette) Program   1402111144 - Internal medicine

Resident:   Joseph Cordova                     Date Evaluation Completed:  November 30, 2017  (Mid-Year)      Resident Year in Program:  1

| Competency | SubCompetency |
|---|---|
| Developmental Milestone Narrative | |
| 23  Overall | The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care. |
| Patient Care | Conditional on Improvement |
| Medical Knowledge | Conditional on Improvement |
| Systems-Based Practice | Conditional on Improvement |
| Practice-Based Learning and Improvement | Conditional on Improvement |
| Professionalism | Conditional on Improvement |
| Interpersonal and Communication Skills | Conditional on Improvement |
| 24  Overall Clinical Competence | This rating represents the assessment of the resident's development of overall clinical competence during this year of training: |

- ☐ **Superior:** Far exceeds the expected level of development for this year of training.
- ☐ **Satisfactory:** Always meets and occasionally exceeds the expected level of development for this year of training.
- ☑ **Conditional on Improvement:** Meets some developmental milestones but occasionally falls short of the expected level of development for for this year of training. An improvement plan is in place to facilitate achievement of competence appropriate to the level of training.
- ☐ **Unsatisfactory:** Consistently falls short of the expected level of development for this year of training.

© 2018 Accreditation Council for Graduate Medical Education (ACGME)

## _Resident Milestone Evaluation: Mid-Year 2017-2018_

Program:  University Hospitals and Clinics/Louisiana State University (Lafayette) Program  1402111144 - Internal medicine

Resident:  Joseph Cordova              Date Evaluation Completed: November 30, 2017  (Mid-Year)      Resident Year in Program: 1

COMMENTS:

_____

_____

_____

_____

_____

_____

_____          _____
Program Director Signature                    Resident Signature

Disclaimer: For Program Use Only.

The Milestones are designed only for use in evaluation of resident physicians in the context of their participation in ACGME accredited residency or fellowship programs. The Milestones provide a framework for the assesment of the development of the resident physician in key dimensions of the elements of physician competency in a specialty or subspecialty. They neither represent the entirety of the dimensions of the six domains of physician competency nor are they designed to be relevant in any other context.

© 2018 Accreditation Council for Graduate Medical Education (ACGME)

DAY OF_____ may , 20 4
Katy Melancon
Deputy Clerk of Court

# CHRISTINE M. MIRE
### ATTORNEY AT LAW

FAMILY LAW & TRIAL PRACTICE

November 6, 2018

*VIA EMAIL & U.S. MAIL*
KATHERINE MUSLOW
General Counsel
LSU Health Systems, New Orleans
433 Bolivar Street
New Orleans, Louisiana 70112

DR. STEVE NELSON
Dean, LSUHSC School of Medicine
2020 Gravier Street, 5th Floor
New Orleans, LA 70112

Re:   *Dr. J. Cory Cordova, Request for Adverse Action Appeal*

Ms. Muslow and Dr. Nelson,

I have been retained to represent Dr. Cory Cordova in a consultant capacity to review and appeal the administrative disciplinary action that was instituted and disseminated to at least one (1) other medical residency training program. Therefore, please allow this correspondence to serve as a Notice of Appeal regarding the procedural defects in the disciplinary action instituted against Dr. Cordova. This correspondence also notes other violations of LSU School of Medicine's policies and procedures that occurred while Dr. Cordova was a first-year resident at LSU School of Medicine, University Hospital and Clinics in Lafayette, Louisiana.

On November 10, 2017, Dr. Cordova was notified by Dr. Karen Curry that the Clinical Competency Committee had carefully reviewed his resident performance and recommended that he be placed on probation. *See Exhibit 1.* Dr. Cordova met with the Department Chief, Dr. Nicholas Sells, who confirmed that probation was warranted. The probationary period was from November 10, 2017 until February 28, 2018.

On February 1, 2018, Dr. Cordova was informed by Dr. Sells that Dr. Curry had filed a Request for Adverse Action which could result in nonrenewal of his House Officer contract and/or immediate termination. *See Exhibit 2.* On February 8, 2018, Dr. Cordova formerly objected to the Request for Adverse Action. *See Exhibit 3.* Dr. Cordova also reserved his right to supplement his response once the exhibits referenced in the Request for Adverse Action were provided to him. To date, Dr. Cordova has not received the exhibits that are referenced in the Request for Adverse Action despite numerous requests.

On June 30, 2018, Dr. Cordova completed his PGY-1 year in the department of Internal Medicine. Due to the adverse action contained in his academic file, the failure of faculty members to respect Dr. Cordova's privacy in this matter, and the difficulty Dr. Cordova has experienced in completing his residency training, this appeal and the

FILED THIS _____
DAY OF _____, 20____

_____
Deputy Clerk of Court

2480 YOUNGSVILLE HIGHWAY, SUITE C • YOUNGSVILLE, LOUISIANA 70592
TEL: (337) 573-7254 • FAX: (337) 205-8699 • cmm@mirelawfirm.com

CHRISTINE M. MIRE
ATTORNEY AT LAW

complaints contained herein are necessary. Accordingly, Dr. Cordova raises several due process violations regarding the disciplinary action taken against him for the following reasons.

I.      Failure to Follow the House Officer Manual Provisions for House Officer Preliminary Action, Disciplinary Action, and Grievance Procedures.

    A.  Failure to Consult with the DIO or Academic Dean prior to initiation of disciplinary action.

Pursuant to Provision VI of the House Officer Manual, consultation with the DIO or Academic Dean is required prior to initiation of all actions. In this case, the Academic Dean, Dr. James Falterman, was not consulted prior to the initiation of action against Dr. Cordova. Dr. Cordova did not raise this issue sooner for two reasons. First, on November 10, 2017, when Dr. Cordova was placed on probation, Dr. Karen Curry, Department Head, advised him, in a recorded conversation, that she had turned in several written complaints and spoken to "Jimmy" or Dr. Falterman who approved the plan.

Second, Dr. Cordova was dissuaded from speaking to Dr. Falterman by Dr. Nicholas Sells, Department Chief. This dissuasion can be confirmed from a June 11, 2018 recorded conversation wherein Dr. Sells states: "If you want to talk to Dr. Falterman, I encourage that too, however, I can tell you that he's going to say that Dr. Cordova came to me, what are the details and I will show him the details…" The House Officer Manual makes clear that the "details" should have been discussed with Dr. Falterman prior to initiation of any action.

Despite the misrepresentation and dissuasion, in early August of 2018, Dr. Cordova did ultimately meet with Dr. Falterman who confirmed that he was not consulted prior to discipline and that nonrenewal or immediate termination is not something he ordinarily consents to when there are no serious grievances. He further indicated that he wished Dr. Cordova would have come to him sooner.

    B.  Failure to issue a warning or reprimand prior to imposing probation.

Pursuant to Provision VI(A) preliminary academic intervention should have been imposed prior to the imposition of probation. Instead of a warning or reprimand, Dr. Cordova was immediately placed on probation. In the November 10, 2017 meeting Dr. Cordova asked Dr. Curry if anything could be done to prevent probation. Dr. Curry ignored the question and placed Dr. Cordova on probation without offering Preliminary Academic Intervention in violation of the House Officer Manual.

    C.  Failure to consult with the Clinical Competency Committee prior to the imposition of probation.

On November 10, 2017, Dr. Curry stated, in a recorded conversation, that she had submitted written complaints to the Clinical Competency Committee and they

recommended probation. However, this statement is inaccurate based on the statements made by several members of the Clinical Competency Committee. The Clinical Competency Committee did not issue a recommendation until the following month or on or about December 15, 2017 when they issued a remediation plan to Dr. Cordova via email. The Clinical Competency Committee's remediation plan differed from the remediation plan imposed by Dr. Curry. *See Exhibit 4.*

Moreover, during the November 10, 2017 meeting, Dr. Lonn Guidry, a member of the Clinical Competency Committee, was present when Dr. Curry notified Dr. Cordova that he had been placed on probation. After Dr. Curry notifies Dr. Cordova that he was being placed on probation and the requirements of remediation, Dr. Guidry can be heard stating, "So the plan changed?" Dr. Curry responds that "Jimmy" presumably Dr. Falterman said the previous plan was "too much." This statement was later determined to be a misrepresentation in that Dr. Falterman later confirmed to Dr. Cordova that he was not consulted prior to the imposition of discipline. Dr. Guidry also asked if the probation would be a part of Dr. Cordova's academic record and Dr. Curry told him that it would not. However, the letter regarding probation was sent to another residency training program.

### D. Failure to follow the House Officer Manual procedure for Adverse Action.

On November 10, 2017, Dr. Cordova was advised that if he did not comply with the terms of remediation, he was at risk for nonrenewal. The probationary period was until February 28, 2018. However, on February 1, 2018, and despite the fact that the probationary and remediation period had not yet expired, Dr. Cordova was notified by Dr. Nicholas Sells of Dr. Curry's Request for Adverse Action and the intent to initiate proceedings that could result in immediate termination or non-renewal of his contract. Dr. Sells indicated that based on the allegations contained in the Request for Adverse Action, it was his opinion that the allegations had merit. However, Dr. Sells later admitted (in a recorded conversation) that Dr. Curry was not objective because she formed opinions about Dr. Cordova early on. *(Recording of 5/21/18)*. This admission by Dr. Sells was also obvious to other members of the faculty and this lack of objectivity violates ACGME requirements found in Section V(A)(2)(b)(1) and due process requirements found in Section II(A)(4)(h) and Section II(A)(4)(l).

The January 30, 2018 Request for Adverse Action written by Dr. Karen Curry references Clinical Competency Committee meetings that occurred on January 8, 2018 and January 10, 2018. *See Exhibit 2.* However, Dr. Curry fails to mention that the Clinical Competency Committee did not recommend termination and/or nonrenewal of Dr. Cordova's contract as required by the House Officer Manual and the ACGME. Moreover, on January 8, 2018—the same day Dr. Curry had a meeting—Dr. Cordova recorded a meeting he had with two (2) members of the Clinical Competency Committee (Dr. Lonn Guidry and Dr. Farha Khan) wherein the committee members agreed that Dr. Cordova was remediating properly and following the remediation plan to their satisfaction.

Also, on January 30, 2018, the very same day that the Request for Adverse Action was initiated, Dr. Cordova met with Dr. Elizabeth Borerro, another member of the Clinical Competency Committee. Dr. Borerro advised that Dr. Cordova's performance was "way improved." Dr. Borerro does not mention any recommendation that Dr. Cordova's contract would not be renewed. In fact, Dr. Borerro was surprised by the decision not to renew Dr. Cordova's contract because his alleged infractions were not serious and no patient was harmed.

Failure of the program director to exercise appropriate objectivity and/or to get a recommendation of the Clinical Competency Committee violates the ACGME requirements governing same. *See ACGME Program Requirements, Section V(A)(1) et. seq.* Additionally, Dr. Curry's Request for Adverse Action failed to follow the required format outlined in Provision VI(B)(4) of the House Officer Manual for two (2) mutually exclusive reasons. First, the Request references Exhibits that Dr. Cordova was not provided. Second, Dr. Curry does not include a brief statement of testimony expected to be given by each witness. Through Dr. Cordova and the undersigned's investigation into the validity of the allegations, the witnesses listed on the Request for Adverse Action will not testify consistently with the allegations. For instance, see the attached statements and letters of support from Dr. Julio Rodriguez-Quinones, Dr. Adam P. Giddings, Dr. Ali Sadeghi, Dr. Matthew Whittington, Dr. Steve Rees, and Carmen Morgan. *See Exhibit 5.* The attached letters of support and Dr. Whittington's clarification of what actually happened suggest that the allegations contained in the Recommendation of Probation and Request for Adverse Action are patently false or grossly exaggerated.

Finally, on February 8, 2018, or five (5) working days after his meeting with Dr. Sells to discuss the Request for Adverse Action, Dr. Cordova formally challenged the Request for Adverse Action in writing and noted that he was unable to completely address all of the allegations because he was not provided the exhibits referenced. *See Exhibit 3.* Dr. Cordova reserved his right to supplement his response once the exhibits were received. To date, Dr. Cordova has not received the exhibits despite repeated requests. Moreover and despite compliance with the House Officer Manual, the academic dean did not invoke the ad hoc committee as required.

The Request for Adverse Action failed to meet the due process requirements for four (4) mutually exclusive reasons. First, the Request for Adverse Action was initiated by a member of the faculty (Dr. Karen Curry) that the department head (Dr. Nicholas Sells) admitted lacked objectivity. Second, the Request for Adverse Action did not provide the referenced documentary evidence; therefore, Dr. Cordova did not have the required or sufficient notice of the allegations and charges against him. Third, the Request for Adverse Action failed to give a brief statement of the nature of testimony to be given by each witness. Fourth, the Academic Dean was not consulted prior to initiation of adverse action and did not initiate proceedings after Dr. Cordova formally objected. These deficiencies deprived Dr. Cordova of his due process rights and render the proceedings null and void.

II.      **Failure to Comply with the Agreement to Keep All Disciplinary Action
         Confidential.**

On February 19, 2018, Dr. Cordova decided that due to the lack of objectivity and the toxic environment, it was best to accept contract non-renewal and pursue his education at another medical school. Dr. Cordova was clear in his communication that he was accepting contract renewal with the understanding that his privacy regarding the Request for Adverse Action would be respected. Dr. Sells agreed to notify faculty of Dr. Cordova's request for privacy. *See Exhibit 6.* On March 7, 2018, Dr. Cordova acknowledged his intent of non-renewal of his contract in writing. *See Exhibit 7.* There was never an acknowledgment or consent to discipline by Dr. Cordova. Nevertheless, on March 14, 2018, the Request for Adverse Action was sent to the University of Alabama Birmingham, Selma Family Medicine Program. When Dr. Cordova inquired into his privacy rights, he was told by Director of Graduate Medical Education, Kristi Anderson, that the documents had to be produced and required Dr. Cordova to sign a release to that information. Not surprisingly, Dr. Cordova has not been accepted into the UAB residency training program.

On April 3, 2018, the LSU Family Medicine Residency Program in Alexandria, LA, another residency training program that was interested in admitting Dr. Cordova sent a request to program director, Dr. Karen Curry. The program requested two (2) items from Dr. Curry: 1.) PGY-1 Curriculum list of rotations; and 2.) Statement with status of resident in good standing and statement of awareness of Dr. Cordova's interest in transitioning from Internal Medicine to Family Medicine. *See Exhibit 8, the attached email from Katheryn Burnaman.* Rather than comply with the request, Dr. Curry replied:

> ACGME requires a summative competency-based performance evaluation
> on transferring residents and verification of previous educational
> experiences. Will you need this? If so, can you please send another release
> for those items? *See Exhibit 9.*

Although the ACGME does require that before accepting a transfer resident the program director must obtain a summative competency-based performance evaluation, the program director of Alexandria did not request this information. Moreover, the ACGME provisions requires that the faculty discuss any evaluation with the resident and further requires that the program must provide **objective** assessments of competence. *See ACGME Section V(A)(2) et. seq.* Instead of following the ACGME requirements, Dr. Curry sent a Milestone Evaluation that Dr. Cordova had never reviewed. More importantly, the Milestone Evaluation was substandard and indicated that Dr. Cordova's skills on each of the areas of core competency was "Conditional on Improvement." *See Exhibit 10.*

The evaluation was not requested by the program director and it is not a summation of Dr. Cordova's evaluations as required. In fact, the evaluation was contrary to the reviews Dr. Cordova received throughout his residency. It is also questionable that the Clinical Competency Committee prepared the Milestones Evaluations as required by ACGME guideline V(A)(1)(b)(1)(b). Even if the Clinical Competency Committee did prepare this Milestone Evaluation (which Dr. Cordova sincerely doubts) the Clinical Competency

Committee did not review this evaluation with Dr. Cordova as required by Provision (V)(A)(1)(b)(1)(a). The evaluation submitted to the Alexandria and UAB residency training programs also violates the House Officer Manual Provision IX.A.3., which requires that the evaluation must be reviewed with the House Officer and signed by the House Officer and the Program Director. Moreover, the evaluation did not include Milestones assessment, case logs data, House Officer Evaluations, and a statement regarding the House Officer's ability to practice with or without supervision. Alarmingly, this inappropriate and substandard evaluation was not requested, not objective, and effectively sabotaged Dr. Cordova's chances of transferring to another program.

### III.    Failure to Follow the House Officer Manual and ACGME Guidelines for Contract Renewals.

Pursuant to Section IV(H) of the House Officer Manual:

> All written agreements of appointment/contracts are for one year and each House Officer must be reappointed for each subsequent year of training, contingent upon satisfactory completion of the current post-graduate year and assurance that all requirements are met for progression. Contract renewal is subject to mutual written consent of the Department Head and the House Officer. A contract renewal must be made in a timely manner in accordance with ACGME requirements as outlined in the School of Medicine Policy and Procedure Manual and with dates set by the GME office.

Although Dr. Cordova completed his intern year successfully, his contract was not renewed. After the UAB and Alexandria programs received the inappropriate and incomplete documentation, Dr. Cordova knew that his chances of transferring were very slim. Dr. Cordova wrote a letter to Dr. Curry and Dr. Sells requesting that he be reinstated. On June 11, 2018, in a recorded conversation, Dr. Sells advised Dr. Cordova that "you're going to get an intern certificate, but your program director has said that she no longer wants you in her program for obvious reasons." Dr. Cordova met the requirements of progression and should have been allowed to renew his contract. Moreover, the reasons why the program director no longer wanted Dr. Cordova in the program are not obvious to him. It is Dr. Cordova's firm belief that the bias formed by Dr. Curry was motivated by personal reasons rather than his competency as a doctor.

### IV.    Violations of Equal Opportunity Employment Policy

The House Officer Manual Provision IV(F) indicates that LSU Health Sciences Center is committed to providing equal opportunity to all members of the LSU Health Sciences Center Community. During the course of interviewing various witnesses regarding Dr. Cordova's alleged transgressions, several witnesses indicated that Dr. Cordova was not treated in the same manner as other residents. For instance, see the statement of Carmen Morgan who stated that she personally observed more egregious behavior than Dr. Cordova was accused of and other residents were not disciplined.

Several other witnesses who wished to remain confidential will likely speak to Human Resources or any other appropriate authority provided they will be shielded from retaliation. These witnesses described a hostile and toxic work environment in which members of upper management pressured other individuals to file complaints against residents they did not like that were unwarranted. The witnesses also described an environment riddled with favoritism, unprofessional conduct, and gossip. This work environment was confirmed by Dr. Sells in a recorded conversation that occurred on May 21, 2018. The witnesses that are relevant to this matter also confirmed that the treatment of Dr. Cordova was based on personal bias rather than his competency as a doctor. Dr. Cordova respectfully requests an investigation into this matter pursuant to the House Officer Manual Provisions IV(C) and IV(F).

### V.     Violations of the Sexual Harassment Policy

Section IV(C) of the House Officer Manual indicates that the School of Medicine is committed to providing a professional work environment that maintains equality, dignity, and respect for all members of its community. In keeping with this commitment, the School of Medicine prohibits discriminatory practices, including sexual harassment. Sexual harassment is defined in pertinent part as unwelcome propositions regarding one's sexuality, sexual experience, or attention to an individual's body. It also includes unwanted sexual innuendo, suggestions, or jokes.

On March 9, 2018, Dr. Nicholas Sells, Section Chief, in a recorded conversation, can be heard making inappropriate references to "orgies." On May 21, 2018, and in violation of the House Officer Manual provisions regarding Sexual Harassment, Dr. Sells (in a recorded conversation) can be heard inappropriately commenting on the fact that Dr. Cordova shaved his arms and legs. Dr. Sells also made inappropriate comments that Dr. Cordova may be interested in pursuing a medical career in pharmaceutical sales because it would allow him to travel and be unfaithful to his wife.

Also on May 21, 2018, in a recorded conversation, Dr. Sells, can be heard stating to Dr. Cordova that "Life is not a dick measuring contest. It's not about celebrating your size or what you can or cannot do with it...I'm proud of what little I've got." Although Dr. Cordova nervously laughs on the tape recording, he in no way initiated or welcomed this unprofessional and inappropriate conversation. Dr. Sells then goes on to discuss sex, the use of Cialis, and a penis pump in an unprofessional and inappropriate manner.

On this same recording, Dr. Cordova can be heard apologizing for disappointing Dr. Sells and further asked if there was something Dr. Sells liked at the time he interviewed with the program. Dr. Sells responded, "There was and then you came here and showed your ass...such that you got drug into my office. I said, let me be sure he understands what the expectations are, that was my defense. Then when I tried to make those expectations known, crazy Cory comes out."

The recorded comments of Dr. Sells exemplifies the unprofessional and hostile work environment that Dr. Cordova and others within the program are forced to endure. Even

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 31

**CHRISTINE M. MIRE**
ATTORNEY AT LAW                                                          PAGE 8 OF 8

the Director of Graduate Medical Education, Kristi Anderson, admitted that residents are fearful of retaliation. Other witnesses will also confirm the lack of professionalism, favoritism, and disproportional treatment that some residents receive.

Dr. Cordova respectfully requests that the violations to his due process rights, breach of confidentiality, and other violations articulated herein be immediately investigated and that he be afforded all equitable relief. This relief may include, but is not limited to, immediate reinstatement, a due process hearing, redaction of unwarranted discipline from his permanent academic record, investigation into the actions of Dr. Karen Curry and Dr. Nicholas Sells, and protection from further retaliation by members of the LSU staff.

Best regards,

CHRISTINE M. MIRE

cc:   Dr. James Falterman, DIO and Associate Dean (jfalte@lsuhsc.edu)
      Dr. Karen Curry, Program Director Internal Medicine (KCurry@lsuhsc.edu)
      Kristi Anderson, Director of Graduate Medical Education (kmetoy@lsuhsc.edu)
      Dr. Nicholas Sells, Section Chief of Internal Medicine (nsells@lsuhsc.edu)
      Dr. Bo Sanders, Chairman of Internal Medicine (csande@lsuhsc.edu)
      Dr. Charles W. Hilton, Associate Dean for Academic Affairs (504) 599-1453
      Jason Johnson, Human Resources (jjoh46@lsuhsc.edu)

FILED THIS 29
DAY OF mar , 2014
Katy Melancon
Deputy Clerk of Court



**LSU Health**
**NEW ORLEANS**

**School of Medicine**
Department of Internal Medicine

November 10, 2017

Corey Cordova, M.D.
210 Wind Haven Lane
Lafayette, LA 70506

Dear Dr. Cordova:

**Request for Adverse Action**

After the Clinical Competency Committee carefully reviewed your resident performance on Monday, October 30, 2017, you are being placed on probation for this academic year effective November 10, 2017.

**List of Deficiencies / Reasons:**

This recommendation for probation is based on the recommendations of the Clinical Competency Committee due to your substandard performances in the following competencies:

1) Patient Care:
   a. Poor organizational and time-management skills reflected in:
      i. Inability to write timely and accurate orders. Examples of this include:
         1. Complaint from upper level resident regarding your time management on the service.
         2. Verbal complaint by LGMC faculty and upper level regarding time management causing you to start working late, or causing a delay of the incoming resident to begin work.
      ii. Inability to work effectively as a team player. Examples of this include:
   b. Not informing your upper level resident of an ICU admission at LGMC.
   c. Failure to consistently follow through on orders that you were specifically instructed to complete on your patients. Examples of this include:

FILED THIS _____24_____

DAY OF _____May_____, 2019

_____Katty Melancon_____
Deputy Clerk of Court

EXHIBIT
1

       i.  Insisting an emergency cardiac catheterization be performed on a patient when your upper level resident assured you that it was not clinically indicated.

    d.  Inability to write timely and accurate orders.
       i.  Example:  Report by upper level that you would not review the patient's record when being called with problems at night.

2) Interpersonal Skills/Communication Skills:
    a.  Disrespectful, condescending behavior with residents and staff. Examples include:
       i.  Outward burst in a hospital meeting that the ER staff consulted medicine inappropriately. *Addressed in a meeting with Department Head and Program Director, July 2017.*

3) Professionalism:
    a.  Untruthful behavior and repeated tardiness.  Example:

       i.  Reporting you were late only one time during night float; however, discovered you were late to multiple shifts.

**Remediation Plan:**

1) Patient Care:
    a. You must answer pages within a reasonable period of time (within 5 min) unless providing emergency care of a patient.

    b. You are expected to present at least 2 of your cases during morning report during your block of wards.

2) Medical Knowledge:

    a.  Participate in formal remediation plan under the direction of Dr. Lonn Guidry. Dr. Guidry will decide the terms of the remediation plan and you are to adhere to his recommendations and details of the plan until the end of your probationary period, or until notified by the program director.

3) Interpersonal Skills/Communication Skills:

    a.  You must demonstrate a graded improvement in your performances on both your evaluations from faculty, gratis faculty, nursing staff and peers.  Below average evaluations in any of the 6 competencies will result in further action, which may include non-renewal or termination.

b. You must meet with the Program Director at least monthly to discuss your progress. You are to initiate the meetings when convenient for your schedule.

4) Professionalism:

a. Your attendance for MR and NC will not decrease below 90%. You will not be tardy. Your participation and your engagement will be monitored.

b. Evaluations by your faculty, supervising residents and hospital staff will need to reflect improvement in professional behaviors.

c. You are expected to report to work on time and stay until the end of your shift.

d. You are expected to log your duty hours by Sunday of each week.

e. You must complete the module on professionalism which will be given to you by Dr. Borrero within 5 days of receipt.

**Duration of Probation:**

The length of the probation will be no longer than 3 months ending on or before February 28, 2018.

**Consequences of unsuccessful Remediation:**

Failure to comply with the requirements above may result in extension of the probation or non-promotion or immediate termination.

**Appeal Process:**

Should you desire to appeal this probation, you must follow the Due Process procedure outlined in the LSU House Officer Policy and Procedure Manual under Probation.

Sincerely,

Karen Curry, MD
Program Director, Internal Medicine

FILED THIS 29
DAY OF MAR, 2019
Katy Melancon
Deputy Clerk of Court



**NEW ORLEANS**

University Hospital and Clinics
Department of Internal Medicine

January 30, 2018

REQUEST FOR ADVERSE ACTION
ATTN: Nicholas Sells, M.D. Chief of Internal Medicine
From: Karen Curry, M.D. Program Director

Proposed Disciplinary Action:

1.  Non-renewal of House-officer Contract

2.  Strong consideration for immediate termination for continued deficiencies during probationary period.

Background:  Cory Cordova, M.D. started his residency training on 7/1/17. He had difficulties early on with deficiencies in patient care such as poor organizational and management skills and inability to work effectively as a team player. Deficiencies in interpersonal and communication skills and professionalism were noted as well.  He was placed on probation 11/10/17 and was given a remediation plan.  In that plan he was instructed to answer pages within a reasonable period of time (within 5 minutes) unless providing Emergency Care of a patient, he was also expected to have graded improvement on evaluations from faculty and peers.  He was told below average evaluations could result in termination.  Evaluations from upper level residents were expected to reflect respectful behavior.  The length of his probation was to be no longer than three months.  Since being placed on probation he has been noted to have deficiencies in four of the six competencies as discussed below.

<u>Deficiencies in Patient Care:</u>

1.  Failure to answer a page from the Emergency Room for a week.
    Incident filed on the day resident was placed on probation (November 10, 2017). Dr. Cordova met with Dr. Khan on multiple occasions concerning this infraction. She informed him even though he was on an outside rotation he needed to answer pages from our Emergency Room. This call was in regards to one of his clinic patients who left AMA with a subdural hematoma.  The patient then went to Pulmonary Clinic where Dr. Broussard addressed the patient's needs.
    Witnesses: Brad Broussard, M.D., Farha Khan, M.D., Matt Whittington, M.D.
    Evidence: Attached copy of Emergency room visit, EMR 3145299, Copy of Emails labeled "Exhibit A"

2.  Poor Evaluations from faculty and peers reflecting disrespectful behavior, documenting inaccurately, and not obtaining a complete history.
    Evidence: Peer and faculty assessments copied from New Innovations 1/30/18 and labeled "Exhibit B"

FILED THIS 29

DAY OF MAY , 20 19

_Katy Melancon_
Deputy Clerk of Court

EXHIBIT
2

3. Delay in submitting progress notes: During the Clinical Competency Meeting on 1/10/2017: Dr. Borrero reported notes are not submitted in a timely manner.
    Witness: Elizabeth Borrero, M.D.

4. Failure to accurately document patient's medication.
    History and physical reviewed from admit in December while on night float and placed in resident's folder. (Dr. Cordova failed to document the patient was taking hydrochlorothiazide and had in fact come in with side effects of that medication). The PGY-2 resident addended the note to reflect correct medication. When I brought up this issue with him December 19, 2017 he stated "Dr. Yasin performed the medication reconciliation." (Dr. Cordova had listed some medications in his H & P).
    Witnesses: Samiya Yasin, M.D., Karen Curry M.D.
    Evidence: EMR of MR# 374233. Copies of records labeled "Exhibit C"

5. Plan to discharge a patient on inappropriate medications. Dr. Jacob reported that Dr. Cordova blindly checked off all medications to be continued at home without noticing many of those medications had been changed during the patient's hospitalization. The medications he had checked off to continue were both Levothyroxine and Methimazole which are counteractive, as well as both an ACE inhibitor and an ARB.
    Witness: Greg Jacob, M.D.
    Evidence: EMR 2670262 (Date of Discharge 1/4/18)

6. Suboptimal patient care during clinic week 1/16 &1/18:  I met with Dr. Cordova 1/24/18 to give him feedback from clinic week.  Issues brought up to him were the need to take a complete history when he sees a patient for the first time, not to assume chest pain radiating to left arm was musculoskeletal in a patient with risk factors for CAD, and the importance of looking at a patients labs and radiological studies that were done since their last visit as to not miss significant increase in transaminases, and various abnormalities on CT scans.
    Witness: Karen Curry, M.D.
    Evidence: Attached feedback Card and copies of clinic notes with additional comments included. Labeled "Exhibit D"

## Deficiencies in Medical Knowledge:

1. Failure to admit to error in medication: I reviewed several History and Physicals during rotation on night float in December.
    Issues pointed out to resident during meeting with him Dec. 19 include giving anticoagulation to a patient with a recent GI bleed and suspected Dieulafoy's lesion requiring transfusion. When I pointed this out, Dr. Cordova said, "That was not my order." When I reviewed the history and physical again, I did notice that the Lovenox was documented in his plan of care.
    Witnesses: Samiya Yasin, M.D., Karen Curry, M.D.
    Evidence: EMR of MR# 193312. Copy of record labeled "Exhibit B"

2. Submitting poor quality cardiology consultation notes: Dr. Khan reported poor and incomplete progress note on MR 11735 dated 1/26/18 and initial consultation on MR 3053316 dated 1/29/18.
    Witness: Farha Khan, M.D.
    Evidence: Copies of progress note and consultation note labeled "Exhibit H"

## Deficiencies in Interpersonal and Communication Skills

1. **Poor Team Work:** During the Clinical Competency Committee Meeting 1/10/18: Dr. Borrero reported that Dr. Cordova made the medical student do an ICU History and Physical and also pulled the medical student from a 1:1 teaching session with her to perform another H&P. It was also reported that she feels he does not carry his share of the work load, writing notes on about 40 percent of the patients. He also shows no interest in patients on his team that he is not writing notes on. The entire team was to show up on sign out rounds with Dr. Borrero 1/10/17 and he was not present for sign out rounds. Dr. Borrero stated, "Dr. Cordova's lack of being a team player is bothersome."
   Witness: Elizabeth Borrero, M.D.

**Deficiencies in Professionalism:**

1. **Falsely accusing upper level resident of inappropriate behavior:** Dr. Cordova reported to both Dr. Khan and Dr. Clark his upper level inappropriately made him perform a rectal exam at 5:00 am. The patient in question had developed saddle anesthesia and in fact was diagnosed the next morning with cauda equina syndrome. I had called Dr. Yasin earlier that evening and asked her to perform the exam with Dr. Cordova. He first told Dr. Clark that Dr. Yasin had woken him up at 5:00 am. When I met with Dr. Cordova with Dr. Clark he stated that he said they woke the patient up. He also said he did not know why they were doing a rectal. Dr. Yasin reports she discussed the saddle anesthesia with Dr. Cordova in the presence of nursing staff. Dr. Khan also reported to me Dr. Cordova informed her Dr. Yasin had made him do a rectal exam at 5:00 am for "no reason". On review of the above mentioned case, I was unable to find documentation of Dr. Cordova's rectal exam.
   Witnesses: Dr. Samiya Yasin, Tina Clark, M.D., Farha Khan, M.D.
   Evidence: Copy of text exchange between Dr. Cordova and Dr. Yasin. EMR MR # 3251428.
   Copy of pertinent portions of History and Physical, copy of MRI results. Labeled Exhibit F

2. **Untruthful Behavior:** During the clinical competency committee meeting on 1/5/18 Dr. Borrero discussed the inconsistencies in Dr. Cordova's claim that Dr. Sadeghi was going to write up Dr. Yasin (his upper level resident) for unprofessional behavior. In fact Dr. Sadeghi had been out on sick leave and had not worked with Drs. Yasin or Cordova. I confirmed with Dr. Sadeghi that he did not intend to write Dr. Yasin up.
   Witnesses: Elizabeth Borrero, M.D., Ali Sadeghi, M.D., Farha Khan, M.D.

3. **Failure to follow through with an order placed/Rude behavior:** Dr. Cordova ordered an ultrasound on a patient on Sunday January 7th. The following day when the ultrasound technician, Michelle Comeaux, asked him if he still wanted test done as the patient had eaten, he replied "That is not my patient, it belongs to team 3." She notified me and stated she had no idea how to even find out who team 3 was.
   Witness: Michelle Comeaux
   Evidence: EMR MR# 3253889; Copy of order labeled "Exhibit G"

4. **Untruthful behavior:** Dr. Khan reported to me 1/25/18 that Dr. Cordova stated he had not answered a message for over a week because he did not receive the message. On further investigation, it was proven he did indeed open the message but did not address it. Dr. Khan spoke to Dr. Cordova a second time 1/25/18 and he continued to deny he opened the message.
   Witness: Farha Khan, M.D.
   Evidence: EMR 2597597. Saved recording of when message was opened by Dr. Cordova held in Cerner.

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 38

I appreciate your time in evaluating this matter,

Karen G. Curry, M.D.
Program Director
University Hospital and Clinics
2390 W Congress Street
Lafayette, LA 70506

FILED THIS ___29___
DAY OF ___may___, 20 __19__
_Katy Melancon_
Deputy Clerk of Court

University Hospital and Clinics
Department of Internal Medicine
LSU-HSC / University Hospital and Clinics
2390 West Congress Street
Lafayette, La. 70506

February 8, 2018

Dear Department of Internal Medicine,

RE: FORMAL LETTER OF RESPONSE – REQUEST FOR ADVERSE ACTION

In compliance with the LSU School of Medicine New Orleans House Officer Manual, please accept this correspondence to constitute a formal response in reference to a Request For Adverse Action that I received on February 1, 2018. [Please note, that the Request For Adverse Action letter which I received contains numerous references to "attached" exhibits which were not provided to me.  I am therefore unable to completely address all of the allegations which may arise from the missing exhibits and would like to reserve my rights to supplement this letter once those exhibits are provided to me.]

**Responses:**

**Deficiencies in Patient Care:**

1.   **Failure to answer a page from the Emergency Room for a week.**

I received a text message on 11.16.17 at 3:24 PM from Dr. Curry stating that "One of your clinic patients John Romero MR 3145299 went to the ER Friday and was diagnosed with a subdural hematoma. He left AMA. Dr. Whittington tried to page you." My pager did not alert on Friday (11.10.17). According to the date and time of the patient note, and when I was paged, I was meeting with Dr. Curry and Dr. Guidry at that time. I have read the ER note from Dr. Whittington on Friday 11.10.17. States that patient had an MRI done earlier that day and a subdural hematoma was found. Dr. Whittington encouraged the patient to seek Neurosurgical consultation at another facility and the patient denied. Left AMA. Dr. Whittington further stated in his note that he was calling to inform me that the patient was leaving AMA and the findings of the MRI. Patient was asymptomatic at the time of presentation. GCS 15. MRI report by radiologist states that the hematoma was chronic in nature. I called the patient at 6:28, no answer, no call back. I called Dr. Curry at 6:33 PM, no answer, no call back. I called Dr. Khan (Clinic Dr. and Advisor) at 6:47 PM, no answer, no call back.

FILED THIS _____ 29

DAY OF _____ Nov _____, 20 ____ 19

_____ Katty Melancon _____

Deputy Clerk of Court

EXHIBIT

3



Quality of original
in poor condition

On 11.17.17 at 4:03 PM I sent this message to Dr. Curry:



Cordova, Joseph C.
Fri 11/17/2017 4:03 PM
Sent Items

Mark as unread

Dr. Curry - I just wanted to follow up with you regarding the patient that you texted me about. I reviewed the ED note and MRI yesterday evening. Patient has a chronic subdural hematoma (per son). Patient was sent to ED from xray. Dr. Whittington encouraged patient to seek further Neurosurgical referral. Patient denied and signed out AMA. I called the patient yesterday evening at 8:30, no answer, no call back. I called the patient again this morning and spoke with his son (Ray). He stated that his father has had this subdural hematoma for quite some time now. While in the ED he was stuck 5x in the right arm and 5x in the left arm, became frustrated and mad. Signed out AMA. I called back again at 3:00 this afternoon, patient was unavailable, but I did speak with Ray his son again. He stated that his father is doing fine and the CT went ok this morning. I reviewed the Head CT from this morning which indicated no interval change regarding the subdural hematoma from the last MRI. I encouraged his son Ray that his father should seek neurosurgical referral for further evaluation of his subdural hematoma. He stated that his father, "didn't want to do that." I notified him that if his father began to experience any new symptoms, such as, headaches, nausea, vomiting, loss of motor or loss of sensation that he should come back to the ED. Ray (son) voiced understanding.

While on an external rotation, at another hospital, I have never been contacted by the UHC ED regarding a patient that left AMA. I was unsure about what to do, so I did what I felt was best for the patient, which was to notify him of the seriousness of his subdural hematoma. I have discussed this with Dr. Khan. She was unsure why the ED was contacting me regarding a patient that left AMA. Is there anything else that I need to do?

Thanks,

Cory

On 11.17.17 at 5:46 PM Dr. Curry Replied:

Curry, Karen
Fri 11/17/2017 5:46 PM

Mark as unread

To: Cordova, Joseph C.

• You forwarded this message on 11/17/2017 7:11 PM.

The ER will occasionally try to get in touch with a patients primary care physician when they have a particular concern. The issue here is the ER couldn't reach you. They ended up calling me. On Monday I asked Dr Whittington if you ever called back and he said you had not. I mentioned all this to Dr Khan.

The patient went to Pulmonary clinic Tuesday to schedule a bronchoscopy from what I understand. Dr Broussard felt his neurological issue needed to be sorted out prior to the bronchoscopy.

I would discuss further management with the faculty you signed out to on the patients last clinic visit.

Thanks
Dr Curry

Sent from my iPhone

My pager had not alerted in roughly 6 weeks. I had been off campus at LGMC ICU (October 2017) and my next block was Rehab at LGMC Southwest (November 2017). The ED note written on 11.10.17 by Dr. Whittington states that he was trying to contact me to notify me of the patients MRI findings and that the patient had left AMA. In further discussing this with Dr. Khan, I am still unaware of what was requested of me or how I could have helped with a patient that left AMA, being my primary obligation was PMR at LGMC Southwest. Also, if Dr. Curry knew about this on 11.10.17, why did she wait until 11.17.17 (7days) to notify me that Dr. Whittington was trying to reach me? Exhibit A was not included in the packet I received. To this day, I have no explanation why I did not receive the page at issue. I acknowledge receiving the text later from Dr. Curry and

have addressed the issue with Dr. Whittington to his satisfaction.  In fact, attached please find a letter from Dr. Whittington concerning my handling of this matter and his evaluation of my residency.

2.  **Poor evaluations from faculty and peers.**

I categorically dispute the allegation that I have multiple poor evaluations from faculty.  As you can see from the attached faculty reviews that were downloaded from New Innovations, all evaluations were satisfactory (a few even superior) except for one. There are no peer reviews in New Innovations at this time. Exhibit B was not included in the packet I received.  As one can see, the only poor evaluation is from Dr. Borrero.  With regards to Dr. Borrero, please see response below.

3.  **Delay in submitting progress notes in a timely manner.**

This is the first time that anyone has formally complained of late submission of progress notes. Moreover, I do not recall any conversations with any faculty or mentor regarding progress notes that were not submitted in a timely manner. The date, time and progress notes that were not submitted in a timely manner were not provided in this packet. I am unaware of a time in which the submission of my progress notes were deemed to be untimely. I am unaware of a time in which Dr. Borrero discussed with me what specific time constitutes timely.  Had this been brought to my attention, I would have worked very hard to correct this immediately.

4.  **Failure to accurately document patient's medication**

This event apparently occurred on or around the middle of December. Neither the triage nurse or pharmacy representative documented this medication for this patient at the time of admit to the ED. The chart does not establish that this patient was on the medication except for Dr. Yasin's addendum. In fact, when formulating an admission H&P the medications are automatically populated in my note. It is my understanding that the medications the patient is taking are verified by the nurse and/or pharmacy representative during a medication reconciliation upon admission to the ED. In review of the medical record and my admission note, Hydrochlorothiazide was not automatically populated. When reviewing the "Medication Lists" tab within Cerner, Hydrochlorothiazide is not listed. When reviewing the "Dr. First Medication Management" tab within Cerner and assessing all medications that are listed as "C" for Compliant, Hydrochlorothiazide is not listed. I am unaware of why Dr. Yasin has included Hydrochlorothiazide in her addendum and/or why Hydrochlorothiazide is deemed as being correct. Dr. Yasin performed the medication reconciliation apart from me, as there was very little communication between the two of us. Had this item been brought to my attention in December, I would have worked very hard to seek resolution immediately. Exhibit C was not included in the packet I received.

5.  **Plan to discharge a patient on inappropriate medications**

I am unware of the date and time in which Dr. Jacob reported to me that I blindly checked off all medications to be continued at home. I was not provided with a written testimony from Dr. Jacob of the date and time in which I blindly checked off all medications.

In further reviewing the medical record, a note was entered by Christian LeJeune on 01.05.18 at 15:18 stating that,

"SWCM assisting in clarification of d/c meds. Patient has incorrect name in system due to DMV error on license. However, the incorrect name (wrong middle initial) is identical to another patient of Deedee Luke MD in the area and further they have the same birthdate. Their medications in the Dr. First got crisscrossed and caused a fair amount of confusion as well as allowing for medication errors while inpatient causing delays in d/c. Spoke w/Luke MD office and we verified the medications were crossed in the Dr. First and they are in fact two different people and also our patient is being treated for cancer and the other is not. Borrero MD assisting in correcting medications. SWCM changed

patient's name in PM Conversations and instructed her and family to change the name on her driver's License or get a new ID card w/ correct name of Mary J Stelly. They verbalized understanding and safety concerns if there is failure to change information on driver's license or get new ID. Will speak w/ medical records to inform SWCM had patient's name changed to the correct one and to combine medical records if need be. Will continue to assist if needed."

In further reviewing the medical record Inpatient Clinical Summary on 01.05.18 at 15:32, patient was discharged home with Losartan. There is not an ACE inhibitor on the discharged home list. Levothyroxine and Methimazole are not on the discharge home list.

**6.  Suboptimal patient care**

I did receive feedback from Dr. Curry on 01.24.18 regarding the previous clinic week. I am grateful for her feedback and teaching points that have helped me to improve in the clinic setting. This improvement has been demonstrated with more comprehensive Cardiology clinic notes (which was my next block) and further confirmed with Dr. Hardwick's feedback card while on Cardiology. Please see attached. Exhibit D was not included in the packet I received.

**Deficiencies in Medical Knowledge:**

**1.  Failure to admit to error in medication**

While on night float each work shift, beginning 12.12.18 and persisting through 12.18.17, each admission note that I wrote, I was not allowed to participate and/or exchange in a meaningful conversation with Dr. Yasin regarding the decision-making process as it pertains to the admitting diagnosis and treatment of each patient. Each instance in which we returned to the call room from the ED after seeing an inpatient consult, Dr. Yasin reported to her room, alone. When asking her for direction regarding the diagnosis and treatment of each patient admitted to the inpatient service, she replied with, "just put what you think in the assessment and plan and I will put your corrections in my addendum." In reviewing my admission notes, Dr. Yasin had placed corrections in her addendum and did not discuss them with me prior to doing so.

In reviewing the medical record for this patient, I am unable to find an order for anticoagulation, which was further stated in Dr. Yasin's addendum, however my note incorrectly stated Lovenox 60mg for DVT Px. I have learned from this oversight. Had this been brought to my attention during the time the patient was admitted, I would have worked hard to correct this typo immediately by adding an addendum to the patient note. Exhibit E was not included in the packet I received.

**2.  Submitting poor quality cardiology consultation notes**

While on Cardiology service, James Hardwick MD was my attending and Scott Laura MD was the fellow. Regarding MRN 3053316, I did what I was advised to do by Dr. Hardwick and Dr. Laura, in that, put a brief consult note in the chart so we have documentation before the TEE is done this afternoon. A physical exam was not documented because I did not perform one. At the time I saw the patient, she was on dialysis and I could not hear anything with the dialysis machine active next to her bed. Regarding MRN 11735, I am unable to locate a progress note submitted by me dated 01.26.18.

Dr. Hardwick discussed with me that Dr. Curry called him to discuss these items. Dr. Hardwick stated to me that he notified Dr. Curry that I did what I was instructed to do. Dr. Hardwick also stated that the Internal Medicine department would like me to prepare notes as if I were on the IM service, however tailor them to the needs of cardiology. Once notified of this request, my notes were corrected immediately as demonstrated with the attached cardiology consultation note. Exhibit H was not included in the packet I received.

**Deficiencies in Interpersonal and Communication Skills**

1. **Poor team work**

I categorically deny this allegation.  It is possible that Dr, Borrero is confusing me with an another resident.  The date, time and MRN of the ICU patient in which I made the medical student do a history and physical has not been provided to me. A written testimony from the medical student of the date, time and MRN of the ICU patient in which this occurred has not been provided to me. A written testimony from a witness of the date, time and MRN of the ICU patient in which it was witnessed that I made the medical student do a history and physical has not been provided to me. It is noteworthy that as a first year resident, I cannot be involved in the care of an ICU patient, therefore, it is apparent that Dr. Borrero is simply mistaken in her accusation.

The date, time and MRN of the patient in which I pulled the medical student from a 1:1 teaching session to do another history and physical has not been provided to me. A written testimony from the medical student of the date, time and MRN of the patient in which I pulled the medical student from a 1:1 teaching session to do another history and physical has not been provided to me. A written testimony from a witness of the date, time and MRN of the patient in which it was witnessed that I pulled the medical student from a 1:1 teaching session to do another history and physical has not been provided to me. Again, as a policy, I am not allowed to be involved in the care of ICU patients at UHC Lafayette, La.

The service in which I was actively rotating and only saw 40% of the total patients has not been provided to me. The total number of patients, the number of patients I saw and a percentage equaling 40% has not been provided to me.

A written testimony of the date, time and MRN of the patients that I have shown no interest has not been provided to me. A written testimony from a witness of the date, time and MRN of the patients in which it was witnessed that I showed no interest has not been provided to me. Dr. Borrero has claimed that on 01.10.17 I was not present for sign out rounds. On the date 01.10.17 I was not a resident physician at UHC Lafayette, La. I began residency 07/2017.

<u>Deficiencies in Professionalism</u>

1. **Falsely accusing upper level resident of inappropriate behavior**

On Monday 12.18.17 at 04:31, Dr. Yasin asked me to go to the ER and retrieve an FOBT card and Developer as we were to do a rectal exam on MRN 3251428 in room 621 at UHC Lafayette, La. I reported to room 621 at UHC Lafayette, La. with the FOBT card and developer. Dr. Yasin arrives and enters the patient's room. Patient is asleep with his back towards the door. Wife is awake in chair at bedside. Dr. Yasin introduces herself and I and states that we need to do a rectal exam on her husband. Wife replies, "he's asleep, the nurse just gave him his medication." Dr. Yasin proceeds to wake Mr. Hebert to notify him that we are here to do a rectal exam. Dr. Yasin asks me to do the rectal exam and I comply with DRE, assessing for blood and rectal tone. There was no blood per FOBT card and rectal tone was intact. A written testimony from Dr. Yasin of the date and time in which I was notified of saddle anesthesia as the reasoning of a rectal exam has not been provided to me. A written testimony from a witness of the date and time in which it was observed that Dr. Yasin notified me of saddle anesthesia as the reasoning of a rectal exam has not been provided to me. A written testimony nursing staff of the date and time in which it was observed that Dr. Yasin notified me of saddle anesthesia as the reasoning of a rectal exam has not been provided to me. I did not document a rectal exam in the chart as this was an oversight on my part. Had this been brought to my attention at the time this occurred, I would have worked very hard to submit a procedure note for a rectal exam immediately. Exhibit F was not included in the packet that I received.

Also, the allegation is "falsely" accusing an upper level resident where, in fact, all I did was report the facts of the matter to Dr. Clark without making an accusation of inappropriate behavior.  I categorically deny filing any sort of accusation of any kind against an upper level resident.  Finally, I

accurately reported the incident and therefore there was no falsehood in my communication to Dr. Clark.

**2.   Untruthful Behavior**

I categorically deny having any conversation with Dr. Sadeghi in which I lied or was untruthful.  I did speak with him regarding the above incident but deny requesting that he report the upper level for inappropriate behavior.  Moreover, I never had any conversation about this matter with Dr. Borrero. The date, time and written testimony from Dr. Borrero in which I discussed with her that Dr. Sadeghi was to write up Dr. Yasin for unprofessional behavior has not been provided to me. A written testimony from a witness of the date and time in which it was observed that I discussed with Dr. Borrero that Dr. Sadeghi was to write up Dr. Yasin for unprofessional behavior has not been provided to me.

**3.   Failure to follow through with an order placed / rude behavior**

I do not know Michelle Comeaux and do not recall any conversation with anyone by that name.  I have not been provided with written testimony from Michelle Comeaux of the date, time, MRN and exact exchange, such as, "that is not my patient".  I cannot defend against accusations of this nature without having more specific information.  Accordingly, I deny ever having responded in this way.

**4.   Untruthful behavior**

I discussed a matter involving a miscommunication with Dr. Kahn which I believe, as I was not provided with any details, is the basis for this accusation.  It involved my misread of a message concerning Dr. Kahn or the ambulatory clinic and subsequent confusion on my end.  I explained the honest mistake to Dr. Kahn to her satisfaction and there was no untruthful behavior.  I categorically deny this allegation to the extent I have correctly guessed its origin.

FILED THIS ___29___
DAY OF___*mar*___, 20_19_
*Katy Melancon*
Deputy Clerk of Court

**LSU HEALTH SCIENCE CENTER – University Hospital and Clinics**
Internal Medicine Residency Program
Clinical Competency Committee
*Corrective action /remediation Plan*

*Dr. Cory Cordova*

Requirements
1. Report to your upper /senior resident for every shift
2. Must stay total shift hours/end of shift
3. Notify your upper level if you are late
4. Understand that all tardiness will be reported to faculty and documented
5. Be present for all transition of care sign-out during Ward rotations and for Night float rotation
6. Attend 100 percent of Morning report and noon conferences and committee assignments
7. Complete required modules on Professionalism and communication provided by Dr. Borrero
8. Present two cases for Morning report for each Block of wards
9. Write at least 50 percent of all progress notes on your service
10. Complete all progress notes prior to rounds
11. Demonstrate respect for all senior residents
12. Meet twice a month with Dr. Guidry & Dr. Khan for progress reporting
13. Write out and answer 15 ITE objectives that you have answered incorrectly per week and turn in to Dr. Clark each Friday

Any noncompliance of above requirements will result in punitive action by Program Director.

FILED THIS ___29___
DAY OF ___mAY___, 20_19_
___Katy Melancon___
Deputy Clerk of Court

EXHIBIT
4



**University Hospital & Clinics**
*Lafayette General Health*

February 15, 2018

UAB/Selma Family Medicine
Kandice Collins, Program Coordinator
1023 Medical Center Parkway, STE 200
Selma, AL 36701

Dear Ms. Collins,

It is my pleasure to write in support of the application of Dr. Cory Cordova to your Family Medicine Residency Program. I have been an educator for years with considerable experience in national organizations and academic institutions. I worked closely with Dr. Cordova during his Internal Medicine residency program training and I supervised him while in his emergency department rotation. As is evident form his CV, Cory has excelled throughout his career with many notable accomplishments. While he was on the emergency medicine rotation, he demonstrated exceptional interest in emergency medicine and voiced his desire to change from the Internal Medicine program to a Family Medicine program and eventually performed an Emergency Medicine Fellowship. As his attending physician during his emergency medicine rotation, I noticed abilities and clinical knowledge that make him a good candidate for an emergency medicine residency program. While observing Dr. Cordova's clinical abilities, I noted his excellent knowledge, clinic skills, patient care, and leadership. I have worked with Dr. Cordova in both the inpatient and outpatient setting, taught him in class, supervised his clinical competence and oversaw his performance during important parts of his Internal Medicine Internship training as well as his Emergency Medicine rotation.

In addition to considerable intellect and exemplary performances on standardized examinations, Dr. Cordova is a warm and engaging individual. He teaches others by example, is inclusive, and consistently exhibits curiosity and motivation to learn. He comes prepared for all types of learning situations, having researched the relevant topics so that he can provide quality care. In addition to prioritizing his own learning, Cory considers the needs of others. On multiple occasions, he has arrived in the clinic with handouts on relevant clinical topics tailored for the rest of the medical team. He has been described as one of the best residents to rotate on our emergency department service by other attending physicians.

In conclusion, I am happy to give Dr. Cory Cordova my highest recommendation for your Family Medicine residency program. In my experience, he is the top 25% of all Internal Medicine residents with whom I have worked over the past years at University Hospital and Clinics Emergency Department. If you have any additional questions or require further information, please do not hesitate to contact me.

Sincerely,

Dr. Julio Rodriguez-Quinones, FACEP
LSU Associate Professor of Emergency Medicine
Assistant Medical Director
Emergency Department
University Hospital and Clinics
Lafayette, Louisiana
337-266-8522

**Teaching Tomorrow's Physicians in Acadiana Today!**

University Hospital & Clinics provide graduate medical education in

Family Medicine
Cardiology
Geriatrics
Internal Medicine
OB/GYN
Ophthalmology
Orthopedics
Otolaryngology
General Surgery

2390 WEST CONGRESS ST.
LAFAYETTE, LA 70506
(337) 261•6000
LafayetteGeneral.com

FILED THIS 29
DAY OF Mar , 2019
Katty McLanun
Deputy Clerk of Court

EXHIBIT
5

**University Hospital & Clinics**
*Lafayette General Health*

**Teaching**
*Tomorrow's*
**Physicians**
**in Acadiana**
*Today!*

University Hospital
& Clinics
provide graduate
medical education in

Family Medicine
Cardiology
Geriatrics
Internal Medicine
OB/GYN
Ophthalmology
Orthopedics
Otolaryngology
General Surgery

2390 WEST CONGRESS ST.
LAFAYETTE, LA 70506
(337) 261•6000
LafayetteGeneral.com

To Whom It May Concern:

With confidence, I am writing to you in support of Joseph Cory Cordova MD as he actively seeks a position in your Family Medicine Residency Program. As a faculty member and attending Emergency Department physician at University Hospital and Clinics, I have been afforded the opportunity to work with many talented residents. Rarely do I have the opportunity to work with someone as talented as Dr. Cordova.

I first met Dr. Cordova when I served as a mentor to the medical students who rotated through our Emergency Department. Working side by side with Cory, I observed him as he learned to perform a history and physical, developed a problem list, and learned basic differential diagnoses. It was obvious from the beginning that Cory was enthusiastic about clinical medicine and was very well prepared. Cory had an unusual command regarding the basic sciences and a curiosity about clinical issues, but most importantly he truly cared for the patients themselves. Cory repeatedly exceeded expectations. He was very well organized and communicated his thoughts appropriately. Cory was noted by many of the faculty and staff as a reliable team member. He has the exceptional talent of facilitating the participation of others and making those around him function at a higher level of enthusiasm. His effectiveness is well noted.

Later I had the opportunity to work with Dr. Cordova as a resident in the Emergency Department while he was completing his internship in Internal Medicine. Again, his work ethic was enthusiastic, competent, thorough and meaningful. I find these characteristics as suitable for success in your Family Medicine Residency Program. I have witnessed Dr. Cordova repeatedly excel above and beyond to assure that his patients received the best care possible. Dr. Cordova immerses himself in his patients, solving clinical problems, and he is persistent until he finds answers for improved patient outcomes. Dr. Cordova finds no burden in coordinating with interdisciplinary medical teams for the benefit of his patients' wellbeing.

Without reservation, I highly recommend Joseph Cory Cordova MD as he seeks a position in your Family Medicine Residency Program. In considering his remarkable academic and professional achievements, and positive personality, I find him quite fitting for a career in Family Medicine.

Should you have any further questions regarding Dr. Cordova's application, please do not hesitate to contact me.

Warmest Regards,

Adam P Giddings MD
Emergency Department
Attending Physician
University Hospital and Clinics
2390 W Congress Street
Lafayette, LA 70506



**University Hospital
& Clinics**
*Lafayette General Health*

*Teaching
Tomorrow's
Physicians
in Acadiana
Today!*

University Hospital
& Clinics
provide graduate
medical education in

Family Medicine
Cardiology
Geriatrics
Internal Medicine
OB/GYN
Ophthalmology
Orthopedics
Otolaryngology
General Surgery

2390 WEST CONGRESS ST.
LAFAYETTE, LA 70506
(337) 261•6000
LafayetteGeneral.com

To Whom It May Concern:

It is with great enthusiasm that I am writing in support of Joseph Cory Cordova's application for a position in your Family Medicine residency program. I was quite fortunate to have Cory with me as a resident for one month in Emergency Medicine at University Hospital and Clinics during his intern year. While on my service, Cory displayed superior communication skills that were efficient and respectful, much like the mannerisms of a confidant and experienced physician. Cory displayed comfort with the patient encounter and it's more than evident that he truly enjoys helping people. Above and beyond the compassionate and competent emergency care plans that he suggested, he continually offered helpful pearls to all involved staff members in the emergency department. Clearly, Cory is a team player. Secondly, Cory enjoys confronting the complex problems of emergency medicine and I believe these analytical skills will serve him well in the Family Medicine setting.

I have come to know Cory quite well during the month we spent together in the emergency department, as well as, times in which he would report to the emergency department to admit patients to the inpatient service. During this time, I had daily contact with Cory and can attest to the fact that he is a most deserving candidate for Family Medicine residency training.  During the rotation, Cory performed in a truly outstanding fashion.  His comments justify a detailed and meticulous thought process. His clinical judgment was excellent; his assessments were thorough and appropriate.  I became very confident of Cory's clinical acumen with a superb fund of knowledge, excellent problem-solving skills and boundless energy and enthusiasm.  He was highly valued by other members of the team, some of which are physicians and nursing staff, as tremendously committed to patient care, learning, and delightful to work with.

In closing, I believe that Cory is very well suited for a career in Family Medicine. I consider him to have an excellent academic future based on his approach to clinical medicine, his communication skills and his interest in teaching. I regard Cory as an excellent candidate for your Family Medicine program and would be pleased if I were to learn that he had been recruited to stay at your institution.  Please do not hesitate to contact me for additional information regarding Cory's application.

Sincerely,

Ali Sadeghi M.D.
Director of Emergency Medicine
Attending Physician
University Hospital and Clinics
2390 W Congress Street
Lafayette, LA 70506

February 20, 2018

**Letter of Recommendation for Cory Cordova, MD**

To Whom It May Concern,

I have known Cory Cordova for the past 1 year as a resident in the Internal Medicine program at University Hospital and Clinics in Lafayette, LA. I have had the pleasure of getting to know Cory during his Emergency Medicine rotation and Internal Medicine inpatient medicine rotation. I have had the opportunity to observe his clinical skills, medical knowledge, and bedside manner.

I have observed Cory to be an eager, attentive, and compassionate resident. He has a strong work ethic and continually strives to improve his already impressive fund of knowledge. He has the ability to obtain a clear/concise history, physical and differential diagnosis while maintaining a good rapport with patients.

I have seen may residents come through both the internal and family medicine residency programs, and consider Dr. Cordova to be a very strong resident. I am confident that he will continue to excel and become an excellent physician.

I consider Cory to be an exceptional resident with the highest integrity. I think he will do well in any field of medicine, and I am confident that he will excel in Family Medicine. It is with great pleasure that I give my highest recommendation and strongest support for Cory's consideration into your Family Medicine Residency program.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Mathew Whittington, MD
matwhitt@gmail.com
(337) 849-8899 (Cell)

02/06/18

To Whom It May Concern,

On 11/10/17, I had the pleasure of taking care of J.R., MR 003145299 in the Emergency Room of University Hospital and Clinics (UHC). Mr. R presented to the ER after findings on an outpatient MRI revealed a subacute/chronic subdural hematoma. He denied symptoms in the ER, but due to the midline shift and no prior record of a subdural hematoma on imaging, I recommended transfer for neurosurgical evaluation. Ultimately, the patient did not desire transfer, and after long discussion with the patient and family, he signed out Against Medical Advise.

On review of the chart, I was relieved to see Dr. Cordova is the patient's primary care physician. Although Dr. Cordova was not on Internal Medicine call, I tried paging him because I knew I could rely on him for ensuring the patient was followed closely. I paged Dr. Cordova at 12:25pm. The patient left the ER AMA at 12:32pm. At the time of this encounter, we had experienced problems with the operators having difficulty accurately paging residents. I did not have any other means of contacting Dr. Cordova (such as his cell phone number), therefore I called Dr. Curry at 12:47pm and provided her with the patient's information to pass on to Dr. Cordova.

Dr. Cordova has completed his intern ER rotation at UHC where I have had the opportunity to observe his clinical skills, medical knowledge, and bedside manner. I have observed Dr. Cordova to be an eager, attentive, and compassionate resident. He has a strong work ethic and continually strives to improve his already impressive fund of knowledge. He has the ability to obtain a clear/concise history, physical and differential diagnosis while maintaining a good rapport with patients.

I have seen may residents come through both the internal and family medicine residency, and consider Dr. Cordova to be a very strong resident and I am sure that he will continue to excel and become an excellent physician.

In summary, I have never had any negative encounters with Dr. Cordova. In my experience, he always responds quickly to all pages. I therefore consider him to be an exceptional resident with the highest integrity.

Sincerely,

Mathew Whittington, MD

10/26/2018                                          Gmail - FW: Dr Cory Cordova

M Gmail                                                      Cory Cordova M.D. <drcordovamd@gmail.com>

## FW: Dr Cory Cordova
1 message

Burnaman, Katheryn A. <kburna@lsuhsc.edu>                          Wed, Apr 11, 2018 at 8:14 AM
To: "Cory Cordova MD (drcordovamd@gmail.com)" <drcordovamd@gmail.com>

-----Original Message-----
From: Steve Rees [mailto:sgreaspm@att.net]
Sent: Tuesday, April 10, 2018 8:57 PM
To: Burnaman, Katheryn A.
Subject: Dr Cory Cordova

*EXTERNAL EMAIL: EVALUATE*

To Whom It May Concern:
I am writing in support of Dr. Cory Cordova's application to your family medicine program.
Dr. Cordova rotated through with me on our Inpatient Rehabilitation unit at Lafayette General Southwest. During that time I found him to be interested and
inquisitive. His work to be thorough.
He was engaged positively with both the patients and the Rehab team.
I believe he would be an asset to your program.

Steve Rees MD
VP Medical Affairs.
Medical Director of Rehabilitation Services Ass't Clinical Professor IM-LSUHSC Lafayette General Medical Center

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 53

**AFFIDAVIT OF CARMEN MORGAN**

STATE OF TEXAS

COUNTY OF BOWIE

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, duly commissioned and qualified as such personally came and appeared:

**CARMEN MORGAN**

Who was sworn, did depose, and say:

1. She has been a nurse for twenty-seven years.

2. She was a clinical manager in the emergency department for UHC from February 2017 until July 2018.

3. She worked with Dr. Cory Cordova in her capacity as a manager in the emergency department.

4. She was present in all hospital quality meetings which Dr. Cory Cordova attended.

5. She never witnessed any outbursts, disrespectful, and/or condensing behavior at any time at any of these meetings by Dr. Cory Cordova.

6. She is familiar with Dr. Cory Cordova and considered him meek, mild, professional, and had a great bedside manner.

7. As a manager of ER staff, she and many of her employees considered Dr. Cory Cordova approachable, knowledgeable, and professional.

8. Dr. Cory Cordova was not the type of person to get ruffled or anger easily even in a code or emergency situation.

9. She and her staff enjoyed working with Dr. Cory Cordova.

10. She received complaints about other residents but she never received a complaint about Dr. Cordova.

11. She considered Dr. Cory Cordova a team player.

12. She was surprised to learn that Dr. Cordova was accused of condensing and/or disrespectful behavior because it did not comport with her experience.

13. Dr. Cory Cordova was one of the few residents out of all of the residents who exchanged pleasantries and was polite to her and her staff.

14. Of all of the residents she worked with, Dr. Cordova was one of the few to closely follow the service standards of behavior on a consistent basis as set forth by UHC.

15. She was a witness to the letter of recommendation written by Dr. Ali Sedeghi who was in disbelief that Dr. Cordova's contract was not renewed due to discipline action.

16. She personally received staff complaints regarding disrespectful and condescending behavior of other residents who were never disciplined.

17. She personally witnessed more egregious behavior than Dr. Cordova is accused of from other residents who were never disciplined.

18. For instance, she was aware of a death of a patient that occurred due to the tardiness of a resident and lack of ACLS protocol for reviving a patient. The resident was never disciplined and remains a resident at UHC.

Further, Affiant saith not.

_____
CARMEN MORGAN

SWORN TO AND SUBSCRIBED before me on this 30th day of October , 2018 in Bowie County, Texas.
(Texarkana)

_____
NOTARY PUBLIC

JESSE WARREN
My Notary ID # 131633222
Expires July 6, 2022

JESSE WARREN
My Notary ID # 131633222
Expires July 6, 2022

FILED THIS  29
DAY OF  Mar , 20 19
_____
Deputy Clerk of Court

10/26/2018                                                            Gmail - Fw: Adverse Action

Cc: Curry, Karen; Anderson, Kristi L.; Falterman, James
Subject: Re: Adverse Action

Dr. Cordova,
I am in receipt of your acknowledgement of contract non-renewal and have notified Dr. Falterman and Kristi Anderson. I have also
reiterated your request for privacy regarding this to the faculty personally.
NS


On Feb 19, 2018, at 1:25 PM, Cordova, Joseph C. <jcordo@lsuhsc.edu> wrote:

Dr. Sells - please accept this communication as formal notice. I accept your decision for contract non-renewal for PGY2.
As we discussed, I ask that you please reiterate with faculty my right to privacy with this matter.  As we discussed, I also
ask that you please reiterate with faculty what can and cannot be discussed surrounding this matter should a
future employer reach out to the department. Would you please respond to this message to assure receipt.


Thanks,


Cory Cordova M.D.

FILED THIS _____ DAY OF _____, 20__
_____ _____, Deputy Clerk of Court

https://mail.google.com/mail/u/0?hl=03f03d2388&view=pt&search=all&permthid=thread-f%3A1603461182630590932&simpl=msg-f%3A1603461182630590932

EXHIBIT
6



**NEW ORLEANS**

University Hospital and Clinics
School of Medicine
Department of Internal Medicine

Thursday, March 1, 2018

Dear Dr. Joseph Cory Cordova,

On behalf of the LSU Health Sciences Center/University Hospital and Clinics Internal Medicine
Residency Program, this letter is to inform you of our intent to not renew your contract as a
resident in the Internal Medicine Residency Program.

Your contract will be terminated with LSU Health Sciences Center/University Hospital and
Clinics, Lafayette as of June 30, 2018.

I ask that you acknowledge this intent of non-renewal by signing below and returning the
original copy of this letter to me.

Sincerely,

_Karen Curryomo_                           3/7/18
Program Director Signature                  Date

_[signature]_                               05.07.18
Resident/Fellow Signature                   Date

2390 West Congress Street   Lafayette, Louisiana 70506
Office 337.261.6789   Fax 337.261.6791   www.lsuhsc.edu

FILED THIS ___29___
DAY OF ___mar___, 20_18_
_Katy Melanxn_
Deputy Clerk of Court

EXHIBIT
7

tmai& - Fwd: Request for Program Director Summative Letter re: Dr. Cory Cordova

**From:** Burnaman, Katheryn A.
**Sent:** Tuesday, April 3, 2018 12:43:20 PM
**To:** Curry, Karen
**Subject:** Request for Program Director Summative Letter

Good morning Dr. Curry:

The LSU Family Medicine Residency Program
– Alexandria is in request of two items on
behalf of PGY-I resident, Dr. Joseph Cory
Cordova:

    ➢ PGY-1 Curriculum list of rotations;

    ➢ Statement with status of resident in
good standing and statement of
awareness of Dr. Cordova's interest in
transitioning from Internal Medicine to
Family Medicine.

Please provide on your program letterhead
with signature by the Program Director.  The
list of rotations may be included in the letter or
may also be submitted as a supporting
document / attachment.  The documents may
be scanned and emailed to
kburna@lsuhsc.edu.  We ask that you please
provide these items by Thursday (04.05.18).

Thank you in advance for your assistance.

FILED THIS ___29___
DAY OF ___mar___, 20_19_
___Katy Melancon___
Deputy Clerk of Court

**EXHIBIT**
8

https://mail.google.com/mail/u/0?ik=083760f612&view=pt&search=msg-f%3A1616222313545006556&simpl=msg-f%3A1616222367

'mail - Fwd: Request for Program Director Summative Letter re: Dr. Cory Cordova

*Robert W. Moore.  Residency Director*

*Kathryn Borsemen.  Residency Coordinator*

**LSU Family Medicine Residency – Alexandria**

211 Fourth Street, Box 30113

Alexandria, LA 71301

PH (318) 441-1041   Fax (318) 484-2225

kburna@lsuhsc.edu

<Authorization to Release Records C. Cordova.pdf>

<C. Cordova Letter to LSUAlexandria.pdf>

<Milestone Comprehensive Summary.pdf>

<Rotations Listing C. Cordova.pdf>

Gmail - Resident Release Form

Burnaman, Katheryn A. <kburna@lsuhsc.edu>                                                    Wed, Apr 4, 2018 at 3:24 PM
To: "Cory Cordova MD (drcordovamd@gmail.com)" <drcordovamd@gmail.com>

**From:** Curry, Karen [mailto:KCurry@lsuhsc.edu]
**Sent:** Wednesday, April 04, 2018 3:07 PM
**To:** Burnaman, Katheryn A.
**Cc:** Moore, Robert
**Subject:** Re: Resident Release Form

Katheryn,

ACGME requires a summative competency-based performance evaluation on transferring residents and verification of previous educational experiences.  Will you need this?  If so can you please send another signed release for these items?

Karen Curry, MD

Program Director

Assistant Professor of Internal Medicine

Internal Medicine Department

LSUHSC/University Hospital & Clinics

2390 West Congress Street

Lafayette, LA. 70506

KCurry@lsuhsc.edu

337-261-6789 Phone

337-261-6791 Fax

**From:** Burnaman, Katheryn A.
**Sent:** Tuesday, April 3, 2018 8:05:28 PM
**To:** Curry, Karen

FILED THIS
DAY OF

EXHIBIT

9

## University Hospitals and Clinics/Louisiana State University (Lafayette) Program
Internal medicine

**Resident Name:** Joseph C Cordova
**Year in Program:** 1
**Position Type:** Categorical
**Start Date:** Jul 01, 2017
**Expected End Date:** Jun 30, 2020
**Evaluation to be completed:** Oct 30, 2017 - Jan 13, 2018

Select the level corresponding to the resident's knowledge, skills, attitudes, and other attributes in each area below. Your selections should take into account the resident's demonstration of milestones throughout the program with updates to reflect recent progress. Evaluations must be based on evidence with an emphasis on that obtained by direct observation.

Milestone levels do not correspond to the resident's year in your program. Selecting a level implies that milestones in that level and in lower levels have been substantially demonstrated. Selecting a radio button between levels indicates that milestones in lower levels have been substantially demonstrated as well as some milestones in the higher level(s). Mouse over the radio buttons to read the milestones for each level. After completing the evaluation, click the Submit button to finalize it. Alternatively, click the Save button to save your current changes and complete the form later. *You MUST use the Submit button to finalize the form before the deadline for this evaluation period. Incomplete evaluations will NOT be accepted.*

There may be cases in which a resident had no experiences within a subcompetency area during the previous six months. In this case, the reported milestone level should remain the same as the one reported during the previous evaluation. Do not increase (or decrease) the milestone level simply because time has passed; an evaluation of each subcompetency area must occur every six months. To review previously completed milestone evaluations, go to the Reports tab in ADS and select Milestone Evaluations.

### Patient Care

| | Not Yet Assessable | Critical Deficiencies | | | | | | Ready for Unsupervised Practice | | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Gathers and synthesizes essential and accurate information to define each patient's clinical problem(s) (PC1) | ○ | ○ | | ○ | ◉ | | ○ | ○ | | ○ | ○ |
| b. Develops and achieves comprehensive management plan for each patient (PC2) | ○ | ○ | | ○ | ◉ | | ○ | ○ | | ○ | ○ |

Monday, April 09, 2018                                    09:04:59

FILED THIS _29_
DAY OF _Mar_, 20_19_
_Katy Melancon_
Deputy Clerk of Court

EXHIBIT
10

|  | Not Yet Assessable | Critical Deficiencies |  |  |  |  | Ready for Unsupervised Practice |  | Aspirational |
|---|---|---|---|---|---|---|---|---|---|
| c. Manages patients with progressive responsibility and independence (PC3) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ |
| d. Skill in performing procedures (PC4) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ |
| e. Requests and provides consultative care (PC5) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

○ Yes
○ No
◉ Conditional on Improvement

### Medical Knowledge

|  | Not Yet Assessable | Critical Deficiencies |  |  |  |  | Ready for Unsupervised Practice |  | Aspirational |
|---|---|---|---|---|---|---|---|---|---|
| a. Clinical knowledge (MK1) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ |
| b. Knowledge of diagnostic testing and procedures (MK2) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

○ Yes
○ No
◉ Conditional on Improvement

Monday, April 09, 2018                    09:04:59

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 62

**Systems-Based Practice**

| | Not Yet Assessable | Critical Deficiencies | | | | | | Ready for Unsupervised Practice | | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Works effectively within an interprofessional team (e.g. peers, consultants, nursing, ancillary professionals and other support personnel) (SBP1) | ○ | ◉ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ |
| b. Recognizes system error and advocates for system improvement (SBP2) | ○ | ○ | ◉ | ○ | ○ | ○ | ○ | ○ | | |
| c. Identifies forces that impact the cost of health care, and advocates for, and practices cost-effective care (SBP3) | ○ | ○ | ○ | ◉ | ○ | ○ | ○ | ○ | | |
| d. Transitions patients effectively within and across health delivery systems (SBP4) | ○ | ○ | ○ | ◉ | ○ | ○ | ○ | ○ | | |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

○ Yes
○ No
◉ Conditional on Improvement

**Practice-Based Learning and Improvement**

Monday, April 09, 2018                    09:04:59

|  | Not Yet Assessable | Critical Deficiencies |  |  |  |  |  | Ready for Unsupervised Practice |  | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Monitors practice with a goal for improvement (PBLI1) | O | O | ◉ | O | O | O | O | O | O | O |
| b. Learns and improves via performance audit (PBLI2) | O | O | ◉ | O | O | O | O | O | O | O |
| c. Learns and improves via feedback (PBLI3) | O | O | O | ◉ | O | O | O | O | O | O |
| d. Learns and improves at the point of care (PBLI4) | O | O | O | ◉ | O | O | O | O | O | O |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

O Yes
O No
◉ Conditional on Improvement

Professionalism

|  | Not Yet Assessable | Critical Deficiencies |  |  |  | Ready for Unsupervised Practice |  | Aspirational |
|---|---|---|---|---|---|---|---|---|

Monday, April 09, 2018                    09:04:59

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 64

| | Not Yet Assessable | Critical Deficiencies | | | | Ready for Unsupervised Practice | | Aspirational |
|---|---|---|---|---|---|---|---|---|
| a. Has professional and respectful interactions with patients, caregivers and members of the interprofessional team (e.g. peers, consultants, nursing, ancillary professionals and support personnel) (PROF1) | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ |
| b. Accepts responsibility and follows through on tasks (PROF2) | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ | ○ |
| c. Responds to each patient's unique characteristics and needs (PROF3) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ |
| d. Exhibits integrity and ethical behavior in professional conduct (PROF4) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

○ Yes
○ No
⊗ Conditional on Improvement

Interpersonal and Communication Skills

| | Not Yet Assessable | Critical Deficiencies | | | | Ready for Unsupervised Practice | | Aspirational |
|---|---|---|---|---|---|---|---|---|

Monday, April 09, 2018                                    09:04:59

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 65

| | Not Yet Assessable | Critical Deficiencies | | | | | | Ready for Unsupervised Practice | | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Communicates effectively with patients and caregivers (ICS1) | O | O | O | ◉ | O | O | O | O | O | O |
| b. Communicates effectively in interprofessional teams (e.g. peers, consultants, nursing, ancillary professionals and other support personnel) (ICS2) | O | O | O | ◉ | O | O | O | O | O | O |
| c. Appropriate utilization and completion of health records (ICS3) | O | O | O | O | ◉ | O | O | O | O | O |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

O Yes
O No
◉ Conditional on Improvement

**Overall Clinical Competence**
This rating represents the assessment of the resident's development of overall clinical competence during this year of training:

O Superior
O Satisfactory
◉ Conditional on Improvement
O Unsatisfactory

© 2018 Accreditation Council for Graduate Medical Education (ACGME)

(https://trustsealinfo.verisign.com/splash?form_file=fdf/splash.fdf&dn=apps.acgme.org&lang=en)

FILED THIS 29
DAY OF May , 20 19
Katy Melancon
Deputy Clerk of Court

Monday, April 09, 2018                    09:04:59

NICHOLAS GACHASSIN, JR.
NICHOLAS GACHASSIN, III†
CHRISTOPHER C. JOHNSTON
BRANDON RHODES^
JULIE SAVOY
GARY J. DELAHOUSSAYE
BENJAMIN GAINES
LANZI MEYERS
RICHARD L. HOUGHTON, III°
HOLLY McKAY DESCANT‡
CYNTHIA SCHWARTZ
GRANAY D. MURPHY
ROSS ROUBION
DAWN FUQUA



GACHASSIN
LAW FIRM

MAILING ADDRESS:
P. O. BOX 80369
LAFAYETTE, LA 70598-0369

200 CORPORATE BLVD., SUITE. 103
LAFAYETTE, LA 70508

TELEPHONE: (337) 235-4576
TELECOPIER: (337) 235-5003

†Also Admitted in Mississippi
‡Master of Laws in Health Care
^ Also Admitted in Georgia & Florida
°Also Admitted in Ohio

February 5, 2018

E-MAIL: Chris@gachassin.com
WEBSITE: www.gachassin.com

Dr. Cory Cordova
210 Wind Haven Lane
Lafayette, Louisiana 70506

Re:     *Terms of Engagement*

Dear Dr. Cordova:

This letter will confirm the discussions we had regarding your engagement of our firm.

### 1. Legal Services

We appreciate the opportunity to serve you. Our goals are to provide you with the legal services of the highest quality and efficiency and to help you accomplish your business objectives.

Our relationship should begin with a mutual understanding of expectations and should continue with full and candid communications between us throughout the course of our representation. Please let me know promptly if you have any questions at any time regarding any aspect of our firm's work for you.

The scope of our work may evolve in accordance with discussions or correspondence with you from time to time. To the extent that additional services are requested by you and agreed upon by us, the terms in this letter will apply to such additional services, unless superseded by another written agreement between us.

In order to avoid misunderstandings concerning potential conflicts of interest, it is our policy to clarify the identity of our clients and the circumstances under which we may represent other clients with interests which are or may be adverse to yours. In that regard, it is our policy that our representation does not extend to parents, subsidiaries, employees, officers, directors,

FILED THIS ____29____
DAY OF __mar__, 20_19_
__Katy Melancon__
Deputy Clerk of Court

EXHIBIT

Scanned with CamScanner

*February 5, 2018*
*Page 2 of 4*

shareholders, partners or other affiliates of your company unless we mutually agree in writing to the contrary.

## 2. Persons Responsible

Within our firm, I will be primarily responsible for this engagement. My number here at the office is (337) 235-4576. My direct e-mail address at work is Chris@gachassin.com

There may be occasions when your interests would be best served by involving other attorneys within our firm. We will advise you of proposed staffing assignments involving other attorneys and will work with you to decide on the staffing most appropriate to meet your needs and expectations.

Please let me know promptly if any questions arise about the services provided to you by anyone at our firm, or about any billing that you receive from us, so that we can act appropriately.

## 3. Rates, Fees and Charges

Our fees are based primarily on the amount of time spent by our attorneys and paralegals on your behalf. Each attorney and paralegal in our firm has an hourly billing rate, and the rate times the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee.

In general, our attorneys' billing rate applicable to this engagement is $250.00 per hour. Associate attorneys' billing rate is $225.00. For paralegal time, our rate will be $125.00 hour.

Other factors may be taken into account in determining our fees and may result in an increase over the rates specified above, including the novelty or difficulty of the legal problems involved, the risks and responsibilities assumed by us, the extent to which unforeseen circumstances arise, the time limitations imposed by you or by circumstances, the seriousness of the consequences of the matter, the results obtained, and other considerations permitted by applicable rules of professional conduct. Please be assured, however, that we will never add a "bonus" to the regular hourly rates applicable to your matter without prior discussion with you.

In addition to fees, we will expect payment for disbursements and other charges. We do not attempt to make a profit on our reimbursable charges. We do, however, recover our direct and allocable indirect costs.

Our disbursements and other charges will include such items as photocopying, fax charges, computerized legal research charges, long-distance telephone charges, courier and air freight charges, travel expenses, meal and transportation costs (for late night or weekend work only), postage costs, supply costs, and other reasonable costs and expenses. For larger disbursements, we may ask that billings be sent directly to you or that advances be provided.

We intend to provide statements to you on a monthly basis. They will show our time logged in tenths of an hour increments and will separate fees from disbursements and other

Scanned with CamScanner

*February 5, 2018*
*Page 3 of 4*

charges.  Payment of our statement is due promptly upon receipt.  Our rates are based on our receiving payment within 30 days.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times during the course of our representation.  Following any such revision, our new rates and charges will be applied to your account, and this letter constitutes written notice to you of our rights to make such revisions.

### 4.  Retainer Fee

It is agreed that we will commence the Representation upon the deposit of a retainer in the amount of $1,000.00.

It is agreed that we will apply the retainer to our interim bills for fees and expenses, and each invoice will clearly show the amount of the retainer that is so applied.  Once the retainer is exhausted, we may require additional deposits in connection with one or more matters or the representation generally, which will then be applied in the same amount.

### 5.  Roles of Attorney and Client

Our responsibilities under this agreement are to provide legal counsel and assistance to you in accordance with this letter, and to provide statements to you that clearly state the basis for our fees and expenses.

We hope you will be clear and complete in your communications with us and will extend your reasonable assistance and cooperation to us. You agree to keep us informed of developments related to this representation and to pay our statements in a timely manner.

If this letter meets with your approval, please sign and return a copy.

We look forward to working with you.

With kind regards, I am

Very truly yours,
GACHASSIN LAW FIRM
(A Limited Liability Company)

Christopher Johnston

CJ/mg

**Scanned with CamScanner**

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 69

*February 5, 2018*
*Page 4 of 4*

Approval of Engagement:

I have read the letter above and agree to its terms, effective as of the date on which Gachassin Law
Firm first provides services to us.

_Graudee Ridgway Cordova_ _____ _02/05/2018_ _____
Signature                                        Date

FILED THIS __29__
DAY OF __mar__ , 20 __19__
_Katy Melancon_
Deputy Clerk of Court

**Scanned with CamScanner**

## ETHICS ADVISORY MEMORANDUM

To:        Christine M. Mire

From:      Dane S. Ciolino

Date:      November 6, 2018

Re:        Communications and Conflicts Issues in Cordova
           Disciplinary Matter Against LSU/UHC

I have been retained by Christine M. Mire, Attorney at Law, to provide an advisory opinion as to (1) whether she can communicate with constituents of a represented organization; and, (2) whether her client's former counsel had a concurrent conflict of interest. I set forth below my qualifications, the underlying facts, and my opinions.

I.        QUALIFICATIONS

I attach my curriculum vitae ("CV"), which sets forth my education, experience and other qualifications. *See* Exhibit 1. In brief, I currently serve as the Alvin R. Christovich Distinguished Professor of Law at Loyola University New Orleans School of Law. I graduated *cum laude* from Rhodes College in 1985, and *magna cum laude* from Tulane Law School in 1988, where I was inducted into Order of the Coif and served as Editor in Chief of the *Tulane Law Review*. Following law school graduation, I was employed as a law clerk for the United States District Court, Eastern District of Louisiana, and then as a lawyer with Cravath, Swaine & Moore, L.L.P., in New York City, and Stone Pigman Walther Wittmann, L.L.C., in New Orleans.

FILED THIS 29
DAY OF may , 20 19
Katy Melancon
Deputy Clerk of Court

Since joining the full-time faculty at Loyola in 1995, my teaching, scholarship, community-service and practice interests have included legal and judicial ethics. Among other courses, I teach "The Legal Profession," and "Legal Ethics Seminar." I am the editor of a book published in several editions by the Louisiana State Bar Association entitled *Louisiana Professional Responsibility Law and Practice*, and the successor to that book, a weblog and e-book entitled *Louisiana Legal Ethics*. I am the editor and annotator of the book entitled *Louisiana Legal Ethics: Standards and Commentary* (2018).

I have served as Reporter for the Louisiana State Bar Association Ethics 2000 Committee, as a member of the Louisiana State Bar Association Board of Governors, the Louisiana State Bar Association Committee on Lawyer Conduct, the Louisiana State Bar Association Ethics Advisory Service Committee, and the Louisiana State Bar Association Professionalism Committee. I have served as a hearing committee chairperson of the Louisiana Attorney Disciplinary Board, and as chairperson of the Lawyer Disciplinary Committee for the United States District Court for the Eastern District of Louisiana. I currently serve as General Counsel to the City of New Orleans Ethics Review Board.

I engage in the part-time practice of law, with a concentration on the ethics laws governing lawyers, judges, and public servants. I am a member in good standing and admitted to practice before the United States Supreme Court, Louisiana state courts, New York state courts, and various federal courts situated in Louisiana and New York.

<div align="center">2</div>

I have served as an expert witness in numerous matters on the issues of the

standards of care and conduct governing lawyers, and the reasonableness of legal

fees and costs. My CV lists many of these matters. *See* Exhibit 1. In addition, my

CV lists all publications that I have authored, and all other matters in which I have

testified as an expert at trial, in deposition or by formal expert report. *See id.* My

rate of compensation for study and testimony in this matter is $300.00 per hour.

II.   FACTS

The facts as you have provided them to me are as follows:

This case involves administration discipline proceedings brought
against my client, Dr. Cory Cordova, who was a first-year resident
student at LSU/UHC in Lafayette, Louisiana. LSU/UHC is part of the
LSU health systems and is in partnership with Lafayette General
Hospital. Dr. Cordova was ultimately recommended for non-renewal of
his contract and/or termination. His attorney at the time recommended
consent to discipline and the doctor was told that his discipline would
remain confidential. However, this was not accurate because his
discipline records have been sent to the new schools he attempted to
apply to. Dr. Cordova hired me to review the due process of his
discipline and to review the propriety of his previous attorney's advice.
It may be important to know that I was not hired in a personal injury
capacity but I am mindful that a lawsuit may be filed at a later date.

I contacted you to review the parameters of who I could speak to in the
course of my investigation/representation to ensure compliance with
Rule 4.2. I would assume that my client as a former student entitled to
due process can speak to anyone of the faculty members and attending
physicians even if the Rule prohibits me as his attorney from speaking
to them.

It was also concerning that Dr. Cordova's previous lawyer worked for
the firm that is the general counsel for Lafayette General and because
this firm also represented several members of the
administration/faculty of UHC in other matters. In fact, two of the
doctors that recommended discipline and who were potential adverse
witnesses in the disciplinary proceedings were existing clients of the
lawyer's firm. This raised Rule 1.7 concerns and I would like clarity so

3

that I can properly advise my client of all recourse he may be entitled to.

III.   OPINIONS

    A.   *Communication with Employees of LSU/UHC*

Under Louisiana Rule of Professional Conduct 4.2, "[u]nless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order, a lawyer in representing a client shall not communicate about the subject of the representation with:

> (a) a person the lawyer knows to be represented by another lawyer in the matter; or
>
> (b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a represented organization and
>
> > (1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter;
> >
> > (2) who has the authority to obligate the organization with respect to the matter; or
> >
> > (3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

La. Rules of Prof'l Conduct r. 4.2.

The extent to which a lawyer may contact current and former employees of a represented organization is a recurring issue that is addressed in paragraph (b) of Rule 4.2. Prior to the adoption of this paragraph, many lawyers struggled with the issue of contacting current[1] employees of a corporate adversary because Louisiana

---

[1] As to *former* employees, the controlling law has always been clear. A lawyer generally may conduct ex parte interviews with unrepresented former employees of a represented business organization provided that the lawyer does not discuss matters

4

courts had not articulated a bright-line rule. *See, e.g., Jenkins v. Wal-Mart Stores, Inc.,* 956 F. Supp. 695 (W.D. La. 1997); *In re Shell Oil Refinery,* 143 F.R.D. 105 (E.D. La. 1992); *see also* ABA Model Rules of Prof'l Conduct r. 4.2 cmt. 4 (2002); Restatement (Third) of the Law Governing Lawyers § 100(2) (2000).

In no event, however, may a lawyer seek to communicate with an employee or former employee who is independently represented by counsel. *See* La. Rules of Prof'l Conduct r. 4.2(a). Furthermore, in no event may a lawyer seek to obtain from any present or former organizational constituent "information that the lawyer reasonably should know the non-client may not reveal without violating a duty of confidentiality" to the organization. *See* Restatement (Third) of the Law Governing Lawyers § 102 (2000).

Considering these standards, you are not prohibited from discussing Dr. Cordova's matter with many employees of LSU/UHC despite that the organization is represented by counsel. For example, you may communicate with faculty members and employees who have personal knowledge of the facts associated with his discipline matter. However, you may not communicate with any person (1) who regularly consults with LSU/UHC's lawyer concerning the Cordova matter, (2) who has authority to settle the matter, or (3) whose act or omission in connection with the Cordova matter may be imputed to LSU/UHC for purposes of civil liability. In

---

protected by attorney-client privilege. *See Buford v. Cargill, Inc.,* No. 05-0283, 2009 WL 2381328, at *16 (W.D. La. Jul. 30, 2009); *see also Schmidt v. Gregorio,* 705 So. 2d 742 (La. Ct. App. 2d Cir. 1993) (employees are not "parties" represented by organization's lawyer); *Jenkins v. Wal-Mart Stores, Inc.,* 956 F. Supp. 695, 697 (W.D. La. 1997); ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 91-359 (1991).

5

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 75

addition, you may not communicate with any person who is independently represented by counsel.

As to whether your client, Dr. Cordova, can communicate with employees of LSU/UHC, a comment to the corresponding ABA Model Rule notes that "parties to a matter may communicate directly with each other...." ABA Model Rules of Prof'l Conduct r. 4.2 cmt. 4 (2002); *see also* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 92-362 (1992). Nevertheless, you, as his lawyer, may not orchestrate a communication between Dr. Cordova and an off-limits person in an effort to circumvent Rule 4.2. *See, e.g.*, La. Rules of Prof'l Conduct r. 8.4; *see also* Restatement (Third) of the Law Governing Lawyers § 99(2) (2000) (permitting a lawyer to assist client in an "otherwise proper communication . . . with a represented non-client," unless the lawyer thereby seeks to deceive or overreach the nonclient); ABA Formal Op. 11-461 (Aug. 4, 2011). ("Parties to a legal matter have the right to communicate directly with each other. A lawyer may advise a client of that right and may assist the client regarding the substance of any proposed communication. The lawyer's assistance need not be prompted by a request from the client. Such assistance may not, however, result in overreaching by the lawyer."). ABA Formal Op. 11-461 suggests that the following would constitute circumvention of the rule and overreaching:

> Prime examples of overreaching include assisting the client in securing from the represented person an enforceable obligation, disclosure of confidential information, or admissions against interest without the opportunity to seek the advice of counsel. To prevent such overreaching, a lawyer must, at a minimum, advise her client to

6

encourage the other party to consult with counsel before entering into obligations, making admissions or disclosing confidential information.

ABA Formal. Op. 11-461 at 5.

    B.   *Concurrent Conflict of Interest of Dr. Cordova' Previous Lawyer*

Louisiana Rule of Professional Conduct 1.7(a) provides that "[e]xcept as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." *See* La. Rules of Prof'l Conduct r. 1.7(a) A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Id.* r. 1.7(a)(1-2). This rule implements one of the fundamental duties attendant to the lawyer-client relationship–the duty of loyalty. As a loyal fiduciary who must faithfully champion his clients' causes, a lawyer must avoid conflicts between the interests of the lawyer's current clients and those of other persons, including the lawyer himself, his other current clients, past clients, and third parties. Unidentified or unresolved conflicts may lead to professional discipline, disqualification, fee forfeiture and malpractice liability. *See* Restatement (Third) of the Law Governing Lawyers § 121 cmt. f (2000).

    Furthermore, Louisiana Rule of Professional Conduct 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by

<div align="center">7</div>

Rules 1.7." *See* La. Rules of Prof'l Conduct r. 1.10(a). Thus, if one lawyer in a law firm has a concurrent conflict under Rule 1.7, then all of the lawyers in the firm have the same conflict by imputation.

Here, Dr. Cordova's prior lawyer violated Rules 1.7 and 1.10 in representing Dr. Cordova in the disciplinary matter adverse to LSU/UHC and Lafayette General. At the time this lawyer represented Dr. Cordova, he was associated with a law firm that is (and was) the general counsel for Lafayette General. In addition, his law firm does (and did) represent members of the administration and faculty of UHC, including two of the physicians who recommended discipline against Dr. Cordova and who were potential adverse witnesses in the disciplinary proceedings against him. Because Lafayette General and these members of the UHC administration and faculty were "directly adverse" to Dr. Cordova, the firm should have declined to concurrently represent Dr. Cordova in a discipline matter adverse to its other clients.

Respectfully submitted,

Dane S. Ciolino
DANE S. CIOLINO, LLC
18 Farnham Place
Metairie, LA 70005
(504) 975-3263
dane@daneciolino.com

November 6, 2018

8

FILED THIS 29
DAY OF MAY, 2019
Kitty Melancon
Deputy Clerk of Court

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 78

# DANE S. CIOLINO

LOYOLA UNIVERSITY NEW ORLEANS COLLEGE OF LAW
18 FARNHAM PL.
METAIRIE, LOUISIANA 70005

M: (504) 975-3263
DANE@DANECIOLINO.COM
WWW.DANECIOLINO.COM

## EDUCATION

TULANE UNIVERSITY LAW SCHOOL, *New Orleans, Louisiana*
J.D., *magna cum laude*, 1988
Editor in Chief, *Tulane Law Review*
Order of the Coif
Winner, Maritime Law Center Writing Competition

RHODES COLLEGE, *Memphis, Tennessee*
B.A., *cum laude*, 1985
Recipient, Political Science Department Award
President, Sigma Alpha Epsilon Fraternity

## EMPLOYMENT

LOYOLA LAW SCHOOL, *New Orleans, Louisiana*
Alvin R. Christovich Distinguished Professor of Law, 2002-present
Professor of Law, 2002
Associate Professor of Law, 1998-2002 (Tenured 2001)
Assistant Professor of Law, 1997-1998
Visiting Assistant Professor of Law, 1995-1997
Adjunct Instructor of Law, 1992-1995

TULANE LAW SCHOOL, *New Orleans, Louisiana*
Visiting Professor of Law, 2005, 2002, 2017

STONE, PIGMAN, WALTHER & WITTMANN, LLC, *New Orleans, Louisiana*
Associate, 1991-1995
*Areas of Practice*: Commercial Litigation, Intellectual Property, Criminal Law

CRAVATH, SWAINE & MOORE, LLP, *New York, New York*
Associate, 1989-1991
Consultant, 2005-2006
*Areas of Practice*: Commercial Litigation, Intellectual Property

FILED THIS 29
DAY OF may , 20 19
Katy Melancon
Deputy Clerk of Court

EXHIBIT
1

DANE S. CIOLINO

UNITED STATES DISTRICT COURT, *New Orleans, Louisiana*
Law Clerk to Honorable Peter H. Beer, 1988-89

## PUBLICATIONS

DANE S. CIOLINO, LOUISIANA LEGAL ETHICS: STANDARDS AND COMMENTARY (2018)

Dane S. Ciolino, *Cloud Computing for Criminal Lawyers: It's Not the Future Anymore*, THE CHAMPION, Vol. XL, No. 10, December 2016, at 22

DANE S. CIOLINO, BOBBY HARGES & WENDY SHEA, LOUISIANA CRIMINAL LAW: CASES AND MATERIALS (2013)

Louisiana Legal Ethics Weblog (http://lalegalethics.org/) (Dane S. Ciolino, ed. & admin.)

Dane S. Ciolino & Monica Hof Wallace, *Recodifying Emancipation: A Précis of the 2009 Revision of Louisiana Emancipation Law*, 56 LOYOLA L. REV. 135 (2010)

Dane S. Ciolino, *Managing the Perils of Lawyer Social Networking*, ABA SECTION OF LITIGATION, COMMITTEE ON ETHICS & PROFESSIONALISM, 2010 ANNUAL REVIEW (2010)

Sandra S. Varnado & Dane S. Ciolino, *Reconsidering Lawyers' Ethical Obligations in the Wake of a Disaster*, 19 THE PROFESSIONAL LAWYER 8 (2009)

DANE S. CIOLINO, LOUISIANA PROFESSIONAL RESPONSIBILITY LAW & PRACTICE (3d ed. 2007)

Dane S. Ciolino, *Lawyer Ethics Reform in Perspective: A Look at the Louisiana Rules of Professional Conduct Before and After Ethics 2000*, 65 LA. L. REV. 536 (2005)

Dane S. Ciolino, *Redefining Professionalism as Seeking*, 49 LOY. L. REV. 229 (2003)

Dane S. Ciolino & Erin A. Donelon, *Questioning Strict Liability in Copyright*, 54 RUTGERS L. REV. 351 (2002)

Dane S. Ciolino, *Why Copyrights Are Community Property (Sort Of): Through the* Rodrigue v. Rodrigue *Looking Glass*, 47 LOY. L. REV. 631 (2001)

Dane S. Ciolino, *Why Copyrights Are Not Community Property*, 60 LA. L. REV. 127 (1999)

Dane S. Ciolino, *Reconsidering Restitution in Copyright*, 48 EMORY L.J. 1 (1999)

Dane S. Ciolino, *Rethinking the Compatibility of Moral Rights and Fair Use*, 54 WASH. & LEE L. REV. 33 (1997)

2

DANE S. CIOLINO

Dane S. Ciolino, *The Mental Element of Louisiana Crimes: It Doesn't Matter What You Think*, 70 TUL. L. REV. 855 (1996)

Dane S. Ciolino, *Moral Rights and Real Obligations: A Property-Law Framework for the Protection of Authors' Moral Rights*, 69 TUL. L. REV. 935 (1995)

Dane S. Ciolino & Gary R. Roberts, *The Missing Direct-Tender Option in Federal Third-Party Practice: A Procedural and Jurisdictional Analysis*, 68 N.C.L. REV. 423 (1990)

Dane S. Ciolino, Casenote, Lafleur v. John Deere Co.: *Recovery of Nonpecuniary Damages in Redhibitory Actions*, 61 TUL. L. REV. 704 (1987)

## TEACHING

### Law School: Principal Courses

The Legal Profession (legal ethics), Trial & Appellate Advocacy, Evidence, Criminal Law & Procedure

### Law School: Other Courses

Business Organizations I & II, Contracts I & II, Common Law Contracts for Civil Law Students, Comparative Law, Computer Law, Copyright Law, Criminal Law Clinic, Criminal Law Seminar, Constitutional Criminal Procedure, Civil Law of Persons, Civil Law of Community Property, Civil Law of Property, Introduction to Law and Legal Methods, Legal Ethics Seminar, International Copyright Law, Law & Poverty, Litigation and Law Practice Management, Lawyering II: Moot Court, and Professional Seminar in Storytelling

### Bar Review

Instructor, BAR/BRI Bar Review Course (legal ethics and professional responsibility law), 2006-present

Instructor, BAR/BRI Louisiana Bar Review Course (criminal law, evidence and criminal procedure), 2005-present

Instructor, BAR/BRI Louisiana Bar Review Course (Louisiana property law, family law, community-property law), 1995-2005

Instructor, LSU Law Center Bar Review Course (Louisiana family law), 1999-2002

3

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 81

DANE S. CIOLINO

## COMMUNITY SERVICE

General Counsel, Ethics Review Board of the City of New Orleans, 2015-present

Louisiana Association of Defense Counsel
    Acting Executive Director, 2015-2016
    Associate Executive Director, 2009-2015, 2016-present

Member, American Law Institute, 2003-present

Subject Matter Expert, National Conference of Bar Examiners, Multi-State Professional Responsibility Examination, 2018-present

Legal Analyst, Various National, State and Local Media, 1998-present

Instructor, Louisiana State Bar Association Diversionary Ethics School, 1999-present

Member, Louisiana State Bar Association Codes of Conduct Committee, 1998-present

Member, Federal Criminal Justice Act Panel, United States District Court for the Eastern District of Louisiana (panel of attorneys accepting appointments to represent indigent defendants in federal prosecutions), 1991-present

Reporter, United States District Court for the Eastern District of Louisiana Committee on Revising Attorney Disciplinary Procedures, 2009-2011

Lawyer Disciplinary Committee, United States District Court for the Eastern District of Louisiana
    Chair, 2011-2016
    Member, 2016-2017

Board Member, Louisiana Organization for Judicial Excellence, 2004-2008

Member, Ochsner Clinic Foundation, Bioethics Committee, 2009-2012

Member, Louisiana State Bar Association Professionalism Committee, 1997-2008

Member, Louisiana State Bar Association Board of Governors, 2007-2009

Board Member, Orleans Parish Indigent Defender Program, 2006-2007

Reporter, Louisiana State Bar Association Ethics 2000 Committee, 1999-2004

Reporter, Louisiana State Law Institute Emancipation Committee, 2004-2008

4

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 82

DANE S. CIOLINO

Reporter, Louisiana State Law Institute Tutorship Procedure Committee, 2000-2009

Reporter, Louisiana State Law Institute Interdiction Committee, 1996-2002

Member, Louisiana Supreme Court Committee on the Prevention of Lawyer Misconduct, 1999-2003

Member, Louisiana State Law Institute Criminal Law Committee, 2006-2011

Interim Host, *It's the Law*, Cox Cable Television New Orleans and Jefferson, December 1999-2000

Louisiana State Bar Association, Ethics Advisory Committee
    Member, 2000-2003
    Reporter, 1997-2000

Council Member, Louisiana State Law Institute, 1997-2000

Louisiana Attorney Disciplinary Board
    Hearing Committee Member, 1998-1999
    Hearing Committee Chairperson, 1999-2003

Louisiana Supreme Court Bar Admissions Advisory Committee
    Member, 1997-1999
    Chairperson, 1999-2001

Director, Pro Bono Criminal Law for Civil Lawyers (two-day CLE seminar training civil lawyers to undertake pro bono criminal cases), 1995-2002

Advisory Editor, *Tulane Law Review*, 1993-2009

Member, Board of Directors, Louisiana Capital Assistance Center (public-interest organization defending capital cases for indigent clients), 1996-2006

Appointed Counsel, Orleans Parish Criminal District Court (pro bono representation of indigent defendants in first- and second-degree murder prosecutions), 1991-2008

Evaluator, American Bar Association, Central European Law Initiative, March 1999 (evaluated code of legal ethics for the Republic of Armenia)

## LOYOLA UNIVERSITY SERVICE

Faculty Advisor, *Loyola Law School Honor Board*, 2002-present

Chairperson, Petitions and Readmissions Committee, 2015-present

5

DANE S. CIOLINO

Clinic, Skills, and CLE Committee
    Chairperson, 2016-2017
    Member, 2017-present

Endowed Professorships Committee
    Chairperson, 2014-2017
    Member, 2002-present

Director, University of Vienna International Program, 2013-2017

Chairperson, Library and Technology Committee, 2013-2015

Director, International Programs, 2011-2012

Chairperson, International Programs Committee, 2011-2012

Member, Curriculum and Bar Examination Committee, 2011-2015

Faculty Advisor, *Loyola Law Review*, 1997-2003, 2006

Faculty Advisor, *Order of the Barristers*, 1998-2003

Faculty Advisor, *Loyola Intellectual Property Law Quarterly*, 1996-2002

Faculty Advisor, *Loyola ATLA Chapter*, 1997-2002

Law School Representative, Loyola University Senate, 1997-1999

Loyola Law School Dean Search Committee
    Chairperson, 2001-2002
    Member, 2000-2001

Chairperson, Loyola Law School Law Clinic Committee, 2005-2007

Chairperson, Loyola Law School Faculty Unification Committee, 2004

Chairperson, Loyola Law School Library Director Search Committee, 2000-2001

Member, Loyola University Distance Learning Committee, 2010-present

Member, Loyola Law School Technology Committee, 2010-2011

Member, Loyola Law School By-Laws Committee, 2000-2001

6

DANE S. CIOLINO

Member, Loyola Law School Pre-Admissions Committee, 1998-1999

Member, Loyola Law School Tenure Guidelines Committee, 1998-1999

Member, Loyola Law School Library Committee, 1997-1998

Member, Loyola Law School Skills Committee, 1997-1998

Member, Loyola Law School Curriculum Committee, 1996-1997

Member, Loyola Law School Admissions Committee, 1996-1997

Member, Loyola Law School Student Recruitment and Career Services Committee, 1995-1996

## COMMUNITY HONORS

*New Orleans Magazine* Top Lawyers, 2012-present

Recipient, Camille Gravelle Pro Bono Award, Federal Bar Association, New Orleans Chapter, 2007

Lawdragon 3000 (list of top American lawyers), 2006

Recipient, *Gambit Magazine*, Forty-Under-Forty Award, 2002

Recipient, Louisiana State Bar Association, President's Award, 2001

Recipient, *City Business Magazine*, Power Generation Award, 2000

Recipient, Gillis Long Poverty Law Center Public Service Award, 1997

## EXPERT WITNESS TESTIMONY[1]

1. *Active Solutions, L.L.C. v. Dell, Inc.*, No. 2007-3665, Civil District Court for the Parish of Orleans, State of Louisiana

2. *Adler v. Doyle (In re Woven Treasures, L.L.C.)*, 69 180 M 01493 07, American Arbitration Association

3. *AmCareco, Inc. v. Lucksinger*, No. 499,737, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

---

[1] All matters in which Dane S. Ciolino has provided a public expert report, affidavit, deposition testimony or trial testimony. Does not include private ethics advisory opinions.

7

DANE S. CIOLINO

4.    *Adamson v. Bailey*, No. 493,309, First Judicial District Court, Parish of Caddo, State of Louisiana

5.    *American Income Life Ins. Co. v. Nicholas Matthew Nitkowski et al.*, Civ. No. 05-2228(I-3), United States District Court Eastern District of Louisiana

6.    *Antoine v. Anding*, No. 125,803-H, Sixteenth Judicial District Court, Parish of Iberia, State of Louisiana

7.    *Asset Funding Group, L.L.C. v. Adams and Reese, L.L.P.*, Civ. No. 07-2965, United States District Court for the Eastern District of Louisiana

8.    *Baricuatro v. Industrial Personnel and Mgmt. Servs., Inc.*, Civ. No. 2:11-cv-02777-KDE-JCW, United States District Court for the Eastern District of Louisiana

9.    *Barton v. Butler*, No. 515,473, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

10.   *BCM, LLC and Nawlins Kajun Foods, LLC v. Cheatwood*, No. 2009-2807, Fifteenth Judicial District Court, Parish of Lafayette, State of Louisiana

11.   *Bd. of Supervisors of La. State Univ. and Agricultural & Mechanical College v. Southern Electronics Supply Co., Inc.*, No. 2011-1631 "L", Civil District Court for the Parish of Orleans, State of Louisiana

12.   *Bedford v. Magee*, No. 2000-14123, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

13.   *Belle Terre Lakes Home Owners Assoc. v. Patricia McGovern*, No. 41922, Fortieth Judicial District Court for the Parish of St. John the Baptist, State of Louisiana

14.   *Bertucci v. Lafayette Ins. Co.*, No. 01-0608, Civil District Court for the Parish of Orleans, State of Louisiana

15.   *Beevers and Beevers, LLP v. Sirgo*, No. 624-259 "B," Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

16.   *Billeaudeau v. Opelousas Gen'l Hosp.*, No. 13-C-0097-C, Twenty-Seventh Judicial District Court for the Parish of St. Landry, State of Louisiana

17.   *Bilyeu v. Johanson Berenson, LLP*, Civil Action No. 1:08CV2006, United States District Court for the Western District of Louisiana, Alexandria Division

18.   *Boudoin v. St. John the Baptist Parish School Bd.*, No. 2004-08242, Office of Workers' Compensation, State of Louisiana

8

DANE S. CIOLINO

19. *Bowes v. Clean Scene Servs., L.L.C.*, No. 661-147, Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

20. *Bruszewski v. Motley Rice, LLC*, Civ. Action No. 5:12-cv-00046-JMH, United States District Court for the Eastern District of Kentucky, Lexington Division

21. *Cameron Int'l Corp. v. Liberty Ins. Underwriters, Inc.*, 2:12-cv-00211 (E.D. La. filed Jan. 30, 2012)

22. *Campbell v. City of New Orleans*, No. 98-18633, Civil District Court for the Parish of Orleans, State of Louisiana

23. *Caro Properties A., L.L.C. v. Person*, No. 09-13059 (J-5), Civil District Court for the Parish of Orleans, State of Louisiana

24. *CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-6623 (D-4), United States District Court for the Eastern District of Louisiana

25. *Chalmette Payment Processing, L.L.C. v. Munson*, Civ. No. 03-1060, United States District Court for the Eastern District of Louisiana

26. *Chan's, Inc., d/b/a Mikimoto v. Henderson*, No. 2015-6555 (I-14), Civil District Court for the Parish of Orleans, State of Louisiana

27. *Chevron U.S.A., Inc. v. State of Louisiana, Louisiana State Mineral Bd. and Louisiana Dept. of Natural Resources*, No. 93,658, Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana

28. *Childress v. Childress*, No. 488-388, Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

29. *Conwill v. Greenberg Traurig, L.L.P.*, Civ. Action No. 11-938 (KDE), United States District Court for the Eastern District of Louisiana

30. *Crinel v. Roby*, No. 2015-5698 (F-7), Civil District Court for the Parish of Orleans, State of Louisiana

31. *Croft v. Liberty Mut. Ins. Co.*, Docket No. 581732, 19th Judicial District Court for the Parish of East Baton Rouge

32. *Crooks v. State of Louisiana, Through the Louisiana Department of Natural Resources*, No. 224,262, Ninth Judicial District Court for the Parish of Rapides, State of Louisiana

33. *Dan S. Collins, CPL & Associates v. Godchaux*, No. 84618, Fifteenth Judicial District Court for the Parish of Vermillion, State of Louisiana

9

DANE S. CIOLINO

34. *Dean v. St. Mary Emergency Group, LLC*, No. C-2015-5856-F, Fifteenth Judicial District Court for the Parish of Lafayette, State of Louisiana

35. *Dejean v. Koch*, No. C20093931, Superior Court of the State of Arizona, County of Pima, State of Arizona

36. *Deltide Fishing and Rental Tools, Inc. v. Keaty*, No. 680,838, Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

37. *Denison Supply Group, LLC v. Michel*, No. 16-1971, Civil District Court for the Parish of Orleans, State of Louisiana

38. *Domingue v. Salomon Smith Barney, Inc. & Coughlin*, No. 01-03076, NASD Dispute Resolution Arbitration, New Orleans, Louisiana

39. *Donovan Marine, Inc. v. Travelers Indemnity Co. of Illinois*, Civ. Action No. 09-4374 (S-3), United States District Court for the Eastern District of Louisiana, New Orleans, Louisiana

40. *Dougherty v. Haag*, No. 05-06993, Superior Court for the County of Orange, State of California

41. *Doyle v. ICNA*, Civil District Court for the Parish of Orleans, State of Louisiana

42. *Dunahoe v. Rogers*, No. 85704(A), Tenth Judicial District Court for the Parish of Natchitoches, State of Louisiana

43. *Dysart & Tabary LLP v. Finckbeiner*, No. 15-0597 "A," Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana

44. *East Jefferson General Hospital v. Stein*, No. A-081709-773, AHLA Arbitration Service, Parish of Jefferson, State of Louisiana

45. *Edmonds v. Williamson*, No. 2002-CV-42-R, Circuit Court of Kemper County, State of Mississippi

46. *Felham Enterprises (Cayman) Ltd. v. Certain Underwriters at Lloyd's, London Companies, Zurich American Ins. Co., Marine Office of Am. Corp. & Trinity Yachts, Inc.*, No. 02-3588, United States District Court for the Eastern District of Louisiana

47. *Foley & Lardner, LLP v. Kenneth G. Daniels, LLC*, Adv. No. 05-01003, United States Bankruptcy Court for the Middle District of Louisiana

48. *Forbes v. St. Martin*, Civ. Action No. C2401 01 1745(2), Chancery Court, First Judicial District Court, Harrison County, Mississippi

10

DANE S. CIOLINO

49.  *Forbis v. Int'l Health Care Properties, X, Ltd.*, 97-CI-03198, Jefferson Circuit Court, State of Kentucky

50.  *Franklin v. Regions Bank*, Civ. Action No. 5:16-CV-01152, United States District Court for the Western District of Louisiana

51.  *Furie Petroleum Co., L.L.C. v. Tower Hill Energy Co., L.L.C.*, No. 09-927, United States District Court for the Western District of Louisiana, Shreveport Division

52.  *Gaspard v. Provensal*, No. 2012-11939, Civil District Court for the Parish of Orleans, State of Louisiana

53.  *Gauthier, Houghtaling & Williams L.L.P. v. Safeguard Storage Properties LLC*, Civ. Action No. 08-0627 (H), Civil District Court for the Parish of Orleans, State of Louisiana

54.  *GE Oil & Gas, Inc. v. Turbine Generation Servs., LLC*, No. 652296/2015, Supreme Court of the State of New York, County of New York, State of New York

55.  *Gill v. Becnel*, No. G2001-1199 R/1, Chancery Court for the First Judicial District, Hinds County, State of Mississippi

56.  *Glynn v. Sylvester*, No. 228080, Ninth Judicial District Court for the Parish of Rapides, State of Louisiana

57.  *Greenspoon Marder, P.A. v. Andry Law Firm, LLC*, Civ. Action No. 2:13-cv-05509-MLCF-JCW, Section F, United States District Court for the Eastern District of Louisiana

58.  *Gulf Production Co., Inc. v. Hoover Oil Field Supply, Inc.*, No. 08-5016, United States District Court for the Eastern District of Louisiana

59.  *Gulfport Ob-Gyn, P.A. vs. Dukes, Dukes, Keating & Faneca, P.A.*, Civ. Action No. A2401-16-193, Circuit Court of Harrison County, First Judicial District, State of Mississippi

60.  *Harry Bourg Corp. vs. Exxon Mobil Corp.*, No. 140,749 ("E"), Thirty-Second Judicial District Court for the Parish of Terrebonne, State of Louisiana

61.  *Haynes v. Williamson*, No. 3:05cv186-HTW-JCS, United States District Court for the Southern District of Mississippi, Jackson Division

62.  *Hazlett v. Wilson*, No. 2010-17707, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

63.  *Hebert v. Avery*, No. 2001-16561, Civil District Court for the Parish of Orleans, State of Louisiana

11

DANE S. CIOLINO

64.  *Hodges v. Reasonover*, No. 2011-3391(N), Civil District Court for the Parish of Orleans, State of Louisiana

65.  *Hotel Investors, LLC v. State of Louisiana, Department of Transportation and Development*, No. 704-195 "M", Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana

66.  *Humphrey v. L.C. Hearne*, No. 600,108 (C), First Judicial District Court for the Parish of Caddo, State of Louisiana

67.  *Hunter & Blazier v. Logan*, No. 2007-1873, Fourteenth Judicial District Court, Parish of Calcasieu, State of Louisiana

68.  *Hydroflame Production, L.L.C. v. Hydroflame Technologies, L.L.C.*, No. 2011-3095(K), Civil District Court, Parish of Orleans, State of Louisiana

69.  *In re American International Refinery, Inc.*, No. 04-21331, United States Bankruptcy Court, Western District of Louisiana, Lake Charles Division

70.  *In re E.H. Mitchell & Co., LLC*, Civ. Action No. 14-959 (H-5), United States District Court for the Eastern District of Louisiana

71.  *In re LMCHH PCP, LLC*, No. 17-10353-JAB ("B"), United States Bankruptcy Court for the Eastern District of Louisiana

72.  *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179, United States District Court for the Eastern District of Louisiana

73.  *In re The Matter of Taira Lynn Limited No. 7, LLC, as Owner of the M/V Ricky J. Leboeuf*, Civ. Action No. 2:16-cv-0367, United States District Court for the Eastern District of Louisiana

74.  *In re Thomas J. Hogan, Jr.*, No. 16-DB-055, Louisiana Attorney Disciplinary Board, State of Louisiana

75.  *In re Impeachment of United States District Judge G. Thomas Porteous, Jr.*, The Senate of the United States (no docket number)

76.  *In re Oestreicher*, No. 12-DB-083, Louisiana Attorney Disciplinary Board, State of Louisiana

77.  *In re Petition to Accord Immigrant Classification to Timothy Gray Cameron, Esq., as an Alien of Extraordinary Ability*, United States Department of Homeland Security, United States Citizenship and Immigration Services

78.  *In re Confidential Respondents*, 04-DB-005, Louisiana Attorney Disciplinary Board

12

DANE S. CIOLINO

79. *In re Succession of Marion Roberts*, No. 96-2904(F), Civil District Court for the Parish of Orleans, State of Louisiana

80. *In re Zyprexa Products Liability Litigation*, MDL No. 1596, United States District Court for the Eastern District of New York

81. *Jones v. Lagarde*, No. 2016-11075, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

82. *La Casa Castro, S.A. de C.V. v. Greenberg Traurig, P.A., Roberto Martinez and Pedro J. Martinez-Fraga*, Civ. Action No. 09-6663(F-2), United States District Court for the Eastern District of Louisiana

83. *Lentz v. Schulze*, No. 2:16-CV-07299, United District Court for the Eastern District of Louisiana

84. *Leon v. Wilson*, No. 96-14608(F), Civil District Court for the Parish of Orleans, State of Louisiana

85. *Liberty Mutual Ins. Co. v. Jotun Paints, Inc. & Jotun, Inc.*, Civ. Action No. 07-3114, United States District Court for the Eastern District of Louisiana

86. *Logan v. Hit or Miss, L.L.C.*, Civil Action No. 6:07-CV-1116 LO, United States District Court for the Western District of Louisiana

87. *Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich*, Civ. Action No. 11-2102-SSV-SS, United States District Court for the Eastern District of Louisiana

88. *Louisiana State Bar Association v. Carr and Associates, Inc.*, No. 2006-14440, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

89. *Magnificent Eight, LLC v. First NBC Bank, Inc.*, Civ. Action No. 13-5713 c/w 13-5714, United States District Court for the Eastern District of Louisiana

90. *Mascorro v. Schulz*, No. 2014-12140, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

91. *Maxim v. Progressive Security Ins. Co.*, No. 229-677-G, Ninth Judicial District Court for the Parish of Rapides, State of Louisiana

92. *Mire v. American Multi-Cinema, Inc.*, Civ. Action No. 14-cv-02582-MVL-DEK, United States District Court for the Eastern District of Louisiana

93. *Molaison v. Lukinovich*, No. 623-026 (C), Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana

13

DANE S. CIOLINO

94.   *Montgomery v. St. Tammany Parish Gov't*, No. 2016-11530(J), Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

95.   *NASDI, LLC v. Bertucci Contracting Co., LLC.*, No. 719944(A), Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

96.   *O'Connell v. Wyatt, Tarrant & Combs, LLP*, No. 12-CI-000863, Jefferson Circuit Court, State of Kentucky

97.   *Ohmer v. Farm Bureau Ins. Co.*, No. 113555 "D", Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana

98.   *Oliver v. Orleans Parish School Board*, No. 2005-12244 (N), Civil District Court, Parish of Orleans, State of Louisiana

99.   *Oreck Direct, LLC v. Dyson, Inc.*, Civ. Action No. 07-2744, United District Court for the Eastern District of Louisiana

100.   *Ortiz v. MeadWestvaco Corp.*, No. 2009-0278, Thirty-Sixth Judicial District Court for the Parish of Beauregard, State of Louisiana

101.   *Perrone v. Rogers*, No. 2014-10589-C, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

102.   *Pitre v. Continental Casualty Co.*, No. 615-979(J), Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

103.   *Pittle v. McGlynn*, No. 09-620-JJB-SCR, United States District Court for the Middle District of Louisiana

104.   *Planet Beach Franchising Corp. v. Fisher & Zucker, L.L.C.*, Nos. 11-CV-915 & 11-CV-02146 (MLCF), United States District Court for the Eastern District of Louisiana

105.   *Powko Industries, L.L.C. v. Folse*, No. 3:15-cv-0038-BAJ-SCR, United States District Court for the Middle District of Louisiana

106.   *Provosty v. ARC Construction, LLC*, No. 08-3671 "J", Civil District Court for the Parish of Orleans, State of Louisiana

107.   *Read v. Read*, No. 2000-15283(E), Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

108.   *Reuther v. Smith*, No. 2001-18124, Civil District Court for the Parish of Orleans, State of Louisiana

109.   *Reynolds v. Voelkel*, Civ. Action No. :16-CV-06984-JCZ-KWR, United States District Court for the Eastern District of Louisiana

14

DANE S. CIOLINO

110.   *Robichaux v. Dow Chemical Co.*, No. 96-8461, Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana

111.   *Schiff v. Pugh*, No. 2014-03864, Civil District Court for the Parish of Orleans, State of Louisiana

112.   *Scott v. The American Tobacco Co., Inc.*, No. 96-8461, Civil District Court for the Parish of Orleans, State of Louisiana

113.   *Sessions, Fishman, Nathan & Israel, L.L.P. v. Halpern*, No. 2010-533, Civil District Court for the Parish of Orleans, State of Louisiana

114.   *Shane v. Frost Brown Todd, LLC*, No. 08-CI-10428, Jefferson Circuit Court, Division Eight, State of Kentucky

115.   *Shinn Enterprises, Inc. & GIS Sports of Nevada, Inc. v. Capella*, No. 2005-12352, Civil District Court for the Parish of Orleans, State of Louisiana

116.   *Sigma Delta, L.L.C. v. Eric R. George, M.D.*, Civ. No. 07-5427, United States District Court for the Eastern District of Louisiana

117.   *Smith v. Kaplan & Lukowski, LLP & Jay D. Lukowski* (pre-suit affidavit).

118.   *Somerset Pacific, LLC v. Tudor Ins. Co.*, No. 17-7099 "H-3", United States District Court for the Eastern District of Louisiana.

119.   *Spahr v. Dallam*, No. 98-5840, Civil District Court for the Parish of Orleans, State of Louisiana

120.   *Southern Scrap Material Co., L.L.C. v. Fleming*, Civ. No. 01-2544, United States District Court for the Eastern District of Louisiana

121.   *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., L.L.C.*, No. 116-860(E), Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana

122.   *St. Tammany Parish School Bd. v. Hartford Cas. Ins. Co.*, No. 2012-12891(C), Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

123.   *Stanley v. Trinchard*, Civ. No. 02-1235, United States District Court for the Eastern District of Louisiana

124.   *State of Louisiana v. Taryn Blume*, No. 522905, Criminal District Court for the Parish of Orleans, State of Louisiana

125.   *State of Louisiana v. Miqueghele Brown*, No. 533046, Criminal District Court for the Parish of Orleans, State of Louisiana

15

DANE S. CIOLINO

126.  *State of Louisiana ex rel. Dorsey v. Vannoy*, No. 251-406, First Judicial District Court for the Parish of Caddo, State of Louisiana

127.  *State of Louisiana v. Danny Galindo*, No. 455-170 (F/L), Criminal District Court for the Parish of Orleans

128.  *State of Louisiana v. Warren Harris*, No. 288-271 (C), Criminal District Court for the Parish of Orleans, State of Louisiana

129.  *State of Louisiana v. Khristopher Kyzar*, No. 11-05-0461, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

130.  *State of Louisiana v. Ricky Langley*, No. 10258-02, Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana

131.  *State of Louisiana v. Scott Lingle*, No. 288-356 (I), Criminal District Court for the Parish of Orleans, State of Louisiana

132.  *State of Louisiana v. Robert "Bob" Odom*, No. 08-02-547, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

133.  *State of Louisiana v. David Peralta*, No. 553759 "G", Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

134.  *State of Louisiana v. Terryance Russel*, No. 375-503, Criminal District Court for the Parish of Orleans, State of Louisiana

135.  *State of Louisiana v. Robert Wilkins*, No. 04-19337, 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana

136.  *St. Blanc v. Stabile*, No. 67,871, Twenty-Ninth Judicial District Court for the Parish of St. Charles, Div. E, State of Louisiana

137.  *Sturlese v. J.B. Jones, Jr.*, No. 10-16390, Thirty-Eighth Judicial District Court, Parish of Cameron, State of Louisiana

138.  *Succession of Marguerite Nell Riggs Griffin*, No. 646-584, Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana

139.  *Tapp v. Leonard L. Levenson & Associates*, No. 2009-01787, Division D, Civil District Court for the Parish of Orleans, State of Louisiana

140.  *Temple v. Crescent City Gates Fund, L.P.*, No. 09-9508 (H-12), Civil District Court for the Parish of Orleans, State of Louisiana

141.  *Territa v. Oliver*, No. 2:11-cv-01830, United States District Court for the Eastern District of Louisiana

DANE S. CIOLINO

142. *Tessier v. Moffatt*, No. 98-CV-00116, United States District Court for the Eastern District of Louisiana

143. *Tierney v. Butler*, No. 69-1777(E), Twenty-Ninth Judicial District Court for the Parish of St. Charles, State of Louisiana

144. *Travelers Prop. Casualty Co. of Am. v. Bossier*, Civ. Action No. 14:cv-02176, United States District Court for the Eastern District of Louisiana

145. *United States v. Edwin Edwards*, Crim. No. 98-165-B-M2, United States District Court for the Middle District of Louisiana

146. *United States v. Jesse H. Roberts*, Cirm. Action No. 15-cr-0020-JWD-SCR, United States District Court for the Middle District of Louisiana

147. *United States ex rel. William St. John LaCorte v. Merck & Co., Inc.*, No. 99-03807, United States District Court for the Eastern District of Louisiana

148. *United States ex rel. William St. John LaCorte v. Wyeth Pharmaceuticals, Inc.*, No. 06-CV-11724-DPW, United States District Court for the District of Massachusetts

149. *Usner v. Bagert*, No. 10-5479 (K-5), Civil District Court for the Parish of Orleans, State of Louisiana

150. *Usner v. Carol A. Newman, APLC*, No. 09-08223, Civil District Court for the Parish of Orleans, State of Louisiana

151. *Verret v. State Farm Fire and Casualty Co.*, Civ. Action No. 2:13-cv-5596-LMAJCW, United States District Court for the Eastern District of Louisiana

152. *Waggoner v. Williamson*, No. 03-KV-0151-J, Circuit Court of Adams County, State of Mississippi

153. *Walker v. AMID/Metro Partnership, LLC*, No. 2007-14794, Civil District Court for the Parish of Orleans, State of Louisiana

154. *Walker v. Harris*, No. 53694, Div. 22, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

155. *Waste Management of Louisiana, L.L.C. v. Penn-America Insurance Co.*, No. 2006-2452, Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana

156. *Wicker v. Heinrich*, No. 2010-3647, Civil District Court for the Parish of Orleans, State of Louisiana

157. *Williams v. The Administrators of the Tulane Educational Fund*, Civil Action No. 99-20650 c/w 06-1915, Civil District Court for the Parish of Orleans, State of Louisiana

17

DANE S. CIOLINO

158. *Williams v. Williamson*, No. 4:03-CV-88LN, United States District Court for the Southern District of Mississippi

159. *Washington v. Williamson*, No. 251-05-112 CIV, Circuit Court of Hinds County, State of Mississippi

160. *Wiener, Weiss & Madison, APLC v. Kantrow, Spaht, Weaver & Blitzer, APLC v. Fox*, No. 5:16-cv-850-SMH-KLH, United District Court for the Western District of Louisiana

161. *XL Specialty Insurance Co. v. Bollinger Shipyards, Inc.*, Civ. Action No. 12-2071, R-2, United States District Court for the Eastern District of Louisiana

162. *Zaumbrecher v. Garrity*, No. C-20130168 C, Fifteenth Judicial District Court for the Parish of Lafayette, State of Louisiana

**OTHER**

*Personal*

Age 54

Married to Wendy Dehan Ciolino

Children: Hale, Price & Camille

*Bar Admissions*

Supreme Court of the United States
State of Louisiana
State of New York
United States Court of Appeals for the Fifth Circuit Court
United States District Court for the Eastern District of Louisiana (New Orleans)
United States District Court for Western District of Louisiana (Shreveport)
United States District Court for the Southern District of New York (New York City)

*Dated*: Tuesday, October 16, 2018

FILED THIS 2̲9̲
DAY OF m̲a̲r̲, 20 1̲9̲
K̲a̲t̲t̲y̲ M̲e̲l̲a̲n̲i̲o̲n̲
Deputy Clerk of Court

18

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.:  CHRISTINE M. MIRE

# CITATION

**J CORY CORDOVA**                    **FIFTEENTH JUDICIAL DISTRICT COURT**

**VS**                                        **DOCKET NUMBER: C-20192019 D**

**LOUISIANA STATE UNIVERSTIY**          **PARISH OF LAFAYETTE, LOUISIANA**
**HEALTH SCIENCE CENTER, ET AL**

---

STATE OF LOUISIANA

TO:   LAFAYETTE GENERAL HOSPITAL,
      THROUGH ITS REGISTERED AGENT:
      GORDON E. ROUNTREE, JR.
      920 WEST PINHOOK
      LAFAYETTE, LA 70503

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

_Katty Melancon_
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

---

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE       MOVED ( )        NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____   MILEAGE $_____   TOTAL $_____
DEPUTY _____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:  LAFAYETTE GENERAL HOSPITAL,
     THROUGH ITS REGISTERED AGENT:
     GORDON E. ROUNTREE, JR.
     920 WEST PINHOOK
     LAFAYETTE, LA 70503

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
Witness the Honorable Judges of said Court, this APRIL 2, 2019.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____  TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____  MILEAGE $_____  TOTAL $_____
DEPUTY _____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.:  CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   LAFAYETTE GENERAL HOSPITAL,
      THROUGH ITS REGISTERED AGENT:
      GORDON E. ROUNTREE, JR.
      920 WEST PINHOOK
      LAFAYETTE, LA 70503

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____  TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE   (  )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____   MILEAGE $_____   TOTAL $_____
DEPUTY _____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   LAFAYETTE GENERAL HOSPITAL,
      THROUGH ITS REGISTERED AGENT:
      GORDON E. ROUNTREE, JR.
      920 WEST PINHOOK
      LAFAYETTE, LA 70503

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

_Katty Melancon_
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____   MILEAGE $_____   TOTAL $_____

DEPUTY _____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:  LAFAYETTE GENERAL HOSPITAL,
     THROUGH ITS REGISTERED AGENT:
     GORDON E. ROUNTREE, JR.
     920 WEST PINHOOK
     LAFAYETTE, LA 70503

of the Parish of Lafayette

    You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
    Witness the Honorable Judges of said Court, this APRIL 2, 2019.

_Katty Melancon_
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE         MOVED ( )         NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____  MILEAGE $_____  TOTAL $_____
DEPUTY _____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA                          FIFTEENTH JUDICIAL DISTRICT COURT

VS                                      DOCKET NUMBER: C-20192019 D

LOUISIANA STATE UNIVERSTIY              PARISH OF LAFAYETTE, LOUISIANA
HEALTH SCIENCE CENTER, ET AL

STATE OF LOUISIANA

TO:  LAFAYETTE GENERAL HOSPITAL,
     THROUGH ITS REGISTERED AGENT:
     GORDON E. ROUNTREE, JR.
     920 WEST PINHOOK
     LAFAYETTE, LA 70503

                              of the Parish of Lafayette

   You are hereby cited to comply with the demand contained in the petition, a certified copy of which
accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition
in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish
Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your
failure to comply herewith will subject you to the penalty of entry of default judgment against you.
   Witness the Honorable Judges of said Court, this APRIL 2, 2019.

                                        _____
                                        Deputy Clerk of Court
                                        Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

                         SHERIFF'S RETURN
                       LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE _____ MOVED ( ) _____ NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____ MILEAGE $_____ TOTAL $_____
DEPUTY _____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA                           FIFTEENTH JUDICIAL DISTRICT COURT

VS                                       DOCKET NUMBER: C-20192019 D

LOUISIANA STATE UNIVERSTIY               PARISH OF LAFAYETTE, LOUISIANA
HEALTH SCIENCE CENTER, ET AL

STATE OF LOUISIANA

TO:  LAFAYETTE GENERAL HOSPITAL,
     THROUGH ITS REGISTERED AGENT:
     GORDON E. ROUNTREE, JR.
     920 WEST PINHOOK
     LAFAYETTE, LA 70503

                                  of the Parish of Lafayette

    You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
    Witness the Honorable Judges of said Court, this APRIL 2, 2019.

                                  _____
                                  Deputy Clerk of Court
                                  Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

---

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE        MOVED ( )      NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____   MILEAGE $_____   TOTAL $_____
DEPUTY _____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

**J CORY CORDOVA**

VS

**LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**

**PARISH OF LAFAYETTE, LOUISIANA**

STATE OF LOUISIANA

TO:  LAFAYETTE GENERAL HOSPITAL,
     THROUGH ITS REGISTERED AGENT:
     GORDON E. ROUNTREE, JR.
     920 WEST PINHOOK
     LAFAYETTE, LA 70503

                                    of the Parish of Lafayette

     You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

     Witness the Honorable Judges of said Court, this APRIL 2, 2019.

                                    _____
                                    Deputy Clerk of Court
                                    Lafayette Parish

**\*Attached are the following documents:**
**PETITION FOR DAMAGES AND VERIFICATION**

---

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE  ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____   MILEAGE $_____   TOTAL $_____

DEPUTY _____

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 104

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

**J CORY CORDOVA**

VS

**LOUISIANA STATE UNIVERSTIY HEALTH SCIENCE CENTER, ET AL**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**

**PARISH OF LAFAYETTE, LOUISIANA**

STATE OF LOUISIANA

TO:  LAFAYETTE GENERAL HOSPITAL,
     THROUGH ITS REGISTERED AGENT:
     GORDON E. ROUNTREE, JR.
     920 WEST PINHOOK
     LAFAYETTE, LA 70503

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**PETITION FOR DAMAGES AND VERIFICATION**

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____  TIME: _____

SERVED: _____

PERSONAL (  ) _____

DOMICILIARY (  ) ON _____

UNABLE TO LOCATE        MOVED (  )        NO SUCH ADDRESS (  )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE   (  )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____   MILEAGE $_____   TOTAL $_____

DEPUTY _____

11245

LAFPC.CV.54964093
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:  GACHASSIN LAW FIRM,
     THROUGH ITS REGISTERED AGENT:
     NICHOLAS GACHASSIN, III
     200 CORPORATE BLVD., SUITE 103
     LAFAYETTE, LA 70508

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**PETITION FOR DAMAGES AND VERIFICATION**

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: 4-3 , 20 19  TIME: 1523

SERVED:

PERSONAL ( )

DOMICILIARY ( ) ON

UNABLE TO LOCATE    MOVED ( )    NO SUCH ADDRESS ( )

OTHER REASON: Gary Delahoussaye says petition

RECEIVED TOO LATE FOR SERVICE ( ) is incomplete

SERVICE OF WITHIN PAPERS

COSTS FEE $        MILEAGE $ 3.67  TOTAL $ 3.67

DEPUTY                    11245

RECEIVED
APR 03 2019
Lafayette Parish
Sheriff Office

Lafayette Parish Clerk of Court
Filed This Day

APR 0 8 2019

6.8

Incomplete w/out
Exhibits

Deputy Clerk of Court

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 106

*10088*

LAFPC.CV.54964069
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

---

STATE OF LOUISIANA

TO:  UNIVERSITY HOSPITAL AND CLINICS,
     THROUGH ITS REGISTERED AGENT:
     GORDON E. ROUNTREE, JR.
     920 WEST PINHOOK
     LAFAYETTE, LA 70503

                                        of the Parish of Lafayette

    You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

    Witness the Honorable Judges of said Court, this APRIL 2, 2019.

                                        _Katy Melancon_
                                        Deputy Clerk of Court
                                        Lafayette Parish

**\*Attached are the following documents:**
**PETITION FOR DAMAGES AND VERIFICATION**

---

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _4/4_, 20 _19_    TIME: _1205 hrs_

SERVED: _April (Legal)_

PERSONAL (✓) ON

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $ _30_      MILEAGE $ _1.84_      TOTAL $ _31.84_

DEPUTY _____

_10088_

RECEIVED
APR 02 2019
Lafayette Parish
Sheriff Office

3.4

Lafayette Parish Clerk of **Court**
Filed This Day

APR 0 9 2019

_Martina Okeany_
Deputy Clerk of Court

10088

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**

**PARISH OF LAFAYETTE, LOUISIANA**

STATE OF LOUISIANA

TO: LAFAYETTE GENERAL HOSPITAL,
THROUGH ITS REGISTERED AGENT:
GORDON E. ROUNTREE, JR.
920 WEST PINHOOK
LAFAYETTE, LA 70503

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which
accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition
in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish
Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your
failure to comply herewith will subject you to the penalty of entry of default judgment against you.
Witness the Honorable Judges of said Court, this APRIL 2, 2019.

Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: 4/4 , 20 19 TIME: 1205 hrs.
SERVED: April (Legal)
PERSONAL (✓)
DOMICILIARY ( ) ON
UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )
OTHER REASON:
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $ 30        MILEAGE $ 0        TOTAL $ 30
DEPUTY

A
RECEIVED
APR 02 2019
Lafayette Parish
Sheriff Office

10088

Lafayette Parish Clerk of Court
Filed This Day

APR 0 9 2019

Deputy Clerk of Court

LAFPC.CV.54964119
cc_kmmelancon
RECEIVED
APR 03 2019
LPSO

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA                          FIFTEENTH JUDICIAL DISTRICT COURT

VS                                       DOCKET NUMBER: C-20192019 D

LOUISIANA STATE UNIVERSTIY              PARISH OF LAFAYETTE, LOUISIANA
HEALTH SCIENCE CENTER, ET AL

STATE OF LOUISIANA

TO:   CHRISTOPHER JOHNSTON,
      **TO BE SERVED PERSONALLY**
      AT JOHNSTON LAW FIRM, LLC
      LOCATED AT
      7830 SAGE HILL ROAD
      SAINT FRANCISVILLE, LA 70775

                                   of the Parish of W. FELECIANA

     You are hereby cited to comply with the demand contained in the petition, a certified copy of which
accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition
in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish
Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your
failure to comply herewith will subject you to the penalty of entry of default judgment against you.
     Witness the Honorable Judges of said Court, this APRIL 2, 2019.

                                        _Katy Melancon_
                                        Deputy Clerk of Court
                                        Lafayette Parish

**\*Attached are the following documents:**
PETITION FOR DAMAGES AND VERIFICATION

_____

                    SHERIFF'S RETURN
                 LAFAYETTE PARISH SHERIFF

DATE SERVED: _4-5-_____, 20_19_   TIME: _09:30_
SERVED: _CHRISTOPHER JOHNSTON_
PERSONAL ( )
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE .    MOVED ( )    NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $ _30.00_   MILEAGE $ _2.70_   TOTAL $ _32.70_
DEPUTY _Michael Faulk_                   Lafayette Parish Clerk of Court
                                                 Filed This Day

                                         APR 12 2019

                                        _Martina O'Ray_
                                        Deputy Clerk of Court

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 109

WEST FELICIANA PARISH SHERIFF'S OFFICE
P.O. DRAWER 1844 • ST. FRANCISVILLE, LOUISIANA 70775
Telephone (225) 635-3241 • B. R. No. (225) 343-8337 • Fax (225) 635-6947

J. AUSTIN DANIEL
Sheriff & Ex-Officio Tax Collector

DATE   APRIL 8, 2019

TO: LOUIS J. PERRET - CLERK OF COURT

   POST OFFICE BOX 2009

   LAFAYETTE, LOUISIANA   70502-2009

                    RE: J CORY CORDOVA


                         VS   C-20192019 D

   LOUISIANA STATE UNIVERSITY HEALTH

   SCIENCE CENTER, ETAL


COST AS FOLLOWS:

   SERVICE:      $  30.00

   MILEAGE:         2.70

   NOTARY PUBLIC:   -0-

   TOTAL DUE:  $  32.70


       UPON RECEIPT OF PAYMENT, WE WILL FORWARD THE RETURNS:

122.75

LAFPC.CV.54964101
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSITY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

Lafayette Parish Clerk of Court
Filed This Day

TO: KRISTI ANDERSON,
**TO BE SERVED PERSONALLY**
AT UNIVERSITY HOSPITAL AND CLINICS
2390 WEST CONGRESS STREET
LAFAYETTE, LA 70506

APR 16 2019

Martina Reaux
Deputy Clerk of Court

DEPARTMENT OF INTERNAL MEDICINE BETWEEN THE HOURS OF 7:00AM-5:00PM

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
Witness the Honorable Judges of said Court, this APRIL 2, 2019.

Katy Melancon
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**PETITION FOR DAMAGES AND VERIFICATION**

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: 4-10-2019 , 20____ TIME: 1000

SERVED:

PERSONAL (XX Kristi _____

DOMICILIARY ( ) ON

UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )

OTHER REASON:

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $ 30    MILEAGE $ 1 13    TOTAL $ 31 13

DEPUTY _____ 12275

A
RECEIVED
APR 02 2019
Lafayette Parish
Sheriff Office

2.1 miles

LAFPC.CV.54964085
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSITY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:  DR. NICOLAS SELLS,
     **TO BE SERVED PERSONALLY**
     AT UNIVERSITY HOSPITAL AND CLINICS
     2390 WEST CONGRESS STREET
     LAFAYETTE, LA 70506

     DEPARTMENT OF INTERNAL MEDICINE BETWEEN THE HOURS OF 7:00AM-5:00PM

                    of the Parish of Lafayette

    You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
    Witness the Honorable Judges of said Court, this APRIL 2, 2019.

                                            _Katy melanun_
                                            Deputy Clerk of Court
                                            Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

---

                    SHERIFF'S RETURN
                  LAFAYETTE PARISH SHERIFF

DATE SERVED: 4-10-2019 , 20_____  TIME: 1000
SERVED: _____
PERSONAL (X) _hulls no_
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE _____ · MOVED ( )    NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $ 30   MILEAGE $ ____   TOTAL $ 30
DEPUTY _____ Jenard J 12795

                    2.1 miles

RECEIVED
APR 02 2019
Lafayette Parish
Sheriff Office

Lafayette Parish Clerk of Court
Filed This Day

APR 16 2019

_Martina Sheaup_
Deputy Clerk of Court

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 112

LAFPC.CV.54964077
cc_kmmelancon

Ordered by Atty.:  CHRISTINE M. MIRE

# CITATION

**J CORY CORDOVA**

VS

**LOUISIANA STATE UNIVERSTIY HEALTH SCIENCE CENTER, ET AL**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**

**PARISH OF LAFAYETTE, LOUISIANA**

STATE OF LOUISIANA

TO:   DR. KAREN CURRY,
      **TO BE SERVED PERSONALLY**
      **AT UNIVERSITY HOSPITAL AND CLINICS**
      **2390 WEST CONGRESS STREET**
      **LAFAYETTE, LA 70506**

      **DEPARTMENT OF INTERNAL MEDICINE BETWEEN THE HOURS OF 7:00AM-5:00PM**

      of the Parish of Lafayette

   You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
   Witness the Honorable Judges of said Court, this APRIL 2, 2019.

                                    Deputy Clerk of Court
                                    Lafayette Parish

**\*Attached are the following documents:**
**PETITION FOR DAMAGES AND VERIFICATION**

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _4-10-2015_ , 20____  TIME: _1000_
SERVED: _____
PERSONAL ( ) _Kare Curry_
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE          MOVED ( )        NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  (  )
SERVICE OF WITHIN PAPERS
COSTS FEE $ _30_   MILEAGE $ ___   TOTAL $ _30_
DEPUTY _____ 12275

2. 1 miles

A
RECEIVED
APR 02 2019
Lafayette Parish
Sheriff Office

Lafayette Parish Clerk of Court
Filed This Day

APR 16 2019

Deputy Clerk of Court

△▽△  CHRISTINE M. MIRE
      ATTORNEY AT LAW

FAMILY LAW & TRIAL PRACTICE


55073340

CLERK OF COURT
LAFAYETTE PARISH, LA
2019 APR 22  AM 8: 15

April 17, 2019

Clerk of Court
Lafayette Parish
P.O. 2009
Lafayette, LA 70502

RE:   *J. Cory Cordova v. Louisiana State University Health*
      *Science Center, et al.*
      15th JDC-Lafayette Parish
      Docket No.: 2019-2019, Div. "D"

Dear Madam/Sir:

Please serve defendant, Gachassin Law Firm, with the previously filed Petition for Damages with all Exhibits at their address listed below:

Gachassin Law Firm
Through their Registered Agent: Nicholas Gachassin
200 Corporate Boulevard, Ste. 103
Lafayette, LA 70508

Please do not hesitate to contact our office should you have any questions or concerns.

Best regards,

*Christine M. Mire*

CHRISTINE M. MIRE

CMM/cmb



2480 YOUNGSVILLE HIGHWAY, SUITE C  •  YOUNGSVILLE, LOUISIANA 70592
TEL: (337) 573-7256 • FAX: (337) 205-8699 • cmmire@gmail.com

Recording
# 2019-00012196

STATE OF LOUISIANA
FIFTEENTH JUDICIAL DISTRICT COURT
ACADIA, LAFAYETTE and VERMILION PARISHES

**CLOSURE ORDER for**
**ACADIA, LAFAYETTE and VERMILION PARISH COURTHOUSES**
**Thursday, April 18, 2019**

Acting in accordance with Louisiana Constitution Article V, Section I, the inherent power of this Court, and La. R.S. 1:55(E)(2) and considering the inclement weather conditions in all parishes of the Fifteenth Judicial District,

IT IS HEREBY ORDERED that the Acadia, Lafayette and Vermilion Parish Courthouses shall be closed for the remainder of this business day, April 18, 2019, beginning at 1:00 p.m.  The parish courthouses will remain closed on Friday, April 19, 2019, in observance of the Good Friday holiday.   All parish courthouses will reopen for business as usual on Monday, April 22, 2019.

SIGNED IN CHAMBERS at Lafayette, Louisiana, this 18th day of April 2019, at 11:30 a.m.

HON. MARILYN CASTLE
DISTRICT JUDGE

FILED THIS 18
DAY OF _____, 20 19
_____
Deputy Clerk of Court

**ROUTING SHEET**

```
55201644
```

DOCKET NO. 20192019

ATTORNEY Christine More

DATE PLEADING CLOCKED IN 4·22·19

| DESCRIPTION | QTY | DESCRIPTION | QTY |
|---|---|---|---|
| CERT COPY STAMP (NOT RECORDED) | 21 | LETTER – ADDRESS REQUEST | |
| CERT MAIL/RETURN RECEIPT | | LETTER – CERT OF DIVORCE | |
| CITATION | | LETTER – COMM OF INS | |
| CITATION-NTC OF JMT | | LETTER – GENERAL RETURN | |
| CONFORMED GROUP | | LETTER – JURY ORDER | |
| COPIES (# OF PAGES) | 95 | LETTER – NTC OF SIGNING OF JMT | |
| FAX OUTGOING | | NTC OF HEARING | |
| INDEX OF NAMES (ABOVE 10) | | RULE NISI | |
| JMT FEE (EACH DEF NO SS#) | | SUBPOENA | |
| JMT RECORDED (CON # OF PAGES) | | SUB DT | |
| JMT RECORDED (MTG # OF PAGES) | | TRO | |
| JMT RECORDED (BOTH # OF PAGES) | | TRO RECORDED | |
| CERT COPY OF RECORDED DOCUMENT | | WRIT OF | |
| | | | |
| | | | |
| | | | |
| | | | |

PROCESSED BY _____   CHARGED BY _____

COMMENTS_____

_____

_____

_____

_____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.:  CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   LAFAYETTE GENERAL HOSPITAL,
      THROUGH ITS REGISTERED AGENT:
      GORDON E. ROUNTREE, JR.
      920 WEST PINHOOK
      LAFAYETTE, LA 70503

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____  TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE  ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____   MILEAGE $_____   TOTAL $_____

DEPUTY _____





**GIBSON**
**LAW**
**PARTNERS**
ATTORNEYS AT LAW

April 23, 2019

Louis J. Perret                                                                 Via Hand Delivery
Lafayette Parish Clerk of Court
800 South Buchanan Street
Lafayette, LA 70501

Re:    J. Cory Cordova, M.D. v. Louisiana State University Health Science Center, et al
       Docket No. 2019-2019-D, 15th JDC

Dear Mr. Perret:

Enclosed herewith for fax filing on behalf of the defendants, University Hospital & Clinics, Inc.
and Lafayette General Medical Center, Inc., are:

       (1) Dilatory Exceptions of Vagueness and Nonconformity of the Petition with La. C.C.P. Art.
           891, Memorandum in Support of Dilatory Exceptions of Vagueness and Nonconformity of
           the Petition with La. C.C.P. Art. 891 and proposed Order; and
       (2) Request for Notice of Trial Date, Etc.

Please present same to Judge Rubin for consideration, have the exceptions set for hearing, served
as indicated, and notify me of the dates and types of service.  I am enclosing a copy of the pleadings
for service.

With best wishes, I remain

Very truly yours,

James H. Gibson
Stacy N. Kennedy
Direct Dial # 337-761-6025
Fax # 337-761-6061
Email: jimgibson@gibsonlawpartners.com
Email: stacykennedy@gibsonlawpratners.com
Enclosure
cc:    Judge Edward D. Rubin (Via U.S.Mail)               STAMPED COPY GIVEN
       Jacques F. Bezou, Sr./Jacques F. Bezou, Jr. (Via Email)
       Christine M. Mire (Via Email)

2448 Johnston Street - P.O. Box 52124 (70505) Lafayette, LA 70503
Telephone: 337-761-6023 Facsimile: 337-761-6061



55197651

| | | |
|---|---|---|
| J. CORY CORDOVA, M.D. | : | 15TH JUDICIAL DISTRICT COURT |
| VERSUS | : | DOCKET NO. 2019-2019, DIV. "D" |
| | : | |
| LOUISIANA STATE UNIVERSITY | : | PARISH OF LAFAYETTE |
| HEALTH SCIENCE CENTER, | : | |
| UNIVERSITY HOSPITAL AND CLINICS, | : | STATE OF LOUISIANA |
| KAREN CURRY, M.D., | : | |
| NICHOLAS SELLS, M.D., | : | |
| KRISTI ANDERSON, | : | |
| CHRISTOPHER T. JOHNSTON, and | : | |
| THE GACHASSIN LAW FIRM | : | |

CLERK OF COURT
LAFAYETTE PARISH, LA.
2019 APR 23 PM 2:38

## DILATORY EXCEPTIONS OF VAGUENESS AND NONCONFORMITY OF THE PETITION WITH LA. C.C.P. ART. 891

NOW INTO COURT, through undersigned counsel, come and appear Defendants, UNIVERSITY HOSPITAL & CLINICS, INC. and LAFAYETTE GENERAL MEDICAL CENTER, INC. (erroneously identified as "Lafayette General Hospital"), who except to Plaintiff's Petition for Damages on the basis of vagueness and nonconformity of the Petition with Louisiana Code of Civil Procedure Article 891, all for the reasons more fully set forth in the attached memorandum.

In support of these Exceptions, Defendants submit and introduce Plaintiff's Petition for Damages attached hereto and marked **Exhibit 1**.

WHEREFORE, the premises considered, Defendants, UNIVERSITY HOSPITAL & CLINICS, INC. and LAFAYETTE GENERAL MEDICAL CENTER, INC. (erroneously identified as "Lafayette General Hospital"), respectfully request that Plaintiff, J. Cory Cordova, M.D., appear and show cause on a date and time assigned by this Honorable Court why the Dilatory Exceptions of Vagueness and Nonconformity of the Petition with La. C.C.P. Art. 891 should not be sustained, ordering Plaintiff to amend his Petition for Damages to cure the defects by a deadline to be set by this Court, subject to dismissal with prejudice for Plaintiff's noncompliance with same, and for all general and equitable relief.

1

Respectfully submitted,

GIBSON LAW PARTNERS, LLC

JAMES H. GIBSON – 14285
STACY N. KENNEDY -23619
2448 Johnston Street
Lafayette, LA 70503
P.O. Box 52124
Lafayette, LA 70505
Telephone: 337-761-6023
Facsimile: 337-761-6061
jimgibson@gibsonlawpartners.com
stacykennedy@gibsonlawpartners.com
Attorneys for UNIVERSITY HOSPITAL &
CLINICS, INC. and LAFAYETTE GENERAL
MEDICAL CENTER, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has this day been served on

all parties through their counsel of record in this proceeding by:

( )  Hand Delivery        ( )  Prepaid U.S. Mail          (x)  Email

( )  Facsimile            ( )  Overnight Mail Service

Lafayette, Louisiana, this 23rd day of April, 2019.

STACY N. KENNEDY

FILED THIS _23_
DAY OF _April_ 20 _19_
_Brittany Bearb_
Deputy Clerk of Court

2

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 120

rec'd 4/4/19

55197735
LAFPC.CV.54964069
cc_kmmelancon

Ordered by Atty.:  CHRISTINE M. MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   UNIVERSITY HOSPITAL AND CLINICS,
       THROUGH ITS REGISTERED AGENT:
       GORDON E. ROUNTREE, JR.
       920 WEST PINHOOK
       LAFAYETTE, LA 70503

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____   TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE  (  )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____   MILEAGE $_____   TOTAL $_____

DEPUTY _____

FILED THIS __23__

DAY OF __April__ 20 __19__

Deputy Clerk of Court

*EXHIBIT 1*

DEP. $2,200⁰⁰
MC

CLERK OF COURT
LAFAYETTE PARISH, LA.

2019 MAR 29 PH 2: 52

New Suit
MC

15th JUDICIAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE

STATE OF LOUISIANA

DIV. "D" DIVISION

DOCKET NO.

2019 2019

D

J. CORY CORDOVA, M.D.

VERSUS

LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER; UNIVERSITY
HOSPITAL AND CLINICS; KAREN CURRY, M.D., NICHOLAS SELLS, M.D., KRISTI
ANDERSON, CHRISTOPHER C. JOHNSTON, and THE GACHASSIN LAW FIRM

FILED:_____       DEPUTY CLERK:_____

PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel comes Petitioner, Dr. J. Cory
Cordova who respectfully avers:

INDEXED

1.

Petitioner, Dr. J. Cory Cordova, is a person of the full age of majority domiciled in
Lafayette Parish, Louisiana.

2.

Made Defendants herein are: Louisiana State University Health Science Center
("LSUHSC"), a state agency; University Hospital and Clinics ("UHC") located in Lafayette
Parish, Louisiana; Lafayette General Hospital ("LGH") whose principal place of business is
located in Lafayette Parish, Louisiana; Dr. Karen Curry, in her individual and official capacities,
domiciled in Lafayette Parish, Louisiana; Dr. Nicolas Sells, in his individual and official
capacities, domiciled in Lafayette Parish, Louisiana; Kristi Anderson, in her individual and official
capacities; domiciled in Lafayette Parish, Louisiana; Christopher C. Johnston domiciled in West
Feliciana Parish and the Gachassin Law Firm whose principal place of business is in Lafayette
Parish.

3.

Venue is proper in this Court pursuant to Articles 42, 73 and 74 of the Louisiana Code of
Civil Procedure.

1

*EXHIBIT 1*



<u>ACTS OF DEFENDANTS LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, UNIVERSITY HOSPITAL AND CLINICS, KAREN CURRY, M.D., NICOLAS SELLS, M.D. and KRISTI ANDERSON</u>

4.

The Defendants, Louisiana State University Health Science Center ("LSUHSC"), University Hospital and Clinics ("UHC") Lafayette General Hospital ("LGH"), Dr. Karen Curry, Dr. Nicolas Sells, and Kristi Anderson are jointly and severally for damages resulting from various violations of LSUHSC's policies and procedures that occurred while Petitioner, Dr. Cordova, was a first-year Internal Medicine resident at University Hospital and Clinics in Lafayette, Louisiana.

5.

Dr. Cordova entered into a contract with Defendants to be a "House Officer," i.e. a resident, at UHC in the Internal Medicine Department from July 1, 2017 through June 30, 2018. This term was to be Dr. Cordova's first-year of his residency.

6.

Pursuant to LSUHSC's relationship with the Accreditation Council for Graduate Medical Education (ACGME), Dr. Cordova's contract with the Defendants includes an agreement to follow established formal grievance procedures for any "action which result[s] in dismissal or could significantly threaten a House Officer's intended development." These complaint and grievance procedures are detailed in the House Officer Manual ("HOM").

7.

At all relevant times, Defendant Dr. Karen Curry served as Dr. Cordova's Program Director at UHC Internal Medicine; Defendant Dr. Nicholas Sells as the UHC Medicine Department Head/Section Chief; and Dr. James B. Falterman as the Associate Dean for Academic Affairs.

8.

From June 2017 through the beginning of November 2017, Dr. Cordova was consistently rated "Experienced/Competent, Ready for Unsupervised Practice and Aspirational Expert."

2

*EXHIBIT 1*

9.

However, Dr. Cordova was, without *any* prior preliminary intervention pursuant the HOM, placed on a probationary period from November 10, 2017 through February 28, 2018. On February 15, 2018, Defendant Dr. Sells informed Dr. Cordova that his contract for the following year would not be renewed due to Dr. Sells' action on a Request for Adverse Action filed by Defendant Dr. Curry.

10.

The manner in which the Defendants imposed unwarranted discipline upon Dr. Cordova without guaranteed Due Process as mandated by Dr. Cordova's contract and the LSUHSC'S HOM violated both Dr. Cordova's contract and his constitutional Due Process rights.

11.

On November 10, 2017, Dr. Curry stated that the Clinical Competency Committee had reviewed his resident performance and recommended that he be placed on probation. Dr. Curry advised that if Dr. Cordova did not comply with the terms of remediation during probation, his contract was at risk for nonrenewal. The probationary period was from November 10, 2017 until February 28, 2018. Dr. Curry began implementing a remediation plan.

12.

However, the Clinical Competency Committee did not issue a recommendation until the following month or on or about December 15, 2017 when they issued a remediation plan to Dr. Cordova via email. The Clinical Competency Committee's remediation plan differed from the one imposed by Dr. Curry.

13.

Moreover, during the November 10, 2017 meeting, Dr. Cordova was told by Dr. Curry that the probation would not be a part of Dr. Cordova's academic record.

14.

On February 1, 2018, despite the fact that the probationary and remediation period had not yet expired and the fact that Dr. Cordova was told by members of the Clinical Competency Committee that he was properly remediating pursuant to the plan, Dr. Cordova was notified by Dr. Sells that Dr. Curry filed a Request for Adverse Action ("RFAA"). This action by Dr. Curry

3

*EXHIBIT 1*

initiated proceedings that could result in immediate termination or non-renewal of Dr. Cordova's contract. Dr. Cordova was at this time provided for the first time the RFAA.

15.

Upon review, it was immediately apparent that the RFAA failed to meet the promulgated due process requirements for four (4) mutually exclusive reasons.

16.

First, Dr. Sells made the decision to support the conclusion of Dr. Curry's Request for Adverse Action before any challenge or response could be made by Dr. Cordova. According to the HOM, when a RFAA is filed, the Department Head shall determine if the "charges registered against the House officer appear to be supportable on their face." LSUHSC HOM. Due Process prohibits the Department Head from reaching any conclusions without providing the Resident an opportunity to challenge the accusations in the RFAA.

17.

In the February 1, 2018 meeting with Dr. Cordova, Dr. Sells stated that he actually supported Dr. Curry's conclusions: "After hearing one side and reviewing what has been submitted, I support that letter based on what I've read, I support that request and you'll get a copy of that." Thus, Dr. Sells indicated he had already made his decision without affording Dr. Cordova any opportunity to respond as required by the HOM, his contract, and due process.

18.

Second, the RFAA was initiated by a member of the faculty (Dr. Karen Curry) that the department head (Dr. Nicholas Sells) admitted lacked objectivity. Dr. Sells admitted to Dr. Cordova after the nonrenewal decision that Dr. Curry was not objective and formed opinions about Dr. Cordova early on. This lack of objectivity observed by Dr. Sells violates ACGME requirements found in Section V(A)(2)(b)(1) and the due process requirements found in Section II (A)(4)(l) of the HOM.

19.

Despite Dr. Curry's lack of objectivity, Dr. Curry did not consult the Clinical Competency Committee regarding her recommendation that Dr. Cordova's contract to be terminated and/or nonrenewed as required by the House Officer Manual and the ACGME.

4

*EXHIBIT 1*

20.

This failure of the program director to exercise appropriate objectivity and/or to request a recommendation of the Clinical Competency Committee violated Petitioner's procedural and substantive due process rights.

21.

Third, Dr. Curry's RFAA referenced numerous attached exhibits allegedly supporting the accusations therein. However, none of these exhibits were actually attached to Dr. Curry's RFAA. Upon information and belief, Dr. Sells made his February 1, 2018 decision without reviewing any of these alleged exhibits.

22.

In fashioning his challenge to the RFAA, Dr. Cordova requested a copy of the alleged exhibits. The purpose of this request was twofold: rather than merely relying on Dr. Curry's summary of what these exhibits contained, (1) Dr. Cordova could have actual sufficient notice of the allegations against him; (2) and the ability to review and meaningfully respond to the allegations.

23.

Dr. Cordova, in his challenge to the RFAA, specifically reserved any and all Due Process rights to supplement his response once he was provided the exhibits. These exhibits were never provided to Dr. Cordova subsequent to his challenge being filed, prior to Dr. Sells' decision regarding nonrenewal of Dr. Cordova's contract, or even to this date after numerous months of subsequent requests from Dr. Cordova and his counsel.

24.

Fourth, as required by the HOM, Dr. Curry's Request for Adverse Action failed to give a "brief statement of the nature of testimony to be given by each witness."

25.

Upon Dr. Cordova's review and investigation into the allegations contained in the RFAA, he found that the allegations were either grossly exaggerated or patently false.

5

*EXHIBIT 1*

26.

On February 8, 2018, Dr. Cordova filed a challenge to the RFAA with Dr. Sells, detailing his responses as best was possible without ever seeing the actual exhibits referenced. However, he specifically noted that he was unable to address all of the allegations due to having never been provided the exhibits to the RFAA. Accordingly, Dr. Cordova requested a copy of these exhibits so he could address the actual allegations and reserved his right to supplement his challenge upon the opportunity to review them.

27.

Without ever receiving these exhibits, Dr. Cordova received correspondence from Dr. Sells on February 15, 2018 notifying him that Dr. Curry's RFAA had been accepted and Dr. Cordova's contract would not be renewed.

28.

Upon information and belief, Dr. Sells never reviewed any exhibits referenced in the RFAA prior to making a final determination regarding nonrenewal of Dr. Cordova's contract.

29.

No hearing in front of an impartial committee where witnesses were presented to testify ever occurred.

30.

While still awaiting these exhibits to decide upon a course of action, on February 19, 2018, Dr. Cordova began looking at options to pursue his education at another residency training program. Dr. Cordova communicated that any decision not to further challenge his contract nonrenewal was predicated on the understanding that his privacy regarding the RFAA would be respected. Dr. Sells agreed to notify faculty of Dr. Cordova's request for privacy. There was never an acknowledgement or consent to discipline by Dr. Cordova.

31.

Dr. Cordova interviewed at the University of Alabama at Birmingham ("UAB"), Selma Family Medicine Program. Despite assurances from Dr. Sells about privacy of the RFAA, it was sent to UAB on March 14, 2018. When Dr. Cordova inquired into his privacy rights, he was told by Director of Graduate Medical Education, Kristi Anderson, that the documents had to be

6

*EXHIBIT 1*

produced or a statement that the file was incomplete would have to be included. Accordingly, Kristi Anderson required Dr. Cordova to sign a release to that information.

32.

On April 3, 2018, the LSU Family Medicine Residency Program in Alexandria, LA, another residency training program where Dr. Cordova interviewed sent a request to program director, Dr. Karen Curry. The program requested two (2) items: 1) PGY (Post Graduated Year) -1 Curriculum list of rotations; and 2) Statement with status of resident in good standing and statement of awareness of Dr. Cordova's interest in transitioning from Internal Medicine to Family Medicine. Rather than comply with the request, Dr. Curry replied:

> ACGME requires a summative competency-based performance evaluation on transferring residents and verification of previous educational experiences. Will you need this? If so, can you please send another release for those items?

33.

Although the ACGME requires a program director to obtain a summative competency-based performance evaluation, the program director of LSU Alexandria had not yet requested this information when Dr. Curry volunteered it. Moreover, the ACGME provisions requires that the faculty discuss any evaluation with the resident and further requires that the program must provide **objective** assessments of competence. Instead of following the ACGME requirements, Dr. Curry sent a Milestone Evaluation that Dr. Cordova had never reviewed. More importantly, the Milestone Evaluation was substandard and indicated that Dr. Cordova's skills on each of the areas of core competency was "Conditional on Improvement." (Said evaluation is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "A").

34.

Moreover, the evaluation was not a summation of Dr. Cordova's evaluations as required or requested. Alarmingly, this inappropriate and substandard evaluation was not requested, not objective, and effectively sabotaged Dr. Cordova's chances of transferring to another program.

35.

The medical residency training program also breached its contract with Dr. Cordova by failing to renew his contract although all conditions were met for renewal. Although Dr. Cordova completed his intern year successfully, his contract was not renewed.

7

*EXHIBIT 1*

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 128

36.

After the UAB and Alexandria programs received the inappropriate and incomplete documentation, Dr. Cordova knew that his chances of transferring were very slim. Dr. Cordova wrote a letter to Dr. Curry and Dr. Sells requesting that he be reinstated. On June 11, 2018, Dr. Sells advised Dr. Cordova that "you're going to get an intern certificate, but your program director has said that she no longer wants you in her program for obvious reasons." Dr. Cordova met the requirements of progression and should have been allowed to renew his contract. Moreover, the reasons why the program director no longer wanted Dr. Cordova in the program are not obvious to him. It is Dr. Cordova's firm belief that the bias formed by Dr. Curry was motivated by personal reasons rather than related to his competency as a doctor.

37.

Proof of the unprofessional manner in which all of these decisions were made is contained in a May 21, 2018 recorded conversation in which Dr. Sells states to Dr. Cordova that "Life is not a dick measuring contest. It's not about celebrating your size or what you can or cannot do with it...I'm proud of what little I've got." Although Dr. Cordova nervously laughs on the tape recording, he in no way initiated or welcomed this unprofessional and inappropriate conversation. Dr. Sells then goes on to discuss sex, the use of Cialis, and a penis pump in an unprofessional and inappropriate manner. In a separate recorded conversation, Dr. Sells made inappropriate comments that Dr. Cordova may be interested in pursuing a medical career in pharmaceutical sales because it would allow him to travel and be unfaithful to his wife.

38.

The recorded comments of Dr. Sells exemplifies the unprofessional and unfair work environment that Dr. Cordova and others within the program are forced to endure. Even the Director of Graduate Medical Education, Kristi Anderson, admitted that residents are fearful of retaliation. Other witnesses will also confirm the lack of professionalism, favoritism, and disparate treatment that some residents receive.

8

*EXHIBIT 1*

## CAUSES OF ACTION AS TO DEFENDANTS LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, UNIVERSITY HOSPITAL AND CLINICS, KAREN CURRY, M.D., NICOLAS SELLS, M.D. and KRISTI ANDERSON

### Violation of Due Process

39.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as is fully set-forth herein.

40.

The Fourteenth Amendment to the United States Constitution provides, in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." Similarly, Article I, Sec. 2 of the Louisiana Constitution provides that "No person shall be deprived of life, liberty, or property, except by due process of law." Due process necessitates a hearing where a party can fully and meaningfully contest the allegations being made against him or her that serve as a basis for deprivation of their property interests. *See Bd. Of Regents v. Roth*, 408 U.S. 564, 574-75 (1972).

41.

The Louisiana Supreme Court has concluded that residents possess a due process "property" and/or "liberty" in their positions and potential for future earnings. *See Driscoll v. Stucker*, 04-0589 (La. 01/19/05); 893 So.2d 32, 41-43. When a resident is deprived of due process in these situations, he is entitled to all loss of wages resulting from that denial. *Id.* at 52-54.

42.

The above-actions of the Defendants violated Dr. Cordova's due process rights established in the federal and state constitutions. Indeed, in an analogous case, the Louisiana Supreme Court found that LSUHSC's act of withholding documents despite continued requests, as the Defendants did here with the exhibits to the RFAA, constituted a denial of due process. *Id.* at 48.

### Breach of Contract

43.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as if fully set-forth herein.

9

*EXHIBIT 1*

44.

"Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation." La. C.C. art. 1759. "An obligor is liable for the damages caused by his failure to perform a conventional obligation." La. C.C. art. 1994. Both pecuniary and nonpecuniary interests may be recovered.

45.

The House Officer Agreement of Appointment contract entered into by Dr. Cordova and Defendants mandated that any action by the Defendants that could "result in dismissal or could significantly threaten a House Officer's intended career development" follow the due process procedures of the HOM. The above-actions of the Defendants breached their contractual duties to Dr. Cordova.

46.

On November 6, 2018, Dr. Cordova appealed the adverse decision of "LSU" in writing, but said defendants ignored the appeal, in further violation of his rights. (Said appeal is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "B").

### ACTS OF CHRISTOPHER C. JOHNSTON AND GACHASSIN LAW FIRM

47.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as if fully set-forth herein.

48.

On or about February 5, 2018 plaintiff, Cordova, formally retained the services of defendant, Christopher C. Johnston, a partner in the defendant, Gachassin Law Firm for advice and assistance to contest the false allegations contained in the adverse action instituted against Cordova by the aforementioned "medical" defendants, and to ensure that the adverse action did not affect Cordova's ability to complete his residency training. (Said engagement letter is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "C").

10

*EXHIBIT 1*

49.

At no time during the representation by Mr. Johnston, did Johnston reveal that Johnston and the Gachassin Law Firm also represented Lafayette General Medical Center (who is in partnership with LSU/USC), Dr. Nicholas Sells (the chief of internal medicine), and Dr. James Falterman (the academic dean).  Dr. Sells and Dr. Falterman were the top decision makers regarding the adverse action and were potential adverse witnesses against Dr. Cordova in the adverse action proceedings mentioned above.

50.

After defendant Johnston began representing Dr. Cordova in the disciplinary proceedings, Dr. Cordova noticed that Johnston was not very aggressive in his defense against the adverse action.  Also, defendant Johnston encouraged Dr. Cordova not to be aggressive in his approach and to "keep his mouth shut because it would make things worse".  In fact, Johnston's exact words were "don't complain about the food while you are in prison."

51.

When Dr. Cordova questioned Defendant, Johnston about litigating the matter, Johnston revealed for the first time that his firm represented Drs. Sells and Falterman and Lafayette General Hospital. Said conflict was not revealed to Dr. Cordova by Mr. Johnston until July 27, 2018, six months into the representation.

52.

On October 29, 2018, Plaintiff hired new counsel who advised him that his prior counsel may have had a conflict of interest. At that point, Dr. Cordova retained professor Dane Ciolino, who wrote the attached advisory opinion, concluding that defendants, Johnston and Gachassin had violated rules 1.7 and 1.10 in representing Dr. Cordova in a disciplinary matter adverse to LSU/UHC, Lafayette General and members of the UHC administration, who they also represented. (Said opinion of Professor Ciolino is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "D")

11

*EXHIBIT 1*

53.

Upon information and belief, defendants Johnston and Gachassin Law Firm knew of the

conflict existing between Dr. Cordova and their other existing clients yet chose to remain silent

until after Dr. Cordova had suffered great loss.

## FIRST CAUSE OF ACTION-DISGORGEMENT OF LEGAL FEES FOR CONFLICT OF INTEREST

54.

Plaintiff incorporates by reference and re-alleges the allegations contained in the

paragraphs above, as if fully set-forth herein.

55.

Due to the ethical violations enumerated above, all legal fees paid in the underlying matter

to defendants, Johnston and Gachassin, should be disgorged and defendants should be ordered to

return same.  Further all legal fees incurred by Plaintiff in an attempt to mitigate his damages are

recoverable herein.

## SECOND CAUSE OF ACTION-LEGAL MALPRACTICE

56.

Plaintiff incorporates by reference and re-alleges the allegations contained in the

paragraphs above as if fully set-forth herein.

57.

Defendants, Johnston and Gachassin, breached duties owed to Dr. Cordova as his attorneys

including, but not limited to communication, honesty and corresponding and failed to exercise the

proper standard of care as outlined above in violation of the Louisiana Rules of Professional

Conduct.  In fact, Louisiana Courts consider the Rules of Professional conduct to have the full

force and effect of substantive law. See *Schlesinger v. Herzog*, 672 So. 2d 701, 707 (La. Ct. App.

4th Cir. 1996); *Dazet Mortgage Solution LLC v. Faia*, 116 So. 3d 711, 716 (La. App. Ct. 5th Cir.

2013).

12

*EXHIBIT 1*

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 133

58.

As a result of the breaches of Defendants, Johnston and Gachassin, Dr. Cordova has suffered damages, including but not limited to the loss of a year of residency, loss of income, loss of standing in the community, damage to reputation, all additional attorney fees, and all other equitable relief to remedy the malpractice of said defendants.

59.

Said defendants' breaches and negligence were the proximate cause of Dr. Cordova's damages.

60.

All defendants named herein are jointly and solidarily liable and upon information and belief, they worked together in violation of duties and responsibilities owed to Plaintiff herein to cause him loss.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, J. Cory Cordova, M.D., prays that:

1.  Certified copies of this Petition be issued and served according to law on the Defendants, Louisiana State University Health Science Center, University Hospital and Clinics, Lafayette General Hospital, Dr. Karen Curry, Dr. Nicolas Sells, Kristi Anderson, Christopher C. Johnston and the Gachassin Law Firm;

2.  After legal delays and proceedings had, there be judgment against defendants, Louisiana State University Health Science Center, University Hospital and Clinics, Lafayette General Hospital, Dr. Karen Curry, Dr. Nicolas Sells, Kristi Anderson, Christopher C. Johnston and the Gachassin Law Firm and in favor of Plaintiff, Dr. J. Cory Cordova in such amounts as are just and reasonable;

3.  Removal of inappropriate information from Dr. J. Cory Cordova's academic records;

4.  Legal interest from date of judicial demand on all amounts awarded, and for all costs, expenses of these proceedings, and attorney's fees be granted;

13

*EXHIBIT 1*

5.  All necessary orders and decrees as may be required or proper in the premises and for full, general, and equitable relief; and

6.  For trial by jury.

RESPECTFULLY SUBMITTED:

THE BEZOU LAW FIRM

**JACQUES F. BEZOU, SR. (3037)**
**JACQUES F. BEZOU, JR. (33728)**
**MATTHEW L. DEVEREAUX (32125)**
**ERICA A. HYLA (34603)**
THE BEZOU LAW FIRM
534 E. Boston Street
Covington, Louisiana 70433
Telephone:  (985) 892-2111
Facsimile:  (985) 892-1413
Jb2@bezou.com

AND

**CHRISTINE M. MIRE (29352)**
Attorney at Law
2480 Youngsville Hwy., Suite C
Youngsville, LA 70592
Telephone:  (337) 573-7254
Facsimile: (337) 205-8699
cmmire@gmail.com
*Attorneys for J. Cory Cordova, M.D*

**PLEASE SERVE:**

Louisiana State University Health Science Center, through its registered agent:  Matthew D. Altier, 2000 Tulane Avenue, 4th Floor, New Orleans, LA 70112

University Hospital and Clinics, through its registered agent: Gordon E. Rountree, Jr., 920 West Pinhook, Lafayette, LA 70503

Lafayette General Hospital, through its registered agent:  Gordon E. Rountree, Jr., 920 West Pinhook, Lafayette, LA 70503

Dr. Karen Curry, to be served personally at University Hospital and Clinics 2390 West Congress Street, Lafayette, LA 70506, Department of Internal Medicine between the hours of 7:00AM-5:00PM

Dr. Nicolas Sells, to be served personally at University Hospital and Clinics 2390 West Congress Street, Lafayette, LA 70506, Department of Internal Medicine between the hours of 7:00AM-5:00PM

A TRUE COPY ATTEST
Lafayette, La.
DY. CLERK OF COURT

14

FILED THIS
DAY OF _____, 20___
Deputy Clerk of Court
*EXHIBIT 1*

Kristi Anderson, to be served personally at University Hospital and Clinics 2390 West Congress Street, Lafayette, LA 70506, Department of Graduate Medical Education between the hours of 7:00AM-5:00PM

Christopher Johnston, to be served personally at Johnston Law Firm, LLC located at 7830 Sage Hill Road, Saint Francisville, LA 70775

Gachassin Law Firm, through its registered agent: Nicholas Gachassin, III, 200 Corporate Blvd., Suite 103, Lafayette, LA 70508

15

*EXHIBIT 1*

15ᵗʰ JUDICIAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE

STATE OF LOUISIANA

DOCKET NO.                                                          DIVISION

2019 2019                 J. CORY CORDOVA, M.D.                        D

VERSUS

LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER; UNIVERSITY
HOSPITAL AND CLINICS; KAREN CURRY, M.D., NICHOLAS SELLS, M.D.,
CHRISTOPHER JOHNSTON, and THE GACHASSIN LAW FIRM

FILED:_____        DEPUTY CLERK:_____

VERIFICATION

BEFORE ME, the undersigned authority personally came and appeared Plaintiff,

J. CORY CORDOVA, M.D.

who after being duly sworn, did depose and state that the foregoing Petition for Damages in the

above captioned matter is true and correct to the best of his knowledge and belief.

_____
J. CORY CORDOVA, M.D.

SWORN TO AND SUBSCRIBED before me this 29ᵀᴴ day of MARCH      2019.

_____
NOTARY PUBLIC

CHRISTINE M. MIRE (BAR ROLL # 29352)
MY COMMISSION EXPIRES @ DEATH

FILED THIS 23
DAY OF April 20 19
Brittany Bearb
Deputy Clerk of Court

A TRUE COPY ATTEST
Lafayette, La
Katy Melancon
DY. CLERK OF COURT

FILED THIS 29
DAY OF MAY , 20 19
Katy Melancon
Deputy Clerk of Court   EXHIBIT 1

16



| J. CORY CORDOVA, M.D. | : | 15TH JUDICIAL DISTRICT COURT |
|---|---|---|
| VERSUS | : | DOCKET NO. 2019-2019, DIV. "D" |
| LOUISIANA STATE UNIVERSITY | : | PARISH OF LAFAYETTE |
| HEALTH SCIENCE CENTER, | : | |
| UNIVERSITY HOSPITAL AND CLINICS, | : | STATE OF LOUISIANA |
| KAREN CURRY, M.D., | : | |
| NICHOLAS SELLS, M.D., | : | |
| KRISTI ANDERSON, | : | |
| CHRISTOPHER T. JOHNSTON, and | : | |
| THE GACHASSIN LAW FIRM | : | |

**MEMORANDUM IN SUPPORT OF DILATORY EXCEPTIONS
OF VAGUENESS AND NONCONFORMITY
OF THE PETITION WITH LA. C.C.P. ART. 891**

MAY IT PLEASE THE COURT:

Defendants, UNIVERSITY HOSPITAL & CLINICS, INC. (hereinafter "**UHC**") and

LAFAYETTE GENERAL MEDICAL CENTER, INC. (erroneously identified as "Lafayette

General Hospital") (hereinafter "**LGMC**"), respectfully submit this memorandum in support of

their exceptions of vagueness and nonconformity of the Petition with La. C.C.P. art. 891. Because

Plaintiff's sparse allegations against these defendants fail to allege sufficient particulars for UHC

and LGMC to prepare their defense, the exceptions should be sustained, ordering Plaintiff to amend

his petition within a deadline to be set by this Court, subject to dismissal with prejudice for failure

to comply with same.

**The Parties as Identified by the Petition**

Plaintiff's Petition for Damages spans 60 paragraphs over fourteen pages, but contains a

paucity of factual allegations regarding UHC and LGMC.[1]  Plaintiff's Petition also references the

following exhibits in support of his allegations, none of which were served with the Petition:

- *Exhibit A*, Milestone Evaluation referenced in Paragraph 33;

- *Exhibit B*, "appeal" of the "adverse decision of 'LSU' in writing" referenced in
  Paragraph 46;

- *Exhibit C*, engagement letter with Johnston/Gachassin Law Firm referenced in
  Paragraph 48; and

- *Exhibit D*, "opinion" of "Professor Ciolino" referenced in Paragraph 52.[2]

Plaintiff does not otherwise identify whether any of the foregoing exhibits pertain to or elucidate

his allegations against UHC and/or LGMC.

---

[1] Exhibit 1.
[2] *Id.*

1

Plaintiff identifies himself as a first-year Internal Medicine resident "at UHC" for July 1, 2017 through June 30, 2018, the time period at issue.[3]  Although never alleged, presumably Plaintiff was a graduate of Louisiana State University Health Sciences Center ("**LSUHSC**") School of Medicine.  LSUHSC is a named defendant, as are:

- UHC, identified as the facility where Plaintiff performed his residency;[4]

- LGMC (erroneously identified as "Lafayette General Hospital"), only identified as "in partnership with LSU/USC [sic]";[5]

- Dr. Karen Curry, identified as "Program Director at UHC Internal Medicine";[6]

- Dr. Nicholas Sells, identified as "UHC Medicine Department Head/Section Chief";[7]

- Kristi Anderson, identified as "Director of Graduate Medical Education";[8]

- Christopher C. Johnston, identified as an attorney retained by Plaintiff;[9] and

- Gachassin Law Firm, identified as Mr. Johnston's employer.[10]

Other than Mr. Johnston, Plaintiff does not identify the employers of the other individual defendants, although Drs. Curry and Sells are faculty and Ms. Anderson is Director of Graduate Medical Education of LSU School of Medicine.[11]  Other than alleging than that he attended the first year of his residency "at UHC," Plaintiff does not identify any relationship between UHC and the other defendants.  Similarly, despite claiming LGMC was "in partnership with LSU/USC [sic]," he does not identify any relationship between LGMC and the other defendants.  These bare allegations are insufficient for LGMC and UHC to prepare their defense in this matter.  Thus, Defendants' Exceptions should be sustained.

<u>**Law and Argument**</u>

I.    **The Law Regarding Exceptions of Vagueness and Nonconformity of the Petition with La. C.C.P. Art. 891**

Article 891 of the Louisiana Code of Civil Procedure requires that a plaintiff's petition contain a short, clear, and concise statement of all causes of action arising out of and the material

---

[3] **Exhibit 1 at ¶5.**
[4] *Id.* at ¶4.
[5] *Id.* at ¶49.
[6] *Id.* at ¶7.  Dr. Curry is LSU School of Medicine faculty, Program Director of Internal Medicine, https://residents.lsuhsc.edu/laf/medicaleducation/kcurryMD.aspx.
[7] *Id.*  Dr. Sells is LSU School of Medicine faculty, Section Chief of Department of Medicine, https://residents.lsuhsc.edu/laf/medicaleducation/nsellsMD.aspx.
[8] *Id.* at ¶31.  Ms. Anderson is Director of GME, Student Ombudsman, LSU School of Medicine, https://residents.lsuhsc.edu/laf/medicaleducation/gme_ombudsman.aspx.
[9] *Id.* at ¶48.
[10] *Id.* at ¶48.  The plaintiff does reference Dr. Curry as "a member of the faculty" and Dr. Sells as "the department head" in ¶18.
[11] Footnotes 7-9, *supra.*

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 139

facts of the transaction or occurrence that is the subject matter of the litigation.[12]  Accordingly, a plaintiff's petition must fairly inform the defendants of the nature of the cause of action and include sufficient substantive particulars to enable the defendants to prepare their defense.[13]

Similarly, the purpose of the objection of vagueness is to ensure that defendants are placed on notice of the nature of the facts sought to be proved.[14]  The exception enables defendants to identify the specific cause of action, thus preventing not only a trial by ambush but also future re-litigation of the cause of action after a judgment is obtained in the lawsuit.[15]  Therefore, the plaintiff must allege a sufficient factual background to provide the defendants with fair notice.[16]

In the absence of sufficient substantive particulars, the Third Circuit cautioned in *Snoddy v. City of Marksville*:

> [o]pen-ended allegations should be met with either an exception of vagueness or a motion to strike. By filing such, petitioner is placed on notice that she should specifically plead negligence and damages and that she cannot rely on general, open-ended allegations. Just as open-ended allegations do not fairly allow a defendant to form a defense, failure to object to them places the petitioner in the position that she may feel entitled to offer proof of "any and all negligence" as well as "any and all damages" at the trial on the merits. Either situation allows the unwary to fall into a trap. In the instant case, the open-ended allegations should be struck.[17]

Likewise, in *Robertson v. W. Carroll Ambulance Service Dist.*, the court noted:

> Under the fact pleading utilized in Louisiana, a party may be granted any relief to which he is entitled under the pleadings and the evidence so long as the facts constituting the claim are alleged. The petition must set forth the facts upon which recovery is based; otherwise the defendant would have neither adequate notice of the allegation nor an opportunity to counter the claim. Moreover, mere allegations of negligence cannot form the basis of a cause of action, which must be based on facts from which such conclusions may be drawn.[18]  (Internal citations omitted).

Plaintiff's lack of factual allegations pertaining to UHC and LGMC dictate that Defendants' Exceptions should be sustained.

**II.      Application of the Law to This Petition**

Plaintiff's Petition provides no factual background for his allegations against UHC and LGMC. The material facts of the transaction or occurrence that is the subject matter of the litigation as it pertains to UHC and LGMC are completely absent.  If UHC and LGMC cannot determine what Plaintiff contends they did wrong, they cannot prepare a defense.

---

[12] La. C.C.P. art. 891.
[13] *Gray v. State*, 05-617 (La. Ct. App. 3 Cir. 2/15/06), 923 So. 2d 812, 822.
[14] La. C.C.P. art. 926(5); *Vanderbrook v. Jean*, 06-1975 (La. Ct. App. 1 Cir. 2/14/07), 959 So. 2d 965, 968.
[15] *Id.*
[16] *Hargett v. Hargett*, 00-799 (La. Ct. App. 3 Cir. 12/6/00), 772 So. 2d 999, 1003.
[17] 97-327 (La. Ct. App. 3 Cir. 10/8/97), 702 So. 2d 890, 899.
[18] 39-331 (La. Ct. App. 2 Cir. 1/26/05), 892 So. 2d 772, 777-78.

3

Plaintiff alleges that he was a first year Internal Medicine resident at UHC during the events alleged and that his "contract" was not renewed due to failure to follow certain guaranteed procedures presumably resulting in damage.  Although Plaintiff's Petition appears to allege two causes of action against UHC and LGMC--violation of due process and breach of contract—he fails to provide adequate facts to implicate either defendant's involvement in the events at issue.  Without sufficient factual allegations, Plaintiff's Petition is impermissibly vague and violates Article 891.

Notably, the very caption of the case omits mention of LGMC as do the various headings in the body of the pleading.  The first heading at page 2 of the Petition subsumes Paragraphs 4-38.  The heading reads:  "ACTS OF DEFENDANTS LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, UNVERSITY HOSPITAL AND CLINICS, KAREN CURRY, M.D., NICHOLAS SELLS, M.D. and KRISTI ANDERSON."[19]  LGMC appears nowhere in this heading, but the very next paragraph indicates that the paragraphs in this section should be read as directed to LGMC.

The paragraph following the heading, Paragraph 4, *concludes* that "University Hospital and Clinics" and "Lafayette General Hospital" are "jointly and severally" liable for damages with the other listed defendants "for damages resulting from various violations of LSUHSC's policies and procedures that occurred while Petitioner, Dr. Cordova, was a first-year Internal Medicine resident at University Hospital and Clinics".[20]  Paragraph 4 is the only direct reference to LGMC in the 35 paragraphs of that section and it fails to allege any *facts* regarding LGMC.  UHC appears in Paragraphs 4, 5, and 7—three of the 35 paragraphs—as the teaching hospital where Plaintiff was a resident.  Plaintiff never identifies his relationship with LGMC or UHC or either facility's relationship with the other defendants upon which liability could be premised.  Nothing in the 35 paragraphs of that section demonstrate how Plaintiff arrives at the conclusion that LGMC and UHC are "jointly and severally" liable with LSUHSC, Drs. Curry and Sells or Ms. Anderson.

In Paragraph 10, Plaintiff concludes that "[t]he manner in which the Defendants imposed unwarranted discipline upon Dr. Cordova without guaranteed Due Process as mandated by Dr. Cordova's contract and the LSUHSC's HOM violated both Dr. Cordova's contract and his Constitutional due process rights."  Again, nothing in this section (Paragraphs 4-38) alleges the authority by which LGMC and/or UHC directed or impacted the plaintiff's residency.  Plaintiff

---

[19] **Exhibit 1** at p. 2.
[20] *Id.* at ¶4.

4

does not allege that his "House Officer" contract purportedly breached was with UHC or LGMC;[21] only that the contract was "with the Defendants."[22] He does not allege that UHC or LGMC were charged with administering the "complaint and grievance procedures" in the "House Officer Manual," or administered the "complaint and grievance procedures" in the "House Officer Manual" in a deficient manner depriving him of his Due Process rights.[23]

Similarly, Plaintiff points to Drs. Curry and Sells' positions with UHC and accuses them of imposing "unwarranted discipline," but never indicates whether their actions were empowered by a relationship with UHC (or even LGMC) as opposed to LSU School of Medicine. He does not allege UHC or LGMC's involvement with the "Clinical Competency Committee" or even identify the origin or composition of that body.[24] Nothing alleges how or by what authority LGMC and/or UHC imposed discipline on the plaintiff, or how LGMC and/or UHC had any involvement with LSUHSC's "House Officer Manual" or the rating of Plaintiff's performance. Moreover, the factually dense allegations in Paragraphs 16-24 pertaining to purported Due Process violations never reference UHC or LGMC.

The next section of the Petition bears the heading, "CAUSES OF ACTION AS TO DEFENDANTS LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, UNIVERSITY HOSPITAL AND CLINICS, KAREN CURRY, M.D., NICHOLAS SELLS, M.D. and KRISTI ANDERSON."[25] Once again, the heading does not reference LGMC. The eight paragraphs comprising this section, Paragraphs 39-46, are divided under the subtitles "Violation of Due Process" and "Breach of Contract."[26] Paragraphs 39-46 contain no specific allegations as to UHC and LGMC. Indeed, although referencing the "House Officer Agreement of Appointment contract" and alleging breach of contract, Plaintiff never identifies the party with whom he contracted or attach a copy of the contract allegedly breached.[27] Significantly, Plaintiff never alleges an employment or contractual relationship with UHC or LGMC.

In addition, with regard to purported Due Process violations, Plaintiff contends in Paragraph 42 that:

> The above-actions [sic] of the Defendants violated Dr. Cordova's due process rights established in the federal and state constitutions. Indeed, in an analogous case, the

---

[21] Exhibit 1 at ¶5.
[22] Id. at ¶6.
[23] Id. at ¶6. Indeed, at ¶¶10 and 16 Plaintiff references the HOM as being an LSUHSC document.
[24] Id. at ¶¶12, 13, 14. Perhaps the missing exhibits would shed light on the relationship presumed by Plaintiff's allegations or refute it entirely.
[25] Exhibit 1 at p. 9.
[26] Id.
[27] Id. at ¶45.

5

Louisiana Supreme Court found that LSUHSC's act of withholding documents despite continued requests, as the Defendants did here with the exhibits to the RFAA, constituted a denial of due process.

The "RFAA" or "Request for Adverse Action" is alleged to be a document filed by Dr. Curry and integral to the purported deprivation of Plaintiff's Due Process rights by failing to follow the procedure prescribed by LSUHSC's HOM in its handling.[28] Once again, however, Plaintiff does not specify which defendants comprise "the Defendants" violating his rights or identify any specific actions of UHC and LGMC.

Moreover, the case cited by Plaintiff as analogous, *Driscoll v. Stucker,* examined the liability and damages of *a medical school and its supervising doctor* that improperly caused the plaintiff resident to be ineligible to sit for a specialty board exam.[29] The hospital(s) where the plaintiff trained were glaringly absent from that case given the actions were taken by LSUHSC's Director and Chairman of the Residency Program and faculty.[30] Thus, while arguably analogous to some of the defendants, *Driscoll* has no bearing on UHC and LGMC.

Plaintiff's allegations are too vague and conclusory for UHC and LGMC to prepare their defense. Accordingly, Defendants' Exceptions should be sustained.

### Conclusion

Plaintiff's Petition for Damages contains a surfeit of conclusions regarding UHC and LGMC lacking any factual basis. Louisiana law requires the plaintiff's petition fairly inform the defendants of the nature of the cause of action and include sufficient substantive particulars to enable the defendants to prepare their defense. Although Plaintiff's Petition urges violation of due process and breach of contract causes of action against UHC and LGMC, he fails to provide any facts to implicate either defendant's involvement in the events at issue. UHC and LGMC cannot prepare a defense without notice of the nature of the facts sought to be proved by Plaintiff. Accordingly, the Exceptions of Vagueness and Nonconformity of the Petition with Article 891 should be sustained, ordering Plaintiff to amend his petition within a deadline to be set by this Court, subject to dismissal with prejudice for failure to comply with same.

---

[28] **Exhibit 1 at ¶¶14, 16-30.**
[29] 2004-0589 (La. 1/19/05), 893 So. 3d 32.
[30] *Id.*

6

Respectfully submitted,

GIBSON LAW PARTNERS, LLC

JAMES H. GIBSON – 14285
STACY N. KENNEDY -23619
2448 Johnston Street
Lafayette, LA 70503
P.O. Box 52124
Lafayette, LA 70505
Telephone:  337-761-6023
Facsimile:  337-761-6061
jimgibson@gibsonlawpartners.com
stacykennedy@gibsonlawpartners.com
Attorneys for UNIVERSITY HOSPITAL &
CLINICS, INC. and LAFAYETTE GENERAL
MEDICAL CENTER, INC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has this day been served on

all parties through their counsel of record in this proceeding by:

( )   Hand Delivery      ( )   Prepaid U.S. Mail          (x)   Email

( )   Facsimile          ( )   Overnight Mail Service

Lafayette, Louisiana, this 23rd day of April, 2019.

STACY N. KENNEDY

FILED THIS 23
DAY OF April 20 19
Buttany Bearb
Deputy Clerk of Court

7

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 144

55197810

| | | |
|---|---|---|
| J. CORY CORDOVA, M.D. | : | 15TH JUDICIAL DISTRICT COURT |
| | : | |
| VERSUS | : | DOCKET NO. 2019-2019, DIV. "D" |
| | : | |
| LOUISIANA STATE UNIVERSITY | : | PARISH OF LAFAYETTE |
| HEALTH SCIENCE CENTER, | : | |
| UNIVERSITY HOSPITAL AND CLINICS, | : | STATE OF LOUISIANA |
| KAREN CURRY, M.D., | : | |
| NICHOLAS SELLS, M.D., | : | |
| KRISTI ANDERSON, | : | |
| CHRISTOPHER T. JOHNSTON, and | : | |
| THE GACHASSIN LAW FIRM | : | |

## ORDER

Considering the foregoing Dilatory Exceptions of Vagueness and Nonconformity of the Petition with La. C.C.P. Art. 891 filed by Defendants, UNIVERSITY HOSPITAL & CLINICS, INC. and LAFAYETTE GENERAL MEDICAL CENTER, INC. (erroneously identified as "Lafayette General Hospital"):

IT IS ORDERED that Plaintiff, J. CORY CORDOVA, M.D., show cause on the _24th_ day of _June_, 2019 at _10:00_ o'clock _A_.m. why the Exceptions should not be sustained, ordering Plaintiff to amend his Petition for Damages to cure the defects by a deadline to be set by this Court, subject to dismissal with prejudice for Plaintiff's noncompliance with same, all at Plaintiff's sole cost.

SIGNED in Lafayette, Louisiana, this _24_ day of _April_, 2019.

_[signature]_

HONORABLE EDWARD D. RUBIN
DISTRICT COURT JUDGE

THOMAS J FREDERICK
COMMISSIONER, 15th JDC

**PLEASE SERVE:**

J. CORY CORDOVA,
Through his counsel of record:
Jacques F. Bezou, Sr.
Jacques F. Bezou, Jr.
THE BEZOU LAW FIRM
534 E. Boston Street
Covington, LA 70433
Phone: 985-892-2111

Christine M. Mire
2480 Youngsville Highway, Suite C
Youngsville, LA 70592
Phone: 337-573-7254

FILED THIS _24_
DAY OF _April_ 20 _19_
_Brittany Beard_
Deputy Clerk of Court

1

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 145

| | |
|---|---|
| J. CORY CORDOVA, M.D. | 15TH JUDICIAL DISTRICT COURT |
| VERSUS | DOCKET NO. 2019-2019, DIV. "D" |
| LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, UNIVERSITY HOSPITAL AND CLINICS, KAREN CURRY, M.D., NICHOLAS SELLS, M.D., KRISTI ANDERSON, CHRISTOPHER T. JOHNSTON, and THE GACHASSIN LAW FIRM | PARISH OF LAFAYETTE STATE OF LOUISIANA |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REQUEST FOR NOTICE OF TRIAL DATE, ETC.

PLEASE TAKE NOTICE that JAMES H. GIBSON and STACY N. KENNEDY, attorneys

for Defendants, UNIVERSITY HOSPITAL & CLINICS, INC. and LAFAYETTE GENERAL

MEDICAL CENTER, INC. (erroneously identified as "Lafayette General Hospital"), do hereby

request written notice of the date of trial of the above matter, as well as notice of all hearings,

(whether on merits or otherwise), orders, judgments and interlocutory decrees, and any and all

formal steps taken by the parties herein, the Judge or any member of the Court or Clerk of Court's

office, as provided in Louisiana Code of Civil Procedure Articles 1572, 1913 and 1914. I hereby

certify that a copy of this Notice has this date been forwarded to all parties by depositing same in

the United States Mail, postage pre-paid and properly addressed.

Respectfully submitted:

GIBSON LAW PARTNERS, LLC

JAMES H. GIBSON – 14285
STACY N. KENNEDY -23619
2448 Johnston Street
Lafayette, LA 70503
P.O. Box 52124
Lafayette, LA 70505
Telephone: 337-761-6023
Facsimile: 337-761-6061
jimgibson@gibsonlawpartners.com
stacykennedy@gibsonlawpartners.com
Attorneys for UNIVERSITY HOSPITAL & CLINICS, INC. and LAFAYETTE GENERAL MEDICAL CENTER, INC.

FILED THIS 23rd

DAY OF April, 2019

Deputy Clerk of Court

1

STAMPED COPY GIVEN



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing instrument has this day been served on all parties through their counsel of record in this proceeding by:

( )  Hand Delivery            ( )  Prepaid U.S. Mail         (✓)  Email

( )  Facsimile               ( )  Overnight Mail Service

Lafayette, Louisiana, this 23rd day of April, 2019.

STACY N. KENNEDY

FILED THIS ___23rd___

DAY OF ___April___ , 20__1__9

_____
Deputy Clerk of Court

2

Ordered by Atty.: CHRISTINE M. MIRE

LAFPC.CV.54964051
cc_kmmelancon

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER,
      THROUGH ITS REGISTERED AGENT:
      MATTHEW D. ALTIER,
      2000 TULANE AVENUE, 4TH FLOOR
      NEW ORLEANS, LA 70112

of the Parish of ORLEANS

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION

(28) 20192019 - Service Date 04/09/2019 Time 9:49 AM
LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER

DATE SE
SERVED:     Personal at 2000 TULANE AV
            Jerry Greco # 323, Orleans
PERSON:     Citation & Petition; Serial# 1;
            MATTHEW ALTIER
DOMICII
UNABLE                                    ESS ( )
OTHER
RECEIVE     Signature
SERVICE OF WITHIN PAPERS
COSTS FEE $_____   MILEAGE $_____   TOTAL $_____
DEPUTY _____

Lafayette Parish Clerk of Court
Filed This Day

APR 2 4 2019

Deputy Clerk of Court

28 20192019

Badge # 323

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 148

**Orleans Parish Sheriff's Office**
**Marlin N. Gusman**
Sheriff of the Parish of Orleans
Civil Division
421 Loyola Avenue
Suite 403
New Orleans, LA 70112
Phone: (504) 523-6143    Fax: (504) 525-4912

LAFAYETTE PARISH CLERK OF COURT
P.O. BOX 2009
LAFAYETTE LA 70502

| | |
|---|---|
| Invoice #: | 8148 |
| Invoice Date: | 04/16/2019 |
| Invoice Amount: | $ 30.00 |
| Invoice Balance: | $ 30.00 |

No. 20192019

J CORY CORDOVA
vs.
LA STATE UNIVERSITY HEALTH SCIENCE CENTER ETAL

| | |
|---|---|
| Invoice #: | 8148 |
| Invoice Date: | 04/16/2019 |

Docket

Sheriff #:    28 20192019

| Serial # | Fee | Amount |
|---|---|---|
| 1 | Citation & Petition | 30.00 |
| | | **30.00** |

| Receipt Date | Receipt # | Reference # | Amount |
|---|---|---|---|

Invoice Balance:    $ 30.00

© Tyler Technologies    LA_Orleans_ARInvoiceDocket.rpt

11245

LAFPC.CV.55256994
cc_jahebert

Ordered by Atty.: CHRISTINE MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

---

STATE OF LOUISIANA

TO:  GACHASSIN LAW FIRM
     THROUGH THEIR REGISTERED AGENT:
     NICHOLAS GACHASSIN
     200 CORPORATE BOULEVARD
     STE. 103
     LAFAYETTE, LA  70508

                              of the Parish of Lafayette

     You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
     Witness the Honorable Judges of said Court, this APRIL 23, 2019.

                                        Deputy Clerk of Court
                                        Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES AND EXHIBITS

---

                    SHERIFF'S RETURN
                 LAFAYETTE PARISH SHERIFF

DATE SERVED: ___4/23___ 20_19_  TIME: _4L6_
SERVED: _____98 doe NGHI_____

PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE      MOVED ( )      NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $ _30_  MILEAGE $ _3.67_  TOTAL $ _33.67_
DEPUTY _____

                    RECEIVED
                    APR 23 2019
                    Lafayette Parish
                    Sheriff Office

          Lafayette Parish Clerk of Court
                Filed This Day

              APR 26 2019

          Deputy Clerk of Court

L.P.S.O. Badge# _11245_

ACTUAL SERVICE MILEAGE: _6.8_

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 150



LAFPC.CV.55287650
cc_bmbearb

# NOTICE OF HEARING DATE OF SUIT

TO:   STACY N KENNEDY
      PO BOX 52124
      LAFAYETTE, LA 70505

J CORY CORDOVA                        **FIFTEENTH JUDICIAL DISTRICT COURT**

                                      **DOCKET NUMBER: C-20192019 D**

VS
                                      **BEFORE JUDGE EDWARD D. RUBIN**

LOUISIANA STATE UNIVERSITY HEALTH     **PARISH OF LAFAYETTE, LOUISIANA**
SCIENCE CENTER, ET AL

    The above numbered and entitled case in which you are attorney for plaintiff/defendant has been set for

hearing in the Lafayette Parish Courthouse, Lafayette, Louisiana, for **JUNE 24, 2019**, at the hour of **10:00 AM**.

## RULE/MOTION:

EXCEPTIONS OF VAGUENESS AND NONCONFORMITY OF THE PETITION, COSTS, FILED ON
BEHALF OF UNIVERSITY HOSPITAL & CLINICS, INC. AND LAFAYETTE GENERAL MEDICAL
CENTER, INC.

LAFAYETTE, Louisiana, this APRIL 30, 2019.

                                _Brittany Bearb_
                                Deputy Clerk of Court
                                Lafayette Parish

cc:
CHRISTINE MIRE-SERVE

Order Date: APRIL 24, 2019
Filed Date: 3/29/2019

**For more information on the Fifteenth Judicial District Court, please go to www.15thjdc.org**
If you require an interpreter for court visit https://15thjdc.org/uploads/requestformrevisedMar2011.pdf.

NOTE: When making an offering "IN GLOBO", it is the ATTORNEY'S/PRO SE' LITIGANT'S
responsibility to make sure all evidence is attached thereto and/or has already been filed and made part
of the OFFICIAL record and titled correctly.

LAFPC.CV.55287700
cc_bmbearb

Ordered by Atty.:  STACY N KENNEDY

# RULE NISI

**J CORY CORDOVA**

VS

**LOUISIANA STATE UNIVERSTIY HEALTH SCIENCE CENTER, ET AL**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**
**BEFORE JUDGE EDWARD D. RUBIN**

**PARISH OF LAFAYETTE, LOUISIANA**

TO:   **CHRISTINE MIRE**
      **2480 YOUNGSVILLE HIGHWAY, SUITE C**
      **YOUNGSVILLE, LA 70592**

**BY VIRTUE OF** an order from the Honorable Court, FIFTEENTH JUDICIAL DISTRICT COURT in and for the Parish of Lafayette, State of Louisiana of date APRIL 24, 2019, you are hereby ordered to appear in Open Court on **JUNE 24, 2019,** at **10:00 AM**, in order to show cause why you should not comply with the attached order.

**WITNESS THE HONORABLE,** Judges of the said Court, at Lafayette Parish, Louisiana, this APRIL 30, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**DILATORY EXCEPTIONS OF VAGUENESS AND NONCONFORMITY OF THE PETITION, EXHIBIT 1, MEMORANDUM, ORDER, NOTICE OF HEARING DATE OF SUIT**

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____  TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____  MILEAGE $_____  TOTAL $_____
DEPUTY _____

**Children under 12 are not allowed in Court unless they are parties, witnesses or part of an educational group.  Please dress appropriately.  Cellular phones and beepers must be on silent or off. Camera Phones are NOT allowed in the courthouse.**

If you require an interpreter for court visit **https://15thjdc.org/uploads/requestformrevisedMar2011.pdf.**

LAFPC.CV.55287726
cc_bmbearb

Ordered by Atty.: STACY N KENNEDY

# RULE NISI

J CORY CORDOVA                                          **FIFTEENTH JUDICIAL DISTRICT COURT**

VS                                                      **DOCKET NUMBER: C-20192019 D**
                                                        **BEFORE JUDGE EDWARD D. RUBIN**

**LOUISIANA STATE UNIVERSTIY**                          **PARISH OF LAFAYETTE, LOUISIANA**
**HEALTH SCIENCE CENTER, ET AL**

---

TO:   J. CORY CORDOVA,
      THROUGH HIS COUNSEL OF RECORD:
      JACQUES F. BEZOU, SR.
      JACQUES F. BEZOU, JR.
      THE BEZOU LAW FIRM
      534 E. BOSTON STREET
      COVINGTON, LA 70433

       **BY VIRTUE OF** an order from the Honorable Court, FIFTEENTH JUDICIAL DISTRICT COURT in

and for the Parish of Lafayette, State of Louisiana of date APRIL 24, 2019, you are hereby ordered to appear in

Open Court on **JUNE 24, 2019**, at **10:00 AM**, in order to show cause why you should not comply with the

attached order.

       **WITNESS THE HONORABLE**, Judges of the said Court, at Lafayette Parish, Louisiana, this APRIL

30, 2019.

_____

                                                        Deputy Clerk of Court
                                                        Lafayette Parish

**\*Attached are the following documents:**
**DILATORY EXCEPTIONS OF VAGUENESS AND NONCONFORMITY OF THE PETITION,**
**EXHIBIT 1, MEMORANDUM, ORDER**

---

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____   TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE         MOVED ( )         NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE   ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____      MILEAGE $_____      TOTAL $_____
DEPUTY _____

---

**Children under 12 are not allowed in Court unless they are parties, witnesses or part of an educational
group.  Please dress appropriately.  Cellular phones and beepers must be on silent or off. Camera Phones
are NOT allowed in the courthouse.**

If you require an interpreter for court visit https://15thjdc.org/uploads/requestformrevisedMar2011.pdf.

⚖ CHRISTINE M. MIRE
ATTORNEY AT LAW

FAMILY LAW & TRIAL PRACTICE

55134910

May 1, 2019

Clerk of Court
Lafayette Parish
P.O. 2009
Lafayette, LA 70502

RE:   *J. Cory Cordova v. Louisiana State University Health Science Center, et al.*
15th JDC-Lafayette Parish
Docket No.: 2019-2019, Div. "D"

Dear Madam/Sir:

Please serve Defendant, Louisiana State University Health Science Center, with the previously filed Petition for Damages with all Exhibits at through their agents at the address listed below:

Louisiana State University Health Science Center
Through their Agents:

John A. Harmon
433 Bolivar Street, Suite 811
New Orleans, Louisiana 70112
**AND**
Dr. Larry Hollier
433 Bolivar Street, Suite 820
New Orleans, Louisiana 70112

Please do not hesitate to contact our office should you have any questions or concerns.

Best regards,

CHRISTINE M. MIRE

FILED THIS _____ DAY OF _____, 20__
_____
Deputy Clerk of Court

CMM/cmb

2480 YOUNGSVILLE HIGHWAY, SUITE C • YOUNGSVILLE, LOUISIANA 70592
TEL: (337) 573-7256 • FAX: (337) 205-8699 • cmm@mirelawfirm.com

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 154





LAFPC.CV.55287700
cc_bmbearb

Ordered by Atty.: STACY N KENNEDY

# RULE NISI

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D
BEFORE JUDGE EDWARD D. RUBIN

PARISH OF LAFAYETTE, LOUISIANA

Lafayette Parish Clerk of Court
Filed This Day

TO:   CHRISTINE MIRE
      2480 YOUNGSVILLE HIGHWAY, SUITE C
      YOUNGSVILLE, LA 70592

MAY 0 3 2019

*Katy Milanion*
Deputy Clerk of Court

BY VIRTUE OF an order from the Honorable Court, FIFTEENTH JUDICIAL DISTRICT COURT in and for the Parish of Lafayette, State of Louisiana of date APRIL 24, 2019, you are hereby ordered to appear in Open Court on JUNE 24, 2019, at 10:00 AM, in order to show cause why you should not comply with the attached order.

WITNESS THE HONORABLE, Judges of the said Court, at Lafayette Parish, Louisiana, this APRIL 30, 2019.

*Brittany Bearb*
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
DILATORY EXCEPTIONS OF VAGUENESS AND NONCONFORMITY OF THE PETITION,
EXHIBIT 1, MEMORANDUM, ORDER, NOTICE OF HEARING DATE OF SUIT

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: 5-1-2019         20____ TIME: 1112
SERVED:
PERSONAL ( ✓ ) Christine Rangel
DOMICILIARY ( ) ON
UNABLE TO LOCATE        MOVED ( )      NO SUCH ADDRESS ( )
OTHER REASON:
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $ 30   MILEAGE $ 8.86   TOTAL $ 38.86
DEPUTY W. Eugene

RECEIVED
APR 30 2019
Lafayette Parish
Sheriff Office

Children under 12 are not allowed in Court unless they are parties, witnesses or part of an educational group.  Please dress appropriately.  Cellular phones and beepers must be on silent or off. Camera Phones are NOT allowed in the courthouse.

If you require an interpreter for court visit https://15thjdc.org/uploads/requestformrevisedMar2011.pdf.

L.P.S.O. Badge# 10960

ACTUAL SERVICE MILEAGE: 16.4 miles

55170195

**ROUTING SHEET**

DOCKET NO. 2019 2019

ATTORNEY Christine Mire

DATE PLEADING CLOCKED IN _____

| DESCRIPTION | QTY | DESCRIPTION | QTY |
|---|---|---|---|
| CERT COPY STAMP (NOT RECORDED) | 54 | LETTER – ADDRESS REQUEST | |
| CERT MAIL/RETURN RECEIPT | | LETTER – CERT OF DIVORCE | |
| CITATION | | LETTER – COMM OF INS | |
| CITATION-NTC OF JMT | | LETTER – GENERAL RETURN | |
| CONFORMED GROUP | | LETTER – JURY ORDER | |
| COPIES (# OF PAGES) | 10 | LETTER – NTC OF SIGNING OF JMT | |
| FAX OUTGOING | | NTC OF HEARING | |
| INDEX OF NAMES (ABOVE 10) | | RULE NISI | |
| JMT FEE (EACH DEF NO SS#) | | SUBPOENA | |
| JMT RECORDED (CON # OF PAGES) | | SUB DT | |
| JMT RECORDED (MTG # OF PAGES) | | TRO | |
| JMT RECORDED (BOTH # OF PAGES) | | TRO RECORDED | |
| CERT COPY OF RECORDED DOCUMENT | | WRIT OF | |
| | | | |
| | | | |
| | | | |

PROCESSED BY _____         CHARGED BY _____

COMMENTS _____

_____

_____

_____

_____

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
LAFPC.CV.55412175
cc_cmiatour

Ordered by Atty.: CHRISTINE M MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER THRU THEIR AGENTS
      DR. LARRY HOLLIER
      433 BOLIVAR ST
      STE 820
      NEW ORLEANS, LA  70112

of the Parish of ORLEANS

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this MAY 6, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE _____ MOVED ( ) _____ NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____ MILEAGE $_____ TOTAL $_____
DEPUTY _____

LAFPC.CV.55412183
cc_cmlatour

Ordered by Atty.: CHRISTINE M MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO: LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER THRU THEIR AGENTS
JOHN A HARMON
433 BOLIVAR ST
STE 811
NEW ORLEANS, LA 70112

of the Parish of ORLEANS

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this MAY 6, 2019.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE MOVED ( ) NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____ MILEAGE $_____ TOTAL $_____

DEPUTY _____

8702

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
LAFPC.CV.55287726
cc_bmbearb

Ordered by Atty.: STACY N KENNEDY

## RULE NISI   SHERIFF RETURN

| J CORY CORDOVA | FIFTEENTH JUDICIAL DISTRICT COURT |
|---|---|
| VS | DOCKET NUMBER: C-20192019 D<br>BEFORE JUDGE EDWARD D. RUBIN |
| LOUISIANA STATE UNIVERSTIY<br>HEALTH SCIENCE CENTER, ET AL | PARISH OF LAFAYETTE, LOUISIANA |

TO:   J. CORY CORDOVA,
      THROUGH HIS COUNSEL OF RECORD:
      JACQUES F. BEZOU, SR.
      JACQUES F. BEZOU, JR.
      THE BEZOU LAW FIRM
      534 E. BOSTON STREET
      COVINGTON, LA 70433

**PUBLIC BODY**
*ST. Tammany*

BY VIRTUE OF an order from the Honorable Court, FIFTEENTH JUDICIAL DISTRICT COURT in and for the Parish of Lafayette, State of Louisiana of date APRIL 24, 2019, you are hereby ordered to appear in Open Court on JUNE 24, 2019, at 10:00 AM, in order to show cause why you should not comply with the attached order.

WITNESS THE HONORABLE, Judges of the said Court, at Lafayette Parish, Louisiana, this APRIL 30, 2019.

*Bittomy Bearb*
Deputy Clerk of Court
Lafayette Parish

\*Attached are the following documents:
DILATORY EXCEPTIONS OF VAGUENESS AND NONCONFORMITY OF THE PETITION, EXHIBIT 1, MEMORANDUM, ORDER

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) O
UNABLE TO LOCATI
OTHER REASON: _____
RECEIVED TOO LAT
SERVICE OF WITHIN
COSTS FEE $ _____
DEPUTY _____

(28)20192019 - 1.00 -- RULE
Served PERS on                        INT:
J CORY CORDOVA THRU ATTY JACQUES F BEZOU
at
534 E Boston ST, COVINGTON
Service Date & Time: 5/8/2019 10:27:00AM
Through Davetta Henderson (secretary)

8702 - LINDEN, CHAD, St. Tammany Parish

Lafayette Parish Clerk of Court
Filed This Day

MAY 1 5 2019

*Martina Skews*
Deputy Clerk of Court

Children under 12                          ___ es or part of an educational
group.  Please dres _____ n silent or off. Camera Phones
are NOT allowed in the courthouse.

If you require an interpreter for court visit https://15thjdc.org/uploads/requestformrevisedMar2011.pdf

SHERIFF RETURN

**Randy Smith**
**Sheriff St. Tammany PARISH**

Lafayette Parish Clerk of Court
P.O. Box 2009

Lafayette, LA 70502

**DISTRICT COURT**
FOR THE PARISH OF ST. TAMMANY
5/9/2019

CLERK OF COURT
LAFAYETTE PARISH
2019 MAY 13   AM 7:23

---

Case: (28) 20192019   J CORY CORDOVA vs LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER ET AL

| Nbr | Date | Service Type | Charges |
|---|---|---|---|
| **PUBLIC BODY** | | | |
| 1 | 05/07/2019 | RULE TO SHOW CAUSE | $30.00 |
| | | J CORY CORDOVA THRU ATTY JACQUES F BEZOU; 534 E Boston ST; COVINGTON, | |
| | | Date of Disposition: 05/08/2019 Disposition Type: PERS THROUGH DAVETTA HENDERSON (SECRETARY) | |
| **RULE** | | | |
| 1 | 05/07/2019 | Mileage Charge | $5.30 |
| | | Date of Disposition:  Disposition Type: | |

| | | |
|---|---|---|
| | Case Total: | $35.30 |
| | **Total:** | **$35.30** |

---

| Please make check payable to: | TO BE RETURNED WITH PAYMENT |
|---|---|
| Randy Smith, Sheriff | |
| 701 N. Columbia St. | |
| Covington, LA 70433 | |

LAFPC.CV.55412175
cc_cmlatour

Ordered by Atty.:  CHRISTINE M MIRE

# CITATION

**J CORY CORDOVA**

**VS**

**LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**

**PARISH OF LAFAYETTE, LOUISIANA**

STATE OF LOUISIANA

TO:   LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER THRU THEIR AGENTS
      DR. LARRY HOLLIER
      433 BOLIVAR ST
      STE 820
      NEW ORLEANS, LA  70112

of the Parish of ORLEANS

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this MAY 6, 2019.

Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
PETITION FOR DAMAGES

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED:

SERVED:

PERSONAL

DOMICILL

UNABLE T

OTHER RE.

RECEIVED

SERVICE O

COSTS FEE

DEPUTY

(28) 20192019 - Service Date 05/15/2019 Time 9:42 AM
LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER

Personal at 433 BOLIVAR ST
Jerry Greco # 323, Orleans
Citation; Serial# 2;
CHRISTINE MANALLA

Signature

ENTERED

Lafayette Parish Clerk of Court
Filed This Day

MAY 2 3 2019

Deputy Clerk of Court

28 20192019

Badge # 323

**Orleans Parish Sheriff's Office**
**Marlin N. Gusman**
Sheriff of the Parish of Orleans
Civil Division
421 Loyola Avenue
Suite 403
New Orleans, LA 70112
Phone: (504) 523-6143    Fax: (504) 525-4912

LAFAYETTE PARISH CLERK OF COURT
P.O. BOX 2009
LAFAYETTE LA 70502

| | |
|---|---|
| Invoice #: | 10084 |
| Invoice Date: | 05/14/2019 |
| Invoice Amount: | $ 30.00 |
| Invoice Balance: | $ 30.00 |

No. 20192019

J CORY CORDOVA
vs.
LA STATE UNIVERSITY HEALTH SCIENCE CENTER ETAL

| | |
|---|---|
| Invoice #: | 10084 |
| Invoice Date: | 05/14/2019 |

Docket

Sheriff #:      28 20192019

| Serial # | Fee | Amount |
|---|---|---|
| 2 | Citation | 30.00 |
| | | 30.00 |

| Receipt Date | Receipt # | Reference # | Amount |
|---|---|---|---|

Invoice Balance:    $ 30.00

© Tyler Technologies    LA_Orleans_ARInvoiceDocket.rpt

LAFPC.CV.55412183

cc_cmlatour

Ordered by Atty.: CHRISTINE M MIRE

# CITATION

**J CORY CORDOVA**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**VS**

**DOCKET NUMBER: C-20192019 D**

**LOUISIANA STATE UNIVERSTIY**
**HEALTH SCIENCE CENTER, ET AL**

**PARISH OF LAFAYETTE, LOUISIANA**

STATE OF LOUISIANA

TO:   LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER THRU THEIR AGENTS
      JOHN A HARMON
      433 BOLIVAR ST
      STE 811
      NEW ORLEANS, LA  70112

of the Parish of ORLEANS

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this MAY 6, 2019.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
PETITION FOR DAMAGES

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVE

SERVED: ___

PERSONAL (

DOMICILIAR

UNABLE TO I

OTHER REAS(

RECEIVED TO

SERVICE OF V

COSTS FEE $_

DEPUTY

(28) 20192019 - Service Date 05/15/2019 Time 9:32 AM
LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER

Personal at 433 BOLIVAR ST
Jerry Greco # 323, Orleans
Citation; Serial# 3;
CHRISTINE MANALLA

Signature

Lafayette Parish Clerk of Court
File d This Day

MAY 2 3 2019

CB   ENTERED ✓

3  9901  28

Deputy Clerk of Court

28 20192019

Badge # 323

**Orleans Parish Sheriff's Office**
**Marlin N. Gusman**
Sheriff of the Parish of Orleans
Civil Division
421 Loyola Avenue
Suite 403
New Orleans, LA 70112
Phone: (504) 523-6143   Fax: (504) 525-4912

CLERK OF COURT
LAFAYETTE PARISH, LA
2019 MAY 23  AM 7: 23

LAFAYETTE PARISH CLERK OF COURT
P.O. BOX 2009
LAFAYETTE LA 70502

| | |
|---|---|
| Invoice #: | 10087 |
| Invoice Date: | 05/14/2019 |
| Invoice Amount: | $ 30.00 |
| Invoice Balance: | $ 30.00 |

No. 20192019

J CORY CORDOVA
vs.
LA STATE UNIVERSITY HEALTH SCIENCE CENTER ETAL

| | |
|---|---|
| Invoice #: | 10087 |
| Invoice Date: | 05/14/2019 |

Docket

Sheriff #:      28 20192019

| Serial # | Fee | Amount |
|---|---|---|
| 3 | Citation | 30.00 |
| | | 30.00 |

| Receipt Date | Receipt # | Reference # | Amount |
|---|---|---|---|

Invoice Balance:      $ 30.00

※ Tyler Technologies    LA_Orleans_ARInvoiceDocket.rpl




55500227

One Petroleum Center
1001 West Pinhook Road, Suite 200
Lafayette, Louisiana 70503

P: 337 237 7000
F: 337 233 9450

FRANK X. NEUNER, JR.*
JAMES L. PATE
BEN L. MAYEAUX
ROBERT E. TORIAN
JAMES D. HOLLIER
MELISSA L. THERIOT*
KEVIN P. MERCHANT
JENNIE P. PELLEGRIN
BRANDON W. LETULIER
JASON T. REED
JEREMY N. MORROW
JED M. MESTAYER
PHILIP H. BOUDREAUX, JR.
CLIFF A. LaCOUR
JEFFREY K. COREIL
DEAN A. COLE
KENNETH W. JONES, JR.
JENNIFER M. ARDOIN
CAROLYN C. COLE
NICHOLAS G. JONES
QUINCY L. MOUTON
PHILLIP M. SMITH
B. LANCE PERSON
SARAH F. BROWN
ELIZABETH B. BLOCH
TAYLOR C. GRANGER
CHRISTOPHER B. ORTTE

NEW ORLEANS OFFICE

601 Poydras Street, Suite 1725
New Orleans, Louisiana 70130

P: 504 309 6090

*ALSO ADMITTED IN TEXAS

May 22, 2019

The Honorable Louis J. Perret
Lafayette Parish Clerk of Court
P.O. Box 2009
Lafayette, LA 70502

RE:    Cory Cordova, M.D. v. Louisiana State University Health Science
       Center, et al.
       15th Judicial District Court, Lafayette Parish, Louisiana
       Docket No. 20192019, Div. D
       Our File No. 21413

Dear Sir/Madam:

        Enclosed are an original and one copy of the following documents which
we submit for filing on behalf of the Board of Supervisors of Louisiana State
University and Agricultural and Mechanical College (the body corporate
incorrectly identified, named and referred to as "Louisiana State University
Health Science Center" in the caption and body of the Petition for Damages)
("LSU HSC-NO"), Karen Curry, Nicholas Sells and Kristi Anderson in the
above-captioned matter:

        1.    Notice of Enrollment as Counsel of Record; and
        2.    Request for Notice of Date of Trial, Etc.

        Please file the originals into the court record and return copies of each
document stamped with the date and time of filing to our office in the enclosed
self-addressed and stamped envelope. 5/29/19 DS

        Because these defendants are state employees, boards and/or agencies,
they are exempt from the advance deposit of court costs pursuant to LSA-R.S.

**PUBLIC BODY**

NeunerPate.com



NEUNER·PATE
ATTORNEYS AT LAW

The Honorable Louis J. Perret
May 22, 2019
Page 2

13:4521. However, if you have any questions, please do not hesitate to contact our office.

Very truly yours,
JEFF LANDRY
Attorney General

BY: *Jennie Pellegrin*

Jennie P. Pellegrin
*Special Assistant Attorney General and*
*Counsel for the Board of Supervisors of*
*Louisiana State University and Agricultural*
*and Mechanical College, Karen Curry,*
*Nicholas Sells and Kristi Anderson*

JPP/acf
Enclosures
cc:   Mr. Jacques F. Bezou, Sr. (via U.S. Mail only w/enclosures)
      Ms. Christine M. Mire (via U.S. Mail only w/enclosures)
      Ms. Stacy N. Kennedy (via U.S. Mail only w/enclosures)

NeunerPate.com


55500268

| | | |
|---|---|---|
| J. CORY CORDOVA, M.D. | * | DOCKET NO. 20192019 DIV. D |
| | * | |
| VERSUS | * | 15TH JUDICIAL DISTRICT COURT |
| | * | |
| LOUISIANA STATE UNIVERSITY | * | PARISH OF LAFAYETTE |
| HEALTH SCIENCE CENTER, | * | |
| ET AL. | * | STATE OF LOUISIANA |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## REQUEST FOR NOTICE OF DATE OF TRIAL, ETC.

TO THE 15th JUDICIAL DISTRICT COURT CLERK OF COURT IN AND FOR

LAFAYETTE PARISH, LOUISIANA:

Please take notice that Jennie P. Pellegrin and Elizabeth B. Bloch and the law firm of

NeunerPate, as counsel for the Board of Supervisors of Louisiana State University and

Agricultural and Mechanical College (the body corporate incorrectly identified, named and

referred to as "Louisiana State University Health Science Center" in the caption and body of the

Petition for Damages) ("LSU HSC-NO"), Karen Curry, Nicholas Sells and Kristi Anderson,

hereby request written notice of hearings (whether on merits or otherwise), orders, judgments

and interlocutory decrees, and any and all formal steps taken by the parties herein, the Judge or

any member of Court, as provided in Louisiana Code of Civil Procedure Articles 1572, 1913 and

1914, reserving all rights which LSU HSC-NO, Curry, Sells and Anderson possess and all

exceptions and affirmative defenses to which defendants are entitled.

Respectfully Submitted,
JEFF LANDRY
Attorney General

BY: _Jennie Pellegrin_

JENNIE P. PELLEGRIN
La. Bar Roll No. 25207
jpellegrin@neunerpate.com
ELIZABETH BAILLY BLOCH
La. Bar Roll No. 37591
bbloch@neunerpate.com
NEUNERPATE
One Petroleum Center, Suite 200
1001 West Pinhook Road (zip 70503)
Post Office Drawer 52828
Lafayette, LA 70505-2828
TELEPHONE: (337) 237-7000  FAX: (337) 233-9450
*Special Assistants Attorneys General and Counsel
for the Board of Supervisors of Louisiana State
University and Agricultural and Mechanical
College, Karen Curry, Nicholas Sells and Kristi
Anderson*

Page 1

FILED THIS 24th
DAY OF May 20 19
_Deputy Clerk of Court_

2019 MAY 24  AM 10: 12
CLERK OF COURT
LAFAYETTE PARISH, LA

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 167

Case 6:19-cv-01027-JDC-PJH   Document 1-2   Filed 08/07/19   Page 168 of 291 PageID #: 177



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the Request for Notice of Date of Trial, Etc. on behalf of

the Board of Supervisors of Louisiana State University and Agricultural and Mechanical

College, Karen Curry, Nicholas Sells and Kristi Anderson was forwarded on Wednesday, May

22, 2019 to:

☒ Counsel for the plaintiff by United States mail, properly addressed and postage prepaid;
☒ All remaining counsel by United States mail, properly addressed and postage prepaid;
☐ Counsel for the plaintiff by Registered United States mail, return receipt requested, properly addressed and postage prepaid;
☐ All remaining counsel by Registered United States mail, return receipt requested, properly addressed and postage prepaid;
☐ Counsel for the plaintiff by facsimile transmission with confirmation;
☐ All remaining counsel by facsimile transmission with confirmation;
☐ Counsel for the plaintiff by hand delivery;
☐ All remaining counsel by hand delivery;
☐ Counsel for the plaintiff by electronic transmission; and/or
☐ All remaining counsel by electronic transmission.

_Jennie Pellegrin_
COUNSEL

FILED THIS 24th
DAY OF May 20 19
Dawn Smith
Deputy Clerk of Court

Page 2

**EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 168**


55500342

| J. CORY CORDOVA, M.D. | * | DOCKET NO. 20192019 DIV. D |
| | * | |
| VERSUS | * | 15TH JUDICIAL DISTRICT COURT |
| | * | |
| LOUISIANA STATE UNIVERSITY | * | PARISH OF LAFAYETTE |
| HEALTH SCIENCE CENTER, | * | |
| ET AL. | * | STATE OF LOUISIANA |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF ENROLLMENT AS COUNSEL OF RECORD

In accordance with the permission granted by La. Dist. Ct. R. 9.12(2), Jennie P. Pellegrin, Elizabeth B. Bloch and the law firm of NeunerPate hereby notify the Court of their enrollment as counsel of record for the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (the body corporate incorrectly identified, named and referred to as "Louisiana State University Health Science Center" in the caption and body of the Petition for Damages) ("LSU HSC-NO"), Karen Curry, Nicholas Sells and Kristi Anderson in the above-captioned litigation.  Undersigned counsel represents to the Court that the enrollment of Jennie P. Pellegrin, Elizabeth B. Bloch and the law firm of NeunerPate as counsel for LSU HSC-NO, Curry, Sells and Anderson will not retard or impede the progress of the above-entitled and numbered matter.

Respectfully Submitted,
JEFF LANDRY
Attorney General

BY:   _Jennie Pellegrin_

JENNIE P. PELLEGRIN
La. Bar Roll No. 25207
jpellegrin@neunerpate.com
ELIZABETH BAILLY BLOCH
La. Bar Roll No. 37591
bbloch@neunerpate.com
NEUNERPATE
One Petroleum Center, Suite 200
1001 West Pinhook Road (zip 70503)
Post Office Drawer 52828
Lafayette, LA 70505-2828
TELEPHONE: (337) 237-7000  FAX: (337) 233-9450
*Special Assistants Attorneys General and Counsel for the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, Karen Curry, Nicholas Sells and Kristi Anderson*

FILED THIS 24th
DAY OF MAY 2019
_____
Deputy Clerk of Court

Page 1


55500383

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the Notice of Enrollment as Counsel of Record on behalf

of the Board of Supervisors of Louisiana State University and Agricultural and Mechanical

College, Karen Curry, Nicholas Sells and Kristi Anderson was forwarded on Wednesday, May

22, 2019 to:

- ☒ Counsel for the plaintiff by United States mail, properly addressed and postage prepaid;
- ☒ All remaining counsel by United States mail, properly addressed and postage prepaid;
- ☐ Counsel for the plaintiff by Registered United States mail, return receipt requested, properly addressed and postage prepaid;
- ☐ All remaining counsel by Registered United States mail, return receipt requested, properly addressed and postage prepaid;
- ☐ Counsel for the plaintiff by facsimile transmission with confirmation;
- ☐ All remaining counsel by facsimile transmission with confirmation;
- ☐ Counsel for the plaintiff by hand delivery;
- ☐ All remaining counsel by hand delivery;
- ☐ Counsel for the plaintiff by electronic transmission; and/or
- ☐ All remaining counsel by electronic transmission.

_____
COUNSEL

FILED THIS 14th
DAY OF May 20 19
_____
Deputy Clerk of Court

Page 2

Submitted Date: 5/29/2019 1:13 PM
File Date: 5/29/2019 1:13 PM
Case Number: C-20192019
Lafayette Parish, LA
Deputy Clerk: Maranatha Cloteaux




55488423



**15ᵗʰ JUDICIAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE**

**STATE OF LOUISIANA**

DOCKET NO.                                                    DIVISION

2019 2019            J. CORY CORDOVA, M.D.

**VERSUS**

LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER; UNIVERSITY
HOSPITAL AND CLINICS; KAREN CURRY, M.D., NICHOLAS SELLS, M.D., KRISTI
ANDERSON, CHRISTOPHER C. JOHNSTON, and THE GACHASSIN LAW FIRM

FILED:_____                    _____
                                                                        DEPUTY CLERK

**UNOPPOSED MOTION TO RE-SET HEARING DATE ON THE
DEFENDANTS UNIVERSITY HOSPITAL AND LAFAYETTE GENERAL MEDICAL
CENTER, INC.'S EXCEPTIONS**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, J. Cory Cordova,

who respectfully moves this Honorable Court to re-set the hearing date currently set for June 24,

2019 at 10:00 a.m. on Defendants, University Hospital & Clinics, Inc. and Lafayette General

Medical Center, Inc.'s Dilatory Exceptions of Vagueness and Nonconformity to the Courts next

available hearing date. Undersigned has conferred with opposing counsel and there is no

opposition to this Motion.

                                    RESPECTFULLY SUBMITTED:

                                    THE BEZOU LAW FIRM

                                    _____
                                    JACQUES F. BEZOU, SR. (3037)
                                    JACQUES F. BEZOU, JR. (33728)
                                    MATTHEW L. DEVEREAUX (32125)
                                    ERICA A. HYLA (34603)
                                    THE BEZOU LAW FIRM
                                    534 E. Boston Street
                                    Covington, Louisiana 70433
                                    Telephone: (985) 892-2111
                                    Facsimile: (985) 892-1413
                                    Jb2@bezou.com

RECEIVED

JUN 0 4 2019

FROM JUDGE

                                    AND

                                    CHRISTINE M. MIRE (29352)
                                    Attorney at Law
                                    2480 Youngsville Hwy., Suite C
                                    Youngsville, LA 70592
                                    Telephone: (337) 573-7254
                                    Facsimile: (337) 205-8699
                                    cmmire@gmail.com
                                    Attorneys for J. Cory Cordova, M.D

FILED THIS ___29___

DAY OF __May__, 20_19_

_____
Deputy Clerk of Court

7-29-19
Rubin

**15th JUDICIAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE**

**STATE OF LOUISIANA**

**DOCKET NO. 20192019** **DIVISION D**

**J. CORY CORDOVA, M.D.**

**VERSUS**

**LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER; UNIVERSITY HOSPITAL AND CLINICS; KAREN CURRY, M.D., NICHOLAS SELLS, M.D., KRISTI ANDERSON, CHRISTOPHER C. JOHNSTON, and THE GACHASSIN LAW FIRM**

**FILED:**____________________ ____________________
**DEPUTY CLERK**

**ORDER**

**IT IS HEREBY ORDERED** that the hearing on Defendants, University Hospital & Clinics, Inc. and Lafayette General Medical Center, Inc.'s Dilatory Exceptions of Vagueness and Nonconformity be and are hereby re-set to the Courts next available hearing date, July 29, 2019 at 10:00 a.m.

**LAFAYETTE, LOUISIANA,** this 3rd day of June 2019.

[signature]
**HONORABLE DISTRICT COURT JUDGE EDWARD D. RUBIN**

**PLEASE SERVE:**

University Hospital & Clinics, Inc.
Lafayette General Medical Center, Inc.
Through their attorney of record:
James H. Gibson
Stacy N. Kennedy
2448 Johnston Street
Lafayette, LA 70503

FILED THIS 3
DAY OF June, 2019
[signature]
Deputy Clerk of Court

55488464

## CERTIFICATE OF SERVICE

I HERBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record by electronic mail, faxing and/or mailing a copy of same in the U.S. Mail, properly addressed and postage prepaid, this _____ day of May 2019.

_____
Jacques F. Bezou

FILED THIS _____ 3
DAY OF ___June___, 20 19
_____
Deputy Clerk of Court

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 173

55798490

**ROUTING SHEET**

DOCKET NO. _2019 · 2019_

ATTORNEY _Jacques Pozo_

DATE PLEADING CLOCKED IN _5/29/19_

| DESCRIPTION | QTY | DESCRIPTION | QTY |
|---|---|---|---|
| CERT COPY STAMP (NOT RECORDED) | 1 | LETTER – ADDRESS REQUEST | |
| CERT MAIL/RETURN RECEIPT | | LETTER – CERT OF DIVORCE | |
| CITATION | | LETTER – COMM OF INS | |
| CITATION-NTC OF JMT | | LETTER – GENERAL RETURN | |
| CONFORMED GROUP | | LETTER – JURY ORDER | |
| COPIES (# OF PAGES) | | LETTER – NTC OF SIGNING OF JMT | |
| FAX OUTGOING | | NTC OF HEARING | 4 |
| INDEX OF NAMES (ABOVE 10) | | RULE NISI | |
| JMT FEE (EACH DEF NO SS#) | | SUBPOENA | |
| JMT RECORDED (CON # OF PAGES) | | SUB DT | |
| JMT RECORDED (MTG # OF PAGES) | | TRO | |
| JMT RECORDED (BOTH # OF PAGES) | | TRO RECORDED | |
| CERT COPY OF RECORDED DOCUMENT | | WRIT OF | |
| | | | |
| | | | |
| | | | |
| | | | |

PROCESSED BY _α_          CHARGED BY _HC_

COMMENTS _____

_____

_____

_____

_____

⚖ CHRISTINE M. MIRE
ATTORNEY AT LAW

FAMILY L____   55595037

June 5, 2019

Clerk of Court
Lafayette Parish
P.O. 2009
Lafayette, LA 70502

RE:   *J. Cory Cordova v. Louisiana State University Health
Science Center, et al.*
15th JDC-Lafayette Parish
Docket No.: 2019-2019, Div. "D"

Dear Madam/Sir:

Please serve Defendant, Louisiana State University Health Science Center, with the previously filed Petition for Damages with all Exhibits through their agents at the address listed below:

Louisiana State University Health Science Center
Through their Agents:

Louisiana Office of Risk Management
Through its Director, Melissa Harris
1201 N. Third Street, Ste. 7-210
Baton Rouge, LA 70802

**AND**

Louisiana Department of Justice: Attorney General's Office
Through Attorney General Jeff Landry
1885 N. Third Street
Baton Rouge, LA 70802

Please do not hesitate to contact our office should you have any questions or concerns.

Best regards,

CHRISTINE M. MIRE

FILED THIS _____ 5

DAY OF _____ June, 20 19

Deputy Clerk of Court
CMM/cmm

*(stamp:)* CLERK OF COURT LAFAYETTE PARISH, LA 2019 JUN -5 PM 3: 41

2480 YOUNGSVILLE HIGHWAY, SUITE C ● YOUNGSVILLE, LOUISIANA 70592
TEL: (337) 573-7256 ● FAX: (337) 205-8699 ● cmm@mirelawfirm.com

Hold
Ck



Louis J. Perret
Clerk of Court, Lafayette Parish
P. O. Box 2009
Lafayette, LA  70502
(337) 291-6314
June 7, 2019

To:   CHRISTINE M MIRE
       2480 YOUNGSVILLE HWY SUITE C
       YOUNGSVILLE, LA 70592

Re:   Docket Number: C-20192019  D

       J CORY CORDOVA
       VS
       LOUISIANA STATE UNIVERSTIY HEALTH SCIENCE CENTER, ET AL

We have received the following items,
LETTER SERVICE REQ
CIT
HOLDING LETTER
and are holding same because of insufficient funds in the above referenced account.  The law provides
that an additional payment be made in such cases before any further function is performed in the
proceeding.  (R.S. 13:842 and R.S. 13:843)

To process the above work, we need **$675.00**.  Unused portions of deposits will be refunded when a
suit is completed and the court costs have been paid by the responsible party.  Thanking you for your
cooperation, I remain,

Sincerely Yours,

RACHELLE FALCON
_____

       cc:

# PAID

LAFPC.CV.55880561
cc_dleblanc

# NOTICE OF HEARING DATE OF SUIT

TO:   JACQUES F. BEZOU
      C/O BEZOU & MATTHEWS
      534 E BOSTON STREET
      COVINGTON, LA 70443

J CORY CORDOVA                        FIFTEENTH JUDICIAL DISTRICT COURT

                                      DOCKET NUMBER: C-20192019 D

VS                                    BEFORE JUDGE EDWARD D. RUBIN

LOUISIANA STATE UNIVERSITY HEALTH     PARISH OF LAFAYETTE, LOUISIANA
SCIENCE CENTER, ET AL

        The above numbered and entitled case in which you are attorney for plaintiff/defendant has been set for

hearing in the Lafayette Parish Courthouse, Lafayette, Louisiana, for **JULY 29, 2019**, at the hour of **10:00 AM**.

## RULE/MOTION:

RESET: EXCEPTIONS OF VAGUENESS AND NONCONFORMITY OF THE PETITION, COSTS, FILED
ON BEHALF OF UNIVERSITY HOSPITAL & CLINICS, INC. AND LAFAYETTE GENERAL MEDICAL
CENTER, INC

LAFAYETTE, Louisiana, this JUNE 7, 2019 .

                                        _____
                                            Deputy Clerk of Court
                                            Lafayette Parish

cc:
CHRISTINE MIRE
STACY KENNEDY
JENNIE PELLEGRIN
UNIVERSITY HOSPITAL & CLINICS - SERVE

Order Date:6/3/19
Filed Date: 3/29/2019

**For more information on the Fifteenth Judicial District Court, please go to www.15thjdc.org**
If you require an interpreter for court visit https://15thjdc.org/uploads/requestformrevisedMar2011.pdf.

NOTE: When making an offering "IN GLOBO", it is the ATTORNEY'S/PRO SE' LITIGANT'S
responsibility to make sure all evidence is attached thereto and/or has already been filed and made part
of the OFFICIAL record and titled correctly.

LAFPC.CV.55880579
cc_dleblanc

Ordered by Atty.:  JACQUES BEZOU

# NOTICE OF HEARING DATE CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   UNIVERSITY HOSPITAL & CLINICS, INC.
      LAFAYETTE GENERAL MEDICAL CENTER, INC.
      THROUGH THEIR ATTORNEY OF RECORD:
      JAMES H. GIBSON
      STACY N. KENNEDY
      2448 JOHNSTON STREET
      LAFAYETTE, LA 70503

                                of the Parish of Lafayette

    You are hereby served with a certified copy of "NOTICE OF HEARING DATE", and you are requested to
comply with same.

    WITNESS the Honorable Judges of said Court, this JUNE 7, 2019.

                                        _____
                                            Deputy Clerk of Court
                                            Lafayette Parish

---

                    SHERIFF'S RETURN
                LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____ MILEAGE $_____ TOTAL $_____
DEPUTY _____

---

**Children under 12 are not allowed in Court unless they are parties, witnesses or part of an educational
group.  Please dress appropriately.  Cellular phones and beepers must be on silent or off. Camera Phones
are NOT allowed in the courthouse.**

**For more information on the Fifteenth Judicial District Court, please go to www.15thjdc.org****

13.343

Ordered by Atty.: JACQUES BEZOU

LAFPC.CV.55880579
cc_dleblanc

# NOTICE OF HEARING DATE CITATION

**J CORY CORDOVA**

VS

**LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**

**PARISH OF LAFAYETTE, LOUISIANA**

STATE OF LOUISIANA

TO: UNIVERSITY HOSPITAL & CLINICS, INC.
LAFAYETTE GENERAL MEDICAL CENTER, INC.
THROUGH THEIR ATTORNEY OF RECORD:
JAMES H. GIBSON
STACY N. KENNEDY
2448 JOHNSTON STREET
LAFAYETTE, LA 70503



of the Parish of Lafayette

You are hereby served with a certified copy of "NOTICE OF HEARING DATE", and you are requested to comply with same.

WITNESS the Honorable Judges of said Court, this JUNE 7, 2019.

Deputy Clerk of Court
Lafayette Parish

---

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: 6/10 ,20 19 TIME: 1455
SERVED: _____ Patricia Estorge
PERSONAL _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE     MOVED ( )     NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $ 36  MILEAGE $ 1.73  TOTAL $ 31.73
DEPUTY _____

Lafayette Parish Clerk of Court
Filed This Day

JUN 1 4 2019

Deputy Clerk of Court

---

Children under 12 are not allowed in Court unless they are parties, witnesses or part of an educational group. Please dress appropriately. Cellular phones and beepers must be on silent or off. Camera Phones are NOT allowed in the courthouse.

**For more information on the Fifteenth Judicial District Court, please go to www.15thjdc.org**

L.P.S.O. Badge# 1413

ACTUAL SERVICE MILEAGE: 3.2

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
LAFPC.CV.55919658
cc_nrcouvillon

Ordered by Atty.:  CHRISTINE MIRE

# CITATION

**J CORY CORDOVA**                    **FIFTEENTH JUDICIAL DISTRICT COURT**

**VS**                               **DOCKET NUMBER: C-20192019 D**

**LOUISIANA STATE UNIVERSTIY**        **PARISH OF LAFAYETTE, LOUISIANA**
**HEALTH SCIENCE CENTER, ET AL**

_____

**STATE OF LOUISIANA**

**TO:   LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER –**
**THROUGH AGENT: LOUISIANA OFFICE OF RISK MANAGEMENT,**
**THROUGH DIRECTOR MELISSA HARRIS**
**1201 NORTH THIRD STREET, STE 7-210**
**BATON ROUGE,  LA 70802**

of the Parish of  E BATON ROUGE

   You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
   Witness the Honorable Judges of said Court, this JUNE 17, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**ORIGINAL PETITION/ AFFIDAVIT/ ATTACHMENTS**

_____

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE           MOVED ( )        NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  (  )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____ MILEAGE $_____ TOTAL $_____
DEPUTY _____

LAFPC.CV.55919666
cc_nrcouvillon

Ordered by Atty.: CHRISTINE MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

### STATE OF LOUISIANA

TO:   LOUISIANA DEPARTMENT OF JUSTICE:
      ATTORNEY GENERAL'S OFFICE-
      THROUGH ATTY JEFF LANDRY
      1885 N. THIRD STREET
      BATON ROUGE, LA 70802

of the Parish of  E BATON·ROUGE

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
Witness the Honorable Judges of said Court, this JUNE 17, 2019.

Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
ORIGINAL PETITION/ AFFIDAVIT/ ATTACHMENTS

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____   TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE  ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____   MILEAGE $_____   TOTAL $_____

DEPUTY _____

214

LAFPC.CV.55919666
cc_nrcouvilion

SHERIFF RETURN

Ordered by Atty.: CHRISTINE MIRE

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   LOUISIANA DEPARTMENT OF JUSTICE:
      ATTORNEY GENERAL'S OFFICE
      THROUGH ATTY JEFF LANDRY
      1885 N. THIRD STREET
      BATON ROUGE, LA 70802

RETURN

of the Parish of  E BATON ROUGE

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this JUNE 17, 2019.

RETURN

_____
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
ORIGINAL PETITION/ AFFIDAVIT/ ATTACHMENTS

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

RETURN

DATE SERVED: JUL 10 2019 ,20_____ TIME: 10:00 AM

SERVED: _____

PERSONAL ( ) _____ LORI SHOALS _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE      MOVED ( )      NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____  MILEAGE $_____  TOTAL $_____

DEPUTY _____

Lafayette Parish Clerk of Court
Filed This Day

JUL 19 2019

_____
Deputy Clerk of Court

RETURN

SHERIFF RETURN



CLERK OF COURT
LAFAYETTE PARISH, LA

2019 JUL 22  PM 3:38

15th JUDICIAL DISTRICT COURT FOR THE PARISH OF LAFAYETTE

STATE OF LOUISIANA

DOCKET NO.  20192019                                    DIVISION D

J. CORY CORDOVA, M.D.  INDEXED

VERSUS

LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER; UNIVERSITY
HOSPITAL AND CLINICS; KAREN CURRY, M.D., NICHOLAS SELLS, M.D., KRISTI
ANDERSON, CHRISTOPHER C. JOHNSTON, and THE GACHASSIN LAW FIRM

FILED:_____     DEPUTY CLERK:_____

## FIRST AMENDED PETITION FOR DAMAGES

NOW INTO COURT, through undersigned counsel comes Petitioner, Dr. J. Cory
Cordova who files this first amended Petition for Damages and respectfully avers:

1.

Petitioner, Dr. J. Cory Cordova, is a person of the full age of majority domiciled in
Lafayette Parish, Louisiana.

2.

Made Defendants herein are:  The Board of Supervisors of Louisiana State University and
Agricultural and Mechanical College ("LSU"), a state agency; University Hospital and Clinics
("UHC") located in Lafayette Parish, Louisiana; Lafayette General Hospital operating under the
tradename Lafayette General Medical Center, ("LGMC") whose principal place of business is
located in Lafayette Parish, Louisiana; Lafayette General Health System, Inc., whose principal
place of business is located in Lafayette Parish, Louisiana; Dr. Karen Curry, in her individual and
official capacities, domiciled in Lafayette Parish, Louisiana; Dr. Nicolas Sells, in his individual
and official capacities, domiciled in Lafayette Parish, Louisiana; Kristi Anderson, in her individual
and official capacities; domiciled in Lafayette Parish, Louisiana; Christopher C. Johnston
domiciled in West Feliciana Parish and the Gachassin Law Firm whose principal place of business
is in Lafayette Parish.

3.

Venue is proper in this Court pursuant to Articles 42, 73 and 74 of the Louisiana Code of
Civil Procedure.

1                    STAMPED COPY GIVEN

**ACTS OF DEFENDANTS, THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE ("LSU"), LAFAYETTE GENERAL HEALTH SYSTEMS ("LGHS"), LAFAYETTE GENERAL MEDICAL CENTER ("LGMC"), UNIVERSITY HOSPITAL AND CLINICS ("UHC"), KAREN CURRY, M.D., NICHOLAS SELLS, M.D., and KRISTI ANDERSON**

4.

The Defendants, The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College ("LSU"), University Hospital and Clinics ("UHC") Lafayette General Hospital operating under the registered tradename, Lafayette General Medical Center ("LGMC"), Lafayette General Health Systems ("LGHS"), Dr. Karen Curry, Dr. Nicolas Sells, and Kristi Anderson are jointly and severally for damages resulting from various violations of LSU's policies and procedures that occurred while Petitioner, Dr. Cordova, was a first-year Internal Medicine resident at Louisiana State University' residency training program that was performed at University Hospital and Clinics in Lafayette, Louisiana.

5.

On May 17, 2013, the Defendants, LGHS, UHC, LSU, along with the State of Louisiana through the Division of Administration entered into a Cooperative Endeavor Agreement ("CEA") wherein the parties agreed to the collective goal of enhancing the stability and competitiveness of Louisiana's medical education and training programs so that Louisiana is positioned to continue to attract the most talented faculty, students, residents, and other medical professionals.

6.

Per the CEA, LGHS is the sole member of UHC, has ongoing academic relationships with LSU, and is committed to the charitable clinical, teaching and research missions. Moreover, the CEA recognized that in order for LSU to effectively provide the LSU Graduate Medical Education, LSU transferred certain Residence Caps to UHC and/or its Affiliate, Lafayette General Medical Center. ("LGMC").

7.

In addition to the Cooperative Endeavor Agreement ("CEA"), LSU and UHC entered into an Academic Affiliation Agreement ("AAA") that provided that UHC, LGHS, or LGMC, as applicable, reserved the right to require LSU to remove LSU faculty or students from UHC or LGMC if, in the reasonable determination of UHC, LGHS, or LGMC if the LSU faculty member

2

or student: i.) fails to act in a professional manner, ii.) displays conduct that is disruptive, unprofessional, or harassing, including, but not limited to, conduct which is sexual in content or orientation, iii.) practices in a manner that interferes with the orderly and efficient rendering of services by UHC or LGMC or by other practitioners of UHC or LGMC; iv.) fails to work cooperatively with others at UHC or LGMC, v.) fails to conform to the applicable policies, guidelines, and regulations of UHC or LGMC; or vi.) any other events set forth in the AAA.

8.

LSU also took the necessary actions to dedicate full time residency positions to be affiliated with UHC or LGMC to enable LGMC to achieve and maintain status as a Major Teaching Hospital. In return all parties, LSU, UHC, LGHS, and LGMC, agreed to use their best efforts to collaboratively develop and grow the LSU Graduate Medical Educational Programs to result in nationally recognized graduate medical education and a center of excellence for clinical education of residents and fellows.

9.

Dr. Cordova entered into a contract with LSU to be a "House Officer," i.e. a resident, at UHC in the Internal Medicine Department from July 1, 2017 through June 30, 2018. This term was to be Dr. Cordova's first-year of his residency.

10.

Pursuant to LSU's relationship with the Accreditation Council for Graduate Medical Education (ACGME), Dr. Cordova's contract with the Defendants includes an agreement to follow established formal grievance procedures for any "action which result[s] in dismissal or could significantly threaten a House Officer's intended development." These complaint and grievance procedures are detailed in the House Officer Manual ("HOM").

11.

At all relevant times, Defendant Dr. Karen Curry served as Dr. Cordova's Program Director at UHC Internal Medicine; Defendant Dr. Nicholas Sells as the UHC Medicine Department Head/Section Chief; and Dr. James B. Falterman as the Associate Dean for Academic Affairs.

3

12.

From June 2017 through the beginning of November 2017, Dr. Cordova was consistently rated "Experienced/Competent, Ready for Unsupervised Practice and Aspirational Expert."

13.

However, Dr. Cordova was, without *any* prior preliminary intervention pursuant the HOM, placed on a probationary period from November 10, 2017 through February 28, 2018. On February 15, 2018, Defendant Dr. Sells informed Dr. Cordova that his contract for the following year would not be renewed due to Dr. Sells' action on a Request for Adverse Action filed by Defendant Dr. Curry.

14.

The manner in which the Defendants imposed unwarranted discipline upon Dr. Cordova without guaranteed Due Process as mandated by Dr. Cordova's contract and the LSU'S HOM violated both Dr. Cordova's contract and his constitutional Due Process rights.

15.

On November 10, 2017, Dr. Curry stated that the Clinical Competency Committee had reviewed his resident performance and recommended that he be placed on probation. The Clinical Competency Committee ("CCC") is a required component of accreditation by the ACGME composed of three of more members of the active teaching faculty who serve as advisors to the program director and reviews the progress of all residents in the program. The CCC also advises the program director regarding residency progress, including promotion, remediation, and dismissal. In this case, the CCC issued a recommendation later in date that differed from the remediation plan imposed by Dr. Curry.

16.

Dr. Curry advised that if Dr. Cordova did not comply with the terms of remediation during probation, his contract was at risk for nonrenewal. The probationary period was from November 10, 2017 until February 28, 2018. Dr. Curry began implementing a remediation plan.

17.

However, the Clinical Competency Committee, composed of Dr. Farha Khan, Dr. Elizabeth Borrero, and Dr. Lon Guidry, did not issue a recommendation until the following month

4

or on or about December 15, 2017 when they issued a remediation plan to Dr. Cordova via email. The Clinical Competency Committee's remediation plan differed from the one imposed by Dr. Curry.

18.

Moreover, during the November 10, 2017 meeting, Dr. Cordova was told by Dr. Curry that the probation would not be a part of Dr. Cordova's academic record.

19.

On February 1, 2018, despite the fact that the probationary and remediation period had not yet expired and the fact that Dr. Cordova was told by members of the Clinical Competency Committee that he was properly remediating pursuant to the plan, Dr. Cordova was notified by Dr. Sells that Dr. Curry filed a Request for Adverse Action ("RFAA"). This action by Dr. Curry initiated proceedings that could result in immediate termination or non-renewal of Dr. Cordova's contract. Dr. Cordova was at this time provided for the first time the RFAA.

20.

Upon review, it was immediately apparent that the RFAA failed to meet the promulgated due process requirements for four (4) mutually exclusive reasons.

21.

First, Dr. Sells made the decision to support the conclusion of Dr. Curry's Request for Adverse Action before any challenge or response could be made by Dr. Cordova. According to the HOM, when a RFAA is filed, the Department Head shall determine if the "charges registered against the House officer appear to be supportable on their face." LSU's HOM. Due Process prohibits the Department Head from reaching any conclusions without providing the Resident an opportunity to challenge the accusations in the RFAA.

22.

In the February 1, 2018 meeting with Dr. Cordova, Dr. Sells stated that he actually supported Dr. Curry's conclusions: "After hearing one side and reviewing what has been submitted, I support that letter based on what I've read, I support that request and you'll get a copy of that." Thus, Dr. Sells indicated he had already made his decision without affording Dr. Cordova any opportunity to respond as required by the HOM, his contract, and due process.

5

·23.

Second, the RFAA was initiated by a member of the faculty (Dr. Karen Curry) that the department head (Dr. Nicholas Sells) admitted lacked objectivity. Dr. Sells admitted to Dr. Cordova after the nonrenewal decision that Dr. Curry was not objective and formed opinions about Dr. Cordova early on. This lack of objectivity observed by Dr. Sells violates ACGME requirements found in Section V(A)(2)(b)(1) and the due process requirements found in Section II (A)(4)(l) of the HOM.

24.

Despite Dr. Curry's lack of objectivity, Dr. Curry did not consult the Clinical Competency Committee regarding her recommendation that Dr. Cordova's contract to be terminated and/or nonrenewed as required by the House Officer Manual and the ACGME.

25.

This failure of the program director to exercise appropriate objectivity and/or to request a recommendation of the Clinical Competency Committee violated Petitioner's procedural and substantive due process rights.

26.

Third, Dr. Curry's RFAA referenced numerous attached exhibits allegedly supporting the accusations therein. However, none of these exhibits were actually attached to Dr. Curry's RFAA. Upon information and belief, Dr. Sells made his February 1, 2018 decision without reviewing any of these alleged exhibits.

27.

In fashioning his challenge to the RFAA, Dr. Cordova requested a copy of the alleged exhibits. The purpose of this request was twofold: rather than merely relying on Dr. Curry's summary of what these exhibits contained, (1) Dr. Cordova could have actual sufficient notice of the allegations against him; (2) and the ability to review and meaningfully respond to the allegations.

28.

Dr. Cordova, in his challenge to the RFAA, specifically reserved any and all Due Process rights to supplement his response once he was provided the exhibits. These exhibits were never

6

provided to Dr. Cordova subsequent to his challenge being filed, prior to Dr. Sells' decision regarding nonrenewal of Dr. Cordova's contract, or even to this date after numerous months of subsequent requests from Dr. Cordova and his counsel.

29.

Fourth, as required by the HOM, Dr. Curry's Request for Adverse Action failed to give a "brief statement of the nature of testimony to be given by each witness."

30.

Upon Dr. Cordova's review and investigation into the allegations contained in the RFAA, he found that the allegations were either grossly exaggerated or patently false.

31.

On February 8, 2018, Dr. Cordova filed a challenge to the RFAA with Dr. Sells, detailing his responses as best was possible without ever seeing the actual exhibits referenced. However, he specifically noted that he was unable to address all of the allegations due to having never been provided the exhibits to the RFAA. Accordingly, Dr. Cordova requested a copy of these exhibits so he could address the actual allegations and reserved his right to supplement his challenge upon the opportunity to review them.

32.

Without ever receiving these exhibits, Dr. Cordova received correspondence from Dr. Sells on February 15, 2018 notifying him that Dr. Curry's RFAA had been accepted and Dr. Cordova's contract would not be renewed.

33.

Upon information and belief, Dr. Sells never reviewed any exhibits referenced in the RFAA prior to making a final determination regarding nonrenewal of Dr. Cordova's contract.

34.

No hearing in front of an impartial committee where witnesses were presented to testify ever occurred.

35.

While still awaiting these exhibits to decide upon a course of action, on February 19, 2018, Dr. Cordova began looking at options to pursue his education at another residency training

7

program. Dr. Cordova communicated that any decision not to further challenge his contract nonrenewal was predicated on the understanding that his privacy regarding the RFAA would be respected. Dr. Sells agreed to notify faculty of Dr. Cordova's request for privacy. There was never an acknowledgement or consent to discipline by Dr. Cordova.

36.

Dr. Cordova interviewed at the University of Alabama at Birmingham ("UAB"), Selma Family Medicine Program. Despite assurances from Dr. Sells about privacy of the RFAA, it was sent to UAB on March 14, 2018. When Dr. Cordova inquired into his privacy rights, he was told by Director of Graduate Medical Education, Kristi Anderson, that the documents had to be produced or a statement that the file was incomplete would have to be included. Accordingly, Kristi Anderson required Dr. Cordova to sign a release to that information.

38.

On April 3, 2018, the LSU Family Medicine Residency Program in Alexandria, LA, another residency training program where Dr. Cordova interviewed sent a request to program director, Dr. Karen Curry. The program requested two (2) items: 1) PGY (Post Graduated Year) -1 Curriculum list of rotations; and 2) Statement with status of resident in good standing and statement of awareness of Dr. Cordova's interest in transitioning from Internal Medicine to Family Medicine. Rather than comply with the request, Dr. Curry replied:

> ACGME requires a summative competency-based performance evaluation on transferring residents and verification of previous educational experiences. Will you need this? If so, can you please send another release for those items?

39.

Although the ACGME requires a program director to obtain a summative competency-based performance evaluation, the program director of LSU Alexandria had not yet requested this information when Dr. Curry volunteered it. Moreover, the ACGME provisions requires that the faculty discuss any evaluation with the resident and further requires that the program must provide **objective** assessments of competence. Instead of following the ACGME requirements, Dr. Curry sent a Milestone Evaluation that Dr. Cordova had never reviewed. More importantly, the Milestone Evaluation was substandard and indicated that Dr. Cordova's skills on each of the areas of core

8

competency was "Conditional on Improvement." (Said evaluation is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "A").

40.

Moreover, the evaluation was not a summation of Dr. Cordova's evaluations as required or requested. Alarmingly, this inappropriate and substandard evaluation was not requested, not objective, and effectively sabotaged Dr. Cordova's chances of transferring to another program.

41.

The medical residency training program also breached its contract with Dr. Cordova by failing to renew his contract although all conditions were met for renewal. Although Dr. Cordova completed his intern year successfully, his contract was not renewed.

42.

After the UAB and Alexandria programs received the inappropriate and incomplete documentation, Dr. Cordova knew that his chances of transferring were very slim. Dr. Cordova wrote a letter to Dr. Curry and Dr. Sells requesting that he be reinstated. On June 11, 2018, Dr. Sells advised Dr. Cordova that "you're going to get an intern certificate, but your program director has said that she no longer wants you in her program for obvious reasons." Dr. Cordova met the requirements of progression and should have been allowed to renew his contract. Moreover, the reasons why the program director no longer wanted Dr. Cordova in the program are not obvious to him. It is Dr. Cordova's firm belief that the bias formed by Dr. Curry was motivated by personal reasons rather than related to his competency as a doctor.

43.

Proof of the unprofessional manner in which all of these decisions were made is contained in a May 21, 2018 recorded conversation in which Dr. Sells states to Dr. Cordova that "Life is not a dick measuring contest. It's not about celebrating your size or what you can or cannot do with it...I'm proud of what little I've got." Although Dr. Cordova nervously laughs on the tape recording, he in no way initiated or welcomed this unprofessional and inappropriate conversation. Dr. Sells then goes on to discuss sex, the use of Cialis, and a penis pump in an unprofessional and inappropriate manner. In a separate recorded conversation, Dr. Sells made inappropriate comments

9

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 191

that Dr. Cordova may be interested in pursuing a medical career in pharmaceutical sales because it would allow him to travel and be unfaithful to his wife.

44.

The recorded comments of Dr. Sells exemplify the unprofessional and unfair work environment that Dr. Cordova and others within the program are forced to endure. Even the Director of Graduate Medical Education, Kristi Anderson, admitted that residents are fearful of retaliation. Other witnesses will also confirm the lack of professionalism, favoritism, and disparate treatment that some residents receive.

**CAUSES OF ACTION AS TO DEFENDANTS THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE ("LSU"), UNIVERSITY HOSPITAL AND CLINICS ("UHC"), LAFAYETTE GENERAL HEALTH SYSTEM ("LGHC"), LAFAYETTE GENERAL MEDICAL CENTER ("LGMC"), KAREN CURRY, M.D., NICOLAS SELLS, M.D. and KRISTI ANDERSON**

**Violation of Due Process**

45.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as is fully set-forth herein.

46.

The Fourteenth Amendment to the United States Constitution provides, in part, "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." Similarly, Article I, Sec. 2 of the Louisiana Constitution provides that "No person shall be deprived of life, liberty, or property, except by due process of law." Due process necessitates a hearing where a party can fully and meaningfully contest the allegations being made against him or her that serve as a basis for deprivation of their property interests. *See Bd. Of Regents v. Roth*, 408 U.S. 564, 574-75 (1972).

47.

The Louisiana Supreme Court has concluded that residents possess a due process "property" and/or "liberty" in their positions and potential for future earnings. *See Driscoll v. Stucker*, 04-0589 (La. 01/19/05); 893 So.2d 32, 41-43. When a resident is deprived of due process in these situations, he is entitled to all loss of wages resulting from that denial. *Id.* at 52-54.

10

48.

The above-actions of the Defendants violated Dr. Cordova's due process rights established in the federal and state constitutions. Indeed, in an analogous case, the Louisiana Supreme Court found that LSU's act of withholding documents despite continued requests, as the Defendants did here with the exhibits to the RFAA, constituted a denial of due process. *Id.* at 48.

49.

LSU's denial of Dr. Cordova's due process rights also violates the academic affiliation agreement between LSU, UHC, LGHC, and LGMC.

Breach of Contract

50.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as if fully set-forth herein.

51.

"Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation." La. C.C. art. 1759, "An obligor is liable for the damages caused by his failure to perform a conventional obligation." La. C.C. art. 1994. Both pecuniary and nonpecuniary interests may be recovered.

52.

The House Officer Agreement of Appointment contract entered into by Dr. Cordova and Defendants mandated that any action by the Defendants that could "result in dismissal or could significantly threaten a House Officer's intended career development" follow the due process procedures of the HOM. The above-actions of the Defendants breached their contractual duties to Dr. Cordova.

53.

On November 6, 2018, Dr. Cordova, appealed the adverse decision of "LSU" in writing, but said defendants ignored the appeal, in further violation of his rights. (Said appeal is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "B").

11

<u>**ACTS OF CHRISTOPHER C. JOHNSTON AND GACHASSIN LAW FIRM**</u>

54.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as if fully set-forth herein.

55.

On or about February 5, 2018 plaintiff, Cordova, formally retained the services of defendant, Christopher C. Johnston, a partner in the defendant, Gachassin Law Firm for advice and assistance to contest the false allegations contained in the adverse action instituted against Cordova by the aforementioned "medical" defendants, and to ensure that the adverse action did not affect Cordova's ability to complete his residency training. (Said engagement letter is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "C").

56.

At no time during the representation by Mr. Johnston, did Johnston reveal that Johnston and the Gachassin Law Firm also represented Lafayette General Medical Center (who is in partnership with LSU/USC), Dr. Nicholas Sells (the chief of internal medicine), and Dr. James Falterman (the academic dean). Dr. Sells and Dr. Falterman were the top decision makers regarding the adverse action and were potential adverse witnesses against Dr. Cordova in the adverse action proceedings mentioned above.

57.

After defendant Johnston began representing Dr. Cordova in the disciplinary proceedings, Dr. Cordova noticed that Johnston was not very aggressive in his defense against the adverse action. Also, defendant Johnston encouraged Dr. Cordova not to be aggressive in his approach and to "keep his mouth shut because it would make things worse". In fact, Johnston's exact words were "don't complain about the food while you are in prison."

58.

When Dr. Cordova questioned Defendant, Johnston about litigating the matter, Johnston revealed for the first time that his firm represented Drs. Sells and Falterman and Lafayette General

12

Hospital. Said conflict was not revealed to Dr. Cordova by Mr. Johnston until July 27, 2018, six months into the representation.

59.

On October 29, 2018, Plaintiff hired new counsel who advised him that his prior counsel may have had a conflict of interest. At that point, Dr. Cordova retained professor Dane Ciolino, who wrote the attached advisory opinion, concluding that defendants, Johnston and Gachassin had violated rules 1.7 and 1.10 in representing Dr. Cordova in a disciplinary matter adverse to LSU/UHC, Lafayette General and members of the UHC administration, who they also represented. (Said opinion of Professor Ciolino is attached hereto, made a part hereof as if copied herein *in extenso* and marked for identification as Exhibit "D")

60,

Upon information and belief, defendants Johnston and Gachassin Law Firm knew of the conflict existing between Dr. Cordova and their other existing clients yet chose to remain silent until after Dr. Cordova had suffered great loss.

## FIRST CAUSE OF ACTION-DISGORGEMENT OF LEGAL FEES FOR CONFLICT OF INTEREST

62.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above, as if fully set-forth herein.

63.

Due to the ethical violations enumerated above, all legal fees paid in the underlying matter to defendants, Johnston and Gachassin, should be disgorged and defendants should be ordered to return same. Further all legal fees incurred by Plaintiff in an attempt to mitigate his damages are recoverable herein.

## SECOND CAUSE OF ACTION-LEGAL MALPRACTICE

64.

Plaintiff incorporates by reference and re-alleges the allegations contained in the paragraphs above as if fully set-forth herein.

13

65.

Defendants, Johnston and Gachassin, breached duties owed to Dr. Cordova as his attorneys including, but not limited to communication, honesty and corresponding and failed to exercise the proper standard of care as outlined above in violation of the Louisiana Rules of Professional Conduct.  In fact, Louisiana Courts consider the Rules of Professional conduct to have the full force and effect of substantive law. See *Schlesinger v. Herzog*, 672 So. 2d 701, 707 (La. Ct. App. 4th Cir. 1996); *Dazet Mortgage Solution LLC v. Faia*, 116 So. 3d 711, 716 (La. App. Ct. 5th Cir. 2013).

66.

As a result of the breaches of Defendants, Johnston and Gachassin, Dr. Cordova has suffered damages, including but not limited to the loss of a year of residency, loss of income, loss of standing in the community, damage to reputation, all additional attorney fees, and all other equitable relief to remedy the malpractice of said defendants.

67.

Said defendants' breaches and negligence were the proximate cause of Dr. Cordova's damages.

68.

All defendants named herein are jointly and solidarily liable and upon information and belief, they worked together in violation of duties and responsibilities owed to Plaintiff herein to cause him loss.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, J. Cory Cordova, M.D., prays that:

1.  Certified copies of this Amended Petition be issued and served according to law on the Defendants, The Board of Supervisors of Louisiana State University, University Hospital and Clinics, Lafayette General Hospital System, Lafayette General Medical System, Dr. Karen Curry, Dr. Nicolas Sells, Kristi Anderson, Christopher C. Johnston and the Gachassin Law Firm;

14

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 196

2. After legal delays and proceedings had, there be judgment against Defendants, The Board of

Supervisors of Louisiana State University, University Hospital and Clinics, Lafayette General

Hospital System, Lafayette General Medical System, Dr. Karen Curry, Dr. Nicolas Sells, Kristi

Anderson, Christopher C. Johnston and the Gachassin Law Firm and in favor of Plaintiff, Dr.

J. Cory Cordova in such amounts as are just and reasonable;

3. Removal of inappropriate information from Dr. J. Cory Cordova's academic records;

4. Legal interest from date of judicial demand on all amounts awarded, and for all costs, expenses

of these proceedings, and attorney's fees be granted;

5. All necessary orders and decrees as may be required or proper in the premises and for full,

general, and equitable relief; and

6. For trial by jury.

RESPECTFULLY SUBMITTED:

THE BEZOU LAW FIRM

JACQUES F. BEZOU, SR. (3037)
JACQUES F. BEZOU, JR. (33728)
MATTHEW L. DEVEREAUX (32125)
ERICA A. HYLA (34603)
THE BEZOU LAW FIRM
534 E. Boston Street
Covington, Louisiana 70433
Telephone: (985) 892-2111
Facsimile: (985) 892-1413
jb2@bezou.com

AND

CHRISTINE M. MIRE (29352)
Attorney at Law
2480 Youngsville Hwy., Suite C
Youngsville, LA 70592
Telephone: (337) 573-7254
Facsimile: (337) 205-8699
cmmire@gmail.com
*Attorneys for J. Cory Cordova, M.D*

FILED THIS 22
DAY OF Jul , 20 19
Monét McCarthy
Deputy Clerk of Court

15

**PLEASE SERVE:**

The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, through its registered agents: Louisiana Office of Risk Management through its director, Melissa Harris, 1201 N. Third Street, Suite 7-210, Baton Rouge, Louisiana 70802; Louisiana Department of Justice: Attorney General's Office through Attorney General Jeff Landry, 1885 North Third Street Baton Rouge, Louisiana 70802, and the Heads of the Department for the Board of Supervisors, President F. King Alexander, 3810 West Lakeshore Drive, Baton Rouge, Louisiana 70808 and Chancellor of LSU Health Sciences Center and Dean of LSU School of Medicine, Dr. Larry Hollier, MD, 433 Bolivar Street, 8th Floor, New Orleans, Louisiana 70112.

University Hospital and Clinics, through its registered agent: Gordon E. Rountree, Jr., 920 West Pinhook, Lafayette, LA 70503

Lafayette General Health System, through its registered agent:  Gordon E. Rountree, Jr., 920 West Pinhook, Lafayette, LA 70503

Lafayette General Medical Center, through its registered agent:  Gordon E. Rountree, Jr., 920 West Pinhook, Lafayette, LA 70503

Dr. Karen Curry, to be served personally at University Hospital and Clinics 2390 West Congress Street, Lafayette, LA 70506, Department of Internal Medicine between the hours of 7:00AM-5:00PM

Dr. Nicolas Sells, to be served personally at University Hospital and Clinics 2390 West Congress Street, Lafayette, LA 70506, Department of Internal Medicine between the hours of 7:00AM-5:00PM

Kristi Anderson, to be served personally at University Hospital and Clinics 2390 West Congress Street, Lafayette, LA 70506, Department of Graduate Medical Education between the hours of 7:00AM-5:00PM

Christopher Johnston, to be served personally at Johnston Law Firm, LLC located at 7830 Sage Hill Road, Saint Francisville, LA 70775

Gachassin Law Firm, through its registered agent: Nicholas Gachassin, III, 200 Corporate Blvd., Suite 103, Lafayette, LA 70508

16



56258726

Page: 1 of 7

## Resident Milestone Evaluation: Mid-Year 2017-2018

Program: University Hospitals and Clinics/Louisiana State University (Lafayette) Program  1402111144 - Internal Medicine

Resident: Joseph Cordova    Date Evaluation Completed: November 30, 2017  (Mid-Year)    Resident Year in Program: 1

This form documents the most recent resident attainment of the milestones within each of the competencies as formally observed. Evaluation of the resident's developmental progression is based on numerous formative evaluations and the overall judgment of the resident's performance by the Clinical Competency Committee.

Competency                         SubCompetency
    Developmental Milestone Narrative

| 1  Patient Care | Gathers and synthesizes essential and accurate information to define each patient's clinical problem(s) (PC1) |
|---|---|

Dr. Cordova is not yet ready for unsupervised practice.

Inconsistently able to acquire accurate historical information in an organized fashion.

Does not perform an appropriately thorough physical exam or misses key physical exam findings.

Does not seek or is overly reliant on secondary data.

Inconsistently recognizes patients' central clinical problem or develops limited differential diagnoses.

| 2  Patient Care | Develops and achieves comprehensive management plan for each patient (PC2) |
|---|---|

Dr. Cordova is not yet ready for unsupervised practice.

Inconsistently develops an appropriate care plan.

Inconsistently seeks additional guidance when needed.

| 3  Patient Care | Manages patients with progressive responsibility and independence (PC3) |
|---|---|

Dr. Cordova is not yet ready for unsupervised practice.

Requires direct supervision to ensure patient safety and quality care.

Inconsistently manages simple ambulatory complaints or common chronic diseases.

Inconsistently provides preventive care in the ambulatory setting.

Inconsistently manages patients with straightforward diagnosis in the inpatient setting.

Unable to manage complex inpatients or patients requiring intensive care.

| 4  Patient Care | Skill in performing procedures (PC4) |
|---|---|

Dr. Cordova is not yet ready for unsupervised practice.
Possesses insufficient technical skill for safe completion of common procedures.

| 5  Patient Care | Requests and provides consultative care (PC5) |
|---|---|

Dr. Cordova is not yet ready for unsupervised practice.

Inconsistently manages patients as a consultant to other physicians/health care teams.

Inconsistently applies risk assessment principles to patients while acting as a consultant.

Inconsistently formulates a clinical question for a consultant to address.

| 6  Medical Knowledge | Clinical knowledge (MK1) |
|---|---|

Dr. Cordova is not yet ready for unsupervised practice.
Possesses insufficient scientific, socioeconomic and behavioral knowledge required to provide care for common medical conditions and basic preventive care.

FILED THIS    22
DAY OF    July    , 20 19
    Margret McCarthy
    Deputy Clerk of Court

© 2018 Accreditation Council for Graduate Medical Education (ACGME)

EXHIBIT
A

⚖ CHRISTINE M. MIRE
ATTORNEY AT LAW                                    FAMILY LAW & TRIAL PRACTICE

November 6, 2018

*VIA EMAIL & U.S. MAIL*
KATHERINE MUSLOW
General Counsel
LSU Health Systems, New Orleans
433 Bolivar Street
New Orleans, Louisiana 70112

DR. STEVE NELSON
Dean, LSUHSC School of Medicine
2020 Gravier Street, 5ᵗʰ Floor
New Orleans, LA 70112

    Re:    *Dr. J. Cory Cordova; Request for Adverse Action Appeal*

Ms. Muslow and Dr. Nelson,

    I have been retained to represent Dr. Cory Cordova in a consultant capacity to
review and appeal the administrative disciplinary action that was instituted and
disseminated to at least one (1) other medical residency training program. Therefore, please
allow this correspondence to serve as a Notice of Appeal regarding the procedural defects
in the disciplinary action instituted against Dr. Cordova. This correspondence also notes
other violations of LSU School of Medicine's policies and procedures that occurred while
Dr. Cordova was a first-year resident at LSU School of Medicine, University Hospital and
Clinics in Lafayette, Louisiana.

    On November 10, 2017, Dr. Cordova was notified by Dr. Karen Curry that the
Clinical Competency Committee had carefully reviewed his resident performance and
recommended that he be placed on probation. *See Exhibit 1*. Dr. Cordova met with the
Department Chief, Dr. Nicholas Sells, who confirmed that probation was warranted. The
probationary period was from November 10, 2017 until February 28, 2018.

    On February 1, 2018, Dr. Cordova was informed by Sells that Dr. Curry had
filed a Request for Adverse Action which could result in nonrenewal of his House Officer
contract and/or immediate termination. *See Exhibit 2*. On February 8, 2018, Dr. Cordova
formerly objected to the Request for Adverse Action. *See Exhibit 3*. Dr. Cordova also
reserved his right to supplement his response once the exhibits referenced in the Request
for Adverse Action were provided to him. To date, Dr. Cordova has not received the
exhibits that are referenced in the Request for Adverse Action despite numerous requests.

    On June 30, 2018, Dr. Cordova completed his PGY-1 year in the department of
Internal Medicine. Due to the adverse action contained in his academic file, the failure of
faculty members to respect Dr. Cordova's privacy in this matter, and the difficulty Dr.
Cordova has experienced in completing his residency training, this appeal and the

2480 YOUNGSVILLE HIGHWAY, SUITE C • YOUNGSVILLE, LOUISIANA 70592
TEL: (337) 573-7254 • FAX: (337) 205-8699 • cmm@mirelawfirm.com



C H R I S T I N E   M .   M I R E
ATTORNEY AT LAW                                                                                    PAGE 2 OF 8

complaints contained herein are necessary. Accordingly, Dr. Cordova raises several due process violations regarding the disciplinary action taken against him for the following reasons.

I.  **Failure to Follow the House Officer Manual Provisions for House Officer Preliminary Action, Disciplinary Action, and Grievance Procedures.**

A.  Failure to Consult with the DIO or Academic Dean prior to initiation of disciplinary action.

Pursuant to Provision VI of the House Officer Manual, consultation with the DIO or Academic Dean is required prior to initiation of all actions. In this case, the Academic Dean, Dr. James Falterman, was not consulted prior to the initiation of action against Dr. Cordova. Dr. Cordova did not raise this issue sooner for two reasons. First, on November 10, 2017, when Dr. Cordova was placed on probation, Dr. Karen Curry, Department Head, advised him, in a recorded conversation, that she had turned in several written complaints and spoken to "Jimmy" or Dr. Falterman who approved the plan.

Second, Dr. Cordova was dissuaded from speaking to Dr. Falterman by Dr. Nicholas Sells, Department Chief. This dissuasion can be confirmed from a June 11, 2018 recorded conversation wherein Dr. Sells states: "If you want to talk to Dr. Falterman, I encourage that too, however, I can tell you that he's going to say that Dr. Cordova came to me, what are the details and I will show him the details…" The House Officer Manual makes clear that the "details" should have been discussed with Dr. Falterman prior to initiation of any action.

Despite the misrepresentation and dissuasion, in early August of 2018, Dr. Cordova did ultimately meet with Dr. Falterman who confirmed that he was not consulted prior to discipline and that nonrenewal or immediate termination is not something he ordinarily consents to when there are no serious grievances. He further indicated that he wished Dr. Cordova would have come to him sooner.

B.  Failure to issue a warning or reprimand prior to imposing probation.

Pursuant to Provision VI(A) preliminary academic intervention should have been imposed prior to the imposition of probation. Instead of a warning or reprimand, Dr. Cordova was immediately placed on probation. In the November 10, 2017 meeting Dr. Cordova asked Dr. Curry if anything could be done to prevent probation. Dr. Curry ignored the question and placed Dr. Cordova on probation without offering Preliminary Academic Intervention in violation of the House Officer Manual.

C.  Failure to consult with the Clinical Competency Committee prior to the imposition of probation.

On November 10, 2017, Dr. Curry stated, in a recorded conversation, that she had submitted written complaints to the Clinical Competency Committee and they

recommended probation. However, this statement is inaccurate based on the statements made by several members of the Clinical Competency Committee. The Clinical Competency Committee did not issue a recommendation until the following month or on or about December 15, 2017 when they issued a remediation plan to Dr. Cordova via email. The Clinical Competency Committee's remediation plan differed from the remediation plan imposed by Dr. Curry. *See Exhibit 4.*

Moreover, during the November 10, 2017 meeting, Dr. Lonn Guidry, a member of the Clinical Competency Committee, was present when Dr. Curry notified Dr. Cordova that he had been placed on probation. After Dr. Curry notifies Dr. Cordova that he was being placed on probation and the requirements of remediation, Dr. Guidry can be heard stating, "So the plan changed?" Dr. Curry responds that "Jimmy" presumably Dr. Falterman said the previous plan was "too much." This statement was later determined to be a misrepresentation in that Dr. Falterman later confirmed to Dr. Cordova that he was not consulted prior to the imposition of discipline. Dr. Guidry also asked if the probation would be a part of Dr. Cordova's academic record and Dr. Curry told him that it would not. However, the letter regarding probation was sent to another residency training program.

**D. Failure to follow the House Officer Manual procedure for Adverse Action.**

On November 10, 2017, Dr. Cordova was advised that if he did not comply with the terms of remediation, he was at risk for nonrenewal. The probationary period was until February 28, 2018. However, on February 1, 2018, and despite the fact that the probationary and remediation period had not yet expired, Dr. Cordova was notified by Dr. Nicholas Sells of Dr. Curry's Request for Adverse Action and the intent to initiate proceedings that could result in immediate termination or non-renewal of his contract. Dr. Sells indicated that based on the allegations contained in the Request for Adverse Action, it was his opinion that the allegations had merit. However, Dr. Sells later admitted (in a recorded conversation) that Dr. Curry was not objective because she formed opinions about Dr. Cordova early on. (*Recording of 5/21/18*). This admission by Dr. Sells was also obvious to other members of the faculty and this lack of objectivity violates ACGME requirements found in Section V(A)(2)(b)(1) and due process requirements found in Section II(A)(4)(h) and Section II(A)(4)(l).

The January 30, 2018 Request for Adverse Action written by Dr. Karen Curry references Clinical Competency Committee meetings that occurred on January 8, 2018 and January 10, 2018. *See Exhibit 2.* However, Dr. Curry fails to mention that the Clinical Competency Committee did not recommend termination and/or nonrenewal of Dr. Cordova's contract as required by the House Officer Manual and the ACGME. Moreover, on January 8, 2018—the same day Dr. Curry alleges that the Clinical Competency Committee had a meeting—Dr. Cordova recorded a meeting he had with two (2) members of the Clinical Competency Committee (Dr. Lonn Guidry and Dr. Farha Khan) wherein the committee members agreed that Dr. Cordova was remediating properly and following the remediation plan to their satisfaction.

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 202

CHRISTINE M. MIRE
ATTORNEY AT LAW

Also, on January 30, 2018, the very same day that the Request for Adverse Action was initiated, Dr. Cordova met with Dr. Elizabeth Borerro, another member of the Clinical Competency Committee. Dr. Borerro advised that Dr. Cordova's performance was "way improved." Dr. Borerro does not mention any recommendation that Dr. Cordova's contract would not be renewed. In fact, Dr. Borerro was surprised by the decision not to renew Dr. Cordova's contract because his alleged infractions were not serious and no patient was harmed.

Failure of the program director to exercise appropriate objectivity and/or to get a recommendation of the Clinical Competency Committee violates the ACGME requirements governing same. *See ACGME Program Requirements, Section V(A)(1) et. seq.* Additionally, Dr. Curry's Request for Adverse Action failed to follow the required format outlined in Provision VI(B)(4) of the House Officer Manual for two (2) mutually exclusive reasons. First, the Request references Exhibits that Dr. Cordova was not provided. Second, Dr. Curry does not include a brief statement of testimony expected to be given by each witness. Through Dr. Cordova and the undersigned's investigation into the validity of the allegations, the witnesses listed on the Request for Adverse Action will not testify consistently with the allegations. For instance, see the attached statements and letters of support from Dr. Julio Rodriguez-Quinones, Dr. Adam P. Giddings, Dr. Ali Sadeghi, Dr. Matthew Whittington, Dr. Steve Rees, and Carmen Morgan. *See Exhibit 5.* The attached letters of support and Dr. Whittington's clarification of what actually happened suggest that the allegations contained in the Recommendation of Probation and Request for Adverse Action are patently false or grossly exaggerated.

Finally, on February 8, 2018, or five (5) working days after his meeting with Dr. Sells to discuss the Request for Adverse Action, Dr. Cordova formally challenged the Request for Adverse Action in writing and noted that he was unable to completely address all of the allegations because he was not provided the exhibits referenced. *See Exhibit 3.* Dr. Cordova reserved his right to supplement his response once the exhibits were received. To date, Dr. Cordova has not received the exhibits despite repeated requests. Moreover and despite compliance with the House Officer Manual, the academic dean did not invoke the ad hoc committee as required.

The Request for Adverse Action failed to meet the due process requirements for four (4) mutually exclusive reasons. First, the Request for Adverse Action was initiated by a member of the faculty (Dr. Karen Curry) that the department head (Dr. Nicholas Sells) admitted lacked objectivity. Second, the Request for Adverse Action did not provide the referenced documentary evidence; therefore, Dr. Cordova did not have the required or sufficient notice of the allegations and charges against him. Third, the Request for Adverse Action failed to give a brief statement of the nature of testimony to be given by each witness. Fourth, the Academic Dean was not consulted prior to initiation of adverse action and did not initiate proceedings after Dr. Cordova formally objected. These deficiencies deprived Dr. Cordova of his due process rights and render the proceedings null and void.

## II.   Failure to Comply with the Agreement to Keep All Disciplinary Action Confidential.

On February 19, 2018, Dr. Cordova decided that due to the lack of objectivity and the toxic environment, it was best to accept contract non-renewal and pursue his education at another medical school. Dr. Cordova was clear in his communication that he was accepting contract renewal with the understanding that his privacy regarding the Request for Adverse Action would be respected. Dr. Sells agreed to notify faculty of Dr. Cordova's request for privacy. *See Exhibit 6.* On March 7, 2018, Dr. Cordova acknowledged his intent of non-renewal of his contract in writing. *See Exhibit 7.* There was never an acknowledgement or consent to discipline by Dr. Cordova. Nevertheless, on March 14, 2018, the Request for Adverse Action was sent to the University of Alabama Birmingham, Selma Family Medicine Program. When Dr. Cordova inquired into his privacy rights, he was told by Director of Graduate Medical Education, Kristi Anderson, that the documents had to be produced and required Dr. Cordova to sign a release to that information. Not surprisingly, Dr. Cordova has not been accepted into the UAB residency training program.

On April 3, 2018, the LSU Family Medicine Residency Program in Alexandria, LA, another residency training program that was interested in admitting Dr. Cordova sent a request to program director, Dr. Karen Curry. The program requested two (2) items from Dr. Curry: 1.) PGY-1 Curriculum list of rotations; and 2.) Statement with status of resident in good standing and statement of awareness of Dr. Cordova's interest in transitioning from Internal Medicine to Family Medicine. *See Exhibit 8, the attached email from Katheryn Burnaman.* Rather than comply with the request, Dr. Curry replied:

> ACGME requires a summative competency-based performance evaluation on transferring residents and verification of previous educational experiences. Will you need this? If so, can you please send another release for those items? *See Exhibit 9.*

Although the ACGME does require that before accepting a transfer resident the program director must obtain a summative competency-based performance evaluation, the program director of Alexandria did not request this information. Moreover, the ACGME provisions requires that the faculty discuss any evaluation with the resident and further requires that the program must provide **objective** assessments of competence. *See ACGME Section V(A)(2) et. seq.* Instead of following the ACGME requirements, Dr. Curry sent a Milestone Evaluation that Dr. Cordova had never reviewed. More importantly, the Milestone Evaluation was substandard and indicated that Dr. Cordova's skills on each of the areas of core competency was "Conditional on Improvement." *See Exhibit 10.*

The evaluation was not requested by the program director and it is not a summation of Dr. Cordova's evaluations as required. In fact, the evaluation was contrary to the reviews Dr. Cordova received throughout his residency. It is also questionable that the Clinical Competency Committee prepared the Milestones Evaluations as required by ACGME guideline V(A)(1)(b)(1)(b). Even if the Clinical Competency Committee did prepare this Milestone Evaluation (which Dr. Cordova sincerely doubts) the Clinical Competency

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 204

CHRISTINE M. MIRE
ATTORNEY AT LAW                                                                  PAGE 6 OF 8

Committee did not review this evaluation with Dr. Cordova as required by Provision (V)(A)(1)(b)(1)(a). The evaluation submitted to the Alexandria and UAB residency training programs also violates the House Officer Manual Provision IX.A.3., which requires that the evaluation must be reviewed with the House Officer and signed by the House Officer and the Program Director. Moreover, the evaluation did not include Milestones assessment, case logs data, House Officer Evaluations, and a statement regarding the House Officer's ability to practice with or without supervision. Alarmingly, this inappropriate and substandard evaluation was not requested, not objective, and effectively sabotaged Dr. Cordova's chances of transferring to another program.

III.     Failure to Follow the House Officer Manual and ACGME Guidelines for Contract Renewals.

Pursuant to Section IV(H) of the House Officer Manual:

> All written agreements of appointment/contracts are for one year and each House Officer must be reappointed for each subsequent year of training, contingent upon satisfactory completion of the current post-graduate year and assurance that all requirements are met for progression. Contract renewal is subject to mutual written consent of the Department Head and the House Officer. A contract renewal must be made in a timely manner in accordance with ACGME requirements as outlined in the School of Medicine Policy and Procedure Manual and with dates set by the GME office.

Although Dr. Cordova completed his intern year successfully, his contract was not renewed. After the UAB and Alexandria programs received the inappropriate and incomplete documentation, Dr. Cordova knew that his chances of transferring were very slim. Dr. Cordova wrote a letter to Dr. Curry and Dr. Sells requesting that he be reinstated. On June 11, 2018, in a recorded conversation, Dr. Sells advised Dr. Cordova that "you're going to get an intern certificate, but your program director has said that she no longer wants you in her program for obvious reasons." Dr. Cordova met the requirements of progression and should have been allowed to renew his contract. Moreover, the reasons why the program director no longer wanted Dr. Cordova in the program are not obvious to him. It is Dr. Cordova's firm belief that the bias formed by Dr. Curry was motivated by personal reasons rather than his competency as a doctor.

IV.     Violations of Equal Opportunity Employment Policy

The House Officer Manual Provision IV(F) indicates that LSU Health Sciences Center is committed to providing equal opportunity to all members of the LSU Health Sciences Center Community. During the course of interviewing various witnesses regarding Dr. Cordova's alleged transgressions, several witnesses indicated that Dr. Cordova was not treated in the same manner as other residents. For instance, see the statement of Carmen Morgan who stated that she personally observed more egregious behavior than Dr. Cordova was accused of and other residents were not disciplined.

Several other witnesses who wished to remain confidential will likely speak to Human Resources or any other appropriate authority provided they will be shielded from retaliation. These witnesses described a hostile and toxic work environment in which members of upper management pressured other individuals to file complaints against residents they did not like that were unwarranted. The witnesses also described an environment riddled with favoritism, unprofessional conduct, and gossip. This work environment was confirmed by Dr. Sells in a recorded conversation that occurred on May 21, 2018. The witnesses that are relevant to this matter also confirmed that the treatment of Dr. Cordova was based on personal bias rather than his competency as a doctor. Dr. Cordova respectfully requests an investigation into this matter pursuant to the House Officer Manual Provisions IV(C) and IV(F).

V.      Violations of the Sexual Harassment Policy

Section IV(C) of the House Officer Manual indicates that the School of Medicine is committed to providing a professional work environment that maintains equality, dignity, and respect for all members of its community. In keeping with this commitment, the School of Medicine prohibits discriminatory practices, including sexual harassment. Sexual harassment is defined in pertinent part as unwelcome propositions regarding one's sexuality, sexual experience, or attention to an individual's body. It also includes unwanted sexual innuendo, suggestions, or jokes.

On March 9, 2018, Dr. Nicholas Sells, Section Chief, in a recorded conversation, can be heard making inappropriate references to "orgies." On May 21, 2018, and in violation of the House Officer Manual provisions regarding Sexual Harassment, Dr. Sells (in a recorded conversation) can be heard inappropriately commenting on the fact that Dr. Cordova shaved his arms and legs. Dr. Sells also made inappropriate comments that Dr. Cordova may be interested in pursuing a medical career in pharmaceutical sales because it would allow him to travel and be unfaithful to his wife.

Also on May 21, 2018, in a recorded conversation, Dr. Sells, can be heard stating to Dr. Cordova that "Life is not a dick measuring contest. It's not about celebrating your size or what you can or cannot do with it...I'm proud of what little I've got." Although Dr. Cordova nervously laughs on the tape recording, he in no way initiated or welcomed this unprofessional and inappropriate conversation. Dr. Sells then goes on to discuss sex, the use of Cialis, and a penis pump in an unprofessional and inappropriate manner.

On this same recording, Dr. Cordova can be heard apologizing for disappointing Dr. Sells and further asked if there was something Dr. Sells liked at the time he interviewed with the program. Dr. Sells responded, "There was and then you came here and showed your ass...such that you got drug into my office. I said, let me be sure he understands what the expectations are, that was my defense. Then when I tried to make those expectations known, crazy Cory comes out."

The recorded comments of Dr. Sells exemplifies the unprofessional and hostile work environment that Dr. Cordova and others within the program are forced to endure. Even

**C H R I S T I N E   M.   M I R E**
ATTORNEY AT LAW                                                      PAGE 8 OF 8

the Director of Graduate Medical Education, Kristi Anderson, admitted that residents are
fearful of retaliation. Other witnesses will also confirm the lack of professionalism,
favoritism, and disproportional treatment that some residents receive.

Dr. Cordova respectfully requests that the violations to his due process rights, breach
of confidentiality, and other violations articulated herein be immediately investigated and
that he be afforded all equitable relief. This relief may include, but is not limited to,
immediate reinstatement, a due process hearing, redaction of unwarranted discipline from
his permanent academic record, investigation into the actions of Dr. Karen Curry and Dr.
Nicholas Sells, and protection from further retaliation by members of the LSU staff.

Best regards,

CHRISTINE M. MIRE

cc:    Dr. James Falterman, DIO and Associate Dean (jfalte@lsuhsc.edu)
       Dr. Karen Curry, Program Director Internal Medicine (KCurry@lsuhsc.edu)
       Kristi Anderson, Director of Graduate Medical Education (kmetoy@lsuhsc.edu)
       Dr. Nicholas Sells, Section Chief of Internal Medicine (nsells@lsuhsc.edu)
       Dr. Bo Sanders, Chairman of Internal Medicine (csande@lsuhsc.edu)
       Dr. Charles W. Hilton, Associate Dean for Academic Affairs (504) 599-1453
       Jason Johnson, Human Resources (jjoh46@lsuhsc.edu)



**NEW ORLEANS**

School of Medicine
Department of Internal Medicine

November 10, 2017

Corey Cordova, M.D.
210 Wind Haven Lane
Lafayette, LA 70506

Dear Dr. Cordova:

**Request for Adverse Action**

After the Clinical Competency Committee carefully reviewed your resident performance on Monday, October 30, 2017, you are being placed on probation for this academic year effective November 10, 2017.

**List of Deficiencies / Reasons:**

This recommendation for probation is based on the recommendations of the Clinical Competency Committee due to your substandard performances in the following competencies:

1) Patient Care:
    a. Poor organizational and time-management skills reflected in:
        i. Inability to write timely and accurate orders. Examples of this include:
            1. Complaint from upper level resident regarding your time management on the service.
            2. Verbal complaint by LGMC faculty and upper level regarding time management causing you to start working late, or causing a delay of the incoming resident to begin work.
        ii. Inability to work effectively as a team player. Examples of this include:

    b. Not informing your upper level resident of an ICU admission at LGMC.

    c. Failure to consistently follow through on orders that you were specifically instructed to complete on your patients. Examples of this include:



          i.  Insisting an emergency cardiac catheterization be performed on a patient when your upper level resident assured you that it was not clinically indicated.

    d.  Inability to write timely and accurate orders.
        i.  Example: Report by upper level that you would not review the patient's record when being called with problems at night.

2)  Interpersonal Skills/Communication Skills:
    a.  Disrespectful, condescending behavior with residents and staff. Examples include:
        i.  Outward burst in a hospital meeting that the ER staff consulted medicine inappropriately. *Addressed in a meeting with Department Head and Program Director, July 2017.*

3)  Professionalism:
    a.  Untruthful behavior and repeated tardiness.  Example:

        i.  Reporting you were late only one time during night float; however, discovered you were late to multiple shifts.

**Remediation Plan:**

1) Patient Care:
    a. You must answer pages within a reasonable period of time (within 5 min) unless providing emergency care of a patient.

    b. You are expected to present at least 2 of your cases during morning report during your block of wards.

2) Medical Knowledge:

    a. Participate in formal remediation plan under the direction of Dr. Lonn Guidry. Dr. Guidry will decide the terms of the remediation plan and you are to adhere to his recommendations and details of the plan until the end of your probationary period, or until notified by the program director.

3) Interpersonal Skills/Communication Skills:

    a. You must demonstrate a graded improvement in your performances on both your evaluations from faculty, gratis faculty, nursing staff and peers.  Below average evaluations in any of the 6 competencies will result in further action, which may include non-renewal or termination.

b. You must meet with the Program Director at least monthly to discuss your progress.  You are to initiate the meetings when convenient for your schedule.

4) Professionalism:

a. Your attendance for MR and NC will not decrease below 90%. You will not be tardy. Your participation and your engagement will be monitored.

b. Evaluations by your faculty, supervising residents and hospital staff will need to reflect improvement in professional behaviors.

c. You are expected to report to work on time and stay until the end of your shift.

d. You are expected to log your duty hours by Sunday of each week.

e. You must complete the module on professionalism which will be given to you by Dr. Borrero within 5 days of receipt.

**Duration of Probation:**

The length of the probation will be no longer than 3 months ending on or before February 28, 2018.

**Consequences of unsuccessful Remediation:**

Failure to comply with the requirements above may result in extension of the probation or non-promotion or immediate termination.

**Appeal Process:**

Should you desire to appeal this probation, you must follow the Due Process procedure outlined in the LSU House Officer Policy and Procedure Manual under Probation.

Sincerely,

Karen Curry, MD
Program Director, Internal Medicine



**NEW ORLEANS**

University Hospital and Clinics
Department of Internal Medicine

January 30, 2018

REQUEST FOR ADVERSE ACTION
ATTN: Nicholas Sells, M.D. Chief of Internal Medicine
From: Karen Curry, M.D. Program Director

Proposed Disciplinary Action:

1. Non-renewal of House-officer Contract

2. Strong consideration for immediate termination for continued deficiencies during probationary period.

Background:  Cory Cordova, M.D. started his residency training on 7/1/17. He had difficulties early on with deficiencies in patient care such as poor organizational and management skills and inability to work effectively as a team player. Deficiencies in interpersonal and communication skills and professionalism were noted as well.  He was placed on probation 11/10/17 and was given a remediation plan.  In that plan he was instructed to answer pages within a reasonable period of time (within 5 minutes) unless providing Emergency Care of a patient, he was also expected to have graded improvement on evaluations from faculty and peers.  He was told below average evaluations could result in termination.  Evaluations from upper level residents were expected to reflect respectful behavior.  The length of his probation was to be no longer than three months.  Since being placed on probation he has been noted to have deficiencies in four of the six competencies as discussed below.

Deficiencies in Patient Care:

1. Failure to answer a page from the Emergency Room for a week.
Incident filed on the day resident was placed on probation (November 10, 2017). Dr. Cordova met with Dr. Khan on multiple occasions concerning this infraction. She informed him even though he was on an outside rotation he needed to answer pages from our Emergency Room. This call was in regards to one of his clinic patients who left AMA with a subdural hematoma.  The patient then went to Pulmonary Clinic where Dr. Broussard addressed the patient's needs.
Witnesses: Brad Broussard, M.D., Farha Khan, M.D., Matt Whittington, M.D.
Evidence: Attached copy of Emergency room visit, EMR 3145299, Copy of Emails labeled "Exhibit A"

2. Poor Evaluations from faculty and peers reflecting disrespectful behavior, documenting inaccurately, and not obtaining a complete history.
Evidence: Peer and faculty assessments copied from New Innovations 1/30/18 and labeled "Exhibit B"

EXHIBIT
2

3. **Delay in submitting progress notes:** During the Clinical Competency Meeting on 1/10/2017, Dr. Borrero reported notes are not submitted in a timely manner.
   Witness: Elizabeth Borrero, M.D.

4. **Failure to accurately document patient's medication.**
   History and physical reviewed from admit in December while on night float and placed in resident's folder. (Dr. Cordova failed to document the patient was taking hydrochlorothiazide and had in fact come in with side effects of that medication). The PGY-2 resident addended the note to reflect correct medication. When I brought up this issue with him December 19, 2017 he stated "Dr. Yasin performed the medication reconciliation." (Dr. Cordova had listed some medications in his H & P).
   Witnesses: Samiya Yasin, M.D., Karen Curry M.D.
   Evidence: EMR of MR# 374233. Copies of records labeled "Exhibit C".

5. **Plan to discharge a patient on inappropriate medications.** Dr. Jacob reported that Dr. Cordova blindly checked off all medications to be continued at home without noticing many of those medications had been changed during the patient's hospitalization. The medications he had checked off to continue were both Levothyroxine and Methimazole which are counteractive, as well as both an ACE inhibitor and an ARB.
   Witness: Greg Jacob, M.D.
   Evidence: EMR 2670262 (Date of Discharge 1/4/18)

6. **Suboptimal patient care during clinic week 1/16 &1/18:** I met with Dr. Cordova 1/24/18 to give him feedback from clinic week. Issues brought up to him were the need to take a complete history when he sees a patient for the first time, not to assume chest pain radiating to left arm was musculoskeletal in a patient with risk factors for CAD, and the importance of looking at a patients labs and radiological studies that were done since their last visit as to not miss significant increase in transaminases, and various abnormalities on CT scans.
   Witness: Karen Curry, M.D.
   Evidence: Attached feedback Card and copies of clinic notes with additional comments included. Labeled "Exhibit D"

## Deficiencies in Medical Knowledge:

1. **Failure to admit to error in medication:** I reviewed several History and Physicals during rotation on night float in December.
   Issues pointed out to resident during meeting with him Dec. 19 include giving anticoagulation to a patient with a recent GI bleed and suspected Dieulafoy's lesion requiring transfusion. When I pointed this out, Dr. Cordova said, "That was not my order." When I reviewed the history and physical again, I did notice that the Lovenox was documented in his plan of care.
   Witnesses: Samiya Yasin, M.D., Karen Curry, M.D.
   Evidence: EMR of MR# 193312. Copy of record labeled "Exhibit E"

2. **Submitting poor quality cardiology consultation notes:** Dr. Khan reported poor and incomplete progress note on MR 11735 dated 1/26/18 and initial consultation on MR 3053316 dated 1/29/18.
   Witness: Farha Khan, M.D.
   Evidence: Copies of progress note and consultation note labeled "Exhibit H"

## Deficiencies in Interpersonal and Communication Skills

1.  **Poor Team Work:** During the Clinical Competency Committee Meeting 1/10/18; Dr. Borrero reported that Dr. Cordova made the medical student do an ICU History and Physical and also pulled the medical student from a 1:1 teaching session with her to perform another H&P. It was also reported that she feels he does not carry his share of the work load, writing notes on about 40 percent of the patients. He also shows no interest in patients on his team that he is not writing notes on. The entire team was to show up at sign out rounds with Dr. Borrero 1/10/17 and he was not present for sign out rounds. Dr. Borrero stated, "Dr. Cordova's lack of being a team player is bothersome."
    Witness: Elizabeth Borrero, M.D.

**Deficiencies in Professionalism:**

1.  **Falsely accusing upper level resident of inappropriate behavior;** Dr. Cordova reported to both Dr. Khan and Dr. Clark his upper level inappropriately made him perform a rectal exam at 5:00 am. The patient in question had developed saddle anesthesia and in fact was diagnosed the next morning with cauda equina syndrome. I had called Dr. Yasin earlier that evening and asked her to perform the exam with Dr. Cordova. He first told Dr. Clark that Dr. Yasin had woken him up at 5:00 am. When I met with Dr. Cordova with Dr. Clark he stated that he said they woke the patient up. He also said he did not know why they were doing a rectal. Dr. Yasin reports she discussed the saddle anesthesia with Dr. Cordova in the presence of nursing staff. Dr. Khan also reported to me Dr. Cordova informed her Dr. Yasin had made him do a rectal exam at 5:00 am for "no reason". On review of the above mentioned case, I was unable to find documentation of Dr. Cordova's rectal exam.
    Witnesses: Dr. Samiya Yasin, Tina Clark, M.D., Farha Khan, M.D.
    Evidence: Copy of text exchange between Dr. Cordova and Dr. Yasin. EMR MR # 3251428.
    Copy of pertinent portions of History and Physical, copy of MRI results. Labeled Exhibit F

2.  **Untruthful Behavior:** During the clinical competency committee meeting on 1/5/18 Dr. Cordova discussed the inconsistencies in Dr. Cordova's claim that Dr. Sadeghi was going to write up Dr. Yasin (his upper level resident) for unprofessional behavior. In fact Dr. Sadeghi had been out on sick leave and had not worked with Drs. Yasin or Cordova. I confirmed with Dr. Sadeghi that he did not intend to write Dr. Yasin up.
    Witnesses: Elizabeth Borrero, M.D., Ali Sadeghi, M.D., Farha Khan, M.D.

3.  **Failure to follow through with an order placed/Rude behavior;** Dr. Cordova ordered an ultrasound on a patient on Sunday January 7th. The following day when the ultrasound technician, Michelle Comeaux, asked him if he still wanted test done as the patient had eaten, he replied "That is not my patient, it belongs to team 3." She notified me and stated she had no idea how to even find out who team 3 was.
    Witness: Michelle Comeaux
    Evidence: EMR MR# 3253889; Copy of order labeled "Exhibit G"

4.  **Untruthful behavior:** Dr. Khan reported to me 1/25/18 that Dr. Cordova stated he had not answered a message for over a week because he did not receive the message. On further investigation, it was proven he did indeed open the message but did not address it. Dr. Khan spoke to Dr. Cordova a second time 1/25/18 and he continued to deny he opened the message.
    Witness: Farha Khan, M.D.
    Evidence: EMR 2597597. Saved recording of when message was opened by Dr. Cordova held in Cerner.

I appreciate your time in evaluating this matter,

Karen G. Curry, M.D.
Program Director
University Hospital and Clinics
2390 W Congress Street
Lafayette, LA 70506

University Hospital and Clinics
Department of Internal Medicine
LSU-HSC / University Hospital and Clinics
2390 West Congress Street
Lafayette, La. 70506

February 8, 2018

Dear Department of Internal Medicine,

RE: FORMAL LETTER OF RESPONSE -- REQUEST FOR ADVERSE ACTION

In compliance with the LSU School of Medicine New Orleans House Officer Manual, please accept this correspondence to constitute a formal response in reference to a Request For Adverse Action that I received on February 1, 2018. Please note that the request for Adverse Action letter which I received contains numerous references to attached exhibits which were not provided to me. I am therefore unable to completely address all of the allegations which are apart from the missing exhibits, and would like to reserve my rights to supplement this letter once those exhibits are provided to me.

Responses:

Deficiencies in Patient Care:

1. Failure to answer a page from the Emergency Room for a week.

I received a text message on 11.16.17 at 3:24 PM from Dr. Curry stating that "One of your clinic patients John Romero MR 3145299 went to the ER Friday and was diagnosed with a subdural hematoma. He left AMA. Dr. Whittington tried to page you." My pager did not alert on Friday (11.10.17). According to the date and time of the patient note, and when I was paged, I was meeting with Dr. Curry and Dr. Guidry at that time. I have read the ER note from Dr. Whittington on Friday 11.10.17. States that patient had an MRI done earlier that day and a subdural hematoma was found. Dr. Whittington encouraged the patient to seek Neurosurgical consultation at another facility and the patient denied. Left AMA. Dr. Whittington further stated in his note that he was calling to inform me that the patient was leaving AMA and the findings of the MRI. Patient was asymptomatic at the time of presentation. GCS 15. MRI report by radiologist states that the hematoma was chronic in nature. I called the patient at 6:28, no answer, no call back. I called Dr. Curry at 6:33 PM, no answer, no call back. I called Dr. Khan (Clinic Dr. and Advisor) at 6:47 PM, no answer, no call back.

Quality of original
in poor condition





Quality of original
in poor condition

On 11.17.17 at 4:03 PM I sent this message to Dr. Curry:



Cordova, Joseph C.
Fri 11/17/2017 4:02 PM
Sent Items

Mark as unread

Dr. Curry - I just wanted to follow up with you regarding the patient that you texted me about. I reviewed the ED note and MRI yesterday evening. Patient has a chronic subdural hematoma (per son). Patient was sent to ED from xray. Dr. Whittington encouraged patient to seek further Neurosurgical referral. Patient denied and signed out AMA. I called the patient yesterday evening at 6:30, no answer, no call back. I called the patient again this morning and spoke with his son (Ray). He stated that his father has had this subdural hematoma for quite some time now. While in the ED he was stuck 5x in the right arm and 5x in the left arm, became frustrated and mad. Signed out AMA. I called back again at 3:00 this afternoon, patient was unavailable, but I did speak with Ray his son again. He stated that his father is doing fine and the CT went ok this morning. I reviewed the Head CT from this morning which indicated no interval change regarding the subdural hematoma from the last MRI. I encouraged his son Ray that his father should seek neurosurgical referral for further evaluation of his subdural hematoma. He stated that his father, "didn't want to do that." I notified him that if his father began to experience any new symptoms, such as, headaches, nausea, vomiting, loss of motor or loss of sensation that he should come back to the ED. Ray (son) voiced understanding.

While on an external rotation, at another hospital, I have never been contacted by the UHC ED regarding a patient that left AMA. I was unsure about what to do, so I did what I felt was best for the patient, which was to notify him of the seriousness of his subdural hematoma. I have discussed this with Dr. Khan. She was unsure why the ED was contacting me regarding a patient that left AMA. Is there anything else that I need to do?

Thanks,

Cory

On 11.17.17 at 5:46 PM Dr. Curry Replied:.



Curry, Karen
Fri 11/17/2017 5:45 PM

Mark as unread

To: Cordova, Joseph C.

» You forwarded this message on 11/17/2017 7:11 PM.

The ER will occasionally try to get in touch with a patients primary care physician when they have a particular concern. The issue here is the ER couldn't reach you. They ended up calling me. On Monday I asked Dr Whittington if you ever called back and he said you had not. I mentioned all this to Dr Khan.

The patient went to Pulmonary clinic Tuesday to schedule a bronchoscopy from what I understand. Dr Broussard felt his neurological issue needed to be sorted out prior to the bronchoscopy.

I would discuss further management with the faculty you signed out to on the patients last clinic visit.

Thanks
Dr Curry

Sent from my iPhone

My pager had not alerted in roughly 6 weeks. I had been off campus at LGMC ICU (October 2017) and my next block was Rehab at LGMC Southwest (November 2017). The ED note written on 11.10.17 by Dr. Whittington states that he was trying to contact me to notify me of the patients MRI findings and that the patient had left AMA. In further discussing this with Dr. Khan, I am still unaware of what was requested of me or how I could have helped with a patient that left AMA, being my primary obligation was PMR at LGMC Southwest. Also, if Dr. Curry knew about this on 11.10.17, why did she wait until 11.17.17 (7days) to notify me that Dr. Whittington was trying to reach me? Exhibit A was not included in the packet I received. To this day, I have no explanation why I did not receive the page at issue. I acknowledge receiving the text later from Dr. Curry and

have addressed the issue with Dr. Whittington to his satisfaction. In fact, attached please find a letter from Dr. Whittington concerning my handling of this matter and his evaluation of my residency.

2.   Poor evaluations from faculty and peers.

I categorically dispute the allegation that I have multiple poor evaluations from faculty. As you can see from the attached faculty reviews that were downloaded from New Innovations, all evaluations were satisfactory (a few even superior) except for one. There are no peer reviews in New Innovations at this time. Exhibit B was not included in the packet I received. As one can see, the only poor evaluation is from Dr. Borrero. With regards to Dr. Borrero, please see response below.

3.   Delay in submitting progress notes in a timely manner.

This is the first time that anyone has formally complained of late submission of progress notes. Moreover, I do not recall any conversations with any faculty or mentor regarding progress notes that were not submitted in a timely manner. The date, time and progress notes that were not submitted in a timely manner were not provided in a timely manner. I am unaware of a time in which the submission of my progress notes were deemed to be untimely. I am unaware of a time in which Dr. Borrero discussed with me what specific time constitutes timely. Had this been brought to my attention, I would have worked very hard to correct this immediately.

4.   Failure to accurately document patient's medication

This event apparently occurred on or around the middle of December. Neither the triage nurse or pharmacy representative documented this medication for this patient at the time of admit to the ED. The chart does not establish that this patient was on the medication except for Dr. Yasin's addendum. In fact, when formulating an admission H&P the medications are automatically populated in my note. It is my understanding that the medications the patient is taking are verified by the nurse and/or pharmacy representative during a medication reconciliation upon admission to the ED. In review of the medical record and my admission note, Hydrochlorothiazide is not automatically populated. When reviewing the "Medication Lists" tab within Cerner, Hydrochlorothiazide is not listed. When reviewing the "Dr. First Medication Management" tab within Cerner and assessing all medications that are listed as "C" for Compliant, Hydrochlorothiazide is not listed. I am unaware of why Dr. Yasin has included Hydrochlorothiazide in her addendum and/or why Hydrochlorothiazide is deemed as being correct. Dr. Yasin performed the medication reconciliation apart from me, as there was very little communication between the two of us. Had this item been brought to my attention in December, I would have worked very hard to seek resolution immediately. Exhibit C was not included in the packet I received.

5.   Plan to discharge a patient on inappropriate medications

I am unaware of the date and time in which Dr. Jacob reported to me that I blindly checked off all medications to be continued at home. I was not provided with a written testimony from Dr. Jacob of the date and time in which I blindly checked off all medications.

In further reviewing the medical record, a note was entered by Christian LeJeune on 01.05.18 at 15:18 stating that,

"SWCM assisting in clarification of d/c meds. Patient has incorrect name in system due to DMV error on license. However, the incorrect name (wrong middle initial) is identical to another patient of Deedee Luke MD in the area and further they have the same birthdate. Their medications in the Dr. First got crisscrossed and caused a fair amount of confusion as well as allowing for medication errors while inpatient causing delays in care. Spoke w/Luke MD office and we verified the medications were crossed in the Dr. First and they are in fact two different people and also our patient is being treated for cancer and the other is not. Borrero MD assisting in correcting medications. SWCM changed

patient's name in PM Conversations and instructed her and family to change the name on her driver's License or get a new ID card w/ correct name of Mary J Stelly. They verbalized understanding and safety concerns if there is failure to change information on driver's license or get new ID. Will speak w/ medical records to inform SWCM had patient's name changed to the correct one and to combine medical records if need be. Will continue to assist if needed."

In further reviewing the medical record Inpatient Clinical Summary on 01.05.18 at 15:32, patient was discharged home with Losartan. There is not an ACE inhibitor on the discharged home list. Levothyroxine and Methimazole are not on the discharge home list.

6.  **Suboptimal patient care**

I did receive feedback from Dr. Curry on 01.24.18 regarding the previous clinic week. I am grateful for her feedback and teaching points that have helped me to improve in the clinic setting. This improvement has been demonstrated with more comprehensive Cardiology clinic notes (which was my next block) and further confirmed with Dr. Hardwick's feedback card while on Cardiology. Please see attached. Exhibit D was not included in the packet I received.

**Deficiencies in Medical Knowledge:**

1.  **Failure to admit to error in medication**

While on night float each work shift, beginning 12.12.18 and persisting through 12.18.17, each admission note that I wrote, I was not allowed to participate and/or exchange in a meaningful conversation with Dr. Yasin regarding the decision-making process as it pertains to the admitting diagnosis and treatment of each patient. Each instance in which we returned to the call room from the ED after seeing an inpatient consult, Dr. Yasin reported to her room, alone. When asking her for direction regarding the diagnosis and treatment of each patient admitted to the inpatient service, she replied with, "just put what you think in the assessment and plan and I will put your corrections in my addendum." In reviewing my admission notes, Dr. Yasin had placed corrections in her addendum and did not discuss them with me prior to doing so.

In reviewing the medical record for this patient, I am unable to find an order for anticoagulation, which was further stated in Dr. Yasin's addendum, however my note incorrectly stated Lovenox 60mg for DVT Px. I have learned from this oversight. Had this been brought to my attention during the time the patient was admitted, I would have worked hard to correct this typo immediately by adding an addendum to the patient note. Exhibit E was not included in the packet I received.

2.  **Submitting poor quality cardiology consultation notes**

While on Cardiology service, James Hardwick MD was my attending and Scott Laura MD was the fellow. Regarding MRN 3053316, I did what I was advised to do by Dr. Hardwick and Dr. Laura, in that, put a brief consult note in the chart so we have documentation before the TEE is done this afternoon. A physical exam was not documented because I did not perform one. At the time I saw the patient, she was on dialysis and I could not hear anything with the dialysis machine active next to her bed. Regarding MRN 11735, I am unable to locate a progress note submitted by me dated 01.26.18.

Dr. Hardwick discussed with me that Dr. Curry called him to discuss these items. Dr. Hardwick stated to me that he notified Dr. Curry that I did what I was instructed to do. Dr. Hardwick also stated that the Internal Medicine department would like me to prepare notes as if I were on the IM service, however tailor them to the needs of cardiology. Once notified of this request, my notes were corrected immediately as demonstrated with the attached cardiology consultation note. Exhibit H was not included in the packet I received.

**Deficiencies in Interpersonal and Communication Skills**

1. Poor team work

I categorically deny this allegation.  It is possible that Dr. Borrero is confusing me with an another resident.  The date, time and MRN of the ICU patient in which I made the medical student do a history and physical has not been provided to me. A written testimony from the medical student of the date, time and MRN of the ICU patient in which this occurred has not been provided to me. A written testimony from a witness of the date, time and MRN of the ICU patient in which it was witnessed that I made the medical student do a history and physical has not been provided to me. It is noteworthy that as a first year resident, I cannot be involved in the care of an ICU patient, therefore, it is apparent that Dr. Borrero is simply mistaken in her accusation.

The date, time and MRN of the patient in which I pulled the medical student from a 1:1 teaching session to do another history and physical has not been provided to me. A written testimony from the medical student of the date, time and MRN of the patient in which I pulled the medical student from a 1:1 teaching session to do another history and physical has not been provided to me. A written testimony from a witness of the date, time and MRN of the patient in which it was witnessed that I pulled the medical student from a 1:1 teaching session to do another history and physical has not been provided to me. Again, as a policy, I am not allowed to be involved in the care of ICU patients at UHC Lafayette, La.

The service in which I was actively rotating and only saw 40% of the total patients has not been provided to me. The total number of patients, the number of patients I saw and a percentage equaling 40% has not been provided to me.

A written testimony of the date, time and MRN of the patients that I have shown no interest has not been provided to me. A written testimony from a witness of the date, time and MRN of the patients in which it was witnessed that I showed no interest has not been provided to me. Dr. Borrero has claimed that on 01.10.17 I was not present for sign out rounds. On the date 01.10.17 I was not a resident physician at UHC Lafayette, La. I began residency 07/2017.

**Deficiencies in Professionalism**

1. Falsely accusing upper level resident of inappropriate behavior

On Monday 12.18.17 at 04:31, Dr. Yasin asked me to go to the ER and retrieve an FOBT card and Developer as we were to do a rectal exam on MRN 3251428 in room 621 at UHC Lafayette, La. I reported to room 621 at UHC Lafayette, La. with the FOBT card and developer. Dr. Yasin arrives and enters the patient's room. Patient is asleep with his back towards the door. Wife is awake in chair at bedside. Dr. Yasin introduces herself and I and states that we need to do a rectal exam on her husband. Wife replies, "he's asleep, the nurse just gave him his medication." Dr. Yasin proceeds to wake Mr. Hebert to notify him that we are here to do a rectal exam. Dr. Yasin asks me to do the rectal exam and I comply with DRE, assessing for blood and rectal tone. There was no blood per FOBT card and rectal tone was intact. A written testimony from Dr. Yasin of the date and time in which I was notified of saddle anesthesia as the reasoning of a rectal exam has not been provided to me. A written testimony from a witness of the date and time in which it was observed that Dr. Yasin notified me of saddle anesthesia as the reasoning of the date and time in which it was observed that Dr. Yasin notified me of saddle anesthesia as the reasoning of a rectal exam has not been provided to me. I did not document a rectal exam in the chart as this was an oversight on my part. Had this been brought to my attention at the time this occurred, I would have worked very hard to submit a procedure note for a rectal exam immediately. Exhibit F was not included in the packet that I received.

Also, the allegation is "falsely" accusing an upper level resident where, in fact, all I did was report the facts of the matter to Dr. Clark without making an accusation of inappropriate behavior.  I categorically deny filing any sort of accusation of any kind against an upper level resident.  Finally, I

accurately reported the incident and therefore there was no falsehood in my communication to Dr. Clark.

2.   Untruthful Behavior

I categorically deny having any conversation with Dr. Sadeghi in which I lied or was untruthful.  I did speak with him regarding the above incident but deny requesting that he report the upper level for inappropriate behavior.  Moreover, I never had any conversation about this matter with Dr. Borrero. The date, time and written testimony from Dr. Borrero in which I discussed with her that Dr. Sadeghi was to write up Dr. Yasin for unprofessional behavior has not been provided to me. A written testimony from a witness of the date and time in which it was observed that I discussed with Dr. Borrero that Dr. Sadeghi was to write up Dr. Yasin for unprofessional behavior has not been provided to me.

3.   Failure to follow through with an order placed / rude behavior

I do not know Michelle Comeaux and do not recall any conversation with anyone by that name.  I have not been provided with written testimony from Michelle Comeaux of the date, time, MRN and exact exchange, such as, "that is not my patient".  I cannot defend against accusations of this nature without having more specific information.  Accordingly, I deny ever having responded in this way.

4.   Untruthful behavior

I discussed a matter involving a miscommunication with Dr. Kahn which I believe, as I was not provided with any details, is the basis for this accusation.  It involved my misread of a message concerning Dr. Kahn or the ambulatory clinic and subsequent confusion on my end.  I explained the honest mistake to Dr. Kahn to her satisfaction and there was no untruthful behavior.  I categorically deny this allegation to the extent I have correctly guessed its origin.

LSU HEALTH SCIENCE CENTER – University Hospital and Clinics
Internal Medicine Residency Program
Clinical Competency Committee
*Corrective action /remediation Plan*

*Dr. Cory Cordova*

Requirements
1. Report to your upper /senior resident for every shift`
2. Must stay total shift hours/end of shift
3. Notify your upper level if you are late
4. Understand that all tardiness will be reported to faculty and documented
5. Be present for all transition of care sign-out during Ward rotations and for Night float rotation
6. Attend 100 percent of Morning report and noon conferences and committee assignments
7. Complete required modules on Professionalism and communication provided by Dr. Borrero
8. Present two cases for Morning report for each Block of wards
9. Write at least 50 percent of all progress notes on your service
10. Complete all progress notes prior to rounds
11. Demonstrate respect for all senior residents
12. Meet twice a month with Dr. Guidry & Dr. Khan for progress reporting
13. Write out and answer 15 ITE objectives that you have answered incorrectly per week and turn in to Dr. Clark each Friday

Any noncompliance of above requirements will result in punitive action by Program Director.





**University Hospital & Clinics**
*Lafayette General Health*

February 15, 2018

UAB/Selma Family Medicine
Kandice Collins, Program Coordinator
1023 Medical Center Parkway, STE 200
Selma, AL 36701

Dear Ms. Collins,

*Teaching*
*Tomorrow's*
*Physicians*
*in Acadiana*
*Today!*

It is my pleasure to write in support of the application of Dr. Cory Cordova to your Family Medicine Residency Program. I have been an educator for years with considerable experience in national organizations and academic institutions. I worked closely with Dr. Cordova during his Internal Medicine residency program training and I supervised him while in his emergency department rotation. As is evident form his CV, Cory has excelled throughout his career with many notable accomplishments. While he was on the emergency medicine rotation, he demonstrated exceptional interest in emergency medicine and voiced his desire to change from the Internal Medicine program to a Family Medicine program and eventually performed an Emergency Medicine Fellowship. As his attending physician during his emergency medicine rotation, I noticed abilities and clinical knowledge that make him a good candidate for an emergency medicine residency program. While observing Dr. Cordova's clinical abilities, I noted his excellent knowledge, clinic skills, patient care, and leadership. I have worked with Dr. Cordova in both the inpatient and outpatient setting, taught him in class, supervised his clinical competence and oversaw his performance during important parts of his Internal Medicine Internship training as well as his Emergency Medicine rotation.

University Hospital
& Clinics
provide graduate
medical education in

Family Medicine
Cardiology
Geriatrics
Internal Medicine
OB/GYN
Ophthalmology
Orthopedics
Otolaryngology
General Surgery

In addition to considerable intellect and exemplary performances on standardized examinations, Dr. Cordova is a warm and engaging individual. He teaches others by example, is inclusive, and consistently exhibits curiosity and motivation to learn. He comes prepared for all types of learning situations, having researched the relevant topics so that he can provide quality care. In addition to prioritizing his own learning, Cory considers the needs of others. On multiple occasions, he has arrived in the clinic with handouts on relevant clinical topics tailored for the rest of the medical team. He has been described as one of the best residents to rotate on our emergency department service by other attending physicians.

In conclusion, I am happy to give Dr. Cory Cordova my highest recommendation for your Family Medicine residency program. In my experience, he is the top 25% of all Internal Medicine residents with whom I have worked over the past years at University Hospital and Clinics Emergency Department. If you have any additional questions or require further information, please do not hesitate to contact me.

Sincerely,

Dr. Julio Rodriguez-Quinones, FACEP
LSU Associate Professor of Emergency Medicine
Assistant Medical Director
Emergency Department
University Hospital and Clinics
Lafayette, Louisiana
337-266-8522

2390 West Congress St.
Lafayette, LA 70506
(337) 261-6000
lafayettegeneral.com

EXHIBIT
5



**University Hospital & Clinics**
*Lafayette General Health*

**Teaching**
*Tomorrow's*
**Physicians**
**in Acadiana**
*Today!*

University Hospital
& Clinics
provide graduate
medical education in

Family Medicine
Cardiology
Geriatrics
Internal Medicine
OB/GYN
Ophthalmology
Orthopedics
Otolaryngology
General Surgery

2390 WEST CONGRESS ST.
LAFAYETTE, LA 70506
(337) 261-6000
LafayetteGeneral.com

To Whom It May Concern:

With confidence, I am writing to you in support of Joseph Cory Cordova MD as he actively seeks a position in your Family Medicine Residency Program. As a faculty member and attending Emergency Department physician at University Hospital and Clinics, I have been afforded the opportunity to work with many talented residents. Rarely do I have the opportunity to work with someone as talented as Dr. Cordova.

I first met Dr. Cordova when I served as a mentor to the medical students who rotated through our Emergency Department. Working side by side with Cory, I observed him as he learned to perform a history and physical, developed a problem list, and learned basic differential diagnoses. It was obvious from the beginning that Cory was enthusiastic about clinical medicine and was very well prepared. Cory had an unusual command regarding the basic sciences and a curiosity about clinical issues, but most importantly he truly cared for the patients themselves. Cory repeatedly exceeded expectations. He was very well organized and communicated his thoughts appropriately. Cory was noted by many of the faculty and staff as a reliable team member. He has the exceptional talent of facilitating the participation of others and making those around him function at a higher level of enthusiasm. His effectiveness is well noted.

Later I had the opportunity to work with Dr. Cordova as a resident in the Emergency Department while he was completing his internship in Internal Medicine. Again, his work ethic was enthusiastic, competent, thorough and meaningful. I find these characteristics as suitable for success in your Family Medicine Residency Program. I have witnessed Dr. Cordova repeatedly excel above and beyond to assure that his patients received the best care possible. Dr. Cordova immerses himself in his patients, solving clinical problems, and he is persistent until he finds answers for improved patient outcomes. Dr. Cordova finds no burden in coordinating with interdisciplinary medical teams for the benefit of his patients' wellbeing.

Without reservation, I highly recommend Joseph Cory Cordova MD as he seeks a position in your Family Medicine Residency Program. In considering his remarkable academic and professional achievements, and positive personality, I find him quite fitting for a career in Family Medicine.

Should you have any further questions regarding Dr. Cordova's application, please do not hesitate to contact me.

Warmest Regards,

Adam P Giddings MD
Emergency Department
Attending Physician
University Hospital and Clinics
2390 W Congress Street
Lafayette, LA 70506



**University Hospital & Clinics**
*Lafayette General Health*

Teaching
*Tomorrow's*
Physicians
in Acadiana
*Today!*

University Hospital
& Clinics
provide graduate
medical education in

Family Medicine
Cardiology
Geriatrics
Internal Medicine
OB/GYN
Ophthalmology
Orthopedics
Otolaryngology
General Surgery

2390 West Congress St.
Lafayette, LA 70506
(337) 261-6000
LafayetteGeneral.com

To Whom It May Concern:

It is with great enthusiasm that I am writing in support of Joseph Cory Cordova's application for a position in your Family Medicine residency program. I was quite fortunate to have Cory with me as a resident for one month in Emergency Medicine at University Hospital and Clinics during his intern year. While on my service, Cory displayed superior communication skills that were efficient and respectful, much like the mannerisms of a confidant and experienced physician. Cory displayed comfort with the patient encounter and it's more than evident that he truly enjoys helping people. Above and beyond the compassionate and competent emergency care plans that he suggested, he continually offered helpful pearls to all involved staff members in the emergency department. Clearly, Cory is a team player. Secondly, Cory enjoys confronting the complex problems of emergency medicine and I believe these analytical skills will serve him well in the Family Medicine setting.

I have come to know Cory quite well during the month we spent together in the emergency department, as well as, times in which he would report to the emergency department to admit patients to the inpatient service. During this time, I had daily contact with Cory and can attest to the fact that he is a most deserving candidate for Family Medicine residency training. During the rotation, Cory performed in a truly outstanding fashion. His comments justify a detailed and meticulous thought process. His clinical judgment was excellent; his assessments were thorough and appropriate. I became very confident of Cory's clinical acumen with a superb fund of knowledge, excellent problem-solving skills and boundless energy and enthusiasm. He was highly valued by other members of the team, some of which are physicians and nursing staff, as tremendously committed to patient care, learning, and delightful to work with.

In closing, I believe that Cory is very well suited for a career in Family Medicine. I consider him to have an excellent academic future based on his approach to clinical medicine, his communication skills and his interest in teaching. I regard Cory as an excellent candidate for your Family Medicine program and would be pleased if I were to learn that he had been recruited to stay at your institution. Please do not hesitate to contact me for additional information regarding Cory's application.

Sincerely,

Ali Sadeghi M.D.
Director of Emergency Medicine
Attending Physician
University Hospital and Clinics
2390 W Congress Street
Lafayette, LA 70506

February 20, 2018

Letter of Recommendation for Cory Cordova, MD

To Whom It May Concern,

I have known Cory Cordova for the past 1 year as a resident in the Internal Medicine program at University Hospital and Clinics in Lafayette, LA. I have had the pleasure of getting to know Cory during his Emergency Medicine rotation and Internal Medicine inpatient medicine rotation. I have had the opportunity to observe his clinical skills, medical knowledge, and bedside manner.

I have observed Cory to be an eager, attentive, and compassionate resident. He has a strong work ethic and continually strives to improve his already impressive fund of knowledge. He has the ability to obtain a clear/concise history, physical and differential diagnosis while maintaining a good rapport with patients.

I have seen may residents come through both the internal and family medicine residency programs, and consider Dr. Cordova to be a very strong resident. I am confident that he will continue to excel and become an excellent physician.

I consider Cory to be an exceptional resident with the highest integrity. I think he will do well in any field of medicine, and I am confident that he will excel in Family Medicine. It is with great pleasure that I give my highest recommendation and strongest support for Cory's consideration into your Family Medicine Residency program.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Mathew Whittington, MD
matwhitt@gmail.com
(337) 849-8899 (Cell)

02/06/18

To Whom It May Concern,

On 11/10/17, I had the pleasure of taking care of J.R., MR 003145299 in the Emergency Room of University Hospital and Clinics (UHC). Mr. R presented to the ER after findings on an outpatient MRI revealed a subacute/chronic subdural hematoma. He denied symptoms in the ER, but due to the midline shift and no prior record of a subdural hematoma on imaging, I recommended transfer for neurosurgical evaluation. Ultimately, the patient did not desire transfer, and after long discussion with the patient and family, he signed out Against Medical Advise.

On review of the chart, I was relieved to see Dr. Cordova is the patient's primary care physician. Although Dr. Cordova was not on Internal Medicine call, I tried paging him because I knew I could rely on him for ensuring the patient was followed closely. I paged Dr. Cordova at 12:25pm. The patient left the ER AMA at 12:32pm. At the time of this encounter, we had experienced problems with the operators having difficulty accurately paging residents. I did not have any other means of contacting Dr. Cordova (such as his cell phone number), therefore I called Dr. Curry at 12:47pm and provided her with the patient's information to pass on to Dr. Cordova.

Dr. Cordova has completed his intern ER rotation at UHC where I have had the opportunity to observe his clinical skills, medical knowledge, and bedside manner. I have observed Dr. Cordova to be an eager, attentive, and compassionate resident. He has a strong work ethic and continually strives to improve his already impressive fund of knowledge. He has the ability to obtain a clear/concise history, physical and differential diagnosis while maintaining a good rapport with patients.

I have seen may residents come through both the internal and family medicine residency, and consider Dr. Cordova to be a very strong resident and I am sure that he will continue to excel and become an excellent physician.

In summary, I have never had any negative encounters with Dr. Cordova. In my experience, he always responds quickly to all pages. I therefore consider him to be an exceptional resident with the highest integrity.

Sincerely,

Mathew Whittington, MD

10/24/2018                                             Gmail - FW: Dr Cory Cordova

M Gmail                                                      Cory Cordova M.D. <drcordovamd@gmail.com>

**FW: Dr Cory Cordova**
1 message

Burnaman, Katheryn A. <kburna@lsuhsc.edu>                              Wed, Apr 11, 2018 at 8:14 AM
To: "Cory Cordova MD (drcordovamd@gmail.com)" <drcordovamd@gmail.com>

-----Original Message-----
From: Steve Rees [mailto:sgreaspm@att.net]
Sent: Tuesday, April 10, 2018 8:57 PM
To: Burnaman, Katheryn A.
Subject: Dr Cory Cordova

*EXTERNAL EMAIL: EVALUATE*

To Whom It May Concern:
I am writing in support of Dr. Cory Cordova's application to your family medicine program.
Dr. Cordova rotated through with me on our Inpatient Rehabilitation unit at Lafayette General Southwest. During that time I found him to be interested and
inquisitive. His work to be thorough.
He was engaged positively with both the patients and the Rehab team.
I believe he would be an asset to your program.

Steve Rees MD
VP Medical Affairs,
Medical Director of Rehabilitation Services Ass't Clinical Professor IM-LSUHSC Lafayette General Medical Center

https://mail.google.com/mail/u/0?ik=039653d3268&view=pt&search=all&permthid=thread-f%3A1597455620059634107&simpl=msg-f%3A1597455620059634107                          1/1

**AFFIDAVIT OF CARMEN MORGAN**

STATE OF TEXAS

COUNTY OF BOWIE

      BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, duly commissioned and qualified as such personally came and appeared:

**CARMEN MORGAN**

Who was sworn, did depose, and say:

1. She has been a nurse for twenty-seven years.

2. She was a clinical manager in the emergency department for UHC from February 2017 until July 2018.

3. She worked with Dr. Cory Cordova in her capacity as a manager in the emergency department.

4. She was present in all hospital quality meetings which Dr. Cory Cordova attended.

5. She never witnessed any outbursts, disrespectful, and/or condensing behavior at any time at any of these meetings by Dr. Cory Cordova.

6. She is familiar with Dr. Cory Cordova and considered him meek, mild, professional, and had a great bedside manner.

7. As a manager of ER staff, she and many of her employees considered Dr. Cory Cordova approachable, knowledgeable, and professional.

8. Dr. Cory Cordova was not the type of person to get ruffled or anger easily even in a code or emergency situation.

9. She and her staff enjoyed working with Dr. Cory Cordova.

10. She received complaints about other residents but she never received a complaint about Dr. Cordova.

11. She considered Dr. Cory Cordova a team player.

12. She was surprised to learn that Dr. Cordova was accused of condensing and/or disrespectful behavior because it did not comport with her experience.

13. Dr. Cory Cordova was one of the few residents out of all of the residents who exchanged pleasantries and was polite to her and her staff.

14. Of all of the residents she worked with, Dr. Cordova was one of the few to closely follow the service standards of behavior on a consistent basis as set forth by UHC.

15. She was a witness to the letter of recommendation written by Dr. Ali Sedaghi who was in disbelief that Dr. Cordova's contract was not renewed due to discipline action.

16. She personally received staff complaints regarding disrespectful and condescending behavior of other residents who were never disciplined.

17. She personally witnessed more egregious behavior than Dr. Cordova is accused of from other residents who were never disciplined.

18. For instance, she was aware of a death of a patient that occurred due to the tardiness of a resident and lack of ACLS protocol for reviving a patient. The resident was never disciplined and remains a resident at UHC.

Further, Affiant saith not.

_____
CARMEN MORGAN

SWORN TO AND SUBSCRIBED before me on this 30 day of _October_, 2018

in _Bowie County_, Texas.
   (Texarkana)

_____
NOTARY PUBLIC

JESSE WARREN
My Notary ID # 131633222
Expires July 6, 2022

10/26/2018                                                          Gmail - Fw: Adverse Action

Cc: Curry, Karen; Anderson, Kristi L.; Falterman, James
Subject: Re: Adverse Action

Dr. Cordova,
I am in receipt of your acknowledgement of contract non-renewal and have notified Dr. Falterman and Kristi Anderson. I have also reiterated your request for privacy regarding this to the faculty personally.
NS


On Feb 19, 2018, at 1:25 PM, Cordova, Joseph C. <jcordo@lsuhsc.edu> wrote:

Dr. Sells - please accept this communication as formal notice. I accept your decision for contract non-renewal for PGY2. As we discussed, I ask that you please reiterate with faculty my right to privacy with this matter. As we discussed, I also ask that you please reiterate with faculty what can and cannot be discussed surrounding this matter should a future employer reach out to the department. Would you please respond to this message to assure receipt.



Thanks,


Cory Cordova M.D.

https://mail.google.com/mail/u/0?ik=639632d338&view=pt&search=all&permthid=thread-f%3A1603461180630590932&simpl=msg-f%3A1603461180630590932



**NEW ORLEANS**

University Hospital and Clinics
School of Medicine
Department of Internal Medicine

Thursday, March 1, 2018

Dear Dr. Joseph Cory Cordova,

On behalf of the LSU Health Sciences Center/University Hospital and Clinics Internal Medicine Residency Program, this letter is to inform you of our intent to not renew your contract as a resident in the Internal Medicine Residency Program.

Your contract will be terminated with LSU Health Sciences Center/University Hospital and Clinics, Lafayette as of June 30, 2018.

I ask that you acknowledge this intent of non-renewal by signing below and returning the original copy of this letter to me.

Sincerely,

_____          3/7/18
Program Director Signature                          Date

_____          03.07.18
Resident/Fellow Signature                          Date

2390 West Congress Street   Lafayette, Louisiana 70506
Office 337.261.6789   Fax 337.261.6791   www.lsuhsc.edu



EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 232

mail - Fwd: Request for Program Director Summative Letter re: Dr. Cory Cordova

From: Burnaman, Katheryn A.
Sent: Tuesday, April 3, 2018 12:43:20 PM
To: Curry, Karen
Subject: Request for Program Director Summative Letter

Good morning Dr. Curry:

The LSU Family Medicine Residency Program
— Alexandria is in request of two items on
behalf of PGY-I resident, Dr. Joseph Cory
Cordova:

> PGY-1 Curriculum list of rotations;

> Statement with status of resident in
good standing and statement of
awareness of Dr. Cordova's interest in
transitioning from Internal Medicine to
Family Medicine.

Please provide on your program letterhead
with signature by the Program Director. The
list of rotations may be included in the letter or
may also be submitted as a supporting
document / attachment. The documents may
be scanned and emailed to
kburna@lsuhsc.edu. We ask that you please
provide these items by Thursday (04.05.18).

Thank you in advance for your assistance.



https://mail.google.com/mail/u/0?ik=083760f612&view=pt&search=msg-f%3A1616222313545008556&simpl=msg-f%3A1616222360

Mail - Fwd: Request for Program Director Summative Letter re: Dr. Cory Cordova

*Robert W. Moore, Residency Director*

*Katheryn Borssman, Residency Coordinator*

**LSU Family Medicine Residency - Alexandria**

211 Fourth Street, Box 30113

Alexandria, LA 71301

PH (318) 441-1041   Fax (318) 484-2225

kburna@lsuhsc.edu

&lt;Authorization to Release Records C. Cordova.pdf&gt;
&lt;C. Cordova Letter to LSUAlexandria.pdf&gt;
&lt;Milestone Comprehensive Summary.pdf&gt;
&lt;Rotations Listing C. Cordova.pdf&gt;

Gmail - Resident Release Form

Burnaman, Katheryn A. <kburna@lsuhsc.edu>
To: "Cory Cordova MD (drcordovamd@gmail.com)" <drcordovamd@gmail.com>

Wed, Apr 4, 2018 at 3:24 PM

From: Curry, Karen [mailto:KCurry@lsuhsc.edu]
Sent: Wednesday, April 04, 2018 3:07 PM
To: Burnaman, Katheryn A.
Cc: Moore, Robert
Subject: Re: Resident Release Form

Katheryn,

ACGME requires a summative competency-based performance evaluation on transferring residents and verification of previous educational experiences.  Will you need this?  If so can you please send another signed release for these items?

Karen Curry, MD

Program Director

Assistant Professor of Internal Medicine

Internal Medicine Department

LSUHSC/University Hospital & Clinics

2390 West Congress Street

Lafayette, LA. 70506

KCurry@lsuhsc.edu

337-261-6789 Phone

337-261-6791 Fax

From: Burnaman, Katheryn A.
Sent: Tuesday, April 3, 2018 8:05:28 PM
To: Curry, Karen

EXHIBIT
9

# University Hospitals and Clinics/Louisiana State University (Lafayette) Program

Internal medicine

Resident Name: Joseph C Cordova
Year in Program: 1
Position Type: Categorical
Start Date: Jul 01, 2017
Expected End Date: Jun 30, 2020
Evaluation to be completed: Oct 30, 2017 - Jan 13, 2018

Select the level corresponding to the resident's knowledge, skills, and other attributes in each area below. Your selections should take into account the resident's demonstration of milestones throughout the program with updates to reflect recent progress. Evaluations must be based on evidence with an emphasis on that obtained by direct observation.

Milestone levels do not correspond to the resident's year in your program. Selecting a level implies that milestones in that level and in lower levels have been substantially demonstrated. Selecting a radio button between levels indicates that milestones in lower levels have been substantially demonstrated as well as some milestones in the higher level(s). Mouse over the radio buttons to read the milestones for each level. After completing the evaluation, click the Submit button to finalize it. Alternatively, click the Save button to save your current changes and complete the form later. You MUST use the Submit button to finalize the form before the deadline for this evaluation period. Incomplete evaluations will NOT be accepted.

There may be cases in which a resident had no experiences within a subcompetency area during the previous six months. In this case, the reported milestone level should remain the same as the one reported during the previous evaluation. Do not increase (or decrease) the milestone level simply because time has passed; an evaluation of each subcompetency area must occur every six months. To review previously completed milestone evaluations, go to the Reports tab in ADS and select Milestone Evaluations.

## Patient Care

| | Not Yet Assessable | Critical Deficiencies | | | | | | Ready for Unsupervised Practice | | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Gathers and synthesizes essential and accurate information to define each patient's clinical problem(s) (PC1) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ | ○ |
| b. Develops and achieves comprehensive management plan for each patient (PC2) | ○ | ○ | ○ | ⊗ | ○ | ○ | ○ | ○ | ○ | ○ |

Monday, April 09, 2018                    09:04:59



| | Not Yet Assessable | Critical Deficiencies | | | | | Ready for Unsupervised Practice | | | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| c. Manages patients with progressive responsibility and independence (PC3) | ○ | ○ | ○ | ⊛ | ○ | ○ | ○ | ○ | ○ | ○ |
| d. Skill in performing procedures (PC4) | ○ | ○ | ○ | ⊛ | ○ | ○ | ○ | ○ | ○ | ○ |
| e. Requests and provides consultative care (PC5) | ○ | ○ | ○ | ⊛ | ○ | ○ | ○ | ○ | ○ | ○ |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

○ Yes
○ No
⊛ Conditional on Improvement

Medical Knowledge

| | Not Yet Assessable | Critical Deficiencies | | | | | Ready for Unsupervised Practice | | | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Clinical knowledge (MK1) | ○ | ○ | ○ | ⊛ | ○ | ○ | ○ | ○ | ○ | ○ |
| b. Knowledge of diagnostic testing and procedures (MK2) | ○ | ○ | ○ | ⊛ | ○ | ○ | ○ | ○ | ○ | ○ |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

○ Yes
○ No
⊛ Conditional on Improvement

Monday, April 09, 2018                    09:04:59

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 237

Systems-Based Practice

|  | Not Yet Assessable | Critical Deficiencies |  |  |  |  |  | Ready for Unsupervised Practice |  | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Works effectively within an interprofessional team (e.g. peers, consultants, nursing, ancillary professionals and other support personnel) (SBP1) | O | ⊗ | O | O | O | O | O | O | O | O |
| b. Recognizes system error and advocates for system improvement (SBP2) | O | O | ⊗ | O | O | O | O | O | O | O |
| c. Identifies forces that impact the cost of health care, and advocates for, and practices cost-effective care (SBP3) | O | O | O | O | ⊗ | O | O | O | O | O |
| d. Transitions patients effectively within and across health delivery systems (SBP4) | O | O | O | O | ⊗ | O | O | O | O | O |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

O Yes

O No

⊗ Conditional on Improvement

Practice-Based Learning and Improvement

Monday, April 09, 2018                    09:04:59

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 238

|  | Not Yet Assessable | Critical Deficiencies |  |  |  |  |  | Ready for Unsupervised Practice |  | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Monitors practice with a goal for improvement (PBLI1) | O |  | ⊛ | O | O | O | O | O |  | O |
| b. Learns and improves via performance audit (PBLI2) |  | O | ⊛ | O | O | O | O |  | O | O |
| c. Learns and improves via feedback (PBLI3) | O | O | O | ⊛ | O | O | O |  | O | O |
| d. Learns and improves at the point of care (PBLI4) | O | O | O | ⊛ | O | O | O | O |  | O |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

O Yes
O No
⊛ Conditional on Improvement

Professionalism

|  | Not Yet Assessable | Critical Deficiencies | Ready for Unsupervised Practice | Aspirational |
|---|---|---|---|---|

Monday, April 09, 2018                          09:04:59

| | Not Yet Assessable | Critical Deficiencies | | | | | | Ready for Unsupervised Practice | | Aspirational |
|---|---|---|---|---|---|---|---|---|---|---|

**a. Has professional and respectful interactions with patients, caregivers and members of the interprofessional team (e.g. peers, consultants, nursing, ancillary professionals and support personnel) (PROF1)**

**b. Accepts responsibility and follows through on tasks (PROF2)**

**c. Responds to each patient's unique characteristics and needs (PROF3)**

**d. Exhibits integrity and ethical behavior in professional conduct (PROF4)**

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

O Yes
O No
⊗ Conditional on Improvement

**Interpersonal and Communication Skills**

| | Not Yet Assessable | Critical Deficiencies | | Ready for Unsupervised Practice | | Aspirational |
|---|---|---|---|---|---|---|

Monday, April 09, 2018                                 09:04:59

|  | Not Yet Assessable | Critical Deficiencies |  |  |  |  |  | Ready for Unsupervised Practice |  | Aspirational |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
| a. Communicates effectively with patients and caregivers (ICS1) | ○ | ○ | ○ | ◉ | ○ | ○ | ○ |  | ○ | ○ |  |
| b. Communicates effectively in interprofessional teams (e.g. peers, consultants, nursing, ancillary professionals and other support personnel) (ICS2) | ○ | ○ | ○ | ◉ | ○ | ○ | ○ |  | ○ | ○ |  |
| c. Appropriate utilization and completion of health records (ICS3) | ○ | ○ | ○ | ○ | ◉ | ○ | ○ | ○ |  | ○ | ○ |

The resident is demonstrating satisfactory development of the knowledge, skill, and attitudes/behaviors needed to advance in training. He/she is demonstrating a learning trajectory that anticipates the achievement of competency for unsupervised practice that includes the delivery of safe, effective, patient-centered, timely, efficient and equitable care.

○ Yes
○ No
◉ Conditional on Improvement

**Overall Clinical Competence**
This rating represents the assessment of the resident's development of overall clinical competence during this year of training:

○ Superior
○ Satisfactory
◉ Conditional on Improvement
○ Unsatisfactory

© 2018 Accreditation Council for Graduate Medical Education (ACGME)    [VeriSign Trusted] (https://trustsealinfo.verisign.com/splash?form_file=fdf/splash.fdf&dn=apps.acgme.org&lang=en)

Monday, April 09, 2018                               09:04:59

FILED THIS _22_
DAY OF _July_, 20_19_
_Monet McCarthy_
Deputy Clerk of Court

NICHOLAS GACHASSIN, JR.
NICHOLAS GACHASSIN, III†
CHRISTOPHER C. JOHNSTON
BRANDON RHODES^
JULIE SAVOY
GARY J. DELAHOUSSAYE
BENJAMIN GARNES
LANZI MEYERS
RICHARD L. HOUGHTON, III▷
HOLLY McKAY DESCANT‡
CYNTHIA SCHWARTZ
CRANAY D. MURPHY
ROSS ROUBION
DAWN FUQUA



GACHASSIN
LAW FIRM

MAILING ADDRESS:
P. O. BOX 80369
LAFAYETTE, LA 70598-0369

200 CORPORATE BLVD., SUITE. 103
LAFAYETTE, LA 70508

TELEPHONE: (337) 235-4576
TELECOPIER: (337) 235-5003

†Also Admitted in Mississippi
▷Master of Laws in Health Care
^Also Admitted in Georgia & Florida
‡Also Admitted in Ohio

E-MAIL: Chris@gachassin.com
WEBSITE: www.gachassin.com

February 5, 2018

Dr. Cory Cordova
210 Wind Haven Lane
Lafayette, Louisiana 70506

Re:   *Terms of Engagement*

Dear Dr. Cordova:

This letter will confirm the discussions we had regarding your engagement of our firm.

1. Legal Services

We appreciate the opportunity to serve you. Our goals are to provide you with the legal services of the highest quality and efficiency and to help you accomplish your business objectives.

Our relationship should begin with a mutual understanding of expectations and should continue with full and candid communications between us throughout the course of our representation. Please let me know promptly if you have any questions at any time regarding any aspect of our firm's work for you.

The scope of our work may evolve in accordance with discussions or correspondence with you from time to time. To the extent that additional services are requested by you and agreed upon by us, the terms in this letter will apply to such additional services, unless superseded by another written agreement between us.

In order to avoid misunderstandings concerning potential conflicts of interest, it is our policy to clarify the identity of our clients and the circumstances under which we may represent other clients with interests which are or may be adverse to yours. In that regard, it is our policy that our representation does not extend to parents, subsidiaries, employees, officers, directors,

FILED THIS _22_
DAY OF __July__, 20_19_
_Monet McCarthy_
Deputy Clerk of Court

EXHIBIT
C

**Scanned with CamScanner**

*February 5, 2018*
*Page 2 of 4*

shareholders, partners or other affiliates of your company unless we mutually agree in writing to the contrary.

2.  **Persons Responsible**

Within our firm, I will be primarily responsible for this engagement.  My number here at the office is (337) 235-4576.  My direct e-mail address at work is Chris@gachassin.com

There may be occasions when your interests would be best served by involving other attorneys within our firm.  We will advise you of proposed staffing assignments involving other attorneys and will work with you to decide on the staffing most appropriate to meet your needs and expectations.

Please let me know promptly if any questions arise about the services provided to you by anyone at our firm, or about any billing that you receive from us, so that we can act appropriately.

3.  **Rates, Fees and Charges**

Our fees are based primarily on the amount of time spent by our attorneys and paralegals on your behalf.  Each attorney and paralegal in our firm has an hourly billing rate, and the rate times the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee.

In general, our attorneys' billing rate applicable to this engagement is $250.00 per hour. Associate attorneys' billing rate is $225.00.  For paralegal time, our rate will be $125.00 hour.

Other factors may be taken into account in determining our fees and may result in an increase over the rates specified above, including the novelty or difficulty of the legal problems involved, the risks and responsibilities assumed by us, the extent to which unforeseen circumstances arise, the time limitations imposed by you or by circumstances, the seriousness of the consequences of the matter, the results obtained, and other considerations permitted by applicable rules of professional conduct.  Please be assured, however, that we will never add a "bonus" to the regular hourly rates applicable to your matter without prior discussion with you.

In addition to fees, we will expect payment for disbursements and other charges.  We do not attempt to make a profit on our reimbursable charges.  We do, however, recover our direct and allocable indirect costs.

Our disbursements and other charges will include such items as photocopying, fax charges, computerized legal research charges, long-distance telephone charges, courier and air freight charges, travel expenses, meal and transportation costs (for late night or weekend work only), postage costs, supply costs, and other reasonable costs and expenses.  For larger disbursements, we may ask that billings be sent directly to you or that advances be provided.

We intend to provide statements to you on a monthly basis.  They will show our time logged in tenths of an hour increments and will separate fees from disbursements and other

Scanned with CamScanner

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 243

*February 5, 2018*
*Page 3 of 4*

charges. Payment of our statement is due promptly upon receipt. Our rates are based on our receiving payment within 30 days.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times during the course of our representation. Following any such revision, our new rates and charges will be applied to your account, and this letter constitutes written notice to you of our rights to make such revisions.

### 4. Retainer Fee

It is agreed that we will commence the Representation upon the deposit of a retainer in the amount of $1,000.00.

It is agreed that we will apply the retainer to our interim bills for fees and expenses, and each invoice will clearly show the amount of the retainer that is so applied. Once the retainer is exhausted, we may require additional deposits in connection with one or more matters or the representation generally, which will then be applied in the same amount.

### 5. Roles of Attorney and Client

Our responsibilities under this agreement are to provide legal counsel and assistance to you in accordance with this letter, and to provide statements to you that clearly state the basis for our fees and expenses.

We hope you will be clear and complete in your communications with us and will extend your reasonable assistance and cooperation to us. You agree to keep us informed of developments related to this representation and to pay our statements in a timely manner.

If this letter meets with your approval, please sign and return a copy.

We look forward to working with you.

With kind regards, I am

Very truly yours,
GACHASSIN LAW FIRM
(A Limited Liability Company)

Christopher Johnston

CJ/mg

Scanned with CamScanner

February 5, 2018
Page 4 of 4

Approval of Engagement:

I have read the letter above and agree to its terms, effective as of the date on which Gachassin Law
Firm first provides services to us.

_Shandel Ridgeway Cordova_          _02/05/2018_
Signature                                          Date

FILED THIS _22_
DAY OF _Jun_ , 20 _19_
_Merlot McCarthy_
Deputy Clerk of Court

Scanned with CamScanner

## ETHICS ADVISORY MEMORANDUM

To:        Christine M. Mire
From:    Dane S. Ciolino
Date:     November 6, 2018
Re:        Communications and Conflicts Issues in Cordova
             Disciplinary Matter Against LSU/UHC

I have been retained by Christine M. Mire, Attorney at Law, to provide an advisory opinion as to (1) whether she can communicate with constituents of a represented organization; and, (2) whether her client's former counsel had a concurrent conflict of interest. I set forth below my qualifications, the underlying facts, and my opinions.

I.        QUALIFICATIONS

I attach my curriculum vitae ("CV"), which sets forth my education, experience and other qualifications. *See* Exhibit 1. In brief, I currently serve as the Alvin R. Christovich Distinguished Professor of Law at Loyola University New Orleans School of Law. I graduated *cum laude* from Rhodes College in 1985, and *magna cum laude* from Tulane Law School in 1988, where I was inducted into Order of the Coif and served as Editor in Chief of the *Tulane Law Review*. Following law school graduation, I was employed as a law clerk for the United States District Court, Eastern District of Louisiana, and then as a lawyer with Cravath, Swaine & Moore, L.L.P., in New York City, and Stone Pigman Walther Wittmann, L.L.C., in New Orleans.

FILED THIS 22
DAY OF July , 20 19
_Mondt McCarthy_
Deputy Clerk of Court

1

EXHIBIT
D

Since joining the full-time faculty at Loyola in 1995, my teaching, scholarship, community-service and practice interests have included legal and judicial ethics. Among other courses, I teach "The Legal Profession," and "Legal Ethics Seminar." I am the editor of a book published in several editions by the Louisiana State Bar Association entitled *Louisiana Professional Responsibility Law and Practice*, and the successor to that book, a weblog and e-book entitled *Louisiana Legal Ethics*. I am the editor and annotator of the book entitled *Louisiana Legal Ethics: Standards and Commentary* (2018).

I have served as Reporter for the Louisiana State Bar Association Ethics 2000 Committee, as a member of the Louisiana State Bar Association Board of Governors, the Louisiana State Bar Association Committee on Lawyer Conduct, the Louisiana State Bar Association Ethics Advisory Service Committee, and the Louisiana State Bar Association Professionalism Committee. I have served as a hearing committee chairperson of the Louisiana Attorney Disciplinary Board, and as chairperson of the Lawyer Disciplinary Committee for the United States District Court for the Eastern District of Louisiana. I currently serve as General Counsel to the City of New Orleans Ethics Review Board.

I engage in the part-time practice of law, with a concentration on the ethics laws governing lawyers, judges, and public servants. I am a member in good standing and admitted to practice before the United States Supreme Court, Louisiana state courts, New York state courts, and various federal courts situated in Louisiana and New York.

2

I have served as an expert witness in numerous matters on the issues of the standards of care and conduct governing lawyers, and the reasonableness of legal fees and costs. My CV lists many of these matters. *See* Exhibit 1. In addition, my CV lists all publications that I have authored, and all other matters in which I have testified as an expert at trial, in deposition or by formal expert report. *See id.* My rate of compensation for study and testimony in this matter is $300.00 per hour.

II. FACTS

The facts as you have provided them to me are as follows:

This case involves administration discipline proceedings brought against my client, Dr. Cory Cordova, who was a first-year resident student at LSU/UHC in Lafayette, Louisiana. LSU/UHC is part of the LSU health systems and is in partnership with Lafayette General Hospital. Dr. Cordova was ultimately recommended for non-renewal of his contract and/or termination. His attorney at the time recommended consent to discipline and the doctor was told that his discipline would remain confidential. However, this was not accurate because his discipline records have been sent to the new schools he attempted to apply to. Dr. Cordova hired me to review the due process of his discipline and to review the propriety of his previous attorney's advice. It may be important to know that I was not hired in a personal injury capacity but I am mindful that a lawsuit may be filed at a later date.

I contacted you to review the parameters of who I could speak to in the course of my investigation/representation to ensure compliance with Rule 4.2. I would assume that my client as a former student entitled to due process can speak to anyone of the faculty members and attending physicians even if the Rule prohibits me as his attorney from speaking to them.

It was also concerning that Dr. Cordova's previous lawyer worked for the firm that is the general counsel for Lafayette General and because this firm also represented several members of the administration/faculty of UHC in other matters. In fact, two of the doctors that recommended discipline and who were potential adverse witnesses in the disciplinary proceedings were existing clients of the lawyer's firm. This raised Rule 1.7 concerns and I would like clarity so

3

that I can properly advise my client of all recourse he may be entitled to.

III.   OPINIONS

    A.   *Communication with Employees of LSU/UHC*

Under Louisiana Rule of Professional Conduct 4.2, "[u]nless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order, a lawyer in representing a client shall not communicate about the subject of the representation with:

    (a) a person the lawyer knows to be represented by another lawyer in the matter; or

    (b) a person the lawyer knows is presently a director, officer, employee, member, shareholder or other constituent of a represented organization and

        (1) who supervises, directs or regularly consults with the organization's lawyer concerning the matter;

        (2) who has the authority to obligate the organization with respect to the matter; or

        (3) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.

La. Rules of Prof'l Conduct r. 4.2.

The extent to which a lawyer may contact current and former employees of a represented organization is a recurring issue that is addressed in paragraph (b) of Rule 4.2. Prior to the adoption of this paragraph, many lawyers struggled with the issue of contacting current[1] employees of a corporate adversary because Louisiana

---

[1] As to *former* employees, the controlling law has always been clear. A lawyer generally may conduct ex parte interviews with unrepresented former employees of a represented business organization provided that the lawyer does not discuss matters

4

courts had not articulated a bright-line rule. *See, e.g., Jenkins v. Wal-Mart Stores, Inc.*, 956 F. Supp. 695 (W.D. La. 1997); *In re Shell Oil Refinery*, 143 F.R.D. 105 (E.D. La. 1992); *see also* ABA Model Rules of Prof'l Conduct r. 4.2 cmt. 4 (2002); Restatement (Third) of the Law Governing Lawyers § 100(2) (2000).

In no event, however, may a lawyer seek to communicate with an employee or former employee who is independently represented by counsel. *See* La. Rules of Prof'l Conduct r. 4.2(a). Furthermore, in no event may a lawyer seek to obtain from any present or former organizational constituent "information that the lawyer reasonably should know the non-client may not reveal without violating a duty of confidentiality" to the organization. *See* Restatement (Third) of the Law Governing Lawyers § 102 (2000).

Considering these standards, you are not prohibited from discussing Dr. Cordova's matter with many employees of LSU/UHC despite that the organization is represented by counsel. For example, you may communicate with faculty members and employees who have personal knowledge of the facts associated with his discipline matter. However, you may not communicate with any person (1) who regularly consults with LSU/UHC's lawyer concerning the Cordova matter, (2) who has authority to settle the matter, or (3) whose act or omission in connection with the Cordova matter may be imputed to LSU/UHC for purposes of civil liability. In

protected by attorney-client privilege. *See Buford v. Cargill, Inc.*, No. 05-0283, 2009 WL 2381328, at *16 (W.D. La. Jul. 30, 2009); *see also Schmidt v. Gregorio*, 705 So. 2d 742 (La. Ct. App. 2d Cir. 1993) (employees are not "parties" represented by organization's lawyer); *Jenkins v. Wal-Mart Stores, Inc.*, 956 F. Supp. 695, 697 (W.D. La. 1997); ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 91-359 (1991).

5

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 250

addition, you may not communicate with any person who is independently represented by counsel.

As to whether your client, Dr. Cordova, can communicate with employees of LSU/UHC, a comment to the corresponding ABA Model Rule notes that "parties to a matter may communicate directly with each other...." ABA Model Rules of Prof'l Conduct r. 4.2 cmt. 4 (2002); *see also* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 92-362 (1992). Nevertheless, you, as his lawyer, may not orchestrate a communication between Dr. Cordova and an off-limits person in an effort to circumvent Rule 4.2. *See, e.g.,* La. Rules of Prof'l Conduct r. 8.4; *see also* Restatement (Third) of the Law Governing Lawyers § 99(2) (2000) (permitting a lawyer to assist client in an "otherwise proper communication . . . with a represented non-client," unless the lawyer thereby seeks to deceive or overreach the nonclient); ABA Formal Op. 11-461 (Aug. 4, 2011). ("Parties to a legal matter have the right to communicate directly with each other. A lawyer may advise a client of that right and may assist the client regarding the substance of any proposed communication. The lawyer's assistance need not be prompted by a request from the client. Such assistance may not, however, result in overreaching by the lawyer."). ABA Formal Op. 11-461 suggests that the following would constitute circumvention of the rule and overreaching:

> Prime examples of overreaching include assisting the client in securing from the represented person an enforceable obligation, disclosure of confidential information, or admissions against interest without the opportunity to seek the advice of counsel. To prevent such overreaching, a lawyer must, at a minimum, advise her client to

6

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 251

encourage the other party to consult with counsel before entering into obligations, making admissions or disclosing confidential information.

ABA Formal. Op. 11-461 at 5.

B.   *Concurrent Conflict of Interest of Dr. Cordova' Previous Lawyer*

Louisiana Rule of Professional Conduct 1.7(a) provides that "[e]xcept as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." *See* La. Rules of Prof'l Conduct r. 1.7(a) A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

*Id.* r. 1.7(a)(1-2). This rule implements one of the fundamental duties attendant to the lawyer-client relationship–the duty of loyalty. As a loyal fiduciary who must faithfully champion his clients' causes, a lawyer must avoid conflicts between the interests of the lawyer's current clients and those of other persons, including the lawyer himself, his other current clients, past clients, and third parties. Unidentified or unresolved conflicts may lead to professional discipline, disqualification, fee forfeiture and malpractice liability. *See* Restatement (Third) of the Law Governing Lawyers § 121 cmt. f (2000).

Furthermore, Louisiana Rule of Professional Conduct 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by

7

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 252

Rules 1.7." *See* La. Rules of Prof'l Conduct r. 1.10(a). Thus, if one lawyer in a law firm has a concurrent conflict under Rule 1.7, then all of the lawyers in the firm have the same conflict by imputation.

Here, Dr. Cordova's prior lawyer violated Rules 1.7 and 1.10 in representing Dr. Cordova in the disciplinary matter adverse to LSU/UHC and Lafayette General. At the time this lawyer represented Dr. Cordova, he was associated with a law firm that is (and was) the general counsel for Lafayette General. In addition, his law firm does (and did) represent members of the administration and faculty of UHC, including two of the physicians who recommended discipline against Dr. Cordova and who were potential adverse witnesses in the disciplinary proceedings against him. Because Lafayette General and these members of the UHC administration and faculty were "directly adverse" to Dr. Cordova, the firm should have declined to concurrently represent Dr. Cordova in a discipline matter adverse to its other clients.

Respectfully submitted,

Dane S. Ciolino
DANE S. CIOLINO, LLC
18 Farnham Place
Metairie, LA 70005
(504) 975-3263
dane@daneciolino.com

November 6, 2018

8

# Dane S. Ciolino

LOYOLA UNIVERSITY NEW ORLEANS COLLEGE OF LAW
18 FARNHAM PL.
METAIRIE, LOUISIANA 70005

M: (504) 975-3263
DANE@DANECIOLINO.COM
WWW.DANECIOLINO.COM

## EDUCATION

TULANE UNIVERSITY LAW SCHOOL, *New Orleans, Louisiana*
J.D., *magna cum laude*, 1988
Editor in Chief, *Tulane Law Review*
Order of the Coif
Winner, Maritime Law Center Writing Competition

RHODES COLLEGE, *Memphis, Tennessee*
B.A., *cum laude*, 1985
Recipient, Political Science Department Award
President, Sigma Alpha Epsilon Fraternity

## EMPLOYMENT

LOYOLA LAW SCHOOL, *New Orleans, Louisiana*
Alvin R. Christovich Distinguished Professor of Law, 2002-present
Professor of Law, 2002
Associate Professor of Law, 1998-2002 (Tenured 2001)
Assistant Professor of Law, 1997-1998
Visiting Assistant Professor of Law, 1995-1997
Adjunct Instructor of Law, 1992-1995

TULANE LAW SCHOOL, *New Orleans, Louisiana*
Visiting Professor of Law, 2005, 2002, 2017

STONE, PIGMAN, WALTHER & WITTMANN, LLC, *New Orleans, Louisiana*
Associate, 1991-1995
*Areas of Practice*: Commercial Litigation, Intellectual Property, Criminal Law

CRAVATH, SWAINE & MOORE, LLP, *New York, New York*
Associate, 1989-1991
Consultant, 2005-2006
*Areas of Practice*: Commercial Litigation, Intellectual Property

EXHIBIT
1

DANE S. CIOLINO

UNITED STATES DISTRICT COURT, *New Orleans, Louisiana*
Law Clerk to Honorable Peter H. Beer, 1988-89

PUBLICATIONS

DANE S. CIOLINO, LOUISIANA LEGAL ETHICS: STANDARDS AND COMMENTARY (2018)

Dane S. Ciolino, *Cloud Computing for Criminal Lawyers: It's Not the Future Anymore*, THE CHAMPION, Vol. XL, No. 10, December 2016, at 22

DANE S. CIOLINO, BOBBY HARGES & WENDY SHEA, LOUISIANA CRIMINAL LAW: CASES AND MATERIALS (2013)

Louisiana Legal Ethics Weblog (http://lalegalethics.org/) (Dane S. Ciolino, ed. & admin.)

Dane S. Ciolino & Monica Hof Wallace, *Recodifying Emancipation: A Précis of the 2009 Revision of Louisiana Emancipation Law*, 56 LOYOLA L. REV. 135 (2010)

Dane S. Ciolino, *Managing the Perils of Lawyer Social Networking*, ABA SECTION OF LITIGATION, COMMITTEE ON ETHICS & PROFESSIONALISM, 2010 ANNUAL REVIEW (2010)

Sandra S. Varnado & Dane S. Ciolino, *Reconsidering Lawyers' Ethical Obligations in the Wake of a Disaster*, 19 THE PROFESSIONAL LAWYER 8 (2009)

DANE S. CIOLINO, LOUISIANA PROFESSIONAL RESPONSIBILITY LAW & PRACTICE (3d ed. 2007)

Dane S. Ciolino, *Lawyer Ethics Reform in Perspective: A Look at the Louisiana Rules of Professional Conduct Before and After Ethics 2000*, 65 LA. L. REV. 536 (2005)

Dane S. Ciolino, *Redefining Professionalism as Seeking*, 49 LOY. L. REV. 229 (2003)

Dane S. Ciolino & Erin A. Donelon, *Questioning Strict Liability in Copyright*, 54 RUTGERS L. REV. 351 (2002)

Dane S. Ciolino, *Why Copyrights Are Community Property (Sort Of): Through the* Rodrigue v. Rodrigue *Looking Glass*, 47 LOY. L. REV. 631 (2001)

Dane S. Ciolino, *Why Copyrights Are Not Community Property*, 60 LA. L. REV. 127 (1999)

Dane S. Ciolino, *Reconsidering Restitution in Copyright*, 48 EMORY L.J. 1 (1999)

Dane S. Ciolino, *Rethinking the Compatibility of Moral Rights and Fair Use*, 54 WASH. & LEE L. REV. 33 (1997)

2

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 255

DANE S. CIOLINO

Dane S. Ciolino, *The Mental Element of Louisiana Crimes: It Doesn't Matter What You Think*, 70 TUL. L. REV. 855 (1996)

Dane S. Ciolino, *Moral Rights and Real Obligations: A Property-Law Framework for the Protection of Authors' Moral Rights*, 69 TUL. L. REV. 935 (1995)

Dane S. Ciolino & Gary R. Roberts, *The Missing Direct-Tender Option in Federal Third-Party Practice: A Procedural and Jurisdictional Analysis*, 68 N.C.L. REV. 423 (1990)

Dane S. Ciolino, Casenote, Lafleur v. John Deere Co.: *Recovery of Nonpecuniary Damages in Redhibitory Actions*, 61 TUL. L. REV. 704 (1987)

TEACHING

*Law School: Principal Courses*

The Legal Profession (legal ethics), Trial & Appellate Advocacy, Evidence, Criminal Law & Procedure

*Law School: Other Courses*

Business Organizations I & II, Contracts I & II, Common Law Contracts for Civil Law Students, Comparative Law, Computer Law, Copyright Law, Criminal Law Clinic, Criminal Law Seminar, Constitutional Criminal Procedure, Civil Law of Persons, Civil Law of Community Property, Civil Law of Property, Introduction to Law and Legal Methods, Legal Ethics Seminar, International Copyright Law, Law & Poverty, Litigation and Law Practice Management, Lawyering II: Moot Court, and Professional Seminar in Storytelling

*Bar Review*

Instructor, BAR/BRI Bar Review Course (legal ethics and professional responsibility law), 2006-present

Instructor, BAR/BRI Louisiana Bar Review Course (criminal law, evidence and criminal procedure), 2005-present

Instructor, BAR/BRI Louisiana Bar Review Course (Louisiana property law, family law, community-property law), 1995-2005

Instructor, LSU Law Center Bar Review Course (Louisiana family law), 1999-2002

3

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 256

DANE S. CIOLINO

## COMMUNITY SERVICE

General Counsel, Ethics Review Board of the City of New Orleans, 2015-present

Louisiana Association of Defense Counsel
    Acting Executive Director, 2015-2016
    Associate Executive Director, 2009-2015, 2016-present

Member, American Law Institute, 2003-present

Subject Matter Expert, National Conference of Bar Examiners, Multi-State Professional Responsibility Examination, 2018-present

Legal Analyst, Various National, State and Local Media, 1998-present

Instructor, Louisiana State Bar Association Diversionary Ethics School, 1999-present

Member, Louisiana State Bar Association Codes of Conduct Committee, 1998-present

Member, Federal Criminal Justice Act Panel, United States District Court for the Eastern District of Louisiana (panel of attorneys accepting appointments to represent indigent defendants in federal prosecutions), 1991-present

Reporter, United States District Court for the Eastern District of Louisiana Committee on Revising Attorney Disciplinary Procedures, 2009-2011

Lawyer Disciplinary Committee, United States District Court for the Eastern District of Louisiana
    Chair, 2011-2016
    Member, 2016-2017

Board Member, Louisiana Organization for Judicial Excellence, 2004-2008

Member, Ochsner Clinic Foundation, Bioethics Committee, 2009-2012

Member, Louisiana State Bar Association Professionalism Committee, 1997-2008

Member, Louisiana State Bar Association Board of Governors, 2007-2009

Board Member, Orleans Parish Indigent Defender Program, 2006-2007

Reporter, Louisiana State Bar Association Ethics 2000 Committee, 1999-2004

Reporter, Louisiana State Law Institute Emancipation Committee, 2004-2008

4

DANE S. CIOLINO

Reporter, Louisiana State Law Institute Tutorship Procedure Committee, 2000-2009

Reporter, Louisiana State Law Institute Interdiction Committee, 1996-2002

Member, Louisiana Supreme Court Committee on the Prevention of Lawyer Misconduct, 1999-2003

Member, Louisiana State Law Institute Criminal Law Committee, 2006-2011

Interim Host, *It's the Law*, Cox Cable Television New Orleans and Jefferson, December 1999-2000

Louisiana State Bar Association, Ethics Advisory Committee
    Member, 2000-2003
    Reporter, 1997-2000

Council Member, Louisiana State Law Institute, 1997-2000

Louisiana Attorney Disciplinary Board
    Hearing Committee Member, 1998-1999
    Hearing Committee Chairperson, 1999-2003

Louisiana Supreme Court Bar Admissions Advisory Committee
    Member, 1997-1999
    Chairperson, 1999-2001

Director, Pro Bono Criminal Law for Civil Lawyers (two-day CLE seminar training civil lawyers to undertake pro bono criminal cases), 1995-2002

Advisory Editor, *Tulane Law Review*, 1993-2009

Member, Board of Directors, Louisiana Capital Assistance Center (public-interest organization defending capital cases for indigent clients), 1996-2006

Appointed Counsel, Orleans Parish Criminal District Court (pro bono representation of indigent defendants in first- and second-degree murder prosecutions), 1991-2008

Evaluator, American Bar Association, Central European Law Initiative, March 1999 (evaluated code of legal ethics for the Republic of Armenia)

LOYOLA UNIVERSITY SERVICE

Faculty Advisor, *Loyola Law School Honor Board*, 2002-present

Chairperson, Petitions and Readmissions Committee, 2015-present

5

DANE S. CIOLINO

Clinic, Skills, and CLE Committee
        Chairperson, 2016-2017
        Member, 2017-present

Endowed Professorships Committee
        Chairperson, 2014-2017
        Member, 2002-present

Director, University of Vienna International Program, 2013-2017

Chairperson, Library and Technology Committee, 2013-2015

Director, International Programs, 2011-2012

Chairperson, International Programs Committee, 2011-2012

Member, Curriculum and Bar Examination Committee, 2011-2015

Faculty Advisor, *Loyola Law Review*, 1997-2003, 2006

Faculty Advisor, *Order of the Barristers*, 1998-2003

Faculty Advisor, *Loyola Intellectual Property Law Quarterly*, 1996-2002

Faculty Advisor, *Loyola ATLA Chapter*, 1997-2002

Law School Representative, Loyola University Senate, 1997-1999

Loyola Law School Dean Search Committee
        Chairperson, 2001-2002
        Member, 2000-2001

Chairperson, Loyola Law School Law Clinic Committee, 2005-2007

Chairperson, Loyola Law School Faculty Unification Committee, 2004

Chairperson, Loyola Law School Library Director Search Committee, 2000-2001

Member, Loyola University Distance Learning Committee, 2010-present

Member, Loyola Law School Technology Committee, 2010-2011

Member, Loyola Law School By-Laws Committee, 2000-2001

6

DANE S. CIOLINO

Member, Loyola Law School Pre-Admissions Committee, 1998-1999

Member, Loyola Law School Tenure Guidelines Committee, 1998-1999

Member, Loyola Law School Library Committee, 1997-1998

Member, Loyola Law School Skills Committee, 1997-1998

Member, Loyola Law School Curriculum Committee, 1996-1997

Member, Loyola Law School Admissions Committee, 1996-1997

Member, Loyola Law School Student Recruitment and Career Services Committee, 1995-1996

## COMMUNITY HONORS

*New Orleans Magazine* Top Lawyers, 2012-present

Recipient, Camille Gravelle Pro Bono Award, Federal Bar Association, New Orleans Chapter, 2007

Lawdragon 3000 (list of top American lawyers), 2006

Recipient, *Gambit Magazine*, Forty-Under-Forty Award, 2002

Recipient, Louisiana State Bar Association, President's Award, 2001

Recipient, *City Business Magazine*, Power Generation Award, 2000

Recipient, Gillis Long Poverty Law Center Public Service Award, 1997

## EXPERT WITNESS TESTIMONY[1]

1. *Active Solutions, L.L.C. v. Dell, Inc.*, No. 2007-3665, Civil District Court for the Parish of Orleans, State of Louisiana

2. *Adler v. Doyle (In re Woven Treasures, L.L.C.)*, 69 180 M 01493 07, American Arbitration Association

3. *AmCareco, Inc. v. Lucksinger*, No. 499,737, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

---

[1] All matters in which Dane S. Ciolino has provided a public expert report, affidavit, deposition testimony or trial testimony. Does not include private ethics advisory opinions.

7

DANE S. CIOLINO

4. *Adamson v. Bailey,* No. 493,309, First Judicial District Court, Parish of Caddo, State of Louisiana

5. *American Income Life Ins. Co. v. Nicholas Matthew Nitkowski et al.,* Civ. No. 05-2228(I-3), United States District Court Eastern District of Louisiana

6. *Antoine v. Anding,* No. 125,803-H, Sixteenth Judicial District Court, Parish of Iberia, State of Louisiana

7. *Asset Funding Group, L.L.C. v. Adams and Reese, L.L.P.,* Civ. No. 07-2965, United States District Court for the Eastern District of Louisiana

8. *Baricuatro v. Industrial Personnel and Mgmt. Servs., Inc.,* Civ. No. 2:11-cv-02777-KDE-JCW, United States District Court for the Eastern District of Louisiana

9. *Barton v. Butler,* No. 515,473, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

10. *BCM, LLC and Nawlins Kajun Foods, LLC v. Cheatwood,* No. 2009-2807, Fifteenth Judicial District Court, Parish of Lafayette, State of Louisiana

11. *Bd. of Supervisors of La. State Univ. and Agricultural & Mechanical College v. Southern Electronics Supply Co., Inc.,* No. 2011-1631 "L", Civil District Court for the Parish of Orleans, State of Louisiana

12. *Bedford v. Magee,* No. 2000-14123, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

13. *Belle Terre Lakes Home Owners Assoc. v. Patricia McGovern,* No. 41922, Fortieth Judicial District Court for the Parish of St. John the Baptist, State of Louisiana

14. *Bertucci v. Lafayette Ins. Co.,* No. 01-0608, Civil District Court for the Parish of Orleans, State of Louisiana

15. *Beevers and Beevers, LLP v. Sirgo,* No. 624-259 "B," Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

16. *Billeaudeau v. Opelousas Gen'l Hosp.,* No. 13-C-0097-C, Twenty-Seventh Judicial District Court for the Parish of St. Landry, State of Louisiana

17. *Bilyeu v. Johanson Berenson, LLP,* Civil Action No. 1:08CV2006, United States District Court for the Western District of Louisiana, Alexandria Division

18. *Boudoin v. St. John the Baptist Parish School Bd.,* No. 2004-08242, Office of Workers' Compensation, State of Louisiana

8

DANE S. CIOLINO

19. *Bowes v. Clean Scene Servs., L.L.C.*, No. 661-147, Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

20. *Bruszewski v. Motley Rice, LLC*, Civ. Action No. 5:12-cv-00046-JMH, United States District Court for the Eastern District of Kentucky, Lexington Division

21. *Cameron Int'l Corp. v. Liberty Ins. Underwriters, Inc.*, 2:12-cv-00211 (E.D. La. filed Jan. 30, 2012)

22. *Campbell v. City of New Orleans*, No. 98-18633, Civil District Court for the Parish of Orleans, State of Louisiana

23. *Caro Properties A., L.L.C. v. Person*, No. 09-13059 (J-5), Civil District Court for the Parish of Orleans, State of Louisiana

24. *CEF Funding, L.L.C. v. Sher Garner Cahill Richter Klein & Hilbert, L.L.C.*, No. 09-6623 (D-4), United States District Court for the Eastern District of Louisiana

25. *Chalmette Payment Processing, L.L.C. v. Munson*, Civ. No. 03-1060, United States District Court for the Eastern District of Louisiana

26. *Chan's, Inc., d/b/a Mikimoto v. Henderson*, No. 2015-6555 (I-14), Civil District Court for the Parish of Orleans, State of Louisiana

27. *Chevron U.S.A., Inc. v. State of Louisiana, Louisiana State Mineral Bd. and Louisiana Dept. of Natural Resources*, No. 93,658, Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana

28. *Childress v. Childress*, No. 488-388, Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

29. *Conwill v. Greenberg Traurig, L.L.P.*, Civ. Action No. 11-938 (KDE), United States District Court for the Eastern District of Louisiana

30. *Crinel v. Roby*, No. 2015-5698 (F-7), Civil District Court for the Parish of Orleans, State of Louisiana

31. *Croft v. Liberty Mut. Ins. Co.*, Docket No. 581732, 19th Judicial District Court for the Parish of East Baton Rouge

32. *Crooks v. State of Louisiana, Through the Louisiana Department of Natural Resources*, No. 224,262, Ninth Judicial District Court for the Parish of Rapides, State of Louisiana

33. *Dan S. Collins, CPL & Associates v. Godchaux*, No. 84618, Fifteenth Judicial District Court for the Parish of Vermillion, State of Louisiana

9

DANE S. CIOLINO

34. *Dean v. St. Mary Emergency Group, LLC*, No. C-2015-5856-F, Fifteenth Judicial District Court for the Parish of Lafayette, State of Louisiana

35. *Dejean v. Koch*, No. C20093931, Superior Court of the State of Arizona, County of Pima, State of Arizona

36. *Deltide Fishing and Rental Tools, Inc. v. Keaty*, No. 680,838, Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

37. *Denison Supply Group, LLC v. Michel*, No. 16-1971, Civil District Court for the Parish of Orleans, State of Louisiana

38. *Domingue v. Salomon Smith Barney, Inc. & Coughlin*, No. 01-03076, NASD Dispute Resolution Arbitration, New Orleans, Louisiana

39. *Donovan Marine, Inc. v. Travelers Indemnity Co. of Illinois*, Civ. Action No. 09-4374 (S-3), United States District Court for the Eastern District of Louisiana, New Orleans, Louisiana

40. *Dougherty v. Haag*, No. 05-06993, Superior Court for the County of Orange, State of California

41. *Doyle v. ICNA*, Civil District Court for the Parish of Orleans, State of Louisiana

42. *Dunahoe v. Rogers*, No. 85704(A), Tenth Judicial District Court for the Parish of Natchitoches, State of Louisiana

43. *Dysart & Tabary LLP v. Finckbeiner*, No. 15-0597 "A," Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana

44. *East Jefferson General Hospital v. Stein*, No. A-081709-773, AHLA Arbitration Service, Parish of Jefferson, State of Louisiana

45. *Edmonds v. Williamson*, No. 2002-CV-42-R, Circuit Court of Kemper County, State of Mississippi

46. *Felham Enterprises (Cayman) Ltd. v. Certain Underwriters at Lloyd's, London Companies, Zurich American Ins. Co., Marine Office of Am. Corp. & Trinity Yachts, Inc.*, No. 02-3588, United States District Court for the Eastern District of Louisiana

47. *Foley & Lardner, LLP v. Kenneth G. Daniels, LLC*, Adv. No. 05-01003, United States Bankruptcy Court for the Middle District of Louisiana

48. *Forbes v. St. Martin*, Civ. Action No. C2401 01 1745(2), Chancery Court, First Judicial District Court, Harrison County, Mississippi

10

DANE S. CIOLINO

49.  *Forbis v. Int'l Health Care Properties, X, Ltd.,* 97-CI-03198, Jefferson Circuit Court, State of Kentucky

50.  *Franklin v. Regions Bank,* Civ. Action No. 5:16-CV-01152, United States District Court for the Western District of Louisiana

51.  *Furie Petroleum Co., L.L.C. v. Tower Hill Energy Co., L.L.C.,* No. 09-927, United States District Court for the Western District of Louisiana, Shreveport Division

52.  *Gaspard v. Provensal,* No. 2012-11939, Civil District Court for the Parish of Orleans, State of Louisiana

53.  *Gauthier, Houghtaling & Williams L.L.P. v. Safeguard Storage Properties LLC,* Civ. Action No. 08-0627 (H), Civil District Court for the Parish of Orleans, State of Louisiana

54.  *GE Oil & Gas, Inc. v. Turbine Generation Servs., LLC,* No. 652296/2015, Supreme Court of the State of New York, County of New York, State of New York

55.  *Gill v. Becnel,* No. G2001-1199 R/1, Chancery Court for the First Judicial District, Hinds County, State of Mississippi

56.  *Glynn v. Sylvester,* No. 228080, Ninth Judicial District Court for the Parish of Rapides, State of Louisiana

57.  *Greenspoon Marder, P.A. v. Andry Law Firm, LLC,* Civ. Action No. 2:13-cv-05509-MLCF-JCW, Section F, United States District Court for the Eastern District of Louisiana

58.  *Gulf Production Co., Inc. v. Hoover Oil Field Supply, Inc.,* No. 08-5016, United States District Court for the Eastern District of Louisiana

59.  *Gulfport Ob-Gyn, P.A. vs. Dukes, Dukes, Keating & Faneca, P.A.,* Civ. Action No. A2401-16-193, Circuit Court of Harrison County, First Judicial District, State of Mississippi

60.  *Harry Bourg Corp. vs. Exxon Mobil Corp.,* No. 140,749 ("E"), Thirty-Second Judicial District Court for the Parish of Terrebonne, State of Louisiana

61.  *Haynes v. Williamson,* No. 3:05cv186-HTW-JCS, United States District Court for the Southern District of Mississippi, Jackson Division

62.  *Hazlett v. Wilson,* No. 2010-17707, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

63.  *Hebert v. Avery,* No. 2001-16561, Civil District Court for the Parish of Orleans, State of Louisiana

11

DANE S. CIOLINO

64. *Hodges v. Reasonover*, No. 2011-3391(N), Civil District Court for the Parish of Orleans, State of Louisiana

65. *Hotel Investors, LLC v. State of Louisiana, Department of Transportation and Development*, No. 704-195 "M", Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana

66. *Humphrey v. L.C. Hearne*, No. 600,108 (C), First Judicial District Court for the Parish of Caddo, State of Louisiana

67. *Hunter & Blazier v. Logan*, No. 2007-1873, Fourteenth Judicial District Court, Parish of Calcasieu, State of Louisiana

68. *Hydroflame Production, L.L.C. v. Hydroflame Technologies, L.L.C.*, No. 2011-3095(K), Civil District Court, Parish of Orleans, State of Louisiana

69. *In re American International Refinery, Inc.*, No. 04-21331, United States Bankruptcy Court, Western District of Louisiana, Lake Charles Division

70. *In re E.H. Mitchell & Co., LLC*, Civ. Action No. 14-959 (H-5), United States District Court for the Eastern District of Louisiana

71. *In re LMCHH PCP, LLC*, No. 17-10353-JAB ("B"), United States Bankruptcy Court for the Eastern District of Louisiana

72. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL No. 2179, United States District Court for the Eastern District of Louisiana

73. *In re The Matter of Taira Lynn Limited No. 7, LLC, as Owner of the M/V Ricky J. Leboeuf*, Civ. Action No. 2:16-cv-0367, United States District Court for the Eastern District of Louisiana

74. *In re Thomas J. Hogan, Jr.*, No. 16-DB-055, Louisiana Attorney Disciplinary Board, State of Louisiana

75. *In re Impeachment of United States District Judge G. Thomas Porteous, Jr.*, The Senate of the United States (no docket number)

76. *In re Oestreicher*, No. 12-DB-083, Louisiana Attorney Disciplinary Board, State of Louisiana

77. *In re Petition to Accord Immigrant Classification to Timothy Gray Cameron, Esq., as an Alien of Extraordinary Ability*, United States Department of Homeland Security, United States Citizenship and Immigration Services

78. *In re Confidential Respondents*, 04-DB-005, Louisiana Attorney Disciplinary Board

12

DANE S. CIOLINO

79. *In re Succession of Marion Roberts*, No. 96-2904(F), Civil District Court for the Parish of Orleans, State of Louisiana

80. *In re Zyprexa Products Liability Litigation*, MDL No. 1596, United States District Court for the Eastern District of New York

81. *Jones v. Lagarde*, No. 2016-11075, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

82. *La Casa Castro, S.A. de C.V. v. Greenberg Traurig, P.A., Roberto Martinez and Pedro J. Martinez-Fraga*, Civ. Action No. 09-6663(F-2), United States District Court for the Eastern District of Louisiana

83. *Lentz v. Schulze*, No. 2:16-CV-07299, United District Court for the Eastern District of Louisiana

84. *Leon v. Wilson*, No. 96-14608(F), Civil District Court for the Parish of Orleans, State of Louisiana

85. *Liberty Mutual Ins. Co. v. Jotun Paints, Inc. & Jotun, Inc.*, Civ. Action No. 07-3114, United States District Court for the Eastern District of Louisiana

86. *Logan v. Hit or Miss, L.L.C.*, Civil Action No. 6:07-CV-1116 LO, United District Court for the Western District of Louisiana

87. *Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich*, Civ. Action No. 11-2102-SSV-SS, United States District Court for the Eastern District of Louisiana

88. *Louisiana State Bar Association v. Carr and Associates, Inc.*, No. 2006-14440, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

89. *Magnificent Eight, LLC v. First NBC Bank, Inc.*, Civ. Action No. 13-5713 c/w 13-5714, United States District Court for the Eastern District of Louisiana

90. *Mascorro v. Schulz*, No. 2014-12140, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

91. *Maxim v. Progressive Security Ins. Co.*, No. 229-677-G, Ninth Judicial District Court for the Parish of Rapides, State of Louisiana

92. *Mire v. American Multi-Cinema, Inc.*, Civ. Action No. 14-cv-02582-MVL-DEK, United States District Court for the Eastern District of Louisiana

93. *Molaison v. Lukinovich*, No. 623-026 (C), Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana

13

DANE S. CIOLINO

94.  *Montgomery v. St. Tammany Parish Gov't*, No. 2016-11530(J), Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

95.  *NASDI, LLC v. Bertucci Contracting Co., LLC.*, No. 719944(A), Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana

96.  *O'Connell v. Wyatt, Tarrant & Combs, LLP*, No. 12-CI-000863, Jefferson Circuit Court, State of Kentucky

97.  *Ohmer v. Farm Bureau Ins. Co.*, No. 113555 "D", Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana

98.  *Oliver v. Orleans Parish School Board*, No. 2005-12244 (N), Civil District Court, Parish of Orleans, State of Louisiana

99.  *Oreck Direct, LLC v. Dyson, Inc.*, Civ. Action No. 07-2744, United District Court for the Eastern District of Louisiana

100.  *Ortiz v. MeadWestvaco Corp.*, No. 2009-0278, Thirty-Sixth Judicial District Court for the Parish of Beauregard, State of Louisiana

101.  *Perrone v. Rogers*, No. 2014-10589-C, Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

102.  *Pitre v. Continental Casualty Co.*, No. 615-979(J), Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

103.  *Pittle v. McGlynn*, No. 09-620-JJB-SCR, United States District Court for the Middle District of Louisiana

104.  *Planet Beach Franchising Corp. v. Fisher & Zucker, L.L.C.*, Nos. 11-CV-915 & 11-CV-02146 (MLCF), United States District Court for the Eastern District of Louisiana

105.  *Powko Industries, L.L.C. v. Folse*, No. 3:15-cv-0038-BAJ-SCR, United States District Court for the Middle District of Louisiana

106.  *Provosty v. ARC Construction, LLC*, No. 08-3671 "J", Civil District Court for the Parish of Orleans, State of Louisiana

107.  *Read v. Read*, No. 2000-15283(E), Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

108.  *Reuther v. Smith*, No. 2001-18124, Civil District Court for the Parish of Orleans, State of Louisiana

109.  *Reynolds v. Voelkel*, Civ. Action No. :16-CV-06984-JCZ-KWR, United States District Court for the Eastern District of Louisiana

14

DANE S. CIOLINO

110.  *Robichaux v. Dow Chemical Co.*, No. 96-8461, Eighteenth Judicial District Court for the Parish of Iberville, State of Louisiana

111.  *Schiff v. Pugh*, No. 2014-03864, Civil District Court for the Parish of Orleans, State of Louisiana

112.  *Scott v. The American Tobacco Co., Inc.*, No. 96-8461, Civil District Court for the Parish of Orleans, State of Louisiana

113.  *Sessions, Fishman, Nathan & Israel, L.L.P. v. Halpern*, No. 2010-533, Civil District Court for the Parish of Orleans, State of Louisiana

114.  *Shane v. Frost Brown Todd, LLC*, No. 08-CI-10428, Jefferson Circuit Court, Division Eight, State of Kentucky

115.  *Shinn Enterprises, Inc. & GIS Sports of Nevada, Inc. v. Capella*, No. 2005-12352, Civil District Court for the Parish of Orleans, State of Louisiana

116.  *Sigma Delta, L.L.C. v. Eric R. George, M.D.*, Civ. No. 07-5427, United States District Court for the Eastern District of Louisiana

117.  *Smith v. Kaplan & Lukowski, LLP & Jay D. Lukowski* (pre-suit affidavit).

118.  *Somerset Pacific, LLC v. Tudor Ins. Co.*, No. 17-7099 "H-3", United States District Court for the Eastern District of Louisiana.

119.  *Spahr v. Dallam*, No. 98-5840, Civil District Court for the Parish of Orleans, State of Louisiana

120.  *Southern Scrap Material Co., L.L.C. v. Fleming*, Civ. No. 01-2544, United States District Court for the Eastern District of Louisiana

121.  *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc., L.L.C.*, No. 116-860(E), Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana

122.  *St. Tammany Parish School Bd. v. Hartford Cas. Ins. Co.*, No. 2012-12891(C), Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

123.  *Stanley v. Trinchard*, Civ. No. 02-1235, United States District Court for the Eastern District of Louisiana

124.  *State of Louisiana v. Taryn Blume*, No. 522905, Criminal District Court for the Parish of Orleans, State of Louisiana

125.  *State of Louisiana v. Miqueghele Brown*, No. 533046, Criminal District Court for the Parish of Orleans, State of Louisiana

15

DANE S. CIOLINO

126.   *State of Louisiana ex rel. Dorsey v. Vannoy*, No. 251-406, First Judicial District Court for the Parish of Caddo, State of Louisiana

127.   *State of Louisiana v. Danny Galindo*, No. 455-170 (F/L), Criminal District Court for the Parish of Orleans

128.   *State of Louisiana v. Warren Harris*, No. 288-271 (C), Criminal District Court for the Parish of Orleans, State of Louisiana

129.   *State of Louisiana v. Khristopher Kyzar*, No. 11-05-0461, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

130.   *State of Louisiana v. Ricky Langley*, No. 10258-02, Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana

131.   *State of Louisiana v. Scott Lingle*, No. 288-356 (I), Criminal District Court for the Parish of Orleans, State of Louisiana

132.   *State of Louisiana v. Robert "Bob" Odom*, No. 08-02-547, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

133.   *State of Louisiana v. David Peralta*, No. 553759 "G", Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana

134.   *State of Louisiana v. Terryance Russel*, No. 375-503, Criminal District Court for the Parish of Orleans, State of Louisiana

135.   *State of Louisiana v. Robert Wilkins*, No. 04-19337, 14th Judicial District Court for the Parish of Calcasieu, State of Louisiana

136.   *St. Blanc v. Stabile*, No. 67,871, Twenty-Ninth Judicial District Court for the Parish of St. Charles, Div. E, State of Louisiana

137.   *Sturlese v. J.B. Jones, Jr.*, No. 10-16390, Thirty-Eighth Judicial District Court, Parish of Cameron, State of Louisiana

138.   *Succession of Marguerite Nell Riggs Griffin*, No. 646-584, Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana

139.   *Tapp v. Leonard L. Levenson & Associates*, No. 2009-01787, Division D, Civil District Court for the Parish of Orleans, State of Louisiana

140.   *Temple v. Crescent City Gates Fund, L.P.*, No. 09-9508 (H-12), Civil District Court for the Parish of Orleans, State of Louisiana

141.   *Territa v. Oliver*, No. 2:11-cv-01830, United States District Court for the Eastern District of Louisiana

16

DANE S. CIOLINO

142. *Tessier v. Maffatt*, No. 98-CV-00116, United States District Court for the Eastern District of Louisiana

143. *Tierney v. Butler*, No. 69-1777(E), Twenty-Ninth Judicial District Court for the Parish of St. Charles, State of Louisiana

144. *Travelers Prop. Casualty Co. of Am. v. Bossier*, Civ. Action No. 14:cv-02176, United States District Court for the Eastern District of Louisiana

145. *United States v. Edwin Edwards*, Crim. No. 98-165-B-M2, United States District Court for the Middle District of Louisiana

146. *United States v. Jesse H. Roberts*, Cirm. Action No. 15-cr-0020-JWD-SCR, United States District Court for the Middle District of Louisiana

147. *United States ex rel. William St. John LaCorte v. Merck & Co., Inc.*, No. 99-03807, United States District Court for the Eastern District of Louisiana

148. *United States ex rel. William St. John LaCorte v. Wyeth Pharmaceuticals, Inc.*, No. 06-CV-11724-DPW, United States District Court for the District of Massachusetts

149. *Usner v. Bagert*, No. 10-5479 (K-5), Civil District Court for the Parish of Orleans, State of Louisiana

150. *Usner v. Carol A. Newman, APLC*, No. 09-08223, Civil District Court for the Parish of Orleans, State of Louisiana

151. *Verret v. State Farm Fire and Casualty Co.*, Civ. Action No. 2:13-cv-5596-LMAJCW, United States District Court for the Eastern District of Louisiana

152. *Waggoner v. Williamson*, No. 03-KV-0151-J, Circuit Court of Adams County, State of Mississippi

153. *Walker v. AMID/Metro Partnership, LLC*, No. 2007-14794, Civil District Court for the Parish of Orleans, State of Louisiana

154. *Walker v. Harris*, No. 53694, Div. 22, Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana

155. *Waste Management of Louisiana, L.L.C. v. Penn-America Insurance Co.*, No. 2006-2452, Fourteenth Judicial District Court for the Parish of Calcasieu, State of Louisiana

156. *Wicker v. Heinrich*, No. 2010-3647, Civil District Court for the Parish of Orleans, State of Louisiana

157. *Williams v. The Administrators of the Tulane Educational Fund*, Civil Action No. 99-20650 c/w 06-1915, Civil District Court for the Parish of Orleans, State of Louisiana

17

DANE S. CIOLINO

158.  *Williams v. Williamson*, No. 4:03-CV-88LN, United States District Court for the Southern District of Mississippi

159.  *Washington v. Williamson*, No. 251-05-112 CIV, Circuit Court of Hinds County, State of Mississippi

160.  *Wiener, Weiss & Madison, APLC v. Kantrow, Spaht, Weaver & Blitzer, APLC v. Fox*, No. 5:16-cv-850-SMH-KLH, United District Court for the Western District of Louisiana

161.  *XL Specialty Insurance Co. v. Bollinger Shipyards, Inc.*, Civ. Action No. 12-2071, R-2, United States District Court for the Eastern District of Louisiana

162.  *Zaunbrecher v. Garrity*, No. C-20130168 C, Fifteenth Judicial District Court for the Parish of Lafayette, State of Louisiana

OTHER

   *Personal*

      Age 54

      Married to Wendy Dehan Ciolino

      Children: Hale, Price & Camille

   *Bar Admissions*

      Supreme Court of the United States
      State of Louisiana
      State of New York
      United States Court of Appeals for the Fifth Circuit Court
      United States District Court for the Eastern District of Louisiana (New Orleans)
      United States District Court for Western District of Louisiana (Shreveport)
      United States District Court for the Southern District of New York (New York City)

*Dated*: Tuesday, October 16, 2018

FILED THIS   22
DAY OF _____ JULY _____, 20 19
*Monét McCarthy*
Deputy Clerk of Court

18

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 271

LAFPC.CV.56508641
cc_mmmccarthy

Ordered by Atty.:  JACQUES F. BEZOU

# CITATION

**J CORY CORDOVA**                               **FIFTEENTH JUDICIAL DISTRICT COURT**

**VS**                                           **DOCKET NUMBER: C-20192019 D**

**LOUISIANA STATE UNIVERSTIY**                   **PARISH OF LAFAYETTE, LOUISIANA**
**HEALTH SCIENCE CENTER, ET AL**

**STATE OF LOUISIANA**

TO:   **LAFAYETTE GENERAL HEALTH SYSTEM,**
      **THROUGH ITS REGISTERED AGENT:**
      **GORDON E. ROUNTREE, JR.**
      **920 WEST PINHOOK**
      **LAFAYETTE, LA 70503**

                                                 of the Parish of Lafayette

      You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
      Witness the Honorable Judges of said Court, this JULY 30, 2019.

                                             _____
                                             Deputy Clerk of Court
                                             Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D, ORIGINAL PETITION**
**FOR DAMAGES AND VERIFICATION**

                         SHERIFF'S RETURN

                         LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  (  )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____    MILEAGE $_____    TOTAL $_____
DEPUTY _____

LAFPC.CV.54964044
cc_kmmelancon

Ordered by Atty.: CHRISTINE M. MIRE

# CITATION

**J CORY CORDOVA**

**VS**

**LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**

**PARISH OF LAFAYETTE, LOUISIANA**

---

**STATE OF LOUISIANA**

TO:  **LAFAYETTE GENERAL HOSPITAL,
THROUGH ITS REGISTERED AGENT:
GORDON E. ROUNTREE, JR.
920 WEST PINHOOK
LAFAYETTE, LA 70503**

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits). You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof. Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this APRIL 2, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:
PETITION FOR DAMAGES AND VERIFICATION**

---

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____ MILEAGE $_____ TOTAL $_____

DEPUTY _____

LAFPC.CV.56508682
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
## (SUPPLEMENTAL & AMENDING)

| | |
|---|---|
| **J CORY CORDOVA** | **FIFTEENTH JUDICIAL DISTRICT COURT** |
| **VS** | **DOCKET NUMBER: C-20192019 D** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL** | **PARISH OF LAFAYETTE, LOUISIANA** |

STATE OF LOUISIANA

TO:   DR. KAREN CURRY,
      <u>TO BE SERVED PERSONALLY</u>
      AT UNIVERSITY HOSPITAL AND CLINICS
      2390 WEST CONGRESS STREET
      LAFAYETTE, LA 70506

      DEPARTMENT OF INTERNAL MEDICINE BETWEEN THE HOURS OF 7:00AM-5:00PM

                              of the Parish of Lafayette

      You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
      Witness the Honorable Judges of our said Court, this JULY 30, 2019.

                              _____
                              Deputy Clerk of Court
                              Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D**

                        SHERIFF'S RETURN
                     LAFAYETTE PARISH SHERIFF


DATE SERVED: _____, 20_____  TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE   (   )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____   MILEAGE $_____   TOTAL $_____
DEPUTY _____

LAFPC.CV.56508724
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
### (SUPPLEMENTAL & AMENDING)

| | |
|---|---|
| **J CORY CORDOVA** | **FIFTEENTH JUDICIAL DISTRICT COURT** |
| **VS** | **DOCKET NUMBER: C-20192019 D** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL** | **PARISH OF LAFAYETTE, LOUISIANA** |

STATE OF LOUISIANA

TO:  DR. NICOLAS SELLS,
 TO BE SERVED PERSONALLY
 AT UNIVERSITY HOSPITAL AND CLINICS
 2390 WEST CONGRESS STREET
 LAFAYETTE, LA 70506

 DEPARTMENT OF INTERNAL MEDICINE BETWEEN THE HOURS OF 7:00AM-5:00PM

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer. Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of our said Court, this JULY 30, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D**

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE   MOVED ( )   NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____  MILEAGE $_____  TOTAL $_____
DEPUTY _____

LAFPC.CV.56508773
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
### (SUPPLEMENTAL & AMENDING)

| | |
|---|---|
| **J CORY CORDOVA** | **FIFTEENTH JUDICIAL DISTRICT COURT** |
| **VS** | **DOCKET NUMBER: C-20192019 D** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL** | **PARISH OF LAFAYETTE, LOUISIANA** |

**STATE OF LOUISIANA**

TO:  GACHASSIN LAW FIRM,
     THROUGH ITS REGISTERED AGENT:
     NICHOLAS GACHASSIN, III
     200 CORPORATE BLVD., SUITE 103
     LAFAYETTE,  LA 70508

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer. Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of our said Court, this JULY 30, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D**

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE  (  )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____ MILEAGE $_____ TOTAL $_____

DEPUTY _____

LAFPC.CV.56508799
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
## (SUPPLEMENTAL & AMENDING)

| | |
|---|---|
| **J CORY CORDOVA** | **FIFTEENTH JUDICIAL DISTRICT COURT** |
| **VS** | **DOCKET NUMBER: C-20192019 D** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL** | **PARISH OF LAFAYETTE, LOUISIANA** |

STATE OF LOUISIANA

TO:   **CHRISTOPHER JOHNSTON,**
      <u>**TO BE SERVED PERSONALLY**</u>
      **AT JOHNSTON LAW FIRM, LLC**
      **LOCATED AT**
      **7830 SAGE HILL ROAD**
      **SAINT FRANCISVILLE,  LA 70775**

of the Parish of W. FELICIANA

     You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
     Witness the Honorable Judges of our said Court, this JULY 30, 2019.

                                          _Maret McCarthy_
                                          Deputy Clerk of Court
                                          Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D**

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____  TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE   ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____   MILEAGE $_____   TOTAL $_____
DEPUTY _____

LAFPC.CV.56508864
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION

| | |
|---|---|
| **J CORY CORDOVA** | **FIFTEENTH JUDICIAL DISTRICT COURT** |
| **VS** | **DOCKET NUMBER: C-20192019 D** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL** | **PARISH OF LAFAYETTE, LOUISIANA** |

**STATE OF LOUISIANA**

TO:  THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE,
THROUGH ITS REGISTERED AGENTS:
CHANCELLOR OF LSU HEALTH SCIENCES CENTER AND
DEAN OF LSU SCHOOL OF MEDICINE,
DR. LARRY HOLLIER, MD
433 BOLIVAR STREET, 8TH FLOOR
NEW ORLEANS, LA  70112

of the Parish of ORLEANS

You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of said Court, this JULY 30, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D, ORIGINAL PETITION FOR DAMAGES AND VERIFICATION**

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20____ TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE  (  )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____  MILEAGE $_____  TOTAL $_____

DEPUTY _____

LAFPC.CV.56508880
cc_mmmccarthy

Ordered by Atty.:  JACQUES F. BEZOU

# CITATION

J CORY CORDOVA                    **FIFTEENTH JUDICIAL DISTRICT COURT**

VS                                **DOCKET NUMBER: C-20192019 D**

**LOUISIANA STATE UNIVERSITY**    **PARISH OF LAFAYETTE, LOUISIANA**
**HEALTH SCIENCE CENTER, ET AL**

---

STATE OF LOUISIANA

TO:   THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
      AGRICULTURAL AND MECHANICAL COLLEGE,
      THROUGH ITS REGISTERED AGENTS:
      LOUISIANA DEPARTMENT OF JUSTICE:
      ATTORNEY GENERAL'S OFFICE
      THROUGH ATTORNEY GENERAL JEFF LANDRY
      1885 NORTH THIRD STREET
      BATON ROUGE, LA  70802

                              of the Parish of E. BATON ROUGE

     You are hereby cited to comply with the demand contained in the petition, a certified copy of which
accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition
in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish
Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your
failure to comply herewith will subject you to the penalty of entry of default judgment against you.
     Witness the Honorable Judges of said Court, this JULY 30, 2019.

                              _____
                              Deputy Clerk of Court
                              Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D, ORIGINAL PETITION**
**FOR DAMAGES AND VERIFICATION**

---

                    SHERIFF'S RETURN

                LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE        MOVED ( )      NO SUCH ADDRESS ( ) .
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  (  )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____ MILEAGE $_____ TOTAL $_____
DEPUTY _____

LAFPC.CV.56508906
cc_mmmccarthy

Ordered by Atty.:  JACQUES F. BEZOU

# CITATION

**J CORY CORDOVA**

**VS**

**LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL**

**FIFTEENTH JUDICIAL DISTRICT COURT**

**DOCKET NUMBER: C-20192019 D**

**PARISH OF LAFAYETTE, LOUISIANA**

STATE OF LOUISIANA

TO:   THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
        AGRICULTURAL AND MECHANICAL COLLEGE,
        THROUGH ITS REGISTERED AGENTS:
        LOUISIANA OFFICE OF RISK MANAGEMENT
        THROUGH ITS DIRECTOR, MELISSA HARRIS
        1201 N. THIRD STREET, SUITE 7-210
        BATON ROUGE, LA  70802

                                    of the Parish of E. BATON ROUGE

        You are hereby cited to comply with the demand contained in the petition, a certified copy of which accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
        Witness the Honorable Judges of said Court, this JULY 30, 2019.

                                                    _Monica McCarthy_
                                                    Deputy Clerk of Court
                                                    Lafayette Parish

*Attached are the following documents:
FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D, ORIGINAL PETITION FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____     MILEAGE $_____     TOTAL $_____
DEPUTY _____

LAFPC.CV.56508922
cc_mmmccarthy

Ordered by Atty.:  JACQUES F. BEZOU

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSITY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND
      AGRICULTURAL AND MECHANICAL COLLEGE,
      THROUGH ITS REGISTERED AGENTS:
      THE HEADS OF THE DEPARTMENT FOR THE BOARD OF SUPERVISORS,
      PRESIDENT F. KING ALEXANDER
      3810 WEST LAKESHORE DRIVE
      BATON ROUGE,  LA  70808

                                        of the Parish of E. BATON ROUGE

     You are hereby cited to comply with the demand contained in the petition, a certified copy of which
accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition
in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish
Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your
failure to comply herewith will subject you to the penalty of entry of default judgment against you.
     Witness the Honorable Judges of said Court, this JULY 30, 2019.

                                        _____
                                        Deputy Clerk of Court
                                        Lafayette Parish

*Attached are the following documents:
FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D, ORIGINAL PETITION
FOR DAMAGES AND VERIFICATION

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____  TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE  (  )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____  MILEAGE $_____  TOTAL $_____
DEPUTY _____

LAFPC.CV.56509177
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
## (SUPPLEMENTAL & AMENDING)

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSITY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   UNIVERSITY HOSPITAL AND CLINICS,
      THROUGH ITS REGISTERED AGENT:
      GORDON E. ROUNTREE, JR.
      920 WEST PINHOOK
      LAFAYETTE, LA 70503

of the Parish of Lafayette

    You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer. Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.
    Witness the Honorable Judges of our said Court, this JULY 30, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____
UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )
OTHER REASON: _____
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $_____  MILEAGE $_____  TOTAL $_____
DEPUTY _____

LAFPC.CV.56509185
cc_mmmccarthy

Ordered by Atty.:  JACQUES F. BEZOU

# CITATION
### (SUPPLEMENTAL & AMENDING)

| | |
|---|---|
| **J CORY CORDOVA** | **FIFTEENTH JUDICIAL DISTRICT COURT** |
| **VS** | **DOCKET NUMBER: C-20192019 D** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL** | **PARISH OF LAFAYETTE, LOUISIANA** |

**STATE OF LOUISIANA**

TO:    **LAFAYETTE GENERAL MEDICAL CENTER, THROUGH ITS REGISTERED AGENT: GORDON E. ROUNTREE, JR. 920 WEST PINHOOK LAFAYETTE,  LA 70503**

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of our said Court, this JULY 30, 2019.

_Manet McClathy_
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D**

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: _____, 20_____ TIME: _____

SERVED: _____

PERSONAL ( ) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE          MOVED ( )          NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE  (  )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____     MILEAGE $_____     TOTAL $_____

DEPUTY _____



```
LAFPC.CV.56508658
cc_mmmccarthy
```

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
## (SUPPLEMENTAL & AMENDING)

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSITY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA



TO:   KRISTI ANDERSON,
      TO BE SERVED PERSONALLY
      AT UNIVERSITY HOSPITAL AND CLINICS
      2390 WEST CONGRESS STREET
      LAFAYETTE, LA 70506

DEPARTMENT OF GRADUATE MEDICAL EDUCATION BETWEEN THE HOURS OF
7:00AM-5:00PM

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the attached FIRST supplemental and
amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading
to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL
DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining
for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof,
whichever period is longer. Your failure to comply herewith will subject you to the penalty of entry of default
judgment against you.
      Witness the Honorable Judges of our said Court, this JULY 30, 2019.

                                        _____
                                            Deputy Clerk of Court
                                            Lafayette Parish

*Attached are the following documents:
FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: 7/31/2019 , 20___ TIME: 1356
SERVED: _____
PERSONAL ( ) _____
DOMICILIARY ( ) ON _____    Lafayette Parish Clerk of Court
UNABLE TO LOCATE      MOVED ( )      NO SUCH ADDRESS ( )      Filed This Day
OTHER REASON: _____    AUG 06 2019
RECEIVED TOO LATE FOR SERVICE ( )
SERVICE OF WITHIN PAPERS
COSTS FEE $ 30   MILEAGE $ 2.55   TOTAL $ 32.55   _____
                                                      Deputy Clerk of Court
DEPUTY _____

                    12275
___ SERVICE MILEAGE: EXHIBIT "A" IN GLOBO
                     STATE COURT RECORD
                         PAGE 284

12275

LAFPC.CV.56508682
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
### (SUPPLEMENTAL & AMENDING)

| | |
|---|---|
| **J CORY CORDOVA** | **FIFTEENTH JUDICIAL DISTRICT COURT** |
| **VS** | **DOCKET NUMBER: C-20192019 D** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL** | **PARISH OF LAFAYETTE, LOUISIANA** |

**STATE OF LOUISIANA**

TO:   **DR. KAREN CURRY,**
      <u>TO BE SERVED PERSONALLY</u>
      **AT UNIVERSITY HOSPITAL AND CLINICS**
      **2390 WEST CONGRESS STREET**
      **LAFAYETTE, LA 70506**

JUL 3 0 2019

**DEPARTMENT OF INTERNAL MEDICINE BETWEEN THE HOURS OF 7:00AM-5:00PM**

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer. Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of our said Court, this JULY 30, 2019.

Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D**

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: 7/30/2019 , 20_____  TIME: 1537

SERVED: _____

PERSONAL (X) Karen Currary

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE      MOVED ( )      NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $ 30  MILEAGE $ 2.55  TOTAL $ 32.55

DEPUTY _____

Lafayette Parish Clerk of Court
Filed This Day

AUG 0 6 2019

Deputy Clerk of Court

L.P.S.O. Badge# 12275

<u>ACTUAL SERVICE MILEAGE:</u> 4.4

12275

LAFPC.CV.56508724
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
### (SUPPLEMENTAL & AMENDING)

2

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSITY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:  DR. NICOLAS SELLS,
     <u>TO BE SERVED PERSONALLY</u>
     AT UNIVERSITY HOSPITAL AND CLINICS
     2390 WEST CONGRESS STREET
     LAFAYETTE, LA 70506



RECEIVED
JUL 3 0 2019
Sheriff Office

DEPARTMENT OF INTERNAL MEDICINE BETWEEN THE HOURS OF 7:00AM-5:00PM

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of our said Court, this JULY 30, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D**

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: 7/30/2019 , 20____   TIME: 1532

SERVED: _____

PERSONAL (✓) _____

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE        MOVED ( )        NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $ 30   MILEAGE $ 2.55   TOTAL $ 32.55

DEPUTY _____

L.P.S.O. Badge# 12275

ACTUAL SERVICE MILEAGE: 4.4

Lafayette Parish Clerk of Court
Filed This Day

AUG 06 2019

_____
Deputy Clerk of Court



223

LAFPC.CV.55919658
cc_nrcouvillon

SHERIFF RETURN

Ordered by Atty.: CHRISTINE MIRE

## CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER --
      THROUGH AGENT: LOUISIANA OFFICE OF RISK MANAGEMENT,
      THROUGH DIRECTOR MELISSA HARRIS
      1201 NORTH THIRD STREET, STE 7-210
      BATON ROUGE,  LA 70802

                                        of the Parish of  E BATON ROUGE

      You are hereby cited to comply with the demand contained in the petition, a certified copy of which
accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition
in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish
Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your
failure to comply herewith will subject you to the penalty of entry of default judgment against you.
      Witness the Honorable Judges of said Court, this JUNE 17, 2019.

                                        _____
                                        Deputy Clerk of Court
                                        Lafayette Parish

*Attached are the following documents:
ORIGINAL PETITION/ AFFIDAVIT/ ATTACHMENTS

---

                        SHERIFF'S RETURN
                     LAFAYETTE PARISH SHERIFF

DATE SERVED: 7-10        ,20 19    TIME: 8:45 Am

SERVED:  La  ST  UNIUERSITY

PERSONAL BY  TANYEKA

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE         MOVED ( )       NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE  ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $_____  MILEAGE $_____  TOTAL $_____

DEPUTY  Dy R Sanf

7-10-19  PIS 8:45Am

SER-TANYEKA

DY. R. SANFOR
CELL #225-288-6

Lafayette Parish Clerk of Court
Filed This Day

JUL 22 2019

Martina JReaup
Deputy Clerk of Court

SHERIFF RETURN

**ROUTING SHEET**

DOCKET NO. _26192019_

ATTORNEY _JACQUES BEZOU_

DATE PLEADING CLOCKED IN _7-22-19_

56357858

| DESCRIPTION | QTY | DESCRIPTION | QTY |
|---|---|---|---|
| CERT COPY STAMP (NOT RECORDED) | 10 | LETTER – ADDRESS REQUEST | |
| CERT MAIL/RETURN RECEIPT | | LETTER – CERT OF DIVORCE | |
| CITATION | | LETTER – COMM OF INS | |
| CITATION-NTC OF JMT | | LETTER – GENERAL RETURN | |
| CONFORMED GROUP | | LETTER – JURY ORDER | |
| COPIES (# OF PAGES) | Bo | LETTER – NTC OF SIGNING OF JMT | |
| FAX OUTGOING | | NTC OF HEARING | |
| INDEX OF NAMES (ABOVE 10) | | RULE NISI | |
| JMT FEE (EACH DEF NO SS#) | | SUBPOENA | |
| JMT RECORDED (CON # OF PAGES) | | SUB DT | |
| JMT RECORDED (MTG # OF PAGES) | | TRO | |
| JMT RECORDED (BOTH # OF PAGES) | | TRO RECORDED | |
| CERT COPY OF RECORDED DOCUMENT | | WRIT OF | |
| | | | |
| | | | |
| | | | |
| | | | |

PROCESSED BY_____Money_____     CHARGED BY_____CVB_____

COMMENTS_____

_____

_____

_____

11845

LAFPC.CV.56508773
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION
### (SUPPLEMENTAL & AMENDING)

2

| | |
|---|---|
| J CORY CORDOVA | FIFTEENTH JUDICIAL DISTRICT COURT |
| VS | DOCKET NUMBER: C-20192019 D |
| LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL | PARISH OF LAFAYETTE, LOUISIANA |

STATE OF LOUISIANA

TO: GACHASSIN LAW FIRM,
THROUGH ITS REGISTERED AGENT:
NICHOLAS GACHASSIN, III
200 CORPORATE BLVD., SUITE 103
LAFAYETTE, LA 70508



JUL 3 0 2019
Sheriff Office

of the Parish of Lafayette

You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

Witness the Honorable Judges of our said Court, this JULY 30, 2019.

L.P.S.O. Badge# 1997

ACTUAL SERVICE MILEAGE: 6.8

_____
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D

SHERIFF'S RETURN

LAFAYETTE PARISH SHERIFF

DATE SERVED: 7/31, 20 19  TIME: 10:45

SERVED: X

PERSONAL ( ) _____ 98 doo NG///

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE _____ MOVED ( ) _____ NO SUCH ADDRESS ( )

OTHER REASON: _____

RECHIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $ 30  MILEAGE $ 3.94  TOTAL $ 33.94

DEPUTY  Skyla Norbert 1997

Lafayette Parish Clerk of Court
Filed This Day

AUG 0 6 2019

_____
Deputy Clerk of Court

10088

LAFPC.CV.56508641
cc_mmmccarthy

Ordered by Atty.: JACQUES F. BEZOU

# CITATION

J CORY CORDOVA

VS

LOUISIANA STATE UNIVERSTIY
HEALTH SCIENCE CENTER, ET AL

FIFTEENTH JUDICIAL DISTRICT COURT

DOCKET NUMBER: C-20192019 D

PARISH OF LAFAYETTE, LOUISIANA

STATE OF LOUISIANA

TO:   LAFAYETTE GENERAL HEALTH SYSTEM,
      THROUGH ITS REGISTERED AGENT:
      GORDON E. ROUNTREE, JR.
      920 WEST PINHOOK
      LAFAYETTE, LA 70503

of the Parish of Lafayette

        You are hereby cited to comply with the demand contained in the petition, a certified copy of which
accompanies this citation, (exclusive of exhibits).  You should file an answer or other pleading to said petition
in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish
Courthouse, LAFAYETTE, Louisiana, within fifteen (15) days after the service hereof.  Alternatively, your
failure to comply herewith will subject you to the penalty of entry of default judgment against you.
        Witness the Honorable Judges of said Court, this JULY 30, 2019.

                                        _Monét McCarthy_
                                        Deputy Clerk of Court
                                        Lafayette Parish

**\*Attached are the following documents:**
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D, ORIGINAL PETITION
FOR DAMAGES AND VERIFICATION**

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED: 7/31 ,20 19  TIME: 1025

SERVED: _____

PERSONAL (✓) April (Legal)

DOMICILIARY ( ) ON _____

UNABLE TO LOCATE    MOVED ( )    NO SUCH ADDRESS ( )

OTHER REASON: _____

RECEIVED TOO LATE FOR SERVICE ( )

SERVICE OF WITHIN PAPERS

COSTS FEE $ 30    MILEAGE $ 2.20    TOTAL $ 32.20

DEPUTY _____

RECEIVED
JUL 30 2019
Lafayette Parish
Sheriff Office

Lafayette Parish Clerk of Court
Filed This Day

AUG 06 2019

_Martina Sharp_
Deputy Clerk of Court

L.P.S.O. Badge# 10088

ACTUAL SERVICE MILEAGE: 3.8

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 290





LAFPC.CV.56509177
cc_mmmccarthy

Ordered by Atty.:  JACQUES F. BEZOU

# CITATION
### (SUPPLEMENTAL & AMENDING)

2

| | |
|---|---|
| **J CORY CORDOVA** | **FIFTEENTH JUDICIAL DISTRICT COURT** |
| **VS** | **DOCKET NUMBER: C-20192019 D** |
| **LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER, ET AL** | **PARISH OF LAFAYETTE, LOUISIANA** |

STATE OF LOUISIANA

TO:   UNIVERSITY HOSPITAL AND CLINICS,
      THROUGH ITS REGISTERED AGENT:
      GORDON E. ROUNTREE, JR.
      920 WEST PINHOOK
      LAFAYETTE, LA 70503



of the Parish of Lafayette

     You are hereby cited to comply with the demand contained in the attached FIRST supplemental and amending petition, a certified copy of which accompanies this citation, or to file your answer or other pleading to said supplemental and amending petition in the office of the Clerk of the FIFTEENTH JUDICIAL DISTRICT COURT, in the Lafayette Parish Courthouse, LAFAYETTE, Louisiana, within the time remaining for pleading to the original petition heretofore served upon you or within ten (10) days after the service hereof, whichever period is longer.  Your failure to comply herewith will subject you to the penalty of entry of default judgment against you.

     Witness the Honorable Judges of our said Court, this JULY 30, 2019.

_____
Deputy Clerk of Court
Lafayette Parish

*Attached are the following documents:
**FIRST AMENDED PETITION FOR DAMAGES, EXHIBITS A THROUGH D**

SHERIFF'S RETURN
LAFAYETTE PARISH SHERIFF

DATE SERVED:  7/31  , 20  19  TIME:  1025

SERVED:

PERSONAL (✓)  April (Legal)

DOMICILIARY (  ) ON

UNABLE TO LOCATE       MOVED (  )       NO SUCH ADDRESS (  )

OTHER REASON:

RECEIVED TOO LATE FOR SERVICE  (  )

SERVICE OF WITHIN PAPERS

COSTS FEE $  30       MILEAGE $  0       TOTAL $  30

DEPUTY

L.P.S.O. Badge#  1003

ACTUAL SERVICE MILEAGE:  NC

Lafayette Parish Clerk of Court
Filed This Day

AUG 0 6 2019

_____
Deputy Clerk of Court

EXHIBIT "A" IN GLOBO
STATE COURT RECORD
PAGE 291