# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**J. CORY CORDOVA**

**VERSUS**

**LOUISIANA STATE UNIVERSITY AGRICULTURAL & MECHANICAL COLLEGE BOARD OF SUPERVISORS, ET AL.**

**CASE NO. 6:19-CV-01027**

**JUDGE JAMES D. CAIN, JR.**

**MAGISTRATE JUDGE HANNA**

## MEMORANDUM RULING

Before the court is a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [doc. 33] filed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56 by defendants Louisiana State University Agricultural and Mechanical College Board of Supervisors, Dr. Karen Curry, Dr. Nicholas Sells, and Kristi Anderson. Plaintiff, Dr. J. Cory Cordova, opposes the motion. Doc. 37.

### I.
### BACKGROUND

This suit arises from plaintiff's termination from his Internal Medicine residency/"house officer" program at the University Hospital and Clinics ("UHC") at Lafayette General Hospital in Lafayette, Louisiana. The house officer program at UHC is operated under contract with Louisiana State University Agricultural and Mechanical College. *See* doc. 1, att. 2, pp. 2–16; *id.* at 183–97. Plaintiff's contract with the program was non-renewed after one year.

Dr. Karen Curry, program director, had placed plaintiff on probation in November 2017, to last until February 28, 2018, based on alleged deficiencies in his performance and after review by the Clinical Competency Committee. *Id.* at 186. Plaintiff maintains that he abided by the terms of his remediation plan, even though the plan issued by Dr. Curry differed from the one imposed by the committee. *Id.* Nevertheless, on February 1, 2018, he was informed that Dr. Curry had filed a Request for Adverse Action ("RFAA"). *Id.* Plaintiff filed a challenge to the RFAA with the department head, Dr. Nicholas Sells. *Id.*

Plaintiff contends that Dr. Sells informed him the same day that he supported Dr. Curry's conclusions and her request for non-renewal. *Id.* at 186–88. Plaintiff also maintains that he did not receive copies of the exhibits referenced in the RFAA until after he filed his formal response on February 8 and Dr. Sells had notified him of non-renewal on February 15, 2018. *Id.* 188–89.

While deciding whether to appeal his dismissal, plaintiff began looking at other residency programs. *Id.* Despite assurances of privacy regarding the RFAA from Dr. Sells, he alleges, Dr. Curry and Ms. Kristi Anderson, director of graduate medical education, interfered by sending inappropriate and incomplete documentation on his disciplinary status and evaluations to two other programs where he had applied. *Id.* at 189–91. Plaintiff then wrote to Dr. Curry and Dr. Sells, asking to be reinstated to the LSU program. *Id.* at 191. In June 2018, he alleges, he was again informed that he would complete the year but would not be allowed to renew his contract. *Id.* He filed a written appeal in November 2018, but maintains that the LSU defendants ignored it. *Id.* at 193.

Plaintiff filed suit in the 15th Judicial District Court, Lafayette Parish, Louisiana, on March 29, 2019, against the LSU Board of Supervisors,[1] Dr. Curry, Dr. Sells, and Ms. Anderson (collectively, "LSU defendants"); as well as attorney Christopher C. Johnston and the Gachassin Law Firm ("Gachassin defendants").[2] *Id.* He alleges, in relevant part, that the LSU defendants violated his right to due process under the federal and state constitutions and committed a breach of contract by dismissing him from the house officer program and then sabotaging him when he applied to other programs. *Id.* at 192–93. The LSU defendants now move to dismiss the claims against them. Doc. 33. Plaintiff opposes the motion. Doc. 37.

## II.
### RULE 12(B)(6) STANDARDS

Rule 12(b)(6) allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider matters of which it may take judicial notice, including matters of public record. *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished). Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough

---

[1] The LSU Board of Supervisors was named as the "Louisiana State University Health Science Center" in the original complaint. Doc. 1, att. 2, p. 2. The name was corrected in the amended complaint, filed in the state district court on July 22, 2019. *Id.* at 183.

[2] Johnston allegedly represented Cordova during disciplinary proceedings without disclosing that he had a conflict of interest because he and his employer also represented Lafayette General Medical Center, Dr. Sells, and academic dean Dr. James Falterman. Doc. 1, att. 2, pp. 194–95.

facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III.
### LAW & APPLICATION

### A. *Due Process Claims*

The plaintiff claims violations of substantive and procedural due process. The LSU defendants move for dismissal of these claims, on the grounds that plaintiff cannot establish a protected liberty or property interest in his residency or any constitutional violation in the manner his contract ended. Doc. 33, att. 1, pp. 3–13. They also maintain that they are entitled to qualified immunity for any constitutional violations.

### 1. *Protected Interest*

"It is well-settled that certain public employment situations may endow an employee with a legally cognizable property interest." *Muncy v. City of Dallas, Tex.*, 335 F.3d 394, 398 (5th Cir. 2003). Accordingly, a plaintiff can make out a claim for violation of his substantive due process rights when he shows (1) that he had a property interest/right in his public employment and (2) that the public employer's termination of that interest was arbitrary or capricious. *Moulton v. City of Beaumont, Tex.*, 991 F.2d 227, 230 (5th Cir. 1993). Similarly, he may claim a procedural due process violation in this context if he can

show (1) a protected interest in his employment and (2) that the termination was effected without adequate procedural protections. *McCall v. Dallas Indep. Sch. Dist.*, 169 F.Supp.2d 627, 631–32 (N.D. Tex. 2001). The property interest must arise from an independent source and is generally created when the public entity "has acted to confer, or . . . has created conditions which infer the existence of a property interest by abrogating its right to terminate an employee without cause." *Muncy*, 335 F.3d at 398.

In the due process context, medical residents are treated as students rather than employees of the hospital. *Ekmark v. Matthews*, 524 F. App'x 62, 63–64 (5th Cir. 2013). The Supreme Court and Fifth Circuit have generally assumed that students of public universities have a protected interest in continuing their education. *Shah v. Univ. of Tex. S.W. Med. Sch.*, 54 F.Supp.3d 681, 691 (N.D. Tex. 2014). Medical residents occupy a less defined status and may not have a protected interest when it is understood that they can be dismissed without cause. *See Shaboon v. Duncan*, 252 F.3d 722, 732 (5th Cir. 2001). Where, however, their contracts grant them an expectation in renewal and a grievance procedure to address dismissals, courts generally find or at least assume that they have a protected interest in their status. *E.g.*, *Davis v. Mann*, 882 F.2d 967, 972–73 (5th Cir. 1989); *Papin v. Univ. of Miss. Med. Ctr.*, 347 F.Supp.3d 274, 280 (S.D. Miss. 2018).

In this matter, the plaintiff was appointed to a one-year term under the HOAA.[3] *See* doc. 7, att. 2. The HOAA provides that an appointment can be terminated at any time for cause, and that "[c]onditions for re-appointment and non-renewal of the contract are

---

[3] Because both the HOAA and HOM are attached to and referenced in the complaint, they may be reviewed as part of this 12(b)(6) motion.

discussed in the House Officer Manual." *Id.* at 5. Finally, it notes that promotion to a subsequent program year/renewal of the appointment is "expressly contingent upon several factors," including satisfactory performance and the availability of positions. *Id.* The HOM classifies non-renewal as an adverse action, which may be taken for cause. Doc. 7, att. 3, p. 11. "Cause" is defined to include, among other things, unsatisfactory performance and failure to comply with program rules. *Id.* The HOM further provides certain procedural guarantees when non-renewal or termination is contemplated. These include written notice of the charge, an opportunity to defend before the department head, and appeal to the academic dean with a hearing before an impartial ad hoc committee. *Id.* at 11–14. A house officer invokes his right to appeal of an adverse action by notifying the academic dean in writing within five days of receiving the department head's decision. *Id.* at 12.

Based on the above, reappointment is not guaranteed under every conceivable circumstance. But when it is based on factors within the resident's control, the terms of the HOM (as incorporated into the HOAA) give the resident an expectation of continuing in the program if he complies with its rules and receiving notice and an opportunity to defend himself if he is charged with falling short of this standard. Accordingly, the terms of the program support a constitutionally protected interest and a right to due process.

### 2. *Alleged violations*

The LSU defendants also maintain that the plaintiff has not shown that he was deprived of any process due through his non-renewal. Plaintiff, however, alleges that the LSU defendants violated his procedural due process rights through their handling of the

RFAA and acted arbitrarily and capriciously in making/accepting that charge, in violation of his substantive due process rights.

### a. Procedural due process violations

"The core requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Houston Fed. of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 251 F.Supp.3d 1168, 1175 (S.D. Tex. May 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The standards are judged according to the demands of the situation. *Id.* at 1176. As noted above, residents are considered students rather than employees of the hospitals and thus entitled to fewer due process protections – especially where, as here, the adverse action is academic in nature.[4] Even where the program sets more stringent procedural requirements, these rules "do not establish the constitutional floor of due process." *Ekmark*, 524 F. App'x at 64 (citing *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985)). Accordingly, "[a]dverse academic actions against medical residents require only the minimum procedure of notice and not a hearing." *Id.* (citing *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86 (1978)).

Plaintiff appears to allege procedural due process violations based on the following:

(1) The RFAA was initiated by a faculty member (Dr. Curry) who lacked objectivity towards the plaintiff, as observed by the department head (Dr. Sells)

---

[4] A resident's dismissal from a program based on faculty dissatisfaction with clinical progress is considered an academic, rather than disciplinary, sanction. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86–87 (1978); *compare Papin*, 347 F.Supp.3d at 280–81 (construing resident's dismissal as a disciplinary sanction where it was based in part on allegations of sexual harassment).

(2) The RFAA failed to give a brief statement of the nature of testimony to be given by each witness, as required by the HOM.

(3) Dr. Sells made the decision to support Dr. Curry's RFAA before plaintiff could make a response.

(4) The RFAA referenced numerous exhibits, but these were not attached to the document or provided to plaintiff upon his request. Plaintiff also alleges that Dr. Sells made his decision without reviewing the exhibits.

Doc. 1, att. 2, pp. 4–6.

Of these, the cognizable due process violations appear to be lack of notice and bias. On a disciplinary dismissal, the Fourteenth Amendment requires that a student receive "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Shah v. Univ. of Tex. S.W. Med. Sch.*, 54 F.Supp.3d 681, 692 (N.D. Tex. 2014) (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)). Only "meaningful notice" and an opportunity to respond is required for an academic dismissal, however. *Id.* The student receives all process he is due where the school has "fully informed [him] of the faculty's dissatisfaction with his clinical progress and the danger that this posed to timely graduation and continued enrollment." *Id.* (quoting *Horowitz*, 435 U.S. at 85). Additionally, even where a hearing is required, due process does not require prior disclosure of exhibits so long as the student attends the hearing and has the opportunity to question witnesses. *Pham v. Univ. of La. at Monroe*, 194 F.Supp.3d 534, 545–46 (W.D. La. 2016), *aff'd sub nom. Pham v. Blaylock*, 712 F. App'x 360 (5th Cir. 2017).

The plaintiff attaches a copy of the RFAA, dated January 30, 2018. *Id.* at 36–39. In the document Dr. Curry sets forth the proposed disciplinary action (non-renewal or immediate termination) and refers to the fact that plaintiff has been on probation since November 10, 2017.[5] She describes deficiencies in four competency areas (patient care, medical knowledge, interpersonal and communication skills, and professionalism) and supports each of these with multiple incidents. Exhibits, such as copies of texts or emails, and at least one witness are listed for almost every incident. *Id.*

Plaintiff complains that he did not receive copies of the exhibits until after he had filed his response and Dr. Sells had formally accepted Dr. Curry's recommendation of non-renewal. He does not allege that he was barred by any LSU defendant from requesting an appeal within five days of that decision, as required under the HOM. He also admits that he "accept[ed]" Dr. Sells's decision for non-renewal on the date he received it. *See* doc. 37, att. 1, p. 2. However, he did not file his written request for appeal until November 2018. Accordingly, the appeal was plainly untimely under the terms of the HOM.

It appears plaintiff was well apprised of the grounds for dismissal. He had an opportunity to respond at both the department head and committee hearing level but did not avail himself of the latter. Under the due process standards governing academic dismissal, plaintiff received all the notice constitutionally required. Moreover, in light of his opportunity to request a hearing, it also seems that the notice satisfied procedural due process standards even for a disciplinary dismissal.

---

[5] A copy of the recommendation for probation, also completed by Dr. Curry, is attached to the complaint. Doc. 1, att. 2, pp. 208–10.

As for alleged bias, "[t]here is no question that a biased decision-maker renders a disciplinary process unconstitutional." *Pham*, 194 F.Supp.3d at 544. Where there is an adequate appeal process, however, "bias on the part of the initial decisionmaker is not a denial of procedural due process." *Davis v. Mann*, 721 F.Supp. 796, 801 (S.D. Miss. 1988) (citing *Schaper v. Huntsville*, 813 F.2d 709, 715–16 (5th Cir. 1987)). Again, plaintiff's failure to avail himself of a committee hearing bars his procedural claim. These claims therefore fail as a matter of law.

### ii. *Substantive due process*

Having established a protected interest in his renewal, the plaintiff can only succeed in his substantive due process claims if he alleges that he was deprived of that interest in a manner so arbitrary that it shocks the conscience. *E.g.*, *Pham*, 194 F.Supp.3d at 546; *Stark v. Univ. of S. Miss.*, 8 F.Supp.3d 825, 841 (S.D. Miss. 2014). For academic decisions, the plaintiff must allege "such a substantial departure from accepted academic norms as to demonstrate that [the defendants] did not actually exercise professional judgment." *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985). This provides only a narrow avenue for judicial review. *Id.* at 227.

Plaintiff's substantive due process claims appear to rest on the fact that he was dismissed based on what he believes to be an insufficient or biased evaluation and his allegation that Dr. Curry and Ms. Anderson then sent allegedly unrequested and incomplete information about his evaluations and program status to other places where he was applying, despite assurances of his privacy from Dr. Sells.

Plaintiff complains generally that Dr. Curry was not objective in her assessments of him. He shows that two faculty members listed by her as witnesses to his alleged instances of incompetency actually wrote glowing letters of recommendation on his behalf. He also provides other letters of recommendation and an affidavit from a clinical manager in the emergency department, the latter of whom expressed surprise at his dismissal and compared him favorably to other residents. Doc. 1, att. 2, pp. 36, 49–55. Finally, plaintiff alleges that Dr. Sells immediately endorsed Dr. Curry's RFAA without waiting for plaintiff's response.

Where the substantive and procedural due process claims rest on the same allegations, the substantive due process claim must either fail or be subsumed within the more particular procedural due process claim. *Barsoumian v. Williams*, 29 F.Supp.3d 303, 315–16 (W.D.N.Y. 2014) (citing *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005)). Accordingly, plaintiff's allegations against Dr. Sells are subsumed within his procedural due process claim.

As for any claim against the LSU Board of Supervisors, vicarious liability cannot support a claim under § 1983. *E.g.*, *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007). Instead, only the direct acts or omissions of government officials will give rise to individual liability for a constitutional violation. *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). There is no allegation of a direct act or omission by the LSU Board of Supervisors, and so no basis for holding it liable for any civil rights violation.

As for the claim relating to disclosure of information to other programs, there is no "constitutional protection for the interest in reputation." *Siegert v. Gilley*, 500 U.S. 226,

234 (1991). While students are generally found to have an interest in continuing their education, it is well-established that applicants do not have a protected interest in admission to a program. *Tobin v. Univ. of Me. Sys.*, 59 F.Supp.2d 87, 90 (D. Me. 1999) (collecting cases). A plaintiff may show significant reputational harm if he alleges that the damage served as a complete bar to continuing his training. *See Cadet v. Bonbon*, 2006 WL 8205989, at \*3 (D. Mass. Aug. 1, 2006) (citing *Greenhill v. Bailey*, 519 F.2d 5, 7 (8th Cir. 1975)). But all that is alleged here is that the plaintiff's prospects at two other programs were harmed. Accordingly, these allegations may support a tort claim but do not give rise to a substantive due process violation. The court will dismiss this motion without prejudice, however, and allow the plaintiff to reassert it if he can show greater harm to his education prospects than what was alleged here.

As for Dr. Curry, a successful claim depends on showing that her evaluations of the plaintiff were so beyond the pale of reasoned academic decision-making as to violate his due process rights. *Wheeler v. Miller*, 168 F.3d 241, 250 (5th Cir. 1999). The court must remain cognizant that it is ill suited to evaluate the substance of academic decisions, which require "an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decision-making." *Ewing*, 474 U.S. at 226. At this stage, however, all the plaintiff need do is allege that Dr. Curry's actions were sufficiently skewed and lacking in professional judgment – a standard he has met through

his allegations that she misrepresented witness accounts and violated professional standards in her evaluation process.[6]

### iii. *Qualified immunity*

Finally, defendants have summarily asserted that they are entitled to qualified immunity for any constitutional violations. The doctrine of qualified immunity protects government officials from liability under § 1983 as long as their conduct does not violate "clearly established constitutional or statutory rights of which an objectively reasonable person should have known." *State of Texas ex rel. Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 818 (5th Cir. 1998). A plaintiff seeking to defeat qualified immunity must show (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016). The court has already found the first prong satisfied under the standards of Rule 12(b)(6) and so proceeds to the second.

To prevail on the second prong, a plaintiff must show that the contours of the right are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). As the Fifth Circuit recently emphasized:

> The central concept is that of "fair warning": The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights. That this court has not previously considered an identical fact pattern

---

[6] The court declines to convert this motion into one for summary judgment, noting the early stage of the case and the fact that defendants have offered no additional evidence in support of their arguments.

does not mean that the litigant's rights were not clearly established. But the right also should not be defined at a high level of generality.

*Anderson*, 845 F.3d at 600 (internal quotations omitted).

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate that the defense does not apply. *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012). Even in this context, however, the allegations "must be taken in the light most favorable" to the plaintiff. *Anderson*, 845 F.3d at 600. Additionally, a defendant presenting his immunity defense through a Rule 12(b)(6) motion "must accept the more stringent standard applicable to this procedural route." *Reitz v. City of Abilene*, 2017 WL 3046881, at \*14 (N.D. Tex. May 25, 2017) (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). Where the allegations in the complaint are insufficient to determine the defense's application, the court may order the plaintiff to file a reply under Federal Rule of Civil Procedure 7(a) or defer its ruling on qualified immunity pending further development of the factual allegations. *Id.* (citing *Randle v. Lockwood*, 666 F. App'x 333, 337 n. 6 (5th Cir. 2016)).

Plaintiff's allegations have shown a possible violation of his right to substantive due process by Dr. Curry, satisfying the first step of qualified immunity analysis. The second step presents a trickier inquiry. The "narrow avenue for judicial review" arises from *Horowitz* and *Ewing*, decided by the Supreme Court in 1978 and 1985. The case law in this area remains scant, however, and based on assumptions rather than clear holdings in support of a right to substantive due process. *Burnett v. Coll. of the Mainland*, 994 F.Supp.2d 823, 828 (S.D. Tex. 2014).

Still, courts have largely bypassed this question and settled the issue based on an analysis of the individual's actions under *Ewing*. *See, e.g.*, *Shah*, 54 F.Supp.3d at 697–702; *Seals v. Mississippi*, 998 F.Supp.2d 509, 523–25 (N.D. Miss. 2014); *Oyama v. Univ. of Hawaii*, 2013 WL 1767710, at \*11–\*12 (D. Haw. Apr. 23, 2013). Accordingly, the court lacks sufficient basis to announce that the guarantees assumed from that case are still too vague to justify an application of qualified immunity even where a clear violation is established. It will therefore await further development of the record before it evaluates her right to qualified immunity.

### 3. Application of state law

Plaintiff has also claimed a violation of his right to due process under the Louisiana Constitution, based on the above allegations. The Due Process Clause of the state constitution is analogous to that contained in the U.S. Constitution, and claims brought under the two are commonly addressed together by federal courts. *E.g.*, *Moreau v. St. Landry Par. Fire Dist. No. 3*, 413 F.Supp.3d 550, 567 (W.D. La. 2019) (citing *Montagino v. Canale*, 792 F.2d 554, 557 (5th Cir. 1986)). Louisiana courts have also found that the clauses are coextensive and provide the same protections. *Louisiana v. Smith*, 614 So.2d 778, 780 (La. Ct. App. 2d Cir. 1993). Accordingly, plaintiff's claims under Article I, Section 2 of the Louisiana Constitution are subject to the same rulings described above.

### B. Breach of Contract

Finally, the court comes to plaintiff's claims for breach of contract. Plaintiff alleges that the LSU defendants breached the HOAA by failing to follow the HOM's procedural requirement for adverse action. In particular, he cites their alleged failure to respond to his

November 2018 written appeal. Doc. 1, att. 2, p. 193. As shown above, plaintiff's appeal was untimely under the HOM. Plaintiff has also alleged, however, that the LSU defendants failed to abide by "the promulgated due process requirements" under the HOM, including the requirement that an RFAA contain a summary of each witness's expected testimony. *See id.* at 187–88, 193. The LSU defendants do not address these allegations as possible breaches. Accordingly, the contract claim survives the motion to dismiss.

### III.
#### CONCLUSION

For the reasons stated above, the Motion to Dismiss will be **GRANTED IN PART** and **DENIED IN PART**.

**THUS DONE AND SIGNED** in Chambers on this 7th day of April, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**